(SPACE BELOW FOR FILING STAMP ONLY)

Michael E. Bubman, Esq. (SBN 143468)
Morgan L. Bubman, Esq. (SBN 345655)
MIRMAN, BUBMAN & NAHMIAS
16133 Ventura Boulevard, Suite 1175
Encino, California 91436
Telephone: (818) 451-4600
Facsimile:  (818) 451-4620
Email: mbubman@mbn.law
       morgan.bubman@mbn.law

[Proposed] Special Counsel for Plaintiff,
Carolyn Dye, Chapter 7 Trustee

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>KEITH WONKI BAE<br><br>　　　　　　　　　Debtor. | Case No.: 2:24-bk-11660-DS<br><br>Chapter 7<br><br>DECLARATIONS OF STEPHEN J. DONELL, SARAH BATES, MORGAN L. BUBMAN, AND MICHAEL E. BUBMAN IN SUPPORT OF REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7 TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL<br><br>Hearing:<br>DATE:　　　　09/26/2024<br>TIME:　　　　1:00 p.m.<br>COURTROOM: 1639 – (virtual via Zoom.Gov)<br>　　　　　　U.S. Bankruptcy Court<br>　　　　　　255 E. Temple Street<br>　　　　　　Los Angeles, CA 90012 |

## DECLARATION OF SARAH BATES

I, SARAH BATES, do hereby declare:

　　　　1.　　　I am the Vice President of FedReceiver, Inc., and am the Receiver Administrator for Stephen Donell, the duly appointed, qualified and currently serving Receiver in this case. I make this declaration in support of the Reply in Support of the Application by Chapter 7 Trustee to Employ Mirman, Bubman & Nahmias ("MBN") as Special Counsel ("Reply"). The facts set forth herein are based on my personal knowledge and upon my status as a custodian of records of my receivership practice and if called upon to testify thereto, I could and would do so competently.

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

2.      In his role as Receiver over Birdies Restaurant, Mr. Donell asked that I interface with all banks (including Chase Bank, Wells Fargo Bank and Hanmi Bank), any merchants through which Mr. Bae has established merchant accounts (Toast, Clover and Square) and the various delivery services through which sales are made (i.e., DoorDash, GrubHub and UberEats).  During the period from February 7, 2024 to February 23, 2024, I generally communicated with Mr. Bae with respect to day-to-day management activities, also at the request of Mr. Donell. In various declarations I filed with the State Court (all of which were in support of various *ex parte* applications for orders clarifying the Receivership) I noted my impression from what I have seen I believe that Mr. Bae was deliberately and egregiously attempting to sabotage the Receiver with respect to the operations of Birdies.

3.      On or about June 1, 2024, after the Trustee asked Mr. Bubman and MBN to represent her as special counsel, Mr. Bubman presented the idea of me acting as a contract employee for MBN for purposes of the Bae bankruptcy to me and Mr. Donell.  The issue of me working as a contract employee for MBN had never been raised prior to that time.

4.      Mr. Donell and I both agreed that: (i) it would be very helpful to the trustee to have the benefit my knowledge of the inner workings of Mr. Bae's financial scheme to hide assets from the Receiver; and (ii) Mr. Donell did not have any objection to me continuing to work on this matter into which I had already put a great deal of time and effort.  Consequently, the Receiver consented to MBN hiring me as an independent contractor for this specific purpose, which would first begin once MBN's employment was approved.

5.      I have had no direct communication with the Debtor since approximately July 3, 2024.

6.      I have never received any compensation from MBN, nor have I ever been employed by, or provided any services as an employee or independent contractor to MBN.

7.      Until such time as MBN's employment application is approved by this Court, I will not provide any services as an independent contractor for MBN.  Further, in the event the Court has an issue with me providing services through MBN once the employment application is approved, I will not provide services as an independent contractor through MBN.

///

///

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

1    I declare under the penalty of perjury, pursuant to the laws of the State of California that the

2    foregoing is true and correct.

3    Executed this 18th day of September, 2024 at Los Angeles, California.

4

5

6    _____

     Sarah Bates, declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

## DECLARATION OF STEPHEN J. DONELL

I, STEPHEN J. DONELL, do hereby declare:

1.      I am the President of FedReceiver, Inc., and am the duly appointed, qualified and currently serving Receiver in the State Court litigation entitled *Bobson v. Bae*, Los Angeles Superior Court Case No. BC650612 (the "State Court Action"). I make this declaration in support of the Reply in Support of the Application by Chapter 7 Trustee to Employ Mirman, Bubman & Nahmias ("MBN") as Special Counsel ("Reply"). The facts set forth herein are based on my personal knowledge and upon my status as a custodian of records of my receivership practice and if called upon to testify thereto, I could and would do so competently.

2.      I was appointed receiver by the Los Angeles Superior Court by order dated August 17, 2022 (the "Appointing Order") over the partnership between Jason Harley Bobson and Debtor Keith Bae called JK Partnership ("Partnership").  As a part of the Appointing Order, I was ordered to take possession of, manage and collect all proceeds from the operation of the restaurant named "Birdies," located at 314 W. Olympic Blvd. Los Angeles, CA 91401.  I filed my oath and bond on August 25, 2022.

3.      In my role as Receiver over Birdies Restaurant, I asked that my administrator, Ms. Sarah Bates, interface with all banks (including Chase Bank, Wells Fargo Bank and Hanmi Bank), any merchants through which Mr. Bae has established merchant accounts (Toast, Clover and Square) and the various delivery services through which sales are made (i.e., DoorDash, GrubHub and UberEats). I also instructed her to communicate with Mr. Bae with respect to day-to-day management activities. I have informed the State Court in my previous Declarations filed in the State Court Action that Mr. Bae appears to have been deliberately and egregiously attempting to sabotage me with respect to the operations of Birdies.

4.      Mr. Bae filed for personal bankruptcy on April 25, 2024.  On June 1, 2024, after the Trustee asked Mr. Bubman and MBN to represent her as special counsel, Mr. Bubman presented the idea of Ms. Bates acting as a contract employee for MBN for purposes of the Bae bankruptcy to myself and Ms. Bates.  The issue of Ms. Bates working as a contract employee for MBN had never been raised prior to that time.

5.      Ms. Bates and I both agreed that: (i) it would be very helpful to the trustee to have the benefit Ms. Bates' knowledge of the inner workings of Mr. Bae's financial scheme to hide assets from me in my role as Receiver; and (ii) I did not have any objection to Ms. Bates continuing to work on this matter into which she had already put a great deal of time and effort.  Consequently, I consented to MBN employing Ms. Bates as an independent contractor for this specific purpose, which would first begin once MBN's employment was approved.

I declare under the penalty of perjury, pursuant to the laws of the State of California that the foregoing is true and correct.

Executed this 18th day of September, 2024 at Los Angeles, California.

_____
Stephen J. Donell, declarant

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

## DECLARATION OF MORGAN L. BUBMAN

I, Morgan L. Bubman, declare as follows:

1.      I am an attorney at law, duly licensed to practice before all courts in the State of California.  I am an associate at the law firm of Mirman, Bubman & Nahmias, and proposed counsel in the instant action for Trustee Carolyn Dye ("Trustee"), the Chapter 7 Trustee in this action. The facts set forth herein are based on my personal knowledge, and if called upon to testify thereto I could and would do so competently.

2.      I attended the contempt trial in which Debtor Keith Bae ("Debtor") was found guilty of six counts of contempt of court. At this trial, I witnessed Debtor's counsel, Alejandro Herrera, cross examine Michael Bubman. In this cross examination, Mr. Herrera's questions were repeatedly struck from the record upon the Honorable Judge Upinder Kalra ("Judge Kalra") sustaining his own objections to Mr. Herrera's line of questioning.

3.      I witnessed Mr. Herrera ask Mr. Bubman on cross examination why he was communicating with a represented party (referring to Debtor). Before Mr. Bubman could respond, Judge Kalra sustained his own objection on the grounds of relevance and struck the question from the record. Judge Kalra also admonished Mr. Herrera for trying to shift allegations of wrongdoing onto Mr. Bubman for unrelated allegations during a hearing in which Debtor and Mr. Herrera were being tried for contempt of court.

4.      Debtor was found guilty of six counts of contempt of court. He was ordered to pay $5,500 and serve twenty days[1] of jail time.

5.      To this date, Debtor has still failed to surrender to serve his mandatory jail time, which is now long overdue. Judge Kalra set a Further Contempt Trial for October 4, 2024 for Debtor's failure to surrender.

///

///

///

---

[1] This was subsequently modified by the Court to reduce the jail time to fifteen days.

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

1    I declare under the penalty of perjury, pursuant to the laws of the State of California that the

2    foregoing is true and correct.

3    Executed this 18th day of September, 2024 at Kyoto, Japan.

4

5

6    _____
     Morgan L. Bubman, declarant

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

1

## DECLARATION OF MICHAEL E. BUBMAN

2
I, MICHAEL E. BUBMAN, declare as follows:

3
      1.    I am an attorney at law, duly licensed to practice before all courts in the State of

4
California.  I am a partner in the law firm of Mirman, Bubman & Nahmias ("MBN"), and proposed

5
counsel in the instant action for Trustee Carolyn Dye ("Trustee"), the Chapter 7 Trustee in this action.

6
The facts set forth herein are based on my personal knowledge, and if called upon to testify thereto I

7
could and would do so competently.

8
      2.    As discussed in further detail in the Application by Chapter 7 Trustee to Employ MBN

9
as Special Counsel ("Employment Application"), on or about May 27, 2024, the Trustee asked me if I,

10
along with my firm, MBN, would serve as her special counsel in this matter. I make this declaration in

11
support of the Reply in Support of the Application by Chapter 7 Trustee to Employ MBN as Special

12
Counsel ("Reply").

13

14

## DEBTOR KEITH WONKI BAE GROSSLY MISREPRESENTS THE FACTUAL

15

## BACKGROUND REGARDING THE UNDERLYING STATE COURT ACTION IN HIS

16

## OPPOSITION.

17
      3.    On July 3, 2024, the Trustee filed an Adversary Complaint against Debtor Keith Wonki

18
Bae ("Debtor"), his attorney Alejandro Herrera, and various other corporate entities and individuals

19
(the "Adversary Complaint") alleging that Debtor, acting by and through the other defendants,

20
employed an elaborate and complex scheme to transfer assets to the other defendants in an effort to

21
hinder, delay, and defraud his prior business partner Jason Bobson, the creditors of Debtor's bankruptcy

22
estate, and to evade federal and state tax obligations of himself and the defendant entities.

23
      4.    Importantly, not one of the defendants, each properly served, responded to the Trustee's

24
Adversary Complaint. The Trustee has entered defaults as to each of the defendants in the adversary

25
proceeding, including both the Debtor and Mr. Herrera, on August 9, 2024.

26
      5.    Herrera is not only a named defendant in the Adversary Complaint, but he also serves

27
as Debtor's counsel in the State Court litigation entitled *Bobson v. Bae*, Los Angeles Superior Court

28
Case No. BC650612 (the "State Court Action") and filed the Opposition on Debtor's behalf. Herrera's

involvement is notable because Mr. Herrera has engaged in a number of conflicts of interest – namely, he has an ownership interest in Birdies Restaurant – the subject of the Receivership in the State Court Action – which he failed to disclose in the State Court Action until years into the litigation (in early 2024), and which he failed to disclose in the Opposition. The Receiver has filed a complaint against Mr. Herrera for legal malpractice for these conflicts of interest as well as Herrera's failure to cooperate with the Receiver, as the Receiver for Birdies, Inc., an entity represented by Mr. Herrera.

6.      As support for the necessity and appropriateness of the selection of MBN as the Trustee's special counsel, attached hereto as Exhibit A are the true and correct copies of the February 29, 2024 sworn declarations of: (i) State Court Appointed Receiver Stephen Donell ("Receiver"), (ii) Sarah Bates; (iii) Oscar Gonzalez Sanchez; and (iv) Michael Bubman submitted to the State Court as evidentiary support for orders: (1) authorizing the retention of special counsel to investigate and pursue professional negligence claims against Mr. Herrera; (2) authorize the Receiver to file a bankruptcy petition; and (3) for clarification of certain aspects of the Receiver's appointing order. These declarations will provide the Court with good background as to the battle that has ensued with respect to the Receiver's efforts to obtain cooperation from the Debtor, and by extension, Mr. Herrera, who has assisted the Debtor in his continued efforts to avoid compliance with the requests of the Receiver.

7.      Debtor's Opposition provides approximately four pages of what he calls "summaries" which grossly mischaracterize the factual background regarding the State Court Action and are of no evidentiary value, as they are entirely without evidentiary support. In fact, both the Debtor and his counsel have filed numerous declarations in the State Court Action, making clear they know how to appropriately file declarations. There have been many instances, however, in which Debtor and Mr. Herrera have intentionally filed declarations with no evidentiary support, and Debtor's counsel has been repeatedly chastised by State Court Judge, the Honorable Upinder Kalra ("Judge Kalra") for his failure to provide evidentiary support for statements he has made.

8.      In the Opposition, Debtor asserts, "In the two years Attorney Bubman has represented Receiver Donell, not a single instance of fraud or concealment has been discovered (because it didn't happen), yet Attorney Bubman is now telling a story of assets that are hidden somewhere." Opposition, page 11, lines 7-10.

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

9.    The transcripts of proceedings in the State Court Action tell a vastly different story. Judge Kalra has made numerous findings relating to the actions of the Debtor and his failure and refusal to cooperate with the Receiver in his efforts to carry out his tasks.  On both March 1, 2024 and April 25, 2024, Judge Kalra himself details the fraudulent transfer of assets conducted by the Debtor.  True and correct copies of the March 1, 2024 and April 25, 2024 Transcripts of Proceedings are appended hereto as Exhibits B and C, respectively, and are incorporated herein by reference.

10.    In the March 1, 2024 Transcript, Judge Kalra details the complete lack of cooperation by the Debtor with the Receiver, which ultimately led to the Court finding the Debtor guilty of six (6) counts of contempt. *See*, Exhibit B.

11.    On pages 13-14 of the April 25, 2024 Transcript, Judge Kalra stated the following:

> So I am writing a … statement of decision on a court trial, and the issue there is whether there has been a fraudulent conveyance. And one of the factors I look at is whether the transaction – essentially, if a business is essentially taking over the other business, a mere continuation of the prior business. That would be evidence of a fraudulent transfer, and a subsequent corporation would be liable for the prior corporation's debts. How do you think it looks when Mr. Bae has taken a business and moved right next door and moved over the same employees, moved over the same menu, moved over all the transactions from there, the payment schemes? … It is so obvious what Mr. Bae is doing, and to suggest that he has done everything to cooperate when he has done just the opposite … [Mr. Bae] is clearly doing everything to interfere with the Receiver doing his job, which is no different than what he has been doing for the last two years plus. And it is clear he is trying to destroy the business to prevent the Receiver from doing his job. But there [are] still partnership assets. He has recast the business and moved it right next door using all of the resources and assets of the partnership to fund his scheme, which

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

1  is a façade – which is obviously a façade. But the Receiver will keep

2  moving.

3  12.  This excerpt alone from the April 25, 2024 Transcript demonstrates how the Opposition

4  has mischaracterized the factual background of the State Court Action, as well as the need for the

5  Trustee to appoint special counsel to investigate Debtor's hidden and undisclosed assets. Accordingly,

6  the Trustee respectfully requests the Court authorize her to employ MBN.

7  13.  While there is significantly more evidence in my possession of Debtor and Mr. Herrera's

8  mischaracterizations of the State Court Action, I do not wish to burden this Court with the entire

9  procedural history from the State Court Action unless this Court requests I do so.

10

11  **MBN IS NEUTRAL AND DISINTERESTED; MBN SEEKS TO EMPLOY SARAH BATES**

12  **WHEN ITS EMPLOYMENT APPICATION IS APPROVED.**

13  14.  The issue raised regarding the employment of Sarah Bates, a long-time employee of the

14  Receiver, is a red herring issue.   To date, MBN has not employed Ms. Bates in any capacity. Once the

15  Trustee asked MBN to serve as her special counsel on or about May 27, 2024, I believed it would be a

16  significant benefit to the Trustee to have the knowledge and services of Ms. Bates available as a result

17  of the very impressive work she had done for the Receiver in the State Court Action.  On or about June

18  1, 2024, I presented the idea of Ms. Bates acting as a contract employee for purposes of the Bae

19  bankruptcy.

20  15.  At that time, I first raised the possibility with Mr. Donell and Ms. Bates, who both agreed

21  that: (i) it would be very helpful to the trustee to have the benefit of Ms. Bates' knowledge; and (ii) Mr.

22  Donell did not have any objection to Ms. Bates continuing to work on this matter into which she had

23  already put a great deal of time and effort.  Consequently, the Receiver consented to MBN retaining

24  Ms. Bates as an independent contractor for this specific purpose, which would first begin once MBN's

25  employment was approved.

26  16.  Ms. Bates has never received any compensation from MBN.  Ms. Bates has never been

27  employed by MBN.  Until such time as MBN's employment application is approved by this Court, Ms.

28  Bates will not provide any services as an independent contractor for MBN.  Further, in the event the

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

1  Court has an issue with Ms. Bates providing services through MBN once the employment application

2  is approved, Ms. Bates will not provide services as an independent contractor through MBN.

3      I declare under penalty of perjury under the laws of the State of California that the foregoing is

4  true and correct.

5      Executed on this 18th day of September, 2024, at Kyoto, Japan.

6

7                                             Michael E. Bubman, declarant

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DECLARATIONS IN SUPPORT OF THE REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7
TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL**

# EXHIBIT A

Michael E. Bubman, Esq. (SBN 143468)
Morgan L. Bubman, Esq. (SBN 345655)
**MIRMAN, BUBMAN & NAHMIAS**
16133 Ventura Boulevard, Suite 1175
Encino, California 91436
Telephone:  (818) 451-4600
Facsimile:  (818) 451-4620
Email:  mbubman@mbn.law
         morgan.bubman@mbn.law

**Electronically FILED by**
**Superior Court of California,**
**County of Los Angeles**
**2/29/2024 9:42 AM**
**David W. Slayton,**
**Executive Officer/Clerk of Court,**
**By R. Perez, Deputy Clerk**

Attorneys for Court Appointed Receiver,
Stephen J. Donell

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| JASON HARLEY BOBSON | CASE NO: BC650612 |
| Plaintiff, | *Assigned for all purposes to the Honorable Upinder S. Kalra, Department 51* |
| vs. | **DECLARATIONS OF STEPHEN DONELL, SARAH BATES, OSCAR GONZALEZ SANCHEZ, AND MICHAEL E. BUBMAN IN SUPPORT OF EX PARTE APPLICATION BY RECEIVER STEPHEN J. DONELL FOR ISSUANCE OF AN ORDER:** |
| KEITH BAE, et al | |
| Defendants. | |

1. **GRANTING RECEIVER AUTHORITY TO HIRE SPECIAL COUNSEL FOR THE PURPOSE OF INVESTIGATING AND PURSUING PROFESSIONAL NEGLIGENCE CLAIMS AGAINST ALEJANDRO HERRERA, ESQ.;**

2. **GRANTING RECEIVER AUTHORITY TO FILE BANKRUPTCY PETITION;**

3. **CLARIFYING APPOINTING ORDER AS: (A) APPLYING TO ADDITIONAL ENTITIES; AND (B) ENJOINING EVICTION OF THE RECEIVER FROM BIRDIES PREMISES BY BAE AND HIS ASSOCIATES**

*[Submitted concurrently with Ex Parte Application and Proposed Order]*

Date:   March 1, 2024
Time:   8:30 a.m.
Dept:   51

{00811386}                                      1
**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECEIVER**
**FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**

I, STEPHEN J. DONELL, do hereby declare:

1.     I am the President of FedReceiver, Inc., and am the duly appointed, qualified and currently serving Receiver in this case. I make this declaration in Support of the *Ex Parte* Application for an Order Clarifying the Order Appointing Receiver and All Related Subsequent Orders. The facts set forth herein are based on my personal knowledge and upon my status as a custodian of records of my receivership practice and if called upon to testify thereto, I could and would do so competently.

2.     As this court is aware, I was appointed receiver by this court by order dated August 17, 2022 (the "Appointing Order") over the partnership between Plaintiff, Jason Harley Bobson and Defendant, Keith Bae called JK Partnership ("Partnership"). As a part of the Appointing Order, I was ordered to take possession of, manage and collect all proceeds from the operation of the restaurant named "Birdies," located at 314 W. Olympic Blvd. Los Angeles, CA 91401.

3.     I was present at the hearing on February 2, 2024, at which time the Court signed the most recent order regarding the two Chase bank accounts into which deposits have been made – the DTLA South Park Corp. account and the BAE FG Corp. account. After the hearing we spoke with Messrs. Bae and Herrera in the hallway. We advised Mr. Bae that all expenses needed to be approved by me.

4.     I have assigned Sarah Bates, my Receiver Administrator, to interface with Mr. Bae. Ms. Bates is also involved in communications with Chase Bank. In order to stop Mr. Bae from using the monies from Birdies without my permission, we delivered the Court's order to Chase Bank. We began communicating with Chase Bank on February 6, when we received a call from a woman in the legal department at approximately 1:10 p.m. She advised us that they had researched accounts that would be subject to hold based upon the Court's orders. She advised that they had found 3 accounts that would be impacted: 2 accounts under the name BAE FG and one under the DTLA name. She also advised that the accounts had a combined total of approximately $2,000 at that time.

5.     At some point soon thereafter, Chase put a hold on releasing monies from the two bank accounts identified in this Court's February 2, 2024 Order. Apparently, the hold took effect on February 6, as Mr. Herrera wrote (at 3:39 p.m. on February 6, 2024) to my counsel advising:

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 15

[Y]ou or your client may have interfered with the business operations. It

seems that a hold has been placed on the bank funds which frustrates the

ability to run payroll <u>TODAY.</u> I'm not sure why this action was taken,

especially without notice to myself or Mr. Bae. It seems like retaliation.

Please advise <u>immediately</u> on this.

*See*, Exhibit "A" hereto.

6.    My attorney delivered Mr. Herrera's email to me right away. At that time, the person from Chase initially assigned to handle this matter was in Chase's Regulatory Control Operations center in Westerville Ohio. Due to the time of day, we could not get in touch with anyone from Chase that afternoon to discuss the accounts as they had already closed for the day.

7.    On February 7, 2024, I had Ms. Bates deliver a letter to both Messrs. Bae and Herrera advising of the information I needed from them regarding the operations of Birdies. A true and correct copy of the letter I delivered to Messrs. Bae and Herrera is appended hereto as Exhibit "B." Most significantly, in that letter I asked for payroll information to allow me to determine the net pay and payroll taxes for the employees, including their names, rate of pay, hours worked and title. I also asked for confirmation that payroll taxes were being paid, as I have previously noted that there are significant liens against the business as a result of the failure to pay payroll taxes as required by law. I also requested Mr. Bae provide the usernames and passwords for administrative access to the Toast merchant service, which would allow me to control the revenues generated from sales at Birdies, as well as providing instant access to sales reports for the restaurant. I also asked for a variety of additional information relevant and necessary to the operation of the restaurant. The payroll and merchant account information were the most critical. I advised Mr. Bae that I would like to schedule a call for February 8 to go over the information and coordinate the transition of the operations.

8.    At around the same time, Mr. Herrera sent an email to my counsel asking that he forward the payroll summary, and:

[E]nsure that monies are immediately transferred to cover the payroll.

Specifically, funds received by the DTLA South Park account need to be

transferred to the BAE FG account to cover.

{00811386}}                                          3

1  A true and correct copy of Mr. Herrera's email and attached payroll summary are appended hereto as

2  Exhibit "C." The payroll summary called for payroll of $18,381.11 to be paid.

3      9.    I asked Ms. Bates to contact Chase to get an update on exactly how much money was in

4  the two significant Birdies' accounts. We were advised that the DTLA account had a balance of

5  $2,337.34 and the BAE FG account had a balance of $1,013.52, for a total of $3,350.86 in monies at

6  Chase. Ms. Bates advised all of us of these balances, including Mr. Herrera. A true and correct copy

7  of her email is appended hereto as Exhibit "D."

8      10.    Messrs. Bae and Herrera continued to demand that I release monies to cover the payroll.

9  Mr. Bae then started to demand I release money for him to buy supplies. We were very clear with Mr.

10  Bae that we would not release checks or make payments from the bank accounts if there were

11  insufficient funds to cover the checks written.

12      11.    On February 9, 2024, Ms. Bates, Brian Landau (my accountant) and I paid a visit to

13  Birdies to see what was going on. We witnessed a steady stream of business coming into the

14  restaurant. We also looked at the Toast interface at the restaurant. We found that the Toast machine

15  provides a consolidated summary of all sales occurring at the restaurant, including the delivery services

16  Door Dash, GrubHub and UberEats. Mr. Bae first produced one of these consolidated statements on

17  February 12, 2024, even though they would have been directly responsive to many of the requests I

18  have previously made over the last 17 months. On February 12, Mr. Bae produced one such

19  consolidated statement for the period from February 5 through February 11, 2024. A true and correct

20  copy of this consolidated statement is appended hereto as Exhibit "E." This is far more information

21  than was provided to us in the Toast reports that were produced on February 1, 2024.

22      12.    On February 10, Mr. Bubman, Mr. Sanchez and I went to the restaurant at

23  approximately 10:30 a.m. to see what was happening. Mr. Bubman stayed about 10 feet away and did

24  not speak with any of the employees. I spoke with Danielle Heflin, who I was advised was the

25  manager of the restaurant. When I spoke to her, she asked about payroll. I told her that payroll was

26  my first priority, but that there were insufficient funds to pay the payroll. She asked whether they

27  would get paid on Monday and I told her that I did not know when we would be able to pay the payroll,

28  that it was my first priority and that we would do our best to get them paid as soon as possible. Oscar

1  and I then went into the back kitchen and repeated the same conversation with the kitchen staff.  None

2  of them spoke English, so I had Mr. Sanchez translate into Spanish so they would understand.  Mr.

3  Bubman stayed in the front of the restaurant and stood by the door.  I was surprised to see how dirty the

4  restaurant kitchen was.  I asked Mr. Bubman to come into the kitchen to see it for himself.  We noted

5  that the kitchen was in need of a substantial cleaning.

6      13.    Ms. Bates and I have been repeatedly requesting that Mr. Bae provide us with the

7  usernames and passwords for Toast, Door Dash, Uber Eats and GrubHub, or alternatively, that he

8  provide us with administrative access to each of those vendors.  Mr. Bae has repeatedly found some

9  reason to avoid giving us this information.  We have been asking for this specific information since I

10  wrote to him on February 7, 2024.  Between myself, Ms. Bates, Mr. Landau and Mr. Bubman, we have

11  asked for these usernames and passwords no less than <u>forty</u> (40) times since February 7.  We have

12  made the request in virtually every email that we send to Mr. Bae and every conversation that we have

13  with him.  Mr. Bae either ignores the request or finds an excuse as to why he cannot provide it at that

14  specific time, and then never provides the information.

15      14.    In no uncertain terms, Mr. Bae is simply not cooperating in providing much of the

16  information I have repeatedly requested.  There is literally no reason he cannot give this information to

17  me.  Further, I do not believe that he is acting in good faith with the information he is providing.  On

18  Friday night, I had one of my staff, Oscar Sanchez, at the restaurant strictly to observe what was

19  happening in the operations.  Ms. Bates and Mr. Sanchez kept track of the cash that had come into the

20  restaurant.  Ms. Bates had documented that at least $285 was removed by Mr. Bae from the cash safe

21  without permission.

22      15.    On February 11, I sent Mr. Bae emails advising that as of midday on Sunday, February

23  11, 2024, Mr. Bae had failed to cooperate with the request for usernames and passwords for Homebase,

24  Toast, UberEats, GrubHub and DoorDash.  My emails are appended hereto as Exhibit "F."

25      16.    As of Monday, February 12, 2024, there was still not enough money in both of the

26  Chase accounts to meet the amount of payroll checks we were advised were outstanding on February 7,

27  2024.

28

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 18

17.     On Monday, February 12 at 4:00 p.m., Mr. Bae first provided information to allow us to view the Toast, UberEats and DoorDash accounts. This was insufficient, however, as it does not allow me administrator privileges, which is necessary to control these accounts or redirect the monies into receivership accounts. I have learned that the Toast account is "owned" by the person with the email address mcavalawork@gmail.com who I understand to be Mariana Ayala. Keith has advised that Ms. Ayala is his personal assistant, has no records for the business and is not the bookkeeper or payroll administrator. Mr. Bae has refused to identify why she is the "owner" of the Toast account. She has not responded to our attempts to communicate with her. That notwithstanding, as the owner of the Toast account, she maintains the authority to lock me out of the Toast account whenever she chooses. This is insufficient to allow me to control these accounts and is evidence of Mr. Bae's interference and non-cooperation.

18.     Over the course of the two weeks following February 12, my office and I continued to request access to the various programs referenced above in repeated communications, and I still do not have the administrative access to those programs or applications (including Toast, UberEats, GrubHub, DoorDash, HomeBase, Quickbooks/Intuit) today. These are all essential to the operation of the restaurant. All of these should be included under the Court's various orders, which we have given to Mr. Bae several times. He still persists in ignoring our requests and the Court's orders.

19.     Mr. Bae has not provided any detailed financial accounting records, notwithstanding the fact that he pays monthly for an account with Quickbooks. He has basically provided me with bits and pieces to put together myself. While I have had my accountant, Brian Landau, construct a pro forma financial statement, there are many pieces missing and we have had a great deal of difficulty getting the full picture of the operations. It appears to me that Mr. Bae is hiding portions of the financial picture.

20.     Once we gained any access to the Toast system, we began monitoring daily sales and receipts from Birdies through Toast. During the last week, Mr. Bae stopped asking for money to purchase inventory, which was different from the two weeks prior when he was asking for money to replenish the inventory on a daily basis. What we did note was that we never received the normal check from GrubHub, which is mailed to Mr. Bae, which historically is approximately $4000 - $5000/month. We also did not receive any cash this last week from the restaurant, even though the

Toast record shows they received approximately $5800 in cash from sales. I suspect that Mr. Bae received and kept this money. This left us short of money to pay payroll. Mr. Bae was continually writing to us and requesting that payroll be paid. We informed him each time that there were insufficient funds to pay the payroll, and that the payroll could not be paid without the money to pay payroll taxes.

21.  By February 22, we had not received enough money to pay the payroll for the period from February 5 – 19, 2024. In fact, we barely had enough money to make the payroll that was due paid on February 5, 2024. As a result of this situation, I felt we had no choice but to close the restaurant. I could not keep employees coming in to work without the knowledge of whether we would have the money to pay them, especially considering the interference and non-cooperation by Mr. Bae.

22.  On February 23, I personally met a locksmith at the restaurant. We changed the locks and closed the restaurant. I advised the employees that we would pay them as soon as there was sufficient money to do so. I heard Mr. Bae telling the collective group of employees the following statements:

- All of the rent was paid current;
- He had no problems with the business operations, including food, supplies, etc., until the receiver stepped in;
- He had no problems meeting his payroll and paying employees until the Receiver stepped in – when I asked about what had happened to the money for payroll taxes, including the employees' portion that was deducted from their check but not paid into the system, he told them that the government's focus was on the employer making the actual payroll and suggested to them that there were no issues created by his failure to pay the payroll tax or sales tax;
- He denied that close to $1,000,000 in payroll and sales taxes were outstanding;
- He stated that his partner (Bobson) owed half of all the expenses, that the court issued a ruling ordering Bobson to pay him money and that any problem with the restaurant were caused by the failure of Bobson to live up to those obligations – he took absolutely no responsibility for the dire financial condition of the business;

{00811386}}                              7

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 20

1    • He falsely suggested to the employees that the Receiver had guaranteed that all payroll

2    would be made.

3    23.    Mr. Bae also has video/audio cameras through the restaurant and perhaps on top of the

4    restaurant.  He has failed to provide us with the login information for these cameras even though we

5    have asked for it many times.  He has used this access to see what is going on at the restaurant, and not

6    for any positive purpose.  I can provide a specific example of this.  Upon request to my counsel, I have

7    provided access to the restaurant to Jason Bobson, the plaintiff in this action.  Mr. Bobson advised my

8    counsel that he wanted to show the restaurant to potential investors who may be interested in acquiring

9    the restaurant.  He also offered to clean the restaurant at his own cost.  I accepted his offer and granted

10    his request.  The caveat to this was that Mr. Bobson would do this under the supervision of my

11    employees, to which Mr. Bobson agreed.  On Saturday, February 24, one of my employees went to

12    Birdies and opened it up for Mr. Bobson to show it to someone.  Mr. Bae saw this on the video camera

13    and called the police.  My attorney had to explain to the police who Mr. Bobson is, provide them with

14    copies of the relevant court orders, and explain that my employees were there supervising the visit.

15    This was not enough for Mr. Bae, who sought to have Mr. Bobson arrested.  The police ultimately

16    concluded that there was nothing improper about Mr. Bobson's visit, as they were advised that I

17    authorized it to occur.  I subsequently explained to Mr. Bae that I had authorized his visit, as well as his

18    cleaning.  See, Exhibit "H."  Mr. Bae also brought Danielle Heflin, his manager, with him.  During that

19    visit, I am advised that she attempted to take the health certificate and business license from the

20    restaurant.  My attorney spoke with the police several times during this visit and made sure that they

21    did not leave with anything from the restaurant.

22    24.    After the restaurant was thoroughly cleaned by a cleaning crew, Mr. Bobson brought

23    some investors to look at the restaurant.  To be clear, I have no deal with Mr. Bobson about anything

24    other than allowing him to show the restaurant to potential investors.  I have also had my counsel

25    advise Mr. Bobson that any investors would have to work through me and the receivership.   When Mr.

26    Bobson brought investors to the restaurant on Tuesday, February 27, Mr. Bae came to the restaurant

27    and attempted to dissuade the potential investors from having anything to do with the restaurant by

28    badmouthing Mr. Bobson to the investors and ultimately throwing a copy of the 2021 court judgment

1  on their car.  I was advised of this by Mr. Sanchez, who was there to let Mr. Bobson into the restaurant.

2  I am advised that at one point Mr. Bae threatened Mr. Bobson, and he and Ms. Heflin attempted to get

3  into the restaurant to take things from it.  They were stopped from doing so and asked to leave.

4        25.    Mr. Herrera purports to represent Birdies, Inc., (*See*, February 13, 2024 *Ex Parte*

5  Application filed by Herrera on behalf of Birdies, Inc. and Bae) which the original Appointing Order

6  identifies as an asset owned by the Birdies Partnership. *See*, Appointing Order, ¶2n.  Mr. Herrera has

7  not requested my permission to act on behalf of Birdies, Inc.  As a result, I terminated Mr. Herrera as

8  counsel for Birdies.

9        26.    I understand that Mr. Herrera is the agent for service of process for each one of the

10  corporations and LLCs used by Mr. Bae in running the Birdies operations, including Birdies, Norco

11  Hamner Corp. (formerly Birdies Norco Corp. before the name was changed on September 11, 2020),

12  BAE FG Corp., DTLA South Park Corp., I Savant FG, I Savant Norco and Wok N' Tenders. I have

13  requested (through my counsel) that Mr. Herrera turn over all records for each of these entities, as they

14  are part of the "organization" that is doing business as Birdies at 314 W. Olympic Blvd., but I have

15  received no response from him, and he refuses to cooperate.

16        27.    I believe that Mr. Herrera has assisted Mr. Bae in circumventing the requirements of the

17  August 2022 order appointing me as receiver, as well as escaping his tax obligations, by assisting him

18  in creating this tangled web of entities.  As the Receiver over many of these entities, Mr. Herrera has an

19  obligation to respond to me as the legal representative of his former clients.

20        28.    I have consulted with attorney Patrick M. Maloney, Esq., a partner at The Maloney Firm

21  APC, who specializes in legal malpractice.  I believe that as the Receiver over these various entities, I

22  have the ability to file a complaint against Mr. Herrera for professional negligence, as I believe that he

23  had conflicting interests that he did not consider in the actions he took representing Keith Bae by taking

24  actions that were adverse to the interests of his other Birdies' related clients.  I believe his conduct fell

25  below the standard of care required of an attorney taking on these representations and I would like the

26  authority to retain The Maloney Firm, APC as counsel to pursue claims against Mr. Herrera for his

27  actions. The Maloney Firm has advised that they have no conflicts of interest and are not representing

28

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**

1    anyone in this action. Attached hereto as Exhibit G is a true and correct copy of Mr. Maloney's

2    experience, as well as The Maloney Firm, APC's proposed retainer agreement.

3          29.    I understand that there are tax liens against "Birdies" that exceed $900,000, in addition

4    to various other obligations of Birdies that cannot be repaid as a result of the precarious financial

5    situation left by Mr. Bae in his running of the operations of Birdies. I am also asking the Court for

6    permission to file a bankruptcy petition for Birdies, as it may be necessary to liquidate the assets and

7    allow for any recovery for repayment of obligations, rather than simply liquidating the hard assets of

8    the business. I believe that there is goodwill value that may also be lost if the business is simply

9    closed. While I have not come to a decision at this time and am exploring other options, I believe there

10   is a good chance that filing of a bankruptcy proceeding may be the best, if not only, way to consolidate

11   and liquidate the business in an orderly fashion while maximizing the value to be recovered. As a

12   result, I am also asking for permission to file a bankruptcy in the event, based upon my business

13   judgment, I conclude it will obtain the best financial result for this receivership.

14         30.    I need access to all of the entities that Mr. Bae has used to run the Birdies operation.

15   The Health Department permit and business license are both held in the name I Savant FG. The

16   purported sublease is under the names I Savant Norco Corp., dba Birdies LA or Birdies DTLA. The

17   Three-Day Notice, which expressly references I Savant Norco Corp., is appended hereto as Exhibit "I."

18         31.    Keith Bae has told this Court on more than one occasion (including at the Contempt

19   trial) that his father is quite elderly and that he has to take him regularly for chemotherapy. He has

20   made it appear to this Court as though his father is not capable of conducting business. In fact, many

21   of the bills for the restaurant, including the lease with the landlord, are in the name of James Bae.

22   Payroll checks are signed in the name of James Bae. I do not know whether James Bae himself is

23   actually signing any documents or if Keith Bae is signing for his father. I need authority to use these

24   business assets that are currently in the name of James Bae. I also need for this Court to clarify that

25   James Bae is enjoined from evicting Birdies from the premises as a purported subtenant.

26         32.    In my 30-year career as a state/federal court-appointed receiver, I do not recall a

27   defendant in any one of my other cases that has been as non-cooperative, or has interfered with my

28   ability to carry out the tasks of the receivership, as much as Keith Bae.

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 23

1    I declare under the penalty of perjury, pursuant to the laws of the State of California that the

2    foregoing is true and correct.

3        Executed this 29th day of February, 2024 at Los Angeles, California.

4

5                                         _____
                                          STEPHEN J. DONELL

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00811386}}                          11

**DECLARATION OF SARAH BATES**

I, SARAH BATES, do hereby declare:

1.      I am the Vice President of FedReceiver, Inc., and am the Receiver Administrator for Stephen Donell, the duly appointed, qualified and currently serving Receiver in this case. I make this declaration in support of the *Ex Parte* Application for an Order Clarifying the Order Appointing Receiver and Subsequent Orders. The facts set forth herein are based on my personal knowledge and upon my status as a custodian of records of my receivership practice and if called upon to testify thereto, I could and would do so competently.

2.      Mr. Donell has asked that I interface with Chase Bank and Mr. Bae on day-to-day activities. This declaration is but a sampling of the interaction I have had with Mr. Bae during the 3-week period in which I have been involved with Birdies. There is substantially more to say about this situation, but the short story is that I believe Keith Bae has been deliberately attempting to sabotage the Receiver in the operations of Birdies. In no uncertain terms, Mr. Bae has not been the least bit cooperative with either me or Mr. Donell.

3.      On Friday, February 2, 2024, I personally delivered this Court's order signed that day to Chase Bank. On February 6, 2024, at approximately 1:10 p.m., I spoke with a representative from Chase Bank's legal department. She stated that they were coordinating with Chase legal on this matter, and that they had researched accounts that would be subject to hold based upon the Court's orders. She stated that they had found 3 accounts that would be impacted: 2 accounts under the name BAE FG and one under the DTLA name. She advised that one of the BAE FG accounts had nothing in it. She also stated that the accounts had a combined total of approximately $2,000 at that time.

4.      At some point soon thereafter, Chase put a hold on releasing monies from the two bank accounts identified in the Court's February 2, 2024 Order. Apparently, the hold took effect sometime on February 6, although several ACH debits cleared the BAE FG account on February 6 prior to the hold taking effect. Mr. Herrera wrote (at 3:39 p.m. on February 6, 2024) to our counsel advising:

> [Y]ou or your client may have interfered with the business operations. It
> seems that a hold has been placed on the bank funds which frustrates the
> ability to run payroll <u>TODAY</u>. I'm not sure why this action was taken,

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 25

1    especially without notice to myself or Mr. Bae.  It seems like retaliation.

2    Please advise <u>immediately</u> on this.

3    *See*, Exhibit "A" hereto.

4    5.    The person from Chase initially assigned to handle this matter is in Chase's Regulatory

5    Control Operations center in Westerville Ohio.  Due to the time of day that we learned of Mr. Herrera's

6    email, we could not get in touch with anyone from Chase that afternoon to discuss the accounts, as they

7    had already closed for the day.

8    6.    On February 7, 2024, I personally assisted Mr. Donell in drafting a letter from Mr.

9    Donell to both Messrs. Bae and Herrera, which I personally emailed to them, advising of the

10    information needed from them regarding the operations of Birdies.  A true and correct copy of the

11    February 7, 2024 letter delivered to Messrs. Bae and Herrera is appended hereto as Exhibit "**B**."  Most

12    significantly, in that letter Mr. Donell asked for payroll information to allow us to determine the net

13    pay and payroll taxes for the employees, including their names, rate of pay, hours worked and title.

14    Mr. Donell further asked for confirmation that payroll taxes were being paid, as we were made aware

15    of a significant amount of liens recorded with the California Secretary of State against Birdies as a

16    result of Mr. Bae's failure to pay payroll taxes as required by law.  Mr. Donell also requested Mr. Bae

17    provide the usernames and passwords for administrative access to the Toast merchant service, which

18    would allow us to control the revenues generated from sales at Birdies, as well as providing instant

19    access to sales reports for the restaurant.  Mr. Donell also asked for a variety of additional information

20    relevant and necessary to the operation of the restaurant. The payroll and merchant account information

21    were the most critical.

22    7.    At around the same time, Mr. Herrera sent an email to Mr. Bubman asking that he

23    forward the payroll summary, and:

24    [E]nsure that monies are immediately transferred to cover the payroll.

25    Specifically, funds received by the DTLA South Park account need to be

26    transferred to the BAE FG account to cover.

27    A true and correct copy of Mr. Herrera's email and attached payroll summary are appended hereto as

28    Exhibit "C."  The payroll summary called for payroll of $18,381.11 to be paid.

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 26

8.    Once we received this email from Mr. Herrera, I contacted Chase to get an update on exactly how much money was in the two significant Birdies' accounts.  I was advised that the DTLA account had a balance of $2,337.34 and the BAE FG account had a balance of $1,013.52, for a total of $3,350.86 in monies at Chase.  I sent an email to Mr. Donell, Mr. Landau (our accountant), Mr. Bubman and Mr. Herrera advising of these balances.  A true and correct copy of my February 7 email is appended hereto as Exhibit "D."

9.    Messrs. Bae and Herrera continued to demand that Mr. Donell release monies to cover the payroll.  Mr. Bae then started to demand that Mr. Donell release money for him to buy supplies. We were very clear in saying to Mr. Bae that we would not release checks or make payments from the bank accounts if there were insufficient funds to cover the checks written.

10.    On February 9, 2024, Mr. Donell, Brian Landau and I paid a visit to Birdies to see how the restaurant was operating.  We witnessed a steady stream of business coming into the restaurant. We also looked at the Toast interface at the restaurant.  We found that the Toast machine provides a consolidated summary of all sales occurring at the restaurant, including the delivery services Door Dash, GrubHub and UberEats.  Until February 12, Mr. Bae did not produce even one of these consolidated statements, even though they would have been directly responsive to many of the requests I have made.  On February 12, Mr. Bae produced one such consolidated statement to me for the period from February 5 through February 11, 2024.  A true and correct copy of this consolidated statement is appended hereto as Exhibit "E."  This is far more information than was provided to us in the Toast reports that were produced on February 1, 2024.

11.    In addition to the request made by Mr. Donell, I have been repeatedly requesting that Mr. Bae provide us with the usernames and passwords for Toast, Door Dash, Uber Eats and GrubHub. I have requested this information in virtually every email I have sent to Mr. Bae.  Mr. Bae has repeatedly found some reason to avoid giving us this information.  We have been asking for this specific information since I wrote to him on February 7, 2024.  Between myself, Mr. Donell, Mr. Landau and Mr. Bubman, we have asked for these usernames and passwords no less than approximately forty (40) times since February 7.  Mr. Bae provided me with a new username and password for Toast, DoorDash and UberEats, but they did not grant administrative access.  Once I

{00811386}}                                    14

learned that I still did not have that administrative access, I repeatedly advised Mr. Bae that he did not

grant the access I had requested and asked that he provide the administrative access necessary for the

receiver. Mr. Bae has generally ignored my requests or falsely states that he has already provided the

access I need. He still has provided absolutely no access to GrubHub.

12.    In no uncertain terms, Mr. Bae is simply not cooperating in providing us the information

we have repeatedly requested. There is literally no reason he cannot give this information to us. Mr.

Bae is not acting in good faith with the information he is providing. On Friday night, one of Mr.

Donell's staff members, Oscar Sanchez, stayed at the restaurant strictly to observe what was happening

in the operations. Mr. Sanchez and I kept track of the cash that had come into the restaurant. Mr.

Gonzalez advised that Mr. Bae asked him to move his car and while he was out, Mr. Bae removed

$285 from the cash safe without asking permission or telling us he was doing it.

**Payroll Issues.**

13.    We understand that information regarding hours worked by the employees is contained

in a program called HomeBase. There is a HomeBase tablet at the restaurant that the employees use to

clock in and out. Shortly after I arrived at Birdies the first time, on February 9, the HomeBase tablet

disappeared. No one I asked could or would tell me what happened to it. Later that afternoon when I

returned to the restaurant, the tablet had reappeared. I was told by one of the employees that the

information about rate of pay on that tablet was incorrect. As with DoorDash and UberEats, he has

provided me with limited access that only allows me to view certain, but not all, payroll and employee

information. Once again, I have continually requested this administrative access that Mr. Bae will not

allow.

14.    On February 12, I spoke with one of the employees who advised that Mr. Bae has given

them a payroll check from the BAE FG account dated February 5, 2024. I have obtained copies of

those checks. Some of them were written on checks under the heading "Birdies DT Payroll" and some

say "Bae FG Corp." but both were written from the same bank account. All such checks were signed

under the name of Mr. Bae's father, James Bae. An example of this is attached as Exhibit "J."

15.    As of Monday, February 12, 2024, there was still not enough money in both of the

Chase accounts to meet the amount of payroll checks that we were advised were outstanding on

February 7, 2024.  At that time, we only had access to view the activity in the BAE FG account.  We still did not have access to view the DTLA account.  As with so many other items, Mr. Bae routinely failed to respond to our requests for this (and other) information.  We had to get that information from Chase representatives.  I was advised, on February 12, 2024, that there was approximately $9800 in the two accounts combined.  Even this amount is insufficient to cover the payroll checks that Mr. Bae wrote and distributed the week of February 5.  The branch manager further advised me that Mr. Bae had authorized ACH transactions to various people totaling approximately $8,500 that were completed even after the delivery of the February 2 order to the Court.

16.    After significant inquiry, Mr. Bae finally advised me on February 12 of the name of the payroll service that he uses called Accounting Tax Payroll Partners. I immediately attempted to contact them and provided them with the Receivership orders. After several unsuccessful attempts, our attorney, Michael Bubman, went to their office and delivered copies of the Court orders regarding the receivership.  Within 1 hour of his visit, I was contacted by Igor Zaikin, the person at ATPP, who immediately sent me the most recent payroll reports.  Later in the day, Mr. Zaikin provided me with payroll information for 2022 and 2023 as well.  I was advised by Mr. Zaikin that ATPP had filed payroll tax returns quarterly but had been instructed not to pay the payroll taxes – that Mr. Bae said he would do that himself.

17.    I have repeatedly attempted to get information from Mr. Bae in order to fully understand what payroll checks were written and outstanding, as well as what amounts he had paid to employees for payroll either in cash or through ACH transactions.  Up through the time of this declaration, I still have not received complete information from Mr. Bae about the cash and ACH payroll transactions.  I was advised yesterday by Hameh Islam, one of the employees, that Mr. Bae regularly paid him half in cash and half by check, and that Mr. Bae still owes him money for prior pay periods.  This is consistent with an initial spreadsheet that Mr. Bae provided to us through his attorney, Mr. Herrera, that showed two payments per pay period for most of the employees – one payment by payroll check and one payment in cash or by ACH transaction.  A true and correct copy of the spreadsheet provided to us by Mr. Herrera is appended hereto as Exhibit "C."

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 29

18.     Additionally, once we took control of the bank accounts, Mr. Bae started changing the payroll information.  First, he added 5 people to the payroll who had not previously been included on the payroll.  Then he added himself and his personal assistant, Mariana Ayala, to the payroll, although neither of them had ever been on the payroll previously.  A true and correct copy of the email I received from Mr. Zalkin and the attachments to it are appended hereto as Exhibit "K."

19.     In fact, on February 14, 2024, Mr. Bae wrote to me in an email chain in which I was attempting to get information from him to allow us to make the payroll, as we did not have W4s for many of the people he attempted to add as staff.  In that email, Mr. Bae specifically stated: "Mariana lacks any records for the business.  She serves as my assistant, not as a bookkeeper or payroll administrator."  A true and correct copy of this email is appended hereto as Exhibit "L."   None of the employees that I spoke with at the restaurant knew who Mariana was, and she did not work at the restaurant.

20.     Additionally, Mr. Bae has a girlfriend named Vicky Lee.  Ms. Lee was not on the Birdies payroll.  When I was there, Ms. Lee would come into the restaurant, go behind the counter and work there.  She would also assist employees with their paperwork (e.g., W4s) necessary for them to work at the restaurant.  One afternoon when I was at the restaurant, I attempted to introduce myself to her.  She looked at me, scowled angrily and walked away.  There is no reason she should have been behind the counter, as she was not an employee and created a liability to the restaurant.  I observed Ms. Lee entering the restaurant, storage areas, and the printing store a few doors away through the back doors of the building.

**Birdies POS System (Toast) and Delivery Company Issues.**

21.     Since the very first day we obtained bank account information, we have been attempting to get information regarding the Toast POS system.  Initially, Mr. Bae gave us partial, incomplete reports from the Toast system that did not give us an overview of all activity occurring at the restaurant.  In fact, all transactions are supposed to go through the Toast system – when a food item is sold, it is rung up through the Toast system, whether cash, credit, debit or delivery company.  As a result, the Toast reports should provide a comprehensive look at all business conducted at Birdies.

22.    On Monday, February 12 at approximately 4:00 p.m., Mr. Bae first provided information to allow us to view (only) the Toast, UberEats and DoorDash accounts. This permission can be revoked by him, or the person who owns the Toast account, or Mariana Ayala, whose email mcaylawork@gmail.com. This is insufficient, as it does not allow for us to control these accounts or redirect the monies into receivership accounts. I am advised by the program that someone will need to unlock that access for us. The owner of the Toast account is identified in the Toast program as someone named Erick Gabriel. We have no idea who he is. At this point, that person can lock us out of the account whenever they choose. This is insufficient to allow us to control these accounts.

23.    Mr. Bae has failed to provide administrative access to the food delivery programs, including DoorDash, GrubHub or UberEats. While he has provided me with "view" access to DoorDash and UberEats, he has provided me with no access whatsoever to the GrubHub account, notwithstanding the fact that I have asked more than 20 times. Appended hereto as Exhibit "M" is email correspondence I had with Mr. Bae on February 20 for access to all such programs. In this email, I also asked (again) for access to the security cameras and the Quickbooks account.

24.    This same exhibit also references the fact that the Toast system has several additional restaurants" listed on it, all of which are identified as the Wok N' Tender Group, and including: (i) Birdies – DTLA *NEW; (ii) Birdies – Norco *NEW; (iii) Birdies Chicken Sandwich – DTLA; (iv) Birdies Chicken Sandwich – NORCO; and (v) Birdies EX – DTLA. See, Exhibit "M." The only one to which I have been given access is the last. Mr. Bae could easily run operations through one of the other entities and we would have no idea since he has failed to provide access to those entities.

25.    The only food delivery company to deliver an actual check for receipts is GrubHub. During the last month, no check has been received from GrubHub. Normally, Mr. Bae would receive that check and deposit it into the BAE FG account. No such deposit was made during February. I believe that Mr. Bae took the check and deposited it elsewhere. These are monies that belong to the Birdies operation and not to Mr. Bae personally.

26.    During the last week of operations of Birdies, Mr. Bae put a sign on the counter of the restaurant offering a 10% discount for cash. A true and correct copy of the sign is appended hereto as Exhibit "N." During that same period of time, the cash received from sales at Birdies was $5,480.71.

1   See, Sales summary, appended hereto as Exhibit "O." The day the restaurant was closed, we took $200

2   from the cash safe, which was all the money inside it.

3   **Other Actions of Mr. Bae Relating to Birdies.**

4       27.    As we have previously advised, Mr. Bae has been conducting business in the Toast

5   system through Wok N' Tenders, which is reflected on the DTLA South Park Corp. bank account at

6   Chase. Wok N' Tenders was operating in the space next door, at 312 W. Olympic. That space is full

7   of food prep equipment and food/supplies used by Birdies. I have been advised that Mr. Bae is

8   preparing that space to open a restaurant to compete with Birdies. I am advised that he has asked the

9   Birdies employees to work at that restaurant. I also believe that he will attempt to use the existing

10  business license and health permit under I Savant FG for this operation which he is currently using for

11  Birdies. I believe that this would be violating the provisions of the Receivership orders.

12      28.    One of Mr. Bae's key employees is Danielle Heflin. She is identified as the manager of

13  the restaurant. Ms. Heflin has been involved in Mr. Bae's attempts to circumvent compliance with the

14  Court's orders. Mr. Bae and Ms. Heflin have been aggressively attacking me verbally regarding issues

15  pertaining to the operations of the restaurant and payroll issues. I have asked Ms. Heflin to explain

16  certain aspects of the business (e.g., the tip payouts) of which she would be knowledgeable as the

17  manager of the restaurant. Ms. Heflin has refused to provide me with any information, but rather

18  began peppering me with questions about payroll that could not be made because the restaurant had

19  insufficient cash to do so. She also demanded to be reinstated to certain permissions on the Toast

20  system from me. When I asked her what permissions she needed, she did not respond. When I finally

21  spoke to her on February 17, she said that she had the permissions she needed after all. I believe this

22  was another effort at harassment instigated by Mr. Bae.

23      29.    Ms. Heflin was also involved with Mr. Bae and Ms. Lee in a very disturbing situation

24  with one of the employees, Luke Severns. Luke advised me that on Friday, February 16, an

25  unidentified person came into the restaurant, handed him a key and told him to give it to another

26  employee named Jose Mandujano. I asked Jose about the incident. He advised me that he was asked

27  to hold onto the key but had no idea what it was for. I was advised that late that same night, Mr. Bae

28  came into the restaurant together with Ms. Lee and Ms. Heflin. They brought Luke into the back of the

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 32

1   restaurant and started accusing him of stealing the key.  Luke advised that he was scared and

2   intimidated by these actions and quit his employment on the spot.  Mr. Bae followed Luke to the front

3   of the restaurant and demanded that Luke take off the Birdies shirt he was wearing, in front of

4   restaurant customers, and leave it behind.  I have once again asked Mr. Bae for the security camera

5   footage that would show and likely record the audio of the incident.  Mr. Bae has failed to even

6   respond to my request.  A true and correct copy of my February 18 email exchange with Mr. Bae is

7   appended hereto as Exhibit "P."

8       33.    Mr. Bae has not provided any detailed financial accounting records, notwithstanding the

9   fact that he pays monthly for an account with Quickbooks.  He has basically provided us with bits and

10   pieces to put together ourselves.  While Mr. Donell has had his accountant, Brian Landau, construct a

11   pro forma financial statement, there are many pieces missing and we have had a great deal of difficulty

12   getting the full picture of the operations.  It appears to me that Mr. Bae is hiding portions of the

13   financial picture.  For example, in the bank statements we have received, we noted that there was a

14   constant flow of cash being deposited into the bank account.  I have reviewed the bank statements.

15   During the month of January 2024, there were approximately $25,000 in cash deposits.  That flow

16   stopped as soon as we took control of the bank account.  Whether it was from catering, which I am

17   advised Mr. Bae did before we took over the accounts, or from some other activity, I do not know.

18       34.    In the approximately 18 years I have been working on receivership cases with Mr.

19   Donell, I do not recall a defendant in any one of our other cases that has been as non-cooperative, or

20   has interfered with our ability to carry out the tasks of the receivership, as much as Keith Bae.

21

22       I declare under the penalty of perjury, pursuant to the laws of the State of California that the

23   foregoing is true and correct.

24       Executed this 29th day of February, 2024 at Los Angeles, California.

25

26       *Sarah Bates*

27       SARAH BATES

28

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 33

## DECLARATION OF OSCAR GONZALEZ SANCHEZ

I, Oscar Gonzalez Sanchez, do hereby declare:

1.     I am the Maintenance Manager for Jalmar Properties, a company providing property management services that is affiliated with FedReceiver, Inc., with both operations under Stephen Donell, the duly appointed, qualified and currently serving Receiver in this case. I have been employed by Jalmar for approximately 30 years. I make this declaration in support of the *Ex Parte* Application for an Order Clarifying the Order Appointing Receiver and All Related Subsequent Orders. The facts set forth herein are based on my personal knowledge and if called upon to testify thereto, I could and would do so competently.

2.     Mr. Donell has asked that I assist in observing the operations at Birdies Restaurant.  In this regard, I have been at Birdies numerous times over the past three weeks for several hours each day.

3.     I first went to Birdies on the afternoon of February 9.  That day, Ms. Bates and I had obtained the combination of the on-site cash safe from Mr. Bae, so that we could take cash that came into the restaurant and deposit it into the Receivership bank account.  I was asked to simply observe and monitor what was happening at the restaurant to give Mr. Donell and Ms. Bates an idea of how the operation ran.  I generally watched the operations in the front of the restaurant. I did not participate in the operations in any way.

4.     On February 9, Ms. Bates and I monitored the cash intake that was deposited into the safe.  We wanted to make sure that all cash taken in was being deposited into the safe.  In the evening, Mr. Bae asked me to move my car as he said that it was blocking access to the parking behind the restaurant.  I went out to move my car and saw that it was not blocking access to anything.  When I came back into the restaurant, Mr. Bae left shortly thereafter.  I subsequently checked the safe and found that $285 was missing from the safe.  I believe that Mr. Bae tricked me and took the money from the safe when I went to move my car.

5.     On February 10, I went to monitor what was happening at Birdies.  I went with Mr. Donell into the kitchen to help translate to the kitchen staff that only speak Spanish.  I told them that Mr. Donell was going to try to get them paid but it would depend upon the receipts that come into the company from the business.  Mr. Donell did not guarantee anyone that he would pay them and I

{00811386}}                                    21

1  specifically told the staff in the kitchen that he could not guarantee that they would get paid, but it was

2  his number one priority.

3       6.    On February 15, 2024, I was given a document entitled Three-Day Notice that had been

4  left at the restaurant by Mr. Bae.  I was asked to deliver that document to Mr. Donell.  A true and

5  correct copy of this document is attached hereto as Exhibit "I."

6       7.    On Monday, February 26, I met Mr. Bobson at the restaurant.  He had arranged for a

7  cleaning crew to come clean the location.  He also met with a potential investor that day.  I opened and

8  closed the location.  I did not give Mr. Bobson a key.  Mr. Bae showed up with Ms. Heflin and

9  attempted to get into the restaurant, but we would not let him in.  I saw him attempt to disrupt Mr.

10  Bobson's meeting and took pictures of Mr. Bobson and the people who he was meeting with.

11       8.    On Tuesday, February 27, 2024, I went to Birdies to let Mr. Bobson into the restaurant

12  to allow him to show the restaurant to an investor.  Mr. Bae showed up and attempted to disrupt Mr.

13  Bobson's meeting with his investors.  He attempted to have Danielle Heflin enter the restaurant to take

14  things out from the restaurant but we would not allow them inside.  He stood in front of Mr. Bobson

15  and his investors, who were not even inside the restaurant.  He attempted to start a fight with Mr.

16  Bobson.  Ultimately, I saw him throw a copy of a 2021 judgment onto the car of the investor meeting

17  with Mr. Bobson.

18       9.    Also on Tuesday, Mr. Bae had the employees of Birdies show up.  He was attempting to

19  get them to work for him in the restaurant he is planning on opening next door.  Several of them only

20  spoke Spanish.  They told me that they would not go to work for him unless he paid them what he

21  already owes them.  He did not pay any of them and they all left.

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 35

1         I declare under the penalty of perjury, pursuant to the laws of the State of California that the

2    foregoing is true and correct.

3         Executed this 29th day of February, 2024 at Los Angeles, California.

4

                           Oscar Gonzalez Sanchez, Declarant

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00811386}

23

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**

## DECLARATION OF MICHAEL E. BUBMAN

I, Michael E. Bubman, declare as follows:

    1.    I am an attorney at law, duly licensed to practice before all courts in the State of California. I am a partner in the law firm of Mirman, Bubman & Nahmias ("MBN"), legal counsel to the duly appointed and currently serving receiver, Stephen J. Donell ("Receiver" or "Mr. Donell") in the above-entitled action. The facts set forth herein are based on my personal knowledge and if called upon to testify thereto, I could and would do so competently.

**Insufficient Money To Pay Payroll.**

    2.    On February 2, 2024, this Court issued an order that provided Mr. Donell with access to the two accounts the Receiver has determined are the primary accounts into which Mr. Bae deposits the revenues received by Birdies; Chase Bank accounts: (i) DTLA South Park Corp., account no. 700189563; and (ii) Bae FG Corp., account no. 519381757. Mr. Donell delivered a copy of the Court's order to Chase Bank. Herrera/Bae were served with a signed copy of this order in the hallway immediately following the hearing.

    3.    On Tuesday, February 6, 2024, I received an email from Mr. Herrera accusing either me or the Receiver of interfering with the business operations. He stated, "[i]t seems that a hold has been placed on the bank funds which frustrates the ability to run payroll <u>TODAY.</u> I'm not sure why this action was taken, especially without any notice to myself or Mr. Bae. It seems like retaliation. Please advise <u>immediately</u> on this." *See*, Exhibit "A" hereto.

    4.    Mr. Herrera immediately called me before I had even seen his email. In our call, I advised Mr. Herrera that under the Court's February 2, 2024 order ("February 2 Order") Mr. Bae needed Mr. Donell's approval for any and all expenses, including payroll. I reminded him that we had advised him of this in the Court hallway immediately after the hearing. I told him to immediately seek to coordinate with Mr. Donell. I confirmed what I told him in writing. I then advised Mr. Herrera that we needed 3 things in order to make the payroll or allow the money to be released for this purpose:

    a.    Payroll register or other report identifying the name of the employee, rate of pay, hours worked and titled of each employee;

    b.    Confirmation that payroll taxes are being paid; and

c.  Amount to be transferred for payroll purposes.

*See*, Ex. G, Herrera Decl., pg. 45.[1]

5.  Mr. Herrera provided a payroll summary and stated "ensure the monies are immediately transferred to cover the payroll.  Specifically, funds received by the DTLA South Park account need to be transferred to the BAE FG account to cover." *See*, Herrera Decl., Ex. H, pg. 49.

6.  The attached payroll summary included 18 employees with **payroll obligations of $18,381.11.**

7.  On Wednesday, February 7, 2024, Ms. Bates contacted Chase Bank and learned that between the two accounts, there was **a total of $3,350.86 in both accounts** – $2,337.34 in the DTLA account and $1,013.52 in the BAE FG account. *See*, Herrera Decl., Ex. H, pg. 56.

8.  Apparently, Mr. Bae had already handed out the paychecks without sufficient money in the account to pay the payroll.  I repeatedly asked Mr. Herrera, and Ms. Bates repeatedly asked Mr. Bae how they intended to cover the checks without money in the account to cover the checks written.  No reasonable response was provided.

9.  Both Mr. Herrera and Mr. Bae were repeatedly advised that the Receiver could not "release" anything, as there were insufficient funds to cover the checks that had been written.  See, Herrera Decl., Ex. H, pg. 53.

**Failure To Pay Payroll Taxes.**

10.  Mr. Bae has failed to pay payroll taxes during the time he has operated Birdies, as well as other tax obligations. Despite his failure to pay payroll taxes, he still deducted what the payroll taxes should have been from employee paychecks. Appended hereto as Exhibit "R" is a spreadsheet that I prepared from recorded liens against Birdies, including federal tax liens, showing liens totaling $926,995.67.

11.  Both Messrs. Bae and Herrera have refused to acknowledge the obligation to pay payroll taxes, and from the outset, Mr. Donell has repeatedly insisted that payroll will not be paid without payroll taxes being paid as well, as required by law.

---

[1] References to the Herrera Declaration refer to Exhibits G and H from the Declaration of Alejandro Herrera filed in support of Keith Bae's February 13, 2024 *Ex Parte* Application.  The Referenced excerpted exhibits from Mr. Herrera's declaration are appended hereto as Exhibit "Q."

{00811386}}

25

12.    On February 9, 2024, I had an email exchange with Mr. Herrera.  I have included the full trail of emails for the court's perusal.  The most significant point, however, was that I provided Mr. Herrera with a short list of items that were critical for the Receiver with respect to current operations, which included:

  a.  All requested payroll information;

  b.  Toast login and password;

  c.  Code to the onsite safe; and

  d.  Access to all employee information, including the tablet maintained at the restaurant.  *See*, Exhibit "S", page 4.  Of all this information requested, the only information provided was the code to the on-site safe.  There was no response from Mr. Herrera to this last email requesting all the information be provided in writing.

13.    I have heard Mr. Bae say to this court several times that his father, James Bae, is quite elderly, and Mr. Bae could not come to hearings at a certain time because he needed to tend to his father and take him to his chemotherapy appointments. From this information, I believe that Mr. Bae was attempting to advise the Court that he was the caretaker for his elderly father.

14.    On or about February 15, 2024, Mr. Bae left a Three-Day Notice at the restaurant and asked that it be delivered to Mr. Donell.  *See*, Exhibit "I" hereto.  The notice purported to be from the "landlord", who was identified as James Bae – Mr. Bae's father.  The notice seeks to evict the tenant, identified as "I Savant Norco Corp, dba Birdies, Birdies LA, Birdies DTLA."  It also states that the rent is $3,375/month.  Based upon this notice, the rent was due on February 1, 2024, when Keith Bae was in control of all funds of Birdies.  As a result, it was Keith Bae who did not pay his father in a timely manner.

15.    On February 16, 2024, I did some research and found the owner of the property at 314 W. Olympic is an entity called 1001 S. Hill, LLC.  The primary member of that LLC is a woman named Harianne Zolkover.  This is consistent with a copy of the lease that I had previously received that said that the property was owned by the Zolkover Group.  A true and correct copy of the lease I received for the premises is appended hereto as Exhibit "T."  According to the lease, the rent for the

space started at $2,100/month in 2017 and was to increase by 3% each year. That would make the current rent $2,507.50.

16.    I found a telephone number for Ms. Zolkover on the internet, and I called her. I told her that I am the attorney for the receiver and explained the situation. I told her about the dispute between Messrs. Bobson and Bae, the appointment of the Receiver, and about the fact that Mr. Bae had served us with a Three-Day Notice. She advised me that she was the landlord and that she was the one who would be serving such notices; she confirmed the Receiver would not be evicted, and I informed her the Receiver intends to continue paying her rent for the Birdies premises. I offered to send her the relevant orders issued by this Court. She gave me her address and asked me to mail them to her, which I did that same day. Appended hereto as Exhibit "U" is a true and correct copy of the cover letter that I sent to Ms. Zolkover. I have not included the court orders included with the letter, as they are simply redundant of other information already provided to the Court.

17.    Ms. Zolkover called me on February 21, 2024, together with her real estate agent, Robert Bruni. We discussed the situation. They advised me that Mr. James Bae had a lease for three different spaces – 310, 312 and 314 W. Olympic. They advised me that the rent was not current, as Mr. Bae had only paid 10 months of rent in 2023 and that he was delinquent for those other two months. They advised that the total rent was approximately $4000/month for all 3 spaces. They told me to call Frank Johnson, who is Ms. Zolkover's property manager, and they gave me his number.

18.    Also on February 21, I spoke with Frank Johnson. Mr. Johnson confirmed that Mr. Bae was delinquent in payment of the 2023 rent. I asked whether Mr. Bae had exercised the option for the space. Mr. Johnson said that Mr. Bae said that he wanted to exercise the option, but Mr. Johnson advised that they were not eligible to exercise the option because they were delinquent in their payment of the rent.

19.    On or about February 22 and 23, 2024, I researched corporations for which Mr. Herrera was the agent for service of process. I found Mr. Herrera was the agent for service of process at the following entities (in addition to those already identified to the Court and which have been made part of the receivership) in which either Keith Bae or James Bae is identified as a member or director and the address used is either 314 W. Olympic or 312 W. Olympic: (i) I Savant FG; (ii) I Savant Norco FG;

{00811386}}                                                27

(iii) Cali FG Corp., (iv) Pink Panda Inc.; (v) Norco Hamner Corp.; (vi) Birdies LA, (vii) Birdies DTLA. Several of these entities are suspended for one reason or another. At least two of these entities, Cali FG Corp. and Pink Panda Inc., are active entities and were very recently updated. On January 29, 2024, a new Statement of Information was filed for Cali FG Corp, which identifies a person named Antonio D. Jones as the only identified offer and director. A second Statement of Information was filed on February 14, 2024 that changed the address for this entity to 1845 Hamner Ave. A, Norco, CA 92860. This is the address of the second Birdies location. Of course, Mr. Herrera is the agent for service of process on both of these Statements. A true and correct copy of the two Statements of Information is appended hereto as Exhibit "V."

20.     A Statement of Information was filed for Pink Panda Inc. on October 18, 2021. It references Andrew Wong as the CEO, Secretary. CFO and Director. The address for Pink Panda is 312 W. Olympic Blvd. A true and correct copy of the most recent statement of information for Pink Panda Inc. is appended hereto as Exhibit "W."

21.     While researching information about the various Bae-related corporations, I found that Mr. Bae received 2 Paycheck Protection Program ("PPP") loans for the entity called I Savant Norco Corp, which is identified as doing business as Birdies. The first loan was taken in June 2020 in the amount of $73,090. This loan was identified as a "Startup, Loan Funds Will Open Business." *See*, Exhibit "X" hereto. The second loan was taken in March 2021 in the amount of $108,000. *See,* Exhibit "Y" hereto.

22.     On February 29, 2024, at approximately 9 a.m., I gave written notice of this *Ex Parte* Application via email to Plaintiff Jason Bobson and to Mr. Bae through his counsel, Mr. Herrera. The correspondence notified of all relief sought in the *Ex Parte* Application, and advised the parties the Receiver would be appearing *ex parte* on March 1, 2024, at 8:30 a.m. in Dept. 51 of the Los Angeles Superior Court, located at 111 North Hill Street, Los Angeles, California 90017. A true and correct copy of this correspondence is appended hereto as Exhibit "Z."

///

///

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 41

1     I declare under the penalty of perjury, pursuant to the laws of the State of California that the

2    foregoing is true and correct.

3

4    Executed this 29th day of February, 2024 at Encino, California.

5

6                   Michael E. Bubman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{00811386}}

29

**DECLARATIONS IN SUPPORT OF EX PARTE APPLICATION OF THE RECECIVER
FOR AN ORDER CLARIFYING CERTAIN TERMS OF THE COURT'S ORDERS**
Exhibit A Page 42

# EXHIBIT A

**Michael Bubman**

| | |
|---|---|
| **From:** | Alejandro Herrera <alex@hch.law> |
| **Sent:** | Tuesday, February 6, 2024 3:39 PM |
| **To:** | Michael Bubman |
| **Subject:** | URGENT Bobson v. Bae |

Mr. Bubman:

I've been informed that you or your client may have interfered with the business operations. It seems that a hold has been placed on the bank funds which frustrates the ability to run payroll <u>TODAY.</u> I'm not sure why this action was taken, especially without any notice to myself or Mr. Bae.
It seems like retaliation. Please advise <u>immediately</u> on this.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE:  This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine.  If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

1

# EXHIBIT B



**FedReceiver, Inc.**
*state and federal court receivers* ✦ *A privately held California corporation*

Stephen J. Donell
Receiver
12121 Wilshire Boulevard, Suite 1120 | Los Angeles, CA 90025
Telephone: 310.207.8481 | Facsimile: 310.207.3483
www.fedreceiver.com
CA Broker License # 1295754
Email: Steve.Donell@fedreceiver.com

VIA EMAIL AND U.S. MAIL: kbaecommerce@gmail.com; kbaecal@gmail.com; alex@hch.law

February 7, 2024

Mr. Keith Bae
c/o Alejandro H. Herrera, Esq.
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401

Mr. Keith Bae
314 W. Olympic Blvd.
Los Angeles, CA 90015

**RE:**       **Demand for Turnover**
              **Bobson v. Bae, et al.**
              **Case No. BC650612**

Mr. Bae:

I am writing to you in accordance with the August 17, 2022 order appointing me as Receiver in the above referenced case, and the subsequent February 2, 2024 order clarifying and/or expanding the receivership estate to include additional entities identified below. In accordance with these orders, please immediately provide me with the following information for the following entities: (i) Birdies, (ii) Birdies DTLA, (iii) BAE FG Corp., (iv) DTLA South Park Corp., and (v) Wok N' Tenders ("Receivership Entities"):

1. Name of payroll service provider. Payroll information, including a payroll register or other report identifying the name of all employees, rate of pay, hours worked and title.  It would help if you have (and provide) past reports that provide this information for prior pay periods. Complete employee files.
2. Confirmation that payroll taxes are paid with each payroll.
3. Copies of all insurance policies for 2024, as well as name, address and telephone number of the insurance agent for general liability and/or business operator policy.
4. DELIVERY SERVICE ACCOUNTS - Provide username and password for all delivery service companies listed below:
   a. DoorDash (Stored ID 87210)
   b. GrubHub (#2792870)

Receiverships | Expert Witness Testimony | Consulting

    c. Uber Eats
   \*Update two factor authentication to a cell phone held by the Receiver.

5. MERCHANT SERVICE ACCOUNT - Provide username and password for Toast merchant service account for all Receivership Entities. Update two factor authentication to a cell phone held by the Receiver. Provide usernames and passwords for all POS systems in restaurant.
6. Provide access to online QuickBooks file associated with the monthly recurring payment of $30 from BAE FG Corp Account # 1757.
7. Provide all usernames and passwords for QuickBooks, Clover, and Intuit.
8. Listing of all banks and account numbers for all accounts used for the operation of the Receivership Entities. Provide usernames and passwords for online access to accounts. All credit cards and debit cards should be turned over to me immediately.
9. Copies of all utility bills, together with a list of all utility accounts.
10. A vendor list including names and telephone numbers of all vendors or other individuals and/or companies providing services for the Receivership Entities.
11. Copies of all contracts for the Receivership Entities. This includes, but is not limited to, service contracts, lease agreements, management agreements, and any other agreements with third-party vendors.
12. Copies of operating statements, general ledgers, trial balances and balance sheets for 2021 through January 2024.
13. Accounts payable report and accounts receivable report as of 2/7/2024.
14. Copies of any notices received from city or county departments or other governmental/taxing agencies.
15. CORPORATE TAX RETURNS - Provide all 2021 through 2023 corporate federal and California tax returns for the below entities:

| ENTITY NAME | FEIN | SOS |
|---|---|---|
| Birdies | 81-2467225 | 3898193 |
| DTLA South Park Corp | 86-1782271 | 4682444 |
| BAE FG Corp | | 4285898 |
| I Savant Norco Corp | 84-1842427 | 4275034 |
| I Savant F G | 83-0789301 | 4156160 |

16. SALES TAX - Provide all quarterly sales tax returns filed from 2021 through 2023 for the below entities:

| ENTITY NAME | LICENSE NUMBER |
|---|---|
| Birdies | 103-054401 |
| DTLA South Park Corp | 241-671104 |
| BAE F G Corp | |
| I Savant Norco Corp | 228-380992 |
| I Savant F G | 202-177024 |

17. A detailed report providing backup for all ATM cash withdrawals for the last

twelve months.

18. Copies of all complaints, responses etc. filed against any Receivership Entities.
19. Copies of all retainer agreements with any lawyer hired by the Receivership Entities.
20. A report identifying all cash on hand related to Receivership Entities, including petty cash or any other cash held by anyone in any location.
21. Copies of all 1099's prepared in 2023 and 2024.
22. Did you apply for and receive employee retention credits funds?  If so, please provide a copy of the filed 941-X along with the calculation substantiating the credit.
23. Copies of all Los Angeles City business licenses and Public Health permits.
24. On December 8, 2023, there was a deposit of $25,000 into the DTLA South Park Corp Account # 9563 from Wilshire Commercial Capital.  Please provide all documents associated with this advance.
25. Provide username and password to security system regarding recurring monthly charge to Arlo Technologies for $44.99.
26. Copies of all keys and alarm codes.
27. Please provide the invoices for the below and the explanation behind the services provided:

| ENTITY NAME | BANK # | DATE | AMOUNT | PAYEE |
|---|---|---|---|---|
| BAE FG Corp | #1757 | 7/5/2023 | 279.30 | Accounting Tax P |
| BAE FG Corp | #1757 | 8/14/2023 | 279.30 | Accounting Tax P |
| BAE FG Corp | #1757 | 9/7/2023 | 186.20 | Accounting Tax P |
| BAE FG Corp | #1757 | 10/10/2023 | 186.20 | Accounting Tax P |

As you are now undoubtedly aware, you have been ordered not to transfer any money or pay any expense (including payroll) without my participation and consent. This includes ATM cash withdrawals from any source related to the Receivership Entities.

Notwithstanding your resistance over the past 16 months, it is my goal to have this happen as smoothly as possible. The faster I get this information, the quicker we can make this transition to become part of a normal operating system.

I'd like to schedule a call by tomorrow to go over this information and to coordinate the transition of the operations.

Sincerely,

Steve Donell
Receiver

# EXHIBIT C

**Michael Bubman**

| | |
|---|---|
| **From:** | Alejandro Herrera <alex@hch.law> |
| **Sent:** | Wednesday, February 7, 2024 10:20 AM |
| **To:** | Michael Bubman |
| **Subject:** | FW: Urgent Payroll Due 2/5/2024 |
| **Attachments:** | Payroll 2.5.2024.xlsx |

Mr. Bubman,

Please forward the attached payroll summary and ensure that monies are immediately transferred to cover the payroll. Specifically, funds received by the DTLA South Park account need to be transferred to the BAE FG account to cover.

Time is of the essence. Please confirm.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

1

Birdies DT Payroll

02/05/24

| Number | Date | Payee | Amount | Type |
|--------|------|-------|--------|------|
| 30442 | 02/05/24 | Litzy Alvarez | 580.10 | Payroll Check |
| 30443 | 02/05/24 | Noe Antonio Morales | 1484.76 | Payroll Check |
| ACH | 02/05/24 | Noe Antonio Morales | 500.00 | ACH |
| 30444 | 02/05/24 | Patrick Dowd | 986.54 | Payroll Check |
| ACH | 02/05/24 | Kaili Gaspar Grinda | 685.68 | Payroll Check |
| ACH | 02/05/24 | Kaili Gaspar Grinda | 140.03 | ACH |
| ACH | 02/05/24 | Danielle Heflin | 1119.94 | Payroll Check |
| ACH | 02/05/24 | Danielle Heflin | 394.36 | ACH |
| 30447 | 02/05/24 | Carmen Rosibel Hernandez | 683.68 | Payroll Check |
| ACH | 02/05/24 | Carmen Rosibel Hernandez | 1036.77 | ACH |
| 30448 | 02/05/24 | Hamzeh A. Islam | 670.82 | Payroll Check |
| Cash | 02/05/24 | Hamzeh A. Islam | 919.03 | Cash |
| 30449 | 02/05/24 | Roselyn J. Lazum | 635.61 | Payroll Check |
| 30450 | 02/05/24 | Oscar D. Lopez | 1302.67 | Payroll Check |
| Cash | 02/05/24 | Oscar D. Lopez | 419.50 | Cash |
| 30451 | 02/05/24 | Genesis C. Roman | 917.38 | Payroll Check |
| 30452 | 02/05/24 | Luke A. Severns | 705.38 | Payroll Check |
| 30453 | 02/05/24 | Seth M. Walkey | 493.45 | Payroll Check |
| 9061 | 02/05/24 | Baltazar Santiago | 890.86 | Payroll Check |
| 9062 | 02/05/24 | Glenda Vasquez | 254.95 | Payroll Check |
| 9063 | 02/05/24 | Jose Mandujano | 914.25 | Payroll Check |
| 9064 | 02/05/24 | Oscar Rodriguez | 982.3 | Payroll Check |
| 9065 | 02/05/24 | Raymundo Aguilar | 786.80 | Payroll Check |
| ACH | 02/05/24 | Katie Villanueva | 876.25 | ACH |

18381.11

EXHIBIT D

## Michael Bubman

| | |
|---|---|
| **From:** | Sarah R. Bates <sarah.bates@fedreceiver.com> |
| **Sent:** | Wednesday, February 7, 2024 12:03 PM |
| **To:** | Michael Bubman; Alejandro Herrera |
| **Cc:** | Stephen J. Donell, CCIM, CPM; Brian Landau |
| **Subject:** | RE: Urgent Payroll Due 2/5/2024 |

I just called Chase and the DTLA South Park account current balance is $2,337.34, the BAE FG account balance is $1,013.52.

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:    310-207-8481 ext:119
Fax:    310-806-4178
Email: sarah.bates@fedreceiver.com
Web:  www.fedreceiver.com

Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please notify me immediately.

**From:** Michael Bubman <mbubman@mbn.law>
**Sent:** Wednesday, February 7, 2024 11:52 AM
**To:** Alejandro Herrera <alex@hch.law>
**Cc:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>; Sarah R. Bates <sarah.bates@fedreceiver.com>;
Brian Landau <blandau@slbiggs.com>
**Subject:** RE: Urgent Payroll Due 2/5/2024

**\*\*CAUTION\*\*** External Email

Have Keith call Sarah. The office number is (310) 207-8481, x119.  Her cell is (310) 330-6409.

The short story is that there is not enough money in the DTLA account to meet the payroll obligations.  If Keith only handed out certain checks, he needs to tell Sarah which checks were handed out.

Best regards,

Michael

1



**Mirman,
Bubman & Nahmias**

Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

## _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Wednesday, February 7, 2024 10:20 AM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** FW: Urgent Payroll Due 2/5/2024

Mr. Bubman,

Please forward the attached payroll summary and ensure that monies are immediately transferred to cover the payroll. Specifically, funds received by the DTLA South Park account need to be transferred to the BAE FG account to cover.

Time is of the essence. Please confirm.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com
**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

2

`

# EXHIBIT E

# Sales summary

Data as of Feb 12, 2024, 10:01 AM (PST)

**DATE RANGE:**

February 5, 2024 - February 11, 2024

**SELECTED LOCATIONS:**

DTLA-Birdies EX

% of total / off

## SALES TRENDS

**Sales by day**



**Day of week (totals)**



**Time of day (totals)**



## REVENUE SUMMARY

| | |
|---|---|
| Net sales | $28,219.74 |
| Gratuity | $0.00 |
| Tax amount | $2,236.03 |
| Tips | $1,249.13 |
| Deferred tax | $0.00 |
| Paid in total | $0.00 |
| Total amount | $31,704.90 |

## NET SALES SUMMARY

| | |
|---|---|
| Gross sales | $31,617.17 |
| Sales discounts | -$3,397.43 |
| Sales refunds | $0.00 |
| Net sales | $28,219.74 |

## TIP SUMMARY

| | |
|---|---|
| Tips collected | $1,249.13 |
| Tips refunded | $0.00 |
| Total tips | $1,249.13 |

## CASH SUMMARY

| | |
|---|---|
| Expected closeout cash | $2,281.96 |
| Actual closeout cash | $2,281.96 |
| Cash overage/shortage | $0.00 |
| Expected deposit | $2,281.96 |
| Actual deposit | |
| Deposit overage/shortage | |

## CASH ACTIVITY

| | |
|---|---|
| Total cash payments | $2,281.96 |
| Cash adjustments | $0.00 |
| Cash refunds | $0.00 |
| Cash before tipouts | $2,281.96 |
| Cash gratuity | $0.00 |
| Credit/non-cash gratuity | $0.00 |
| Credit/non-cash tips | -$1,249.13 |
| Tips withheld | $0.00 |
| Total cash | $1,032.83 |

## PAYMENTS SUMMARY

| Payment type | Amount | Tips | Grat | Refunds | Total |
|---|---|---|---|---|---|
| Credit | $15,839.40 | $1,239.96 | $0.00 | $0.00 | $17,079.36 |
| Amex | $1,544.32 | $114.00 | $0.00 | $0.00 | $1,658.32 |
| Discover | $104.94 | $9.15 | $0.00 | $0.00 | $114.09 |
| Mastercard | $3,190.72 | $239.16 | $0.00 | $0.00 | $3,429.88 |
| Visa | $10,999.42 | $877.65 | $0.00 | $0.00 | $11,877.07 |
| Gift Card | $15.00 | $0.00 | $0.00 | $0.00 | $15.00 |
| Cash | $2,281.96 | $0.00 | $0.00 | $0.00 | $2,281.96 |
| Other | $11,793.63 | $9.17 | $0.00 | $0.00 | $11,802.80 |
| Doordash | $3,322.95 | $9.17 | $0.00 | $0.00 | $3,332.12 |
| Grubhub | $1,318.01 | $0.00 | $0.00 | $0.00 | $1,318.01 |
| Uber eats | $7,152.67 | $0.00 | $0.00 | $0.00 | $7,152.67 |
| Total | $29,929.99 | $1,249.13 | $0.00 | $0.00 | $31,179.12 |

## UNPAID ORDERS SUMMARY

| | |
|---|---|
| Unpaid amount | $525.78 |

## SALES CATEGORY SUMMARY

| Sales category | Items | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| All-Day | 1,749 | $16,388.08 | $2,547.97 | $18,936.05 |
| Brunch | 342 | $3,832.11 | $166.76 | $3,998.87 |
| Donuts | 1,054 | $4,332.37 | $515.38 | $4,847.75 |
| Drinks | 795 | $3,470.68 | $117.32 | $3,588.00 |
| No Sales Category Assigned | 11 | $196.50 | $50.00 | $246.50 |
| Total | 3,951 | $28,219.74 | $3,397.43 | $31,617.17 |

## SERVICE MODE SUMMARY

| | Total |
|---|---|
| Net sales | $28,219.74 |
| Total guests | 1,512 |
| Avg/Guest | $18.66 |
| Total payments | 1,458 |
| Avg/Payment | $20.53 |
| Total orders | 1,512 |
| Avg/Order | $18.66 |
| Turn time | 05:55 |

**REVENUE CENTER SUMMARY**

| Revenue center | Items | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| No Revenue Center | 3,904 | $27,800.90 | $3,397.43 | $31,198.33 |
| Online Ordering | 47 | $418.84 | $0.00 | $418.84 |
| Total | 3,951 | $28,219.74 | $3,397.43 | $31,617.17 |

**DINING OPTION SUMMARY**

| Dining option | Orders | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| Take Out | 417 | $6,060.55 | $250.85 | $6,311.40 |
| Phone Order | 49 | $1,642.56 | $2,371.69 | $4,014.25 |
| DoorDash - Delivery | 93 | $2,552.45 | $0.00 | $2,552.45 |
| DoorDash - Takeout | 24 | $482.15 | $0.00 | $482.15 |
| Grubhub - Takeout | 39 | $1,211.15 | $0.00 | $1,211.15 |
| Dine In | 633 | $9,233.69 | $774.89 | $10,008.58 |
| Online Ordering - Takeout | 23 | $418.84 | $0.00 | $418.84 |
| Uber Eats - Takeout | 50 | $1,141.70 | $0.00 | $1,141.70 |
| Uber Eats - Delivery | 184 | $5,476.65 | $0.00 | $5,476.65 |
| Total | 1,512 | $28,219.74 | $3,397.43 | $31,617.17 |

**SERVICE / DAYPART SUMMARY**

| Service / day part | Orders | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| All-Day | 1,508 | $28,183.64 | $3,396.93 | $31,580.57 |
| No Service | 4 | $36.10 | $0.50 | $36.60 |
| Total | 1,512 | $28,219.74 | $3,397.43 | $31,617.17 |

**TAX SUMMARY**

| Tax rate | Taxable amount | Tax amount |
|---|---|---|
| CA STATE TAX | $14,906.67 | $894.48 |
| CA COUNTY TAX | $14,726.71 | $35.94 |
| CA SPECIAL TAX | $29,773.24 | $482.94 |
| Non Taxable | $3,800.67 | — |
| Marketplace Facilitator Taxes Paid | $6,477.80 | $534.32 |
| Marketplace Facilitator Taxes Not Paid | $3,034.60 | $288.35 |

**DISCOUNT SUMMARY**

| Discount | Count | Amount |
|---|---|---|
| BOGO (end of night donut special, NO Fri & Sat) | 24 | $87.55 |
| BOGO (for half dozen) *NO Fri & Sat | 1 | $10.00 |
| Breakfast Combo Drink Substitution | 9 | $4.50 |
| Employee Discount | 6 | $33.40 |
| Employee On-Clock Meal | 26 | $300.10 |
| Keith Comp | 6 | $90.75 |
| Law Enforcement | 17 | $56.77 |
| Reward Dollars | 19 | $152.18 |
| Shift lead DC | 11 | $18.13 |
| SHIFTLEAD ONLY - close ticket | 20 | $2,611.55 |
| The Customer List | 3 | $32.50 |
| Total discounts | 142 | $3,397.43 |

**VOID SUMMARY**

| | |
|---|---|
| Void amount | $4,914.70 |
| Void order count | 15 |
| Void item count | 405 |
| Void amount % | 17.4% |

# EXHIBIT F

Michael Bubman

| | |
|---|---|
| **From:** | Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com> |
| **Sent:** | Sunday, February 11, 2024 12:32 PM |
| **To:** | kbaecommerce@gmail.com |
| **Cc:** | Michael Bubman; alex@hch.law; Sarah R. Bates; Brian Landau |
| **Subject:** | RE: Birdies Request for Information |

Keith,

This will confirm that as of Sunday, February 11, 2023 at 12:32 pm, you have failed to cooperate with the request to provide usernames/passwords for UberEats, DoorDash and Grubhub.

Steve

**Stephen J. Donell, CCIM, CPM**
**President | Receiver | Partition Referee | Interim Trustee | Asset Manager**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
**Donell Expert Services, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Main:  310-207-8481 ext:114
Fax:    310-806-4178
Direct: 310.689.2175
Email:  steve.donell@fedreceiver.com
Web:  www.fedreceiver.com
**DRE# 01295754**

**Disclosure: The information contained herein is confidential and privileged attorney-client**
**information or work product intended only for the individual or entity to whom it is addressed.**
**Any unauthorized use, distribution or copying of this communication is strictly**
**prohibited.  If you have received this communication in error, please notify me immediately.**

**From:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>
**Sent:** Sunday, February 11, 2024 12:24 PM
**To:** kbaecommerce@gmail.com
**Cc:** Michael Bubman <mbubman@mbn.law>; alex@hch.law; Sarah R. Bates <sarah.bates@fedreceiver.com>; Brian Landau <blandau@slbiggs.com>
**Subject:** Birdies Request for Information

Keith,

This will confirm that as of Sunday, February 11, 2024, at 12:20 pm, you have failed to cooperate with the request for access to/usernames/passwords for HomeBase and Toast.

Steve

**Stephen J. Donell, CCIM, CPM**

1

**President | Receiver | Partition Referee | Interim Trustee | Asset Manager**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
**Donell Expert Services, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Main:  310-207-8481 ext:114
Fax:    310-806-4178
Direct: 310.689.2175
Email:  steve.donell@fedreceiver.com
Web:  www.fedreceiver.com
**DRE# 01295754**

**Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify me immediately.**

2

# EXHIBIT G

# PATRICK M. MALONEY



Patrick M. Maloney represents clients in business disputes. He has served as lead trial counsel in bench and jury trials in state and federal courts and in arbitration. Mr. Maloney has represented companies in antitrust and patent matters, shareholder and partnership disputes, employment disputes, and in disputes between clients and lawyers in malpractice, fiduciary duty claims, and fee disputes.

As a staunch advocate of fair billing practices, Mr. Maloney regularly works with clients to resolve fee disputes with outside counsel arising from bill padding, fraud, and other overcharges. Mr. Maloney has represented clients in approximately one hundred legal fee disputes saving them millions in legal fees. Mr. Maloney is a volunteer fee dispute arbitrator with the Los Angeles County Bar Association, and previously served as a member of the California State Bar Committee on Mandatory Fee Arbitration.

Mr. Maloney has been named a Fellow of the Litigation Counsel of America, a trial lawyer honorary society composed of less than one-half of one percent of American lawyers. Martindale Hubbell awarded Mr. Maloney with an AV-Preeminent rating, the highest possible rating for both legal ability and ethical standards. Mr. Maloney has been recognized as a Super Lawyer by the publishers of Los Angeles Magazine each year from 2015 to 2023, and had been a Rising Star – an award given to just 2.5% of attorneys who have been in practice for ten years or less – from 2005 to 2008.

Mr. Maloney is the past President of the South Bay Bar Association, has served on its executive committee for several years and was the Chair of the Employment Law Section. He also a member of the Hon. Benjamin Aranda III Inn of Court and sat on the Board of Directors for the Manhattan Beach Chamber of Commerce. When not in the courtroom or volunteering, Mr. Maloney enjoys spending time with his family, gardening, fishing, and boating. He currently resides in the South Bay with his wife and two children.

**Direct Contact:**

310.347.4601

pmaloney@maloneyfirm.com
(mailto:pmaloney@maloneyfirm.com)

Download Vcard
(http://maloneyfirm.com/wp-content/uploads/vcard/Patrick
M. Maloney.vcf)

Download Bio
(https://www.maloneyfirm.com/wp-content/uploads/2015/10/Patrick-one-sheet.pdf)

## Our Office



The Maloney Firm, APC
2381 Rosecrans Avenue
Suite 405
El Segundo, CA 90245
310.540.1505

CONTACT US

(https://www.maloneyfirm.com/contact-us/)

GET DIRECTIONS

(https://www.google.com/maps/embed?
pb=!1m14!1m8!1m3!1d3311.505820726715!2d-
118.3801852!3d33.902378999999996!3m2!1i1024!2i768!4f13.1!3m3!1m2!1s0x80c2b41ac69ba5&

# THE MALONEY FIRM APC

Patrick M. Maloney
310.347.4601
pmaloney@maloneyfirm.com

## ATTORNEY-CLIENT PRIVILEGED – CONFIDENTIAL

February 29, 2024

**VIA EMAIL ONLY**

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
steve.donell@fedreceiver.com

### *Engagement Agreement*

Dear Mr. Donell:

We are pleased that solely in your capacity as court-appointed Receiver for the Bobson/Bae Partnership ("you," "your," "Client") in the lawsuit styled as *Bobson v. Bae,* Los Angeles County Superior Court Case No. BC650612 (the "State Court Lawsuit"), you intend to retain The Maloney Firm, APC ("attorneys" or "firm") to represent the interests of the Receivership Estate. This retainer agreement ("agreement") will set forth the basis upon which the firm will represent the receivership estate. Please read this agreement carefully, as it is the contract which will govern our attorney-client relationship.

We understand that pursuant to orders issued in the State Court Lawsuit on or about August 17, 2022, and February 2, 2024, the Receivership Estate includes the restaurant known as "Birdies", located at 314 W. Olympic Boulevard, Suite 1120, Los Angeles California; the California Corporations existing under the name Birdies; Mabels 314, Inc.; DTLA South Park Corp.; Bae FG Corp.; and the business, form unknown, operating under the name Wok N' Tenders. Further, we understand you intend to seek additional court orders to bring other entities you have thus far identified or may in the future identify within the scope of the Receivership Estate, including entities that purport to do business under the "Birdies" name, including but not limited to I Savant Norco Corp. and I Savant FG.

We understand that, as the Court-appointed Receiver for the Bobson/Bae Partnership, before entering into this fee agreement you must obtain approval from the Court in the State Court Lawsuit to do so. Our representation will begin only when the Court authorizes your retention of the firm on the terms set forth herein and you have signed and returned this agreement to us.

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 2 of 10

---

1.      **Retention for Limited Purpose.**

You are retaining the firm to represent the Receivership Estate  with regard to claims against Alejandro Herrera and Herrer Clifton Hess ("Herrera") for legal malpractice, breach of fiduciary duty, and any other appropriate claims or causes of action arising from or in any way related to Herrera's representation of the enterprise known as Birdies, generally, and/or within the State Court Lawsuit.  Additionally, you are retaining the firm to prosecute related claims against Keith Bae and James Bae, to the extent their conduct has caused or contributed to harm suffered by the Birdies' business.  Collectively, Herrera, Keith Bae, and James Bae are referred to herein as "Defendants."  The services contemplated hereunder include efforts to cause a settlement prior to the filing of suit, the initiation and prosecution of lawsuits or arbitrations through trial or arbitration, and post-trial motions.

Unless otherwise agreed in writing, the services contemplated hereunder **do not include** the prosecution or defense of an appeal, judgment enforcement efforts, or proceedings in a bankruptcy court, other than the filing of a Proof of Claim. In the event the orderly progress of this case requires any of the services referenced in this paragraph, the firm shall have the option, but not the obligation, to provide those services.

Be advised that this firm does not provide tax advice.  You are advised to speak with your own tax professionals concerning any tax issues that may arise in connection with our representation of you.

This firm has not been retained through this agreement to represent you, individually, nor FedReceiver, nor the Receivership Estate, generally, or in connection with any other matter.   If you request our services on any additional matters, the fee arrangement, if not agreed upon at the time, will be based upon the firm's regular hourly rates at the time the work is performed, on the terms set forth below.

2.      **Financial Terms of Our Representation of You.**

A. **Fee Structure.**

You have informed us that the Receivership Estate is presently without sufficient funds to retain counsel to provide services on an hourly rate basis or to advance costs and expenses as necessary for the matters contemplated herein. As such, we have agreed to represent you in this matter on a contingency fee basis and to advance expenses and costs likely as we deem necessary.

As set forth below and with certain exceptions, the fee for the services we provide will be calculated as a percentage of any "Gross Recovery" we obtain on your behalf.

In addition to the attorneys' fees due to the firm for its services, the Receivership Estate

00216283

Case 2:24-bk-11660-DS   Doc 44   Filed 09/18/24   Entered 09/18/24 16:29:15   Desc
Main Document      Page 65 of 251

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 3 of 10

---

will also reimburse the firm from its portion of the Gross Recovery for all costs and expenses, including expert witness fees, the firm has advanced on its behalf. Thus, in the event of a successful outcome, the firm will receive both a contingent fee and reimbursement for advanced costs.

"Gross Recovery" is the total amount recovered on your behalf; inclusive of any award of legal fees, costs, or interest; and whether obtained by settlement, judgment, the enforcement of a judgment, indemnification, or other means or theory. If the Gross Recovery is in a form other than monetary consideration, then the parties will endeavor in good faith to reach agreement on the total value of the Gross Recovery for purposes of calculating the contingent fee due to the firm. If the parties cannot reach an agreement on the value of the Gross Recovery, then they shall participate in a mediation to resolve the valuation of the Gross Recovery.

The contingent fee structure for this matter shall be as follows:

1.     If we are successful resolving any claims with any particular Defendant within 90 days of the date of our first communication to that Defendant, then contingent fee for our services will be 30% of the Gross Recovery obtained from such Defendant,

2.     Thereafter, until the earlier of the date on which the firm had advanced expert witness fees in a total amount of $25,000 or the date on which the parties are required to designate expert witnesses, the contingent fee for our services will be 37.5% of the Gross Recovery; and

3.     Thereafter, the contingent fee for our services shall be 45% of the Gross Recovery.

In the event a court or arbitrator awards attorney's fees to the Receivership Estate as a prevailing party, then the contingent fee due to the firm will be the larger of either the fee award or the contingent fee as calculated on the terms set forth above.

In the event a court or arbitrator orders any of Defendants to pay sanctions, attorneys' fees (other that fees awarded to the Receivership Estate as a prevailing party) or costs, those sanctions, attorneys' fees, or costs, shall belong to the firm.

If the matter settles on terms requiring periodic payments or proceeds to a judgment and it becomes necessary to take steps to enforce the judgment, then the amounts collected under the judgment shall be first allocated to reimbursement for advanced costs and expenses, including expert witness fees. Thereafter, the remaining funds collected hereunder shall be allocated from between the firm and the Receivership Estate on a pro-rata basis.

Although we are representing you on a contingency fee basis, the firm's hourly rates are set forth below and may become relevant in the event of an award of legal fees, or if we represent you in relation to any other matter. The firm will bill monthly for the attorney's time, at the firm's hourly rates, for all work performed and for travel time necessary for the conduct of this matter. The fees relating to the legal services (as contrasted with out-of-pocket costs) provided by the firm

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 4 of 10

will be calculated with respect to the following hourly rates, which will remain in effect for this matter through 2024:

| **Attorney** | **Hourly Rate** |
|---|---|
| Patrick Maloney | $700.00 |
| Gregory Smith | $575.00 |
| Elizabeth Schaus | $495.00 |
| Carl Mueller | $525.00 |
| Gary A. Varnavides | $475.00 |
| Sharon Choi | $425.00 |
| Paralegals | $150.00 |

The firm reserves its right to hire additional counsel and staff them on your matter at rates commensurate with their experience and market rates without notice. Generally, the firm increases its rates at the beginning of each successive calendar year to reflect the increased experience of our personnel and inflation. The increased rates will generally be reflected in our February invoice for January services. This invoice will be the only written notice of this increase. The firm reserves the right to adjust its hourly rates at other times with 30-days' advance written notice thereof.

*You are advised the fee structure for this representation is not set by law, but rather is negotiable.*

**B.      Costs.**

You have authorized us to incur litigation costs and related expenses which include, but are not limited to, deposition and court transcripts, photocopying, Lexis and/or Westlaw (computerized legal research), telephone, fax, filing fees, parking, mileage, investigators, courier and postage charges, word processing, computerized litigation support, expert consultants, and travel costs which we deem necessary for the proper handling of this matter.

You are advised that we expect this matter may require testimony from and consultation with multiple expert witnesses. In particular, we will likely need to retain the services of expert witnesses on at least the following issues: (1) the standard of care applicable to attorneys; (2) the fiduciary duties that attorneys owe to their clients, (3) conflicts of interest arising when an attorney represents multiple parties, and (4) damages. The nature and scope of experts expected to be required for this matter may change as this matter progresses and additional information comes to light.

As noted above, in the event of a Gross Recovery, you agree to reimburse the firm for all advanced costs and expenses, including expert witness costs, the firm has advanced on behalf of the Receivership Estate.

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 5 of 10

---

### C.    Insurance.

You may have a policy of insurance that provides for the payment of legal fees or costs incurred to defend you in connection with your matter. You are advised to examine any insurance policies you may have to determine whether those policies are applicable to this matter. If you have any questions concerning the types of insurance you should look for or the steps required to tender claims to your insurance carrier, please ask us. Unless expressly agreed in writing, the firm shall have no obligation to investigate or evaluate whether insurance is available for any matter covered by this engagement or to tender any of the matters covered by this engagement to any insurance carrier.

If your claims or defenses are covered, in whole or in part, by insurance, you (not the insurance carrier) shall be responsible for payment of the entirety of the legal fees incurred, as set forth above.

The California Rules of Professional Conduct require us to inform you whether the firm maintains errors and omissions insurance. The firm does maintain errors and omissions insurance coverage applicable to the services to be rendered on your behalf.

### 3.    Your Obligations to Us.

In retaining us, you agree that you will comply with all requests for information, documents, input on strategy, and other requests related to this representation in a timely, full, complete, and honest fashion. You agree to update us concerning any changed circumstances that may impact our representation of you. You agree to keep us advised of any anticipated or planned vacations, trips, medical procedures, or other schedule conflicts you may face that might impair your ability to participate as needed in our representation of you. You agree to keep all appointments, and to attend meetings or hearings where you are advised your presence is necessary.

### 4.    Billing and Payment.

This firm will provide you with statements on a regular basis, describing the services rendered, the resulting legal fees, and any costs incurred. We generally issue invoices once per month, but may do so at different intervals, shorter or longer, as circumstances warrant. We will also furnish you with any other information regarding billing matters as you may reasonably request. We will transmit invoices to you by electronic mail unless you request another method of delivery.

**Payment is due upon receipt of our invoice or invoices to you.**

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 6 of 10

_____

All payments due shall be made payable to and delivered to The Maloney Firm, APC. We accept payment by check, wire transfer, or credit card. Credit card payments may be made online at our firm's payment portal: https://www.maloneyfirm.com/payment/. Additionally, our wire instructions are attached.

When we represent more than one client, each of the clients is responsible for paying the entirety of the fees and costs incurred, unless we have made other arrangements with you, in writing.

In the absence of any written objection to any statement within thirty (30) days of its receipt, you will be deemed to have accepted and acknowledged the statement as correct through the period covered by the statement.

It is the firm's practice to charge interest at the rate of one percent (1%) per month on the unpaid balance of any sums not paid within thirty (30) days of the date of the applicable statement.

**5.    Mediation as Prerequisite to Formal Legal Proceedings.**

If any dispute arises between you and this firm, including, but not limited to, disputes over billing, fees, claimed malpractice, or any other complaints, we both agree that the dispute shall be submitted first to mediation. Mediation is a condition precedent to any arbitration or Superior Court proceeding, and both the Client and the firm agree to use their best efforts to submit any such dispute to mediation, with each party thereto sharing equally the cost of a mutually agreeable mediator (preferably, an "ADR Services" judge), to be governed by the mediation rules then in effect at ADR Services. Only in the event that a full-day mediation session is unsuccessful may either party then request or pursue relief in Los Angeles Superior Court, or, if both parties agree, arbitration.

**6.    Termination and/or Withdrawal.**

You have the right to terminate our services at any time.

This firm shall have the right to withdraw from this representation for any other reason for which withdrawal is authorized or required by Rule 1.16 of the California Rules of Professional Conduct approved by the California Supreme Court.

In the event you terminate our services, you will remain obligated both to compensate the firm for its services in the event of a Gross Recovery and to reimburse the firm for all costs and expenses it advanced on your behalf.

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 7 of 10

_____

     In certain circumstances, if the firm withdraws its representation of you, the firm may be deemed to have waived our right to a contingent fee in the event of a Gross Recovery. Irrespective of whether the firm waives its right to a contingent fee, you agree that in the event of a Gross Recovery, the HOA will reimburse the firm for all costs and expenses advanced on your behalf.

**7.**     **Lien.**

     You hereby grant the firm a lien on any recovery you may obtain in this matter and any matter in which we are representing or in the future represent you to secure the payment of our legal fees and advanced costs in that specific matter and in any other matter in which we are now representing or in the future represent you. Thus, for purposes of clarification and as an example, if you fail to pay fees owing in one matter and we collect a settlement or judgment for you in another matter, the fees collected in the second matter shall be applied to the outstanding receivable in the first matter, as well as the second matter.

     By agreeing to this lien, you acknowledge the firm may use monies you recover to satisfy any outstanding legal bills. You also acknowledge that any funds generated or collected as a result of our representation of you, including but not limited to amounts recovered by settlement, judgment, or sanctions, will be deposited into the firm's trust account, and applied against any outstanding balance you then have with the firm.

     The lien you are granting to us also applies in the event you terminate our services, or it becomes necessary for us to withdraw from this matter. Thus, if you decide no longer to work with us and successor counsel obtains a recovery on your behalf, we will still maintain a lien on such funds. In these circumstances, you agree to advise any subsequent counsel of the existence of the lien you have granted to us hereunder.

     Because the granting of a lien to this firm is, in many instances, adverse to you, because it grants us a property right in your recover and may delay the disbursement of funds to you, you are advised and encouraged to ask any questions you may have regarding this or any other provision in this agreement. Additionally, you are advised to consult with independent counsel of your own choosing to determine whether signing this agreement, including granting a lien in our favor, is in your best interest.

**8.**     **Disclosure.**

     Lawsuits are inherently uncertain and can be expensive. Despite our best efforts, you may suffer an adverse outcome in the matter in which we will represent you. We do not guarantee the outcome or results of lawsuits.

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 8 of 10

To the extent we express to you our opinions concerning the outcome or recommend a particular course of action or the fees and costs that may be generated by a particular course of action, such opinions and recommendations are the product of our reasoned judgment. Such recommendations and opinions are not, however, guarantees of the success of any chosen or recommended strategy or the fees that will be generated as a result of such recommendations.

Similarly, despite our best efforts to control the burden and expense of the matter in which we are representing you, the total fees and burden occurring in a suit are often beyond our control. Opposing parties and their counsel may take positions or utilize strategies that require substantial effort on our part. Similarly, courts occasionally make unexpected rulings, which can impact the path of your matter.

You are advised that if you are not successful in the matter in which we are representing you, you may be found responsible for paying the attorney's fees or costs incurred by your adversary. In that event, you are solely responsible for paying such fees and costs, and the firm shall have no responsibility for such fees or costs.

9.    **Disclosure of Potential Conflicts of Interest.**

We are not presently aware of any conflicts of interest inherent in this representation.

10.    **Client File and Property.**

The client file generated during our representation of you belongs to you. At the conclusion of our representation of you, including the termination or withdrawal of our representation of you, subject to any restrictions that may arise from the existence of a confidentiality order or protective order, you are entitled to receive your client file and any of your property that is in our possession. If you wish to receive the client file, please notify us in writing of your wishes. If you do not notify us that you would like to receive the client file, then we will store the file for a period of three years. At the conclusion of that period, we will arrange to have the client file destroyed.

11.    **Miscellaneous.**

In executing this agreement neither party has relied upon any inducements, promises or representations made by the other party other than the explicit provisions of this agreement. This agreement contains and is the entire agreement between the parties. This agreement may be modified only by subsequent written agreement signed by all parties. If any provision of this agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and remain in effect. This agreement shall be binding upon and shall inure to the benefit of each party's respective heirs, legal representatives, successors, and assigns. All questions with respect to the construction or

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 9 of 10

---

interpretation of this agreement and/or the rights and liabilities of the parties hereto shall be governed by the laws of the State of California, without regard to principles of conflict of law.

**12.    Conclusion.**

By signing below, you are representing that you have asked, and we have answered any questions you may have concerning the terms upon which we will represent you and also that you have been provided the opportunity to consult with independent counsel concerning the terms herein and you either did so or voluntarily decided not to do so.

If this agreement is acceptable to you, please sign it and return it to us, and with any requested Fee Deposit. You should retain a copy of the signed agreement for your files. If you discover that due to an oversight, you have not received a fully executed copy of this agreement, please let us know and we will provide one to you.

This agreement may be executed in counterparts, each of which when so executed and delivered to the other shall constitute one and the same instrument. The parties further agree that signatures may be exchanged by facsimile transmission or electronically via email. Facsimile or electronic signatures shall have the same weight and effect as an original signature.

As noted above, our representation of you will begin only upon such time as we have received a fully signed copy of this fee agreement.

We look forward to working with you in this matter.

Sincerely,

THE MALONEY FIRM, APC

Patrick M. Maloney

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
*Bobson v. Bay,* Los Angeles County Superior Court
Case No. BC650612

_____

Stephen J. Donell        ·

00216283

Stephen J. Donell, Receiver
BOBSON/BAE PARTNERSHIP
Re: *Engagement Agreement*
February 29, 2024
Page: 10 of 10

## The Maloney Firm, APC Trust Account Wire Instructions

### Domestic Wires

The Maloney Firm, APC
Attorney Client Trust Account
City National Bank
Routing No.: 122016066
Acct. No.: 200053362

### International Wires

The Maloney Firm, APC
Attorney Clients Trust Account
2381 Rosecrans Ave., Suite 405
El Segundo, CA 90245
SWIFT Code: CINAUS6L
Acct. No.: 200053362

00216283

# EXHIBIT H

**Michael Bubman**

| | |
|---|---|
| **From:** | Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com> |
| **Sent:** | Monday, February 26, 2024 8:52 AM |
| **To:** | kbaecommerce@gmail.com |
| **Cc:** | Alejandro Herrera; Sarah R. Bates; Michael Bubman |
| **Subject:** | RE: Why is Jason is the new owner? |

Keith,

Yes, I did provide Jason with access so that he could show an investor the restaurant and I am in discussions with him about his possible role in the restaurant and he is being provided access this morning to clean the restaurant and to view the business operations. No, he is not "prepping" for re-opening – he stated he would bring in a cleaning/maintenance crew but there are no plans or agreements in place to re-open at this time due to lack of funds. But to be clear, he is there with my express permission and authority.

Steve

**Stephen J. Donell, CCIM, CPM**
**President | Receiver | Partition Referee | Interim Trustee | Asset Manager**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
**Donell Expert Services, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Main:  310-207-8481 ext:114
Fax:     310-806-4178
Direct: 310.689.2175
Email:  steve.donell@fedreceiver.com
Web:   www.fedreceiver.com
**DRE# 01295754**
Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify me immediately.

**From:** kbaecommerce@gmail.com <kbaecommerce@gmail.com>
**Sent:** Monday, February 26, 2024 8:25 AM
**To:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>
**Cc:** Alejandro Herrera <alex@hch.law>; Sarah R. Bates <sarah.bates@fedreceiver.com>; Michael Bubman
<mbubman@mbn.law>
**Subject:** Re: Why is Jason is the new owner?

**\*\*CAUTION\*\*** External Email

Steve,

Why would you give access to Jason to have an investor meeting at 11:00 am at the restaurant? And didn't you talk to the police yesterday at 11 am giving Jason access to the restaurant?

Are you working with Jason to reopen the restaurant at any capacity such as finding investors and working on taking over the lease?

Are you giving access to Jason today to prep for reopening?

Keith

On Mon, Feb 26, 2024 at 7:43 AM Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com> wrote:

I don't know why he would say any of those things.

Steve

**Stephen J. Donell, CCIM, CPM**
**President | Receiver | Partition Referee | Interim Trustee | Asset Manager**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
**Donell Expert Services, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Main:  310-207-8481 ext:114
Fax:    310-806-4178
Direct: 310.689.2175
Email:  steve.donell@fedreceiver.com
Web:   www.fedreceiver.com
**DRE# 01295754**

Disclosure: The information contained herein is confidential and privileged attorney-client

information or work product intended only for the individual or entity to whom it is addressed.

Any unauthorized use, distribution or copying of this communication is strictly

prohibited.  If you have received this communication in error, please notify me immediately.

On Feb 26, 2024, at 5:20 AM, kbaecommerce@gmail.com wrote:

**CAUTION** External Email

Steve,

Why is Jason claiming he is the new owner and asserting that Michael Bubman has a court order to  kick me out and hand over the restaurant for him to operate as of this Friday? Yesterday, at 11:00 A.M., Jason arranged a meeting at Birdies with his investor so "he could

get his money"?  He said he will be returning on Monday to prepare the restaurant for reopening by the end of the week.

Keith

EXHIBIT I

**Michael Bubman**

| | |
|---|---|
| **From:** | Sarah R. Bates <sarah.bates@fedreceiver.com> |
| **Sent:** | Friday, February 16, 2024 2:05 PM |
| **To:** | Stephen J. Donell, CCIM, CPM; Michael Bubman |
| **Subject:** | Birdies - 3 day notice |
| **Attachments:** | 72981208580__D2A4F62A-37F4-4CA0-A058-6853DAAFE641.jpg |

Keith instructed Patrick to give this to Oscar, it was on the counter when Patrick arrived this morning. No proof of service.

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:    310-207-8481 ext:119
Fax:    310-806-4178
Email: sarah.bates@fedreceiver.com
Web:  www.fedreceiver.com

Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify me immediately.

1

# 3-DAY NOTICE TO PAY RENT OR MOVE OUT

TO: I Smart Norco Corp d/b/a Birdies Birdies LA/Birdies DTLA , Resident  Bae FG Corp d/b/a Birdies/Birdies LA/Birdies DTLA , Resident

_____ , Resident _____ , Resident

**AND ALL OTHERS IN POSSESSION** of the premises now held and/or occupied by you at:
(Street Address) 314 W. Olympic Blvd _____ (Unit#) 314 _____

(City) Los Angeles _____, CA, (Zip) 90015 _____

**PLEASE TAKE NOTICE** that you are justly indebted to the owner of the herein described premises; and notice is hereby given that pursuant to the lease and/or rental agreement under which you hold possession, there is now due, unpaid and delinquent rent in the total sum of three thousand three hundred seventy five dollars _____ ($ 3,375.00 ).

This total amount owing represents rent due for the following period(s):

$ 3,375.00 _ Due from February 1 _____, 20 24 _, to February 28 _____, 20 24 _

$ _____ Due from _____, 20 ___, to _____, 20 ___

$ _____ Due from _____, 20 ___, to _____, 20 ___

**WITHIN THREE (3) DAYS** excluding Saturdays, Sundays and other judicial holidays after service on you of this notice, you are hereby required to pay the amount of the above stated rent in full **OR** quit the subject premises, move out, and deliver up possession to the owner and/or his authorized agent.

Your payment should be payable to: James Bae _____ and payment shall be delivered to:
Name: James Bae _____ at the following address; 327 S Hoover St. _____

Unit 316 ____, City Los Angeles _____ California, Zip Code 90020 _____ and Telephone Number

(_____) _____ who is usually available on the following days Monday - Friday _____

and the following hours 9am-4pm _____

**PLEASE TAKE FURTHER NOTICE** that unless you pay the rent in full **OR** vacate the premises **WITHIN THREE (3) DAYS**, excluding Saturdays, Sundays, and other judicial holidays, as required by this notice, that the undersigned does hereby elect to declare a forfeiture of the subject lease and/or rental agreement and will institute legal proceedings for the unlawful detainer against you to recover possession of the premises plus court costs, attorney fees and **PENALTY DAMAGES OF $600.00** due as provided by California law. Pursuant to Section 1785.26 of the California Civil Code, as required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligation.

At this time, we have not been informed that your unit is in need of any repairs. We take our responsibility as a landlord very seriously. If you believe that items need to be corrected, please address those issues in writing and we will immediately inspect and make necessary repairs. Of course, if we do not receive any written repair requests, we will assume that there are no items that need to be corrected at this time.

The premises herein referred to which are now held and/or occupied by you are located in the City of Los Angeles _____
County of Los Angeles _____, State of California, and commonly known by the street and number of
314 W. Olympic Blvd _____, zip code 90015 ___, unit number 314 ___

Dated this 15th ____ day of February _____, 20 24 _

Owner(s): _James B. Bae_ _____ By: JAMES B BAE _____ Agent

AOA Form No. 103 (Rev 10/22) - Copyright 2006 - Apartment Owners Association of California, Inc. • www.aoausa.com
San Fernando Valley (818) 988-9200 • Los Angeles (323) 937-8811 • Long Beach (562) 597-2422 • Garden Grove (714) 539-6000 • San Diego (619) 280-7007 • Northern California (510) 769-7521

# EXHIBIT J

| 2/16/2024 | CHECK 8183 | -768.78 | CHECK_PAID | 8183 |
| 2/14/2024 | CHECK 9063 | -914.25 | CHECK_PAID | 9063 |
| 2/14/2024 | CHECK 30453 | -493.45 | CHECK_PAID | 30453 |

Sarah

---

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:    310-207-8481 ext:119
Fax:    310-806-4178
Email: sarah.bates@fedreceiver.com
Web:  www.fedreceiver.com

Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please notify me immediately.

**From:** kbaecommerce@gmail.com <kbaecommerce@gmail.com>
**Sent:** Wednesday, February 21, 2024 4:40:34 PM
**To:** Sarah R. Bates <sarah.bates@fedreceiver.com>
**Cc:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>; Alejandro Herrera <alex@hch.law>; Michael Bubman <mbubman@mbn.law>
**Subject:** Re: Luke's last paycheck (72 hours after his resignation), Reminder Payroll checks need to go out starting tomorrow

**\*\*CAUTION\*\*** External Email

Sarah,

For the item below, please provide me with the check numbers, amounts, and images of the checks. This will help me identify the staff with double payment. I will then discuss the matter with the relevant staff and obtain written consent to make any necessary adjustments or repayments in accordance with legal requirements so you could release the payroll checks.

Could you work on it tonight so that I could get it to you first thing in the morning?

- Payroll issued by Keith Bae that has cleared the account $5,118.86 (excludes any payroll withholdings)

2

# CHASE ⬡ *for* BUSINESS®

Printed from Chase for Business

**$493.45**
Total

Feb 14, 2024
Post date

30453
Check #

---

DO NOT ACCEPT THIS CHECK without confirming presence of Artificial Watermark on back. Other security features are listed on back.

**BIRDIES DT PAYROLL**
314 W. Olympic Blvd
Los Angeles CA 90015
(818) 436-2775

Chase
CA
90/7162

Check No. 30453

Four Hundred Ninety-Three Dollars and Forty-Five Cents

Date
02/05/2024

Amount
*******$493.45

Pay
to the
Order
of

Seth M. Walkey
541 S Spring St
Los Angeles CA 90013

*James B. Bee*

MP

⑈322271627⑈ 519381757⑈ 30453

---

JPMorgan Chase Bank, N.A. Member FDIC          ©2024 JPMorgan Chase & Co.          Equal Housing Opportunity

# CHASE ◆ *for* BUSINESS®

Printed from Chase for Business

$670.82

Total

Feb 20, 2024
Post date

30448
Check #

---

DO NOT ACCEPT THIS CHECK without confirming presence of Artificial Watermark on back. Other security features are listed on back.

**BIRDIES DT PAYROLL**
314 W. Olympic Blvd
Los Angeles CA 90015
(818) 436-2775

Chase
CA
90/7162

Check No. 30448

Six Hundred Seventy Dollars and Eighty-Two Cents

Date
02/05/2024

Amount
********$670.82

Pay
to the
Order
of

Hamzeh A. Islam
5032 W. Maplewood Ave
Los Angeles CA 90004

*James B. Me*

MP

⑆322271627⑆ 519381757⑆ 30448

---

JPMorgan Chase Bank, N.A. Member FDIC          ©2024 JPMorgan Chase & Co.          Equal Housing Opportunity

# CHASE ⬭ *for* BUSINESS®

Printed from Chase for Business

## $914.25
Total

Feb 14, 2024
Post date

9063
Check #



# CHASE ✪ *for* BUSINESS®

Printed from Chase for Business

**$1,484.76**
Total

Feb 16, 2024
Post date

9060
Check #

---

| BAE FG CORP | JP MORGAN CHASE BANK, N.A. | 9060 |
| | www.CHASE.com | |

90/7162                                           DATE  2/5/2024

PAY TO THE
ORDER OF   Noe Antonio Morales                    $ 1,484 76

One thousand four hundred eighty four dollars and 76/100 DOLLARS

VOID AFTER 90 DAYS

MEMO _____         *gene B. Box*
                                 AUTHORIZED SIGNATURE

⑈009060⑈ ⑉322271627⑉ 519381757⑈

---

JPMorgan Chase Bank, N.A. Member FDIC        ©2024 JPMorgan Chase & Co.        Equal Housing Opportunity

# EXHIBIT K

**Michael Bubman**

| | |
|---|---|
| **From:** | Igor -ATPP <igor@accountingtaxespayroll.com> |
| **Sent:** | Thursday, February 15, 2024 11:18 AM |
| **To:** | Sarah R. Bates |
| **Cc:** | steve.donell@fedreceiver.com; blandau@slbiggs.com; Michael Bubman; Maya -ATPP |
| **Subject:** | FW: Birdies DT Payroll |
| **Attachments:** | Birdies DT Payroll; Payroll Reports 02 15 24.pdf; Payroll Summary_ Keith Bae.pdf; Payroll Summary_ Mariana Ayala.pdf |

Hi Sarah,

Please see additional payroll for Keith and Mariana for 02/15 as well as email regarding EIN change for 2023.

Best,

Igor Zaikin
Accounting Tax Payroll Partners
15760 Ventura Blvd, Suite 610
Encino, CA 91436
(818) 436-2775 Ext 100
(818) 436-2825 Fax



Please consider the environment before printing this e-mail.
******Internet E-mail Confidentiality Disclaimer******
This e-mail message may contain privileged or confidential information. If you are not the intended recipient, you may not disclose, use, disseminate, distribute, copy or rely upon this message or attachment in any way.
If you received this e-mail message in error, please return by forwarding the message and its attachments to the sender. ATPP does not accept liability for any errors, omissions, corruption or virus in the contents of this message or any attachments that arise as a result of e-mail transmission.

1

**BIRDIES DT PAYROLL**
**Payroll Summary: Keith Bae**
**02/15/2024**

Page: 1

BIRDIES DT PAYROLL
314 W. Olympic Blvd
Los Angeles CA 90015

**Keith Bae**
**419 N. Larchmont Blvd 298**
**Los Angeles CA 90004**

| | |
|---|---|
| Pay Date: | 02/15/2024 |
| Period Beginning: | 01/29/2024 |
| Period Ending: | 02/11/2024 |
| Social Security: | xxx-xx-2555 |

| Incomes | Amount | Year-to-Date |
|---|---|---|
| Salary | 3,125.00 | 3,125.00 |
| Totals: | 3,125.00 | 3,125.00 |

| Taxes and Deductions | Amount | Year-to-Date |
|---|---|---|
| Federal Income Tax | 251.71 | 251.71 |
| Social Security - Employee | 193.75 | 193.75 |
| Medicare - Employee | 45.31 | 45.31 |
| CA Income Tax | 63.61 | 63.61 |
| CA Disability Insurance | 34.38 | 34.38 |
| Totals: | 588.76 | 588.76 |

| Payment | Number | Amount | Year-to-Date |
|---|---|---|---|
| Check | 1 | 2,536.24 | 2,536.24 |

| Leave | Begin | Earned | YTD | Used | YTD | Balance |
|---|---|---|---|---|---|---|
| Sick Leave | 48.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48.00 |

| **BIRDIES DT PAYROLL** | Page: 1 |
|---|---|
| **Payroll Summary: Mariana Ayala** | |
| **02/15/2024** | |

BIRDIES DT PAYROLL  
314 W. Olympic Blvd  
Los Angeles CA 90015  

**Mariana Ayala**  
**2301 Kent St.**  
**Los Angeles CA 90026**

| | |
|---|---|
| Pay Date: | 02/15/2024 |
| Period Beginning: | 01/29/2024 |
| Period Ending: | 02/11/2024 |
| Social Security: | xxx-xx-1965 |

| Incomes | Hours | Rate | Amount | Year-to-Date |
|---|---|---|---|---|
| Salary | | | 1,354.17 | 1,354.17 |
| Totals: | | | 1,354.17 | 1,354.17 |

| Taxes and Deductions | Amount | Year-to-Date |
|---|---|---|
| Federal Income Tax | 79.22 | 79.22 |
| Social Security - Employee | 83.96 | 83.96 |
| Medicare - Employee | 19.64 | 19.64 |
| CA Income Tax | 9.15 | 9.15 |
| CA Disability Insurance | 14.90 | 14.90 |
| Totals: | 206.87 | 206.87 |

| Payment | Number | Amount | Year-to-Date |
|---|---|---|---|
| Check | 1 | 1,147.30 | 1,147.30 |

| Leave | Begin | Earned | YTD | Used | YTD | Balance |
|---|---|---|---|---|---|---|
| Sick Leave | 48.00 | 0.00 | 0.00 | 0.00 | 0.00 | 48.00 |

**Michael Bubman**

| | |
|---|---|
| **From:** | kbaecommerce@gmail.com |
| **Sent:** | Monday, March 27, 2023 1:02 PM |
| **To:** | Igor -ATPP |
| **Subject:** | Birdies DT Payroll |

Igor,

Effective this year, DT payroll will be filed under BAE FG Corp EIN 84-2115533.  Please make this change as of the 2023 1st quarter filing.

We would like to review the payroll filings before they are submitted.  Do you think you could send the 941 and DE9C for our review?

Please let me know if you have any questions.  Thanks.

EXHIBIT L

**Michael Bubman**

| | |
|---|---|
| **From:** | kbaecommerce@gmail.com |
| **Sent:** | Wednesday, February 14, 2024 12:46 PM |
| **To:** | Sarah R. Bates |
| **Cc:** | Stephen J. Donell, CCIM, CPM; Alejandro Herrera; Michael Bubman; Brian Landau |
| **Subject:** | Re: Birdies |

Sarah,

Igor already possesses all the W4s, including Jose Mandujano's details. If payroll isn't addressed today, the staff is prepared to escalate the matter to the Labor Board, and they've informed me they'll seek penalties for delayed payroll. Steve assured everyone that paychecks would be prepared by Monday or Tuesday, without exception beyond Wednesday. I fail to see how you expect staff members to continue working without payment for 10 days.

You have access to ATPP and Homebase, enabling you to retrieve the necessary information independently. Additionally, your GM access grants you full access to all pertinent payroll data. Homebase only provides staff hours and no rates are included.

Mariana lacks any records for the business. She serves as my assistant, not as a bookkeeper or payroll administrator.

Keith

On Wed, Feb 14, 2024 at 12:24 PM Sarah R. Bates <sarah.bates@fedreceiver.com> wrote:

Hi,

Ok, I'll see at the restaurant at 2pm. I found W4s for four out of the five employees in the W4s you provided. I am still missing information for **Jose Mandujano.** I will forward the W4s to ATPP and ask them to update their records and we will include everyone except Jose Mandujano when payroll is issued. I'm hopeful the payroll checks will be available today or tomorrow.  Steve has another meeting with Chase Bank today at 1pm.

Forward the 2/15/24 payroll information to me, along with the backup timesheets, Homebase reports, etc. Again, you ignored my request for <u>administrative access to Homebase.</u> I'd also like to speak with Mariana if she has records for the business, including payroll records or other financial records. That information needs to be turned over. Does she act as your bookkeeper? What is her role other than payroll administration?

1

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:   310-207-8481 ext:119
Fax:   310-806-4178
Email: sarah.bates@fedreceiver.com
Web:  www.fedreceiver.com

Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify me immediately.

---

**From:** kbaecommerce@gmail.com <kbaecommerce@gmail.com>
**Sent:** Wednesday, February 14, 2024 11:40 AM
**To:** Sarah R. Bates <sarah.bates@fedreceiver.com>
**Cc:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>; Alejandro Herrera <alex@hch.law>; Michael
Bubman <mbubman@mbn.law>; Brian Landau <blandau@slbiggs.com>
**Subject:** Re: Birdies

**\*\*CAUTION\*\*** External Email

Yes 2 p.m. today for $700 cash.


Attached is my original sheet that shows the payroll that needed to be paid out emailed to you last week
February 9, 2024 at 9:39 AM.

I explained to you in our initial conversation, some staff are paid in cash.  You later stated that all staff
must be included in the payroll service, and I have since addressed this.  Furthermore, I have sent the
payroll information to ATPP, Mariana and myself to be processed for the payment due tomorrow on the
15th.


If you have concerns about social security numbers not appearing on the payroll summary, please
direct your inquiry to ATPP.

On Wed, Feb 14, 2024 at 11:17 AM Sarah R. Bates <sarah.bates@fedreceiver.com> wrote:

Keith,

You are just now responding to my offer to bring you cash. I've been emailing you since yesterday with this offer. Instead you said you were taking cash from the restaurant, despite the fact that you aren't authorized to do so. I offered to meet you at the restaurant at 2pm to bring you the cash I have, a little over $700.00. That offer stands. Let me know if that works for you.

Regarding payroll, you have made things even more difficult by suddenly changing the payroll report. You've altered pay rate, hours worked, tips, and overtime hours. Even more suspect, you've added five employees:

Raymundo Aguilar Hernandez

Jose Mandujano

Oscar Rodriguez

Baltazar Santiago

Glenda Vasquez

None of these employees are listed on the personnel list provided by Igor at ATPP. None of these employees have been paid through payroll up until now. I need an explanation as to why these employees have suddenly appeared. They also do not have social security numbers on their payroll summary, and we cannot issue them a check without that.

I must have asked for access to Homebase at least a dozen times by now, I need administrative access now.

Sarah

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120

# EXHIBIT M

## Michael Bubman

| | |
|---|---|
| **From:** | Sarah R. Bates <sarah.bates@fedreceiver.com> |
| **Sent:** | Tuesday, February 20, 2024 11:24 AM |
| **To:** | kbaecommerce@gmail.com; Keith Bae |
| **Cc:** | alex@hch.law; Stephen J. Donell, CCIM, CPM; Michael Bubman |
| **Subject:** | Administrative Access - Birdies - GrubHub, DoorDash, UberEats, Arlo, Quickbooks, Toast |
| **Attachments:** | Kbaecommerce Main _ Edit User - Restaurant Access.pdf; M Admin _ Edit User - Restaurant Access.pdf; Sarah Bates _ Edit User - Restaurant Access.pdf |

Keith,

You still have not provided us with administrative access for UberEats. I am unable to change the banking information for UberEats due to this issue. I need full administrative access. I must have asked 20 times for this already.

You still have not provided us with administrative access for DoorDash. I am unable to create reports or change the banking information. I need full administrative access. I must have asked 20 times for this already.

You have not provided any login information for GrubHub, I need full administrative access. I must have asked 20 times for this already.

I have also made numerous requests for access to the security cameras and Quickbooks with no response.

Regarding Toast, there are individual restaurants set up in the "Restaurant Access". There are restaurants titled "Birdies – DTLA *NEW" among others that I don't have any access to. I cannot edit the permissions on this page. I need access to these as well. See attached screenshots of your access vs my access.

Sarah

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:    310-207-8481 ext:119
Fax:    310-806-4178
Email: sarah.bates@fedreceiver.com
Web:  www.fedreceiver.com

Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify me immediately.

1

Home / Employees / Kbaecommerce Main / Edit User / Restaurant Access

Basic        Jobs and Permissions        **Restaurant Access**

Accessible Restaurants:    ■ Wok n' Tender Group

☑ Birdies - DTLA *NEW - 314 West Olympic Blvd

☑ Birdies - Norco *NEW - 1845 Hamner Ave Suite A

☐ Birdies Chicken Sandwich - DTLA - 314 West Olympic Boulevard Los Angeles, CA 90015

☐ Birdies Chicken Sandwich - NORCO - 1845 Hamner Avenue Suite A Norco, CA 92860

☑ Birdies EX - DTLA

Save

Required app version for Birdies EX - DTLA:
**2.70**

Restaurant ID:
**124947**

© Toast, Inc. 2024. All rights reserved.    Support & training    Privacy policy    Terms of service    Merchant agreement    System status

Home / Employees / M Admin / Edit User / Restaurant Access

Basic        Jobs and Permissions        **Restaurant Access**

Accessible Restaurants:    ☒ Wok n' Tender Group

☑ Birdies - DTLA *NEW - 314 West Olympic Blvd

☑ Birdies - Norco *NEW - 1845 Hamner Ave Suite A

☐ Birdies Chicken Sandwich - DTLA - 314 West Olympic Boulevard Los Angeles, CA 90015

☐ Birdies Chicken Sandwich - NORCO - 1845 Hamner Avenue Suite A Norco, CA 92860

☑ Birdies EX - DTLA

Save

Required app version for Birdies EX - DTLA:
**2.70**

Restaurant ID:
**124947**

© Toast, Inc. 2024. All rights reserved.    Support & training    Privacy policy    Terms of service    Merchant agreement    System status

Home / Employees / Sarah Bates / Edit User / Restaurant Access

Basic        Jobs and Permissions        **Restaurant Access**

Accessible Restaurants:    ■ Wok n' Tender Group

☐ Birdies - DTLA *NEW - 314 West Olympic Blvd

☐ Birdies - Norco *NEW - 1845 Hamner Ave Suite A

☐ Birdies Chicken Sandwich - DTLA - 314 West Olympic Boulevard Los Angeles, CA 90015

☐ Birdies Chicken Sandwich - NORCO - 1845 Hamner Avenue Suite A Norco, CA 92860

☑ Birdies EX - DTLA

Save

Required app version for Birdies EX - DTLA:
**2.70**

Restaurant ID:
**124947**

© Toast, Inc. 2024. All rights reserved.    Support & training    Privacy policy    Terms of service    Merchant agreement    System status

# EXHIBIT N



# EXHIBIT O

## Sales summary

Data as of Feb 23, 2024, 3:19 PM (PST)

DATE RANGE:

February 7, 2024 - February 23, 2024

SELECTED LOCATIONS:

DTLA-Birdies EX

 % of total off

### SALES TRENDS



**Sales by day**

**Day of week (totals)**

**Time of day (totals)**

### REVENUE SUMMARY

| | |
|---|---|
| Net sales | $55,574.77 |
| Gratuity | $0.00 |
| Tax amount | $4,514.72 |
| Tips | $2,440.27 |
| Deferred tax | $0.00 |
| Paid in total | $0.00 |
| **Total amount** | **$62,529.76** |

### NET SALES SUMMARY

| | |
|---|---|
| Gross sales | $57,660.67 |
| Sales discounts | -$2,085.90 |
| Sales refunds | $0.00 |
| **Net sales** | **$55,574.77** |

### TIP SUMMARY

| | |
|---|---|
| Tips collected | $2,440.27 |
| Tips refunded | $0.00 |
| **Total tips** | **$2,440.27** |

### CASH SUMMARY

| | |
|---|---|
| Expected closeout cash | $5,480.71 |
| Actual closeout cash | $5,480.71 |
| Cash overage/shortage | $0.00 |
| Expected deposit | $5,480.71 |
| Actual deposit | — |
| Deposit overage/shortage | — |

### CASH ACTIVITY

| | |
|---|---|
| Total cash payments | $5,480.71 |
| Cash adjustments | $0.00 |
| Cash refunds | $0.00 |
| Cash before tipouts | $5,480.71 |
| Cash gratuity | $0.00 |
| Credit/non-cash gratuity | $0.00 |
| Credit/non-cash tips | -$2,440.27 |
| Tips withheld | $0.00 |
| **Total cash** | **$3,040.44** |

### PAYMENTS SUMMARY

| Payment type | Amount | Tips | Grat | Refunds | Total |
|---|---|---|---|---|---|
| Credit | $30,618.66 | $2,416.91 | $0.00 | $0.00 | $33,035.57 |
| Amex | $2,470.16 | $203.78 | $0.00 | $0.00 | $2,673.94 |
| Discover | $306.47 | $27.60 | $0.00 | $0.00 | $334.07 |
| Mastercard | $5,421.10 | $435.46 | $0.00 | $0.00 | $5,856.56 |
| Visa | $22,420.93 | $1,750.07 | $0.00 | $0.00 | $24,171.00 |
| Gift Card | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| Cash | $5,480.71 | $0.00 | $0.00 | $0.00 | $5,480.71 |
| Other | $23,953.39 | $23.36 | $0.00 | $0.00 | $23,976.75 |
| Doordash | $7,504.17 | $23.36 | $0.00 | $0.00 | $7,527.53 |
| Gift certificate (paper) | $8.25 | $0.00 | $0.00 | $0.00 | $8.25 |
| Grubhub | $2,746.98 | $0.00 | $0.00 | $0.00 | $2,746.98 |
| Uber eats | $13,693.99 | $0.00 | $0.00 | $0.00 | $13,693.99 |
| **Total** | **$60,052.76** | **$2,440.27** | **$0.00** | **$0.00** | **$62,493.03** |

**UNPAID ORDERS SUMMARY**

| Unpaid amount | $36.73 |
|---|---|

**SALES CATEGORY SUMMARY**

| Sales category | Items | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| All-Day | 3,010 | $31,559.15 | $1,055.40 | $32,614.55 |
| Brunch | 770 | $8,476.83 | $511.03 | $8,987.86 |
| Donuts | 2,195 | $8,412.22 | $297.03 | $8,709.25 |
| Drinks | 1,583 | $7,062.81 | $222.44 | $7,285.25 |
| No Sales Category Assigned | 12 | $63.76 | $0.00 | $63.76 |
| Total | 7,570 | $55,574.77 | $2,085.90 | $57,660.67 |

**REVENUE CENTER SUMMARY**

| Revenue center | Items | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| No Revenue Center | 7,454 | $54,540.86 | $2,059.30 | $56,600.16 |
| Online Ordering | 116 | $1,033.91 | $26.60 | $1,060.51 |
| Total | 7,570 | $55,574.77 | $2,085.90 | $57,660.67 |

**DINING OPTION SUMMARY**

| Dining option | Orders | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| Take Out | 971 | $13,688.92 | $811.94 | $14,500.86 |
| Phone Order | 82 | $2,061.15 | $61.25 | $2,122.40 |
| DoorDash - Delivery | 201 | $5,735.50 | $0.00 | $5,735.50 |
| DoorDash - Takeout | 54 | $1,117.50 | $0.00 | $1,117.50 |
| Grubhub - Takeout | 95 | $2,526.25 | $0.00 | $2,526.25 |
| Dine In | 1,158 | $16,756.34 | $1,186.11 | $17,942.45 |
| Online Ordering - Takeout | 58 | $1,033.91 | $26.60 | $1,060.51 |
| Uber Eats - Takeout | 83 | $1,965.50 | $0.00 | $1,965.50 |
| Uber Eats - Delivery | 369 | $10,689.70 | $0.00 | $10,689.70 |
| Total | 3,071 | $55,574.77 | $2,085.90 | $57,660.67 |

**SERVICE / DAYPART SUMMARY**

| Service / day part | Orders | Net sales | Discounts | Gross sales |
|---|---|---|---|---|
| All-Day | 3,058 | $55,379.32 | $2,077.90 | $57,457.22 |
| No Service | 13 | $195.45 | $8.00 | $203.45 |
| Total | 3,071 | $55,574.77 | $2,085.90 | $57,660.67 |

**SERVICE MODE SUMMARY**

| | Total |
|---|---|
| Net sales | $55,574.77 |
| Total guests | 3,071 |
| Avg/Guest | $18.10 |
| Total payments | 2,966 |
| Avg/Payment | $20.25 |
| Total orders | 3,071 |
| Avg/Order | $18.10 |
| Turn time | 08:32 |

**DISCOUNT SUMMARY**

| Discount | Count | Amount |
|---|---|---|
| BOGO (end of night donut special, NO Fri & Sat) | 24 | $84.15 |
| BOGO (for half dozen) *NO Fri & Sat | 2 | $16.50 |
| Breakfast Combo Drink Substitution | 13 | $6.50 |
| Complaint (return visit) | 2 | $23.00 |
| Employee Discount | 11 | $78.24 |
| Employee On-Clock Meal | 65 | $705.20 |
| Keith Comp | 8 | $121.40 |
| Law Enforcement | 38 | $199.26 |
| Reward Dollars | 57 | $407.67 |
| Shift lead DC | 198 | $125.73 |
| SHIFTLEAD ONLY - close ticket | 20 | $269.75 |
| The Customer List | 5 | $48.50 |
| Total discounts | 443 | $2,085.90 |

**VOID SUMMARY**

| Void amount | $800.65 |
|---|---|
| Void order count | 20 |
| Void item count | 78 |
| Void amount % | 1.4% |

**TAX SUMMARY**

| Tax rate | Taxable amount | Tax amount |
|---|---|---|
| CA STATE TAX | $29,784.49 | $1,787.13 |
| CA COUNTY TAX | $29,397.85 | $72.31 |
| CA SPECIAL TAX | $59,475.49 | $965.32 |
| Non Taxable | $6,392.33 | — |
| Marketplace Facilitator Taxes Paid | $12,544.95 | $1,038.79 |
| Marketplace Facilitator Taxes Not Paid | $6,853.00 | $651.17 |

EXHIBIT P

**Michael Bubman**

| | |
|---|---|
| **From:** | Sarah R. Bates <sarah.bates@fedreceiver.com> |
| **Sent:** | Sunday, February 18, 2024 10:10 PM |
| **To:** | kbaecommerce@gmail.com; Stephen J. Donell, CCIM, CPM; Alejandro Herrera; Michael Bubman |
| **Subject:** | Re: Important: We need access to Toast POS System |

Keith,

Luke quit after you, Vicky Lee, and Danielle Hefner verbally attacked him over a key delivered to the restaurant by an unknown person late at night. I won't repeat the detailed report from Luke in this email without his consent.

I've asked Danielle repeatedly to provide detail on what permissions she needs on Toast, with no response. When I spoke to her on Saturday she said it was working. If it's such an issue, why hasn't she responded?

You fail to mention that you have not turned over complete control of the Toast account to the Receiver. I'm sure this is just another diversion tactic from the real issues at hand.

I returned Genesis' call this morning, there was no answer and voicemail was full.

The report I received from Luke is nothing short of disturbing. I again demand that you immediately turn over access to the security cameras as well as access to the historical footage. I am quite familiar with the bullying you and Danielle Hefner are capable of, I've experienced it myself. You have also harassed me by calling me repeatedly at 1:40am with false claims. You left a voicemail stating that you couldn't turn off online ordering, but according to sales records, all transactions ceased before midnight.

Why are you having keys delivered to the restaurant anonymously in the middle of the night? Why would a key be so important that you had to verbally attack and bully your employee?

You have intentionally ignored our repeated requests for information and administrative access to business accounts and records. Your actions are creating a stressful work environment for staff. You have undermined our efforts for a smooth transition at every turn. Most importantly, you are blatantly ignoring the court's orders.

Sarah

1

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:    310-207-8481 ext:119
Fax:    310-806-4178
Email: sarah.bates@fedreceiver.com
Web:  www.fedreceiver.com

Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited.  If you have received this communication in error, please notify me immediately.

---

**From:** kbaecommerce@gmail.com <kbaecommerce@gmail.com>
**Sent:** Sunday, February 18, 2024 7:58 PM
**To:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>; Sarah R. Bates
<sarah.bates@fedreceiver.com>; Alejandro Herrera <alex@hch.law>
**Subject:** Important: We need access to Toast POS System

**\*\*CAUTION\*\*** External Email

Sarah,

Due to Luke's resignation, we had to close the restaurant at 6:00 p.m. tonight. Furthermore, you
revoked Mariana and my access to the Toast POS system and limited Danielle's access, hindering
our ability to manage the third-party app. Despite the closure, orders continue to come in, causing
persistent issues both yesterday and today. Danielle has made multiple attempts to reach out to you,
and Genesis has also tried to contact you with no success.

We urgently require access to Toast. It's crucial for you to familiarize yourself with the Toast POS
system before implementing changes. Your alteration or restriction of access is disrupting restaurant
operations. Additionally, please address the expeditor monitor in the front of the house; the lack of
visibility makes organizing orders impossible.

Several staff members have voiced concerns regarding potential discrimination, noting that your
responses appear to favor white staff. It's crucial that you promptly address all issues and
communicate with the entire staff without bias.

Keith

EXHIBIT Q

Exhibits G and H from Alejandro Herrera
Declaration Filed in Support of February 9,
2024 Ex Parte Application Filed on Behalf
of Birdies, Inc. and Keith Bae

# Exhibit G

**Subject:** [EXTERNAL] RE: [EXTERNAL] RE: URGENT Bobson v. Bae
**Date:** Tuesday, February 6, 2024 at 5:03:25 PM Pacific Standard Time
**From:** Michael Bubman <mbubman@mbn.law>
**To:** Alejandro Herrera <alex@hch.law>
**CC:** Stephen J. Donell - FedReceiver, Inc. (Steve.Donell@fedreceiver.com) <Steve.Donell@fedreceiver.com>, Brian Landau <blandau@slbiggs.com>

Mr. Herrera:

I am not going to argue with you about this – you refuse to acknowledge what happened in Court on Friday and what we discussed in the hallway.  There are no games being played other than you and your client continuing to ignore the requests for information from the Receiver.   I asked you for information about the entities in an email yesterday that you ignored.  Please provide this information, as well as evidence of current liability insurance.

As for the issue regarding payroll, In order for Mr. Donell to authorize payroll, he needs to see the payroll information, including:

1. Payroll register or other report identifying the name of employee, rate of pay, hours worked and title;
2. Confirmation that payroll taxes are being paid;
3. Amount to be transferred for payroll purposes.

Once this information is received, Mr. Donell can make the appropriate transfer.  It is too late in the day for this to happen today.  Once we get this information, we can have a call tomorrow.


Best regards,

Michael Bubman



Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

### _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Tuesday, February 6, 2024 4:42 PM
**To:** Michael Bubman <mbubman@mbn.law>

**1 of 3**

**Subject:** Re: [EXTERNAL] RE: URGENT Bobson v. Bae

Mr. Bubman:

Judge Kalra was very clear in that he was only clarifying the prior order. He made it very clear that this order was not doing anything new beyond clearing up names. The fact that your client intended to block the use of the business funds for normal business operations was never mentioned by you or your client either during court, afterwards, or in any way at all. The authority granted by the original order has always been the case, but your client never acted on it, not until now. Clearly, he only did this to retaliate against my client after his feelings were hurt (by a compliment that he misunderstood no less) during our hallway conversation on 2/2.

You can hide behind notice of the court's order all you like (even though the order is not in dispute), but you're playing games with employee's livelihoods and putting the business at risk. Payroll is at risk of going unpaid today because you and your client couldn't send an email or pick up the phone. My client is cooperating and intends to continue cooperating, so the gamesmanship by you and your client need to stop.

I'll wait for your conference call dial-in information so the payroll problem can be fixed today.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

**HERRERA CLIFTON HESS**

100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**From:** Michael Bubman <mbubman@mbn.law>
**Date:** Tuesday, February 6, 2024 at 4:03 PM
**To:** Alejandro Herrera <alex@hch.law>
**Cc:** Stephen J. Donell - FedReceiver, Inc. (Steve.Donell@fedreceiver.com) <Steve.Donell@fedreceiver.com>
**Subject:** [EXTERNAL] RE: URGENT Bobson v. Bae

Mr. Herrera:

I will reiterate what I just told you in our call. On Friday, you were handed a copy of the order signed by Judge Kalra. The Receiver's approval is required for any and all expenses of the business. Your client needs to coordinate with Steve Donell about the payment of any expenses, including payroll.

Best regards,

**2 of 3**

Michael

| SuiteAmerica |
| :-- |
| ? |

Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

### _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Tuesday, February 6, 2024 3:39 PM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** URGENT Bobson v. Bae

Mr. Bubman:

I've been informed that you or your client may have interfered with the business operations. It seems that a hold has been placed on the bank funds which frustrates the ability to run payroll TODAY. I'm not sure why this action was taken, especially without any notice to myself or Mr. Bae.
It seems like retaliation. Please advise immediately on this.

Regards,

Alejandro H. Herrera ǀ Attorney Partner
c. 310.570.0513 ǀ alex@herreracliftonhess.com
**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 ǀ w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

# Exhibit H

| | |
|---|---|
| **Subject:** | FW: Urgent Payroll Due 2/5/2024 |
| **Date:** | Wednesday, February 7, 2024 at 10:20:08 AM Pacific Standard Time |
| **From:** | Alejandro Herrera <alex@hch.law> |
| **To:** | Michael Bubman <mbubman@mbn.law> |
| **Attachments:** | Payroll 2.5.2024.xlsx |

Mr. Bubman,

Please forward the attached payroll summary and ensure that monies are immediately transferred to cover the payroll. Specifically, funds received by the DTLA South Park account need to be transferred to the BAE FG account to cover.

Time is of the essence. Please confirm.

Regards,

Alejandro H. Herrera I Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

# HERRERA CLIFTON HESS

100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

1 of 1

| | |
|---|---|
| **Subject:** | [EXTERNAL] RE: [EXTERNAL] RE: [EXTERNAL] RE: Urgent Payroll Due 2/5/2024 |
| **Date:** | Wednesday, February 7, 2024 at 4:03:12 PM Pacific Standard Time |
| **From:** | Michael Bubman <mbubman@mbn.law> |
| **To:** | Alejandro Herrera <alex@hch.law> |
| **CC:** | Stephen J. Donell - FedReceiver, Inc. (Steve.Donell@fedreceiver.com) <Steve.Donell@fedreceiver.com>, Sarah R. Bates - FedReceiver, Inc. (Sarah.Bates@FedReceiver.com) <Sarah.Bates@FedReceiver.com>, Brian Landau <blandau@slbiggs.com> |
| **Attachments:** | Order Appointing Receiver 083022 (00745533xB7A71).PDF, 2023-02-27 ORDER for Receiver to Take control of Restaurant (00766178xB7A71).PDF, Conformed Notice of Entry of Order of February 2, 2024 (00809739xB7A71).PDF |

Mr. Herrera:

Based upon the proceedings that have occurred, and in particular, the specific statements that Judge Kalra has made directly to you, I did not think this necessary. Based on your email below, however, I guess I do need to point you to the specific provisions of the Receivership order, issued by the Court August 17, 2022 (attached).

The order provides:

"**WHEREAS** the Court finds that, based on the record in these proceedings, the appointment of a receiver in this action is necessary and appropriate for the purposes of marshaling and preserving all Partnership assets of the parties, including but not limited to "Birdies" located at 314 W. Olympic Boulevard, Los Angeles, CA 91401; and, thus finding good cause:

**IT IS HEREBY ORDERED** that Stephen J. Donell of FedReceiver, Inc. ("Receiver"), 12121 Wilshire Boulevard, Suite 1120, Los Angeles, California 90025, telephone number (310) 207-8481; email *steve.donell@fedreceiver.com* be, and hereby is, appointed as Receiver of all Partnership interests and assets, including, but not limited to, the restaurant named "Birdies", located at 314 W. Olympic Boulevard, Los Angeles, CA 91401 (hereinafter referred to an "the Premises"), to carry out various duties as Receiver, **including but not limited to, taking possession of, managing, and collecting all proceeds from the operation of said restaurant. The Receiver shall take, without limitation to, possession of the following regarding "Birdies": all accounts receivable, all Books and Records, all inventory and equipment, all bank accounts, all agreement(s) for the use of the name "Birdies", all corporate filing documentation, and any other information, asset, liability or documentation related to the Partnership."** (Emphasis added.)

That appointing order was further <u>supplemented</u> by the order issued February 27, 2023 (attached) requiring Mr. Bae to turn over all vendor information, including all merchant information re the POS

system of accepting payments from customers, all hardware and software used by Birdies, any and all information pertaining to bank accounts, any and all POS reports showing sales at Birdies. The Judge further ordered that all employees are to cooperate with the Receiver, including any and all demands for turnover of information pertaining to the operation of, and their employment with, Birdies.

The refusal by your client to cooperate and abide by these and other orders of this Court led to the January 2, 2024 ruling finding that he had willfully failed to comply with the Court's orders and finding him guilty of 6 counts of contempt. It was only after these orders were issued and the sentencing hanging over his head that your client finally agreed to partially comply by turning over certain of the records, which allowed us to seek ex parte relief, which was issued last Friday (attached), which has allowed us to now enforce the court's orders.

If you continue to think that this relates solely to an accounting, you have failed to fully understand these orders of this Court, as well as the "big picture" of what this Court has instructed the Receiver to do. You should read the orders, and if you have not yet done so, make sure to share them with your client. We know that he has already received them, as they were the basis of the findings of contempt – his failure to comply with them.

While this has taken approximately 17 months to get to this point, we are now here. The Receiver is now able to carry out his appointed tasks, which includes the complete takeover of the business. If it happens with the cooperation of your client, it will make the situation much easier for everyone. If, however, your client digs in his heels, and fails or refuses to provide the information sought by the Receiver, the outcome will be much worse for him. Your client should keep in mind that the Judge still has not sentenced him for the findings of contempt. We still have quite a ways to go in this matter. You and your client can either get on board, or your client will suffer the consequences of his refusal to do so. Either way, the Receiver intends to carry out the Court's orders. If you want to seek further orders from Judge Kalra, I welcome the opportunity to hear you explain your view of this situation to him. I believe he has been abundantly clear, but it obviously still has not quite sunk in.


Best regards,

Michael

 Mirman,
Bubman &
Nahmias

Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

### _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Wednesday, February 7, 2024 1:59 PM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** Re: [EXTERNAL] RE: [EXTERNAL] RE: Urgent Payroll Due 2/5/2024

Mr. Bubman:

The big picture is that your client was hired to do an accounting. The court's order literally says that, and there is no court order that excuses your client from this obligation. Mr. Bae has and continues to cooperate and comply with the court's order. He's provided all the documents currently available to him, and he's attempted to communicate with your client as of yesterday. Your client didn't respond. Today, Mr. Bae has already communicated with Sarah, and you knew this <u>before</u> sending your email. Enough with your posturing and games, it doesn't solve the problems created by your client, specifically, your client's sudden decision to block use of the bank accounts without any communication at all. This obvious retaliation is harmful to the business.

I don't need to repeat the issues again. As I mentioned, Mr. Bae has already communicated with Sarah.

If your client's goal here is to completely take over the business and ignore the need for the accounting (all while increasing his own billing), that is his decision to make. The court's order does not compel your client to do what he's doing now, but it does compel your client to prepare an accounting of the partnership. Please ensure that it's done without needless delay or expense.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

HERRERA CLIFTON HESS

100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**From:** Michael Bubman <mbubman@mbn.law>
**Date:** Wednesday, February 7, 2024 at 12:43 PM
**To:** Alejandro Herrera <alex@hch.law>
**Cc:** Stephen J. Donell - FedReceiver, Inc. (Steve.Donell@fedreceiver.com) <Steve.Donell@fedreceiver.com>, Sarah R. Bates - FedReceiver, Inc. (Sarah.Bates@FedReceiver.com) <Sarah.Bates@FedReceiver.com>, Brian Landau <blandau@slbiggs.com>
**Subject:** [EXTERNAL] RE: [EXTERNAL] RE: Urgent Payroll Due 2/5/2024

Mr. Herrera:

**3 of 8**

You STILL are missing the big picture here. Did you miss the fact that your client apparently wrote payroll checks and authorized ACH withdrawals for more than $17,000, which you were just advised that there is barely more than $3,300 in the account. This is not a lack of understanding of the business – it is a lack of money in the business to cover its expenses. There is no roadblock or blindside here – there is simply not enough money to pay the bills.

As I advised in our call, you are also incorrect about the use of the two accounts based upon the information provided to us. The monies from Door Dash, Grub Hub and Uber Eats is deposited into the Bae account – not the DTLA account. While we are willing to make an accommodation for this one payroll period, we cannot magically invent money to put into the account to cover payroll. The shortfall has nothing to do with Mr. Donell. Once again – the accounts over which Mr. Donell now has control have approximately $3300 total. That is not enough to cover Mr. Bae's payroll. If Mr. Bae has not handed out all of the checks, you should tell us which one have not been handed out.

I gave you the telephone numbers for Sarah Bates, Mr. Donell's chief assistant who is running point on this. You should have Keith Bae call her and work with her. The continued refusal by Mr. Bae to contact anyone in Mr. Donell's office is not doing him any good. Additionally, Mr. Bae has not provided all information to my client. You should be in receipt of a letter from my client detailing the additional information that is missing from Mr. Bae.

Please note that your identification of what is important here is plainly wrong. You should read the Court orders again, as you have failed to grasp the import of what the Court has ordered to occur here.


Best regards,

Michael Bubman



Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

### _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Wednesday, February 7, 2024 12:27 PM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** Re: [EXTERNAL] RE: Urgent Payroll Due 2/5/2024

**4 of 8**

Mr. Bubman,

I forwarded Sarah's information to Mr. Bae.

And again, as I told you during our phone call a few minutes ago, the protocol used by Mr. Bae has been to move the revenues from the SouthPark account into the Bae FG account because all the income goes into one, and all the payroll/expenses come out of the other. In other words, ALL the revenues are transferred into the Bae FG account regardless of the amount and regardless of whether they cover the accounts payable or payroll. I understand that Mr. Bae can assist with this, but he was blindsided when blocked from the accounts. He was waiting yesterday for the conference call with your client, but you never sent a dial-in number. Today, it seems your client is putting up even more roadblocks that will prevent employees from being paid. This is unacceptable.

Your client's lack of understanding (currently at least) is putting the business at risk by exposing it to unpaid wage claims. Your client was hired to do an accounting of the business, and while there might be plenty of criticisms related to how the business is or should be operated, it's not his job to damage the business because he doesn't like how something is done. All the information available to Mr. Bae has been produced to your client.

Lastly, I'll follow up with you on your questions regarding the scope of AP and AR vendors both current and historical.

Please note, the accounting period most important in this action (and the very reason we're here in the first place) is related to the 2016-2018 period. Please ensure that the accounting for this period is not neglected and completed without delay. If there's anything missing or questions, again, please let me know without delay.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

HERRERA CLIFTON HESS
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**From:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>
**Date:** Wednesday, February 7, 2024 at 12:05 PM
**To:** Sarah R. Bates <sarah.bates@fedreceiver.com>, Michael Bubman <mbubman@mbn.law>, Alejandro Herrera <alex@hch.law>
**Cc:** Brian Landau <blandau@slbiggs.com>
**Subject:** [EXTERNAL] RE: Urgent Payroll Due 2/5/2024

I will approve release of funds from these accounts assuming there are funds to do so for purposes of funding payroll.

Steve

**Stephen J. Donell, CCIM, CPM**
**President | Receiver | Partition Referee | Interim Trustee | Asset Manager**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
**Donell Expert Services, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Main:  310-207-8481 ext:114
Fax:    310-806-4178
Direct: 310.689.2175
Email: steve.donell@fedreceiver.com
Web:  www.fedreceiver.com
 **DRE#  01295754**
Disclosure: The information contained herein is confidential and privileged attorney-client

information or work product intended only for the individual or entity to whom it is addressed.

Any unauthorized use, distribution or copying of this communication is strictly

prohibited.  If you have received this communication in error, please notify me immediately.

**From:** Sarah R. Bates <sarah.bates@fedreceiver.com>
**Sent:** Wednesday, February 7, 2024 12:03 PM
**To:** Michael Bubman <mbubman@mbn.law>; Alejandro Herrera <alex@hch.law>
**Cc:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>; Brian Landau <blandau@slbiggs.com>
**Subject:** RE: Urgent Payroll Due 2/5/2024

I just called Chase and the DTLA South Park account current balance is $2,337.34, the BAE FG account balance is $1,013.52.

**Sarah R. Bates**
**Receiver Administrator | Vice President**
**Jalmar Properties, Inc., AMO**
**FedReceiver, Inc.**
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA 90025
United States
Tel:    310-207-8481 ext:119
Fax:    310-806-4178

**6 of 8**

Email: sarah.bates@fedreceiver.com
Web: www.fedreceiver.com
Disclosure: The information contained herein is confidential and privileged attorney-client
information or work product intended only for the individual or entity to whom it is addressed.
Any unauthorized use, distribution or copying of this communication is strictly
prohibited. If you have received this communication in error, please notify me immediately.

**From:** Michael Bubman <mbubman@mbn.law>
**Sent:** Wednesday, February 7, 2024 11:52 AM
**To:** Alejandro Herrera <alex@hch.law>
**Cc:** Stephen J. Donell, CCIM, CPM <steve.donell@fedreceiver.com>; Sarah R. Bates
<sarah.bates@fedreceiver.com>; Brian Landau <blandau@slbiggs.com>
**Subject:** RE: Urgent Payroll Due 2/5/2024


**\*\*CAUTION\*\*** External Email

Have Keith call Sarah. The office number is (310) 207-8481, x119. Her cell is (310) 330-6409.

The short story is that there is not enough money in the DTLA account to meet the payroll
obligations. If Keith only handed out certain checks, he needs to tell Sarah which checks were
handed out.


Best regards,

Michael



Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

## _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Wednesday, February 7, 2024 10:20 AM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** FW: Urgent Payroll Due 2/5/2024

Mr. Bubman,

**7 of 8**

Please forward the attached payroll summary and ensure that monies are immediately transferred to cover the payroll. Specifically, funds received by the DTLA South Park account need to be transferred to the BAE FG account to cover.

Time is of the essence. Please confirm.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

# HERRERA CLIFTON HESS

100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**8 of 8**

EXHIBIT R

### Birdies - Recorded Liens

| Date | Tax period | Lienor | Amount |
|---|---|---|---|
| 10/3/2017 | 7/1/16 - 9/30/16 | EDD | $1,491.55 |
| 9/4/2018 | 1/1/18 - 3/31/18 | EDD | $3,503.31 |
| 12/3/2018 | 4/1/18 - 6/30/18 | EDD | $4,660.43 |
| 3/5/2019 | 7/1/18 - 9/30/18 | EDD | $4,873.01 |
| 6/7/2019 | 10/1/18 - 12/31/18 | EDD | $4,783.11 |
| 9/4/2019 | 1/1/19 - 3/31/19 | EDD | $6,014.06 |
| 12/3/2019 | 4/1/19-6/30/19 | EDD | $4,410.88 |
| 3/6/2020 | 7/1/19 - 9/30/19 | EDD | $4,780.06 |
| 6/5/2020 | 10/1/19 - 12/31/19 | EDD | $4,834.80 |
| 9/4/2020 | 1/1/20 - 3/31/20 | EDD | $10,906.28 |
| 12/8/2020 | 4/1/20 - 6/30/20 | EDD | $4,430.38 |
| 3/12/2021 | 7/1/20 - 9/30/20 | EDD | $4,805.31 |
| 6/8/2021 | 10/1/20 - 12/31/20 | EDD | $5,979.22 |
| 9/7/2021 | 1/1/21- 3/31/21 | EDD | $8,824.91 |
| 5/24/2022 | 12/31/18, 3/31/18, 6/30/18, 9/30/18, 12/31/18, 3/31/19, 6/30/19, 9/30/19, 12/31/19, 3/31/20, 6/30/20, 9/30/20, 12/31/20, 3/31/21, 6/30/21 | IRS | $453,423.85 |
| 5/24/2022 | 13/31/19, 12/31/20 | IRS | $7,712.82 |
| 10/10/2022 | 4/1/21 - 3/31/22 | EDD | $27,448.88 |
| 11/21/2022 | 12/31/2021, 9/30/21, 12/31/21 | IRS | $54,632.28 |
| 12/29/2022 | 1/1/21 - 6/30/22 | EDD | $13,114.33 |
| 2/1/2023 | 3/31/22, 6/30/22, 9/30/22 | IRS | $58,426.95 |
| 5/2/2023 | 1/1/18 - 12/31/18 | CDTFA | $207,926.78 |
| 5/19/2023 | 10/16/19 judgment | Martinez | $11,012.50 |
| 9/14/2023 | 4/1/22 - 3/31/23 | EDD | $18,999.97 |
| | | | $926,995.67 |

# EXHIBIT S

**Michael Bubman**

| | |
|---|---|
| **From:** | Michael Bubman |
| **Sent:** | Friday, February 9, 2024 5:37 PM |
| **To:** | Alejandro Herrera |
| **Cc:** | Stephen J. Donell - FedReceiver, Inc. (Steve.Donell@fedreceiver.com); Sarah R. Bates - FedReceiver, Inc. (Sarah.Bates@FedReceiver.com) |
| **Subject:** | RE: [EXTERNAL] RE: [EXTERNAL] Re: Ex Parte Notice (Bobson vs Bae) |
| **Attachments:** | Birdies - payroll information (00810102xB7A71).XLSX |

Mr. Herrera:

If Mr. Bae has provided all of the information, as you assert, it should be no problem for you to provide it to me. The simple fact is that he has not and will not provide the information that has been requested repeatedly. Let me respond directly to each of your statements below.

First, Mr. Donell, as the Receiver, is authorized to be at the restaurant any time he wishes to do so. He does not need to consult with you or Mr. Bae. He has been authorized by Court order to do so, which you still refuse to acknowledge. Whether or not you and I were going to be in court has nothing to do with Mr. Donell's actions as Receiver.

Second, Mr. Bae is unequivocally not cooperating with the Receiver. I take issue with your repeated statements asserting his cooperation, as it is plainly false. MY client and I have no grudge against Mr. Bae. All we seek is the cooperation we have not received for the past 17 months. The fact that there is now limited cooperation is insufficient. Mr. Bae needs to fully comply. I say this with the full advice and consent of my client, with whom I have been communicating at length.

Third, if the information has been provided by Mr. Bae, it should be no problem for you to reproduce it to me. Please provide me with the documentation showing what has been requested repeatedly. For example, you ask for payroll to be paid. It should be quite simple to provide the rates of pay and hours worked for each of the employees. That has not been provided to the Receiver anywhere. If you have it, please forward it to me so we can move this forward.

Fourth, we have asked repeatedly for the basic information about the employees. Once again, that has not been provided. I have seen names of employees, but other than a gross amount of pay, we have not been provided with their hours or rates of pay. There have been no calculations for payroll taxes. Even Brian Landau, Mr. Donell's accountant, directly asked Mr. Bae to give him the name and number for the person at the payroll company since Mr. Bae appears to be unable to provide this information. The response is a deafening silence. Make it simple – give me that information in writing. I have attached the chart that you sent to me asking for payroll to be paid, to which I have added 3 columns for the information we have been requesting but have not received. Just fill it in and this will be handled. As long as there is money in the accounts, the payroll will be paid. Without this information, however, the payroll taxes cannot be calculated. If that has already been calculated (i.e., perhaps by the payroll company, whose information we cannot obtain) then that calculation need not be made. This could not be more simple.

Fifth, I have seen repeated emails, including my own, asking for the login information for Toast. It simply has not been provided. Mr. Bae's excuses have become as bad as "my dog ate my homework." Its on my other phone, someone else has it, I don't know what it is, etc. Sarah Bates asked him in person today and did not receive it. She emailed Mr. Bae multiple times, including the emailed letter on 2/7 at 11:21 a.m., emails yesterday at 9:40 a.m., 3:24 pm and 4:52 p.m., an email today at 12:15 p.m., at 12:57 p.m. and again at 4:46 p.m. That is 7 requests that I

1

have seen, in writing from her, in addition to the numerous oral requests she has made. You can try to recreate history all you want – the simple fact is that he has not provided this information. If you provide it in writing, we can confirm the accuracy and this issue will be resolved. And I believe you are generally correct – Mr. Bae is not refusing to provide the information – he just simply is not providing it, but rather repeated excuses why he is not providing it.

Sixth, we obviously provided information of Mr. Bae's wrongdoing, as the Court held him in contempt. I understand that you refuse to accept it. I am content with the Court's rulings, with which we will continue to abide.

Seventh, the short list has NOT been addressed – as recently as 1 hour ago, Sarah was still asking for the same information.

It is time to provide the information that has been requested repeatedly. We will not stop asking until we get it. If we do not receive the information requested, Mr. Bae can explain himself to Judge Kalra.


Best regards,

Michael



Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

### *WE'VE MOVED!! Please note our new address*

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Friday, February 9, 2024 3:52 PM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** Re: [EXTERNAL] RE: [EXTERNAL] Re: Ex Parte Notice (Bobson vs Bae)

Mr. Bubman:

I reject all your assertions and contentions. You call me delusional while ignoring the facts yourself. Your emotional email is clearly in defense of Mr. Donell's shady appearance at the restaurant this morning during the time you both knew we'd be in court.

You clearly take issue with the fact that Mr. Bae is fully and completely cooperating to the best of his ability. This shouldn't be a problem for you, but you seem to think so. It's remarkable that you still complain in the face of obvious and documented cooperation by Mr. Bae. You and your client are clearly holding a grudge against him. Please communicate with your client before making more baseless allegations that Mr. Bae isn't cooperating.

2

AGAIN, all the information available to Mr. Bae HAS ALREADY BEEN PROVIDED to your client, which is documented, and any additional information already requested he is in the process of getting. You and your client have reached a point of harassment, which is wholly inappropriate.

It is obvious you see the problem with not paying employees their wages. Just because your client is following the court's order (WHICH NOBODY IS DISPUTING) doesn't mean what he's doing isn't wrong, or at least having a detrimental impact on the business. It is wrong not to pay the employees wages that are due. You and your client's criticisms of how wages have been previously paid does not excuse either of you in frustrating the process. You are putting the entire business at risk without any end game to this all.

AGAIN, Mr. Bae is not refusing to provide login information to Toast. It is disgusting how blatant your prejudice against Mr. Bae is. Mr. Bae has been in regular communication with Sarah about this topic. THERE HAS BEEN NO REFUSAL BY MR. BAE TO GET THIS INFORMATION.

Your predisposition to the idea that Mr. Bae is somehow engaged in any wrongdoing is clearly feeding into your insecurities. If you have evidence of any wrongdoing, I demand that you produce it. If you don't, I demand that you stop making these baseless allegations.

Your "short list" has already been addressed by Mr. Bae and your client/Sarah.

Mr. Bae's ex parte application is scheduled for Tuesday, February 13, 2024 at 8:30 AM in Dept. 51. Monday is a court holiday.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**From:** Michael Bubman <mbubman@mbn.law>
**Date:** Friday, February 9, 2024 at 1:13 PM
**To:** Alejandro Herrera <alex@hch.law>
**Subject:** [EXTERNAL] RE: [EXTERNAL] Re: Ex Parte Notice (Bobson vs Bae)

Mr. Herrera:

We have asked numerous times for the information necessary for payroll, including employees' names, their rate of pay, hours worked, as well as which payroll checks were handed out. We have the employees' names and an amount that Mr. Bae says is due to them (which remains in excess of the amounts available in the bank accounts), but nothing else of the requested information. Mr. Bae obviously has all of this information, as he purportedly calculated the pay for each employee. We have no idea if that amount includes payroll taxes (it appears from Mr. Bae's statements that it does not) which we will need in order to properly deduct and pay. As you have been advised, we will not pay without payroll taxes being accounted for. Apparently, there is a payroll service that Mr. Bae deals with but he refuses to provide the information for that service. It would certainly make it easy to get this done if you and Mr. Bae would cooperate, but apparently that is not going to happen.

Additionally, you have mentioned several times that payroll checks are handed out in waves. We need to know which checks were handed out but both you and Mr. Bae have refused to respond.

We have also asked repeatedly for the login and password for Toast, which Mr. Bae has refused to provide. These items are always conveniently in another phone or at another location. We are now aware of daily reports generated through the Toast system – none of which have not been provided. This is yet another incident of Mr. Bae's non-cooperation.

Mr. Bae refused to give Ms. Bates the code for the safe into which the case is dropped.

Additionally, the tablet that contained information regarding the employees mysteriously disappeared when Ms. Bates asked that it be provided.

The short list of things we need **immediately**:

1. All requested payroll information;
2. Toast login and password;
3. Code to the on-site safe;
4. Access to all employee information, including the tablet maintained at the restaurant.

While we need all information identified in the February 7 letter from Mr. Donell, these items identified above are the priority. These are all things that Mr. Bae has within his control. If you and he are under the delusion that what he is doing constitutes "cooperation," you are sorely mistaken. I look forward to our next discussion with Judge Kalra.


Best regards,

Michael Bubman



Mirman, Bubman & Nahmias
16133 Ventura Blvd., Suite 1175
Encino, California 91436
Tel. No.: (818) 451 – 4600
Fax No.: (818) 451 – 4620
www.mbn.law
mbubman@mbn.law

### _WE'VE MOVED!! Please note our new address_

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Friday, February 9, 2024 9:14 AM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** Re: [EXTERNAL] Re: Ex Parte Notice (Bobson vs Bae)

The ex parte hearing was moved to Monday February 12, 2024 at 8:30 in dept 51.

Please request from your client that funds are transferred to cover payroll checks. Employees will be going into the weekend without any paychecks if this isn't done.

4

Regards,

**Alejandro H. Herrera  | Attorney Partner**
c. 310.570.0513 | alex@herreracliftonhess.com
**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Friday, February 9, 2024 8:29:04 AM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** Re: [EXTERNAL] Re: Ex Parte Notice (Bobson vs Bae)

Dept 51 is dark today. I'll advise on either a new department or date ASAP.

Regards,

**Alejandro H. Herrera  | Attorney Partner**
c. 310.570.0513 | alex@herreracliftonhess.com
**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE: This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine. If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

---

**From:** Michael Bubman <mbubman@mbn.law>
**Sent:** Friday, February 9, 2024 6:30:16 AM
**To:** Alejandro Herrera <alex@hch.law>
**Subject:** [EXTERNAL] Re: Ex Parte Notice (Bobson vs Bae)

Mr. Herrera:

I have not received any papers from you. Are you still planning on seeking ex parte relief? Please advise.

Michael Bubman

Get Outlook for iOS

---

**From:** Alejandro Herrera <alex@hch.law>
**Sent:** Thursday, February 8, 2024 5:32 PM
**To:** Michael Bubman <mbubman@mbn.law>
**Subject:** Ex Parte Notice (Bobson vs Bae)

Mr. Bubman:

5

Please take notice that Keith Bae will be appearing ex parte tomorrow at 8:30am in Dept. 51 seeking an order to stay enforcement of the court's August 17, 2022 Receivership Order and all related subsequent orders pending a full hearing on Mr. Bae's request for clarification of the duties and purpose of the Receiver, prompted by the issues caused by the Receiver's refusal to pay employee wages.

Please advise if you intend to appear and/or oppose the motion. Moving papers will be sent as soon as they are ready.

Regards,

Alejandro H. Herrera | Attorney Partner
c. 310.570.0513 | alex@herreracliftonhess.com

**HERRERA CLIFTON HESS**
100 Wilshire Blvd., Suite 700
Santa Monica, California 90401
o. 310.310.2201 | w. herreracliftonhess.com

NOTICE:  This e-mail contains information which may be confidential and/or protected by the attorney-client privilege and/or the work product doctrine.  If you are not the intended recipient, please notify the sender immediately and then delete, destroy, or return the original message and any attachments without reading or saving in any manner.

Birdies DT Payroll
    02/05/24

| Number | Date | Payee | Position | Rate of Pay | Hours worked | Amount | Type |
|---|---|---|---|---|---|---|---|
| 30442 | 02/05/24 | Litzy Alvarez | | | | 580.10 | Payroll Check |
| 30443 | 02/05/24 | Noe Antonio Morales | | | | 1484.76 | Payroll Check |
| ACH | 02/05/24 | Noe Antonio Morales | | | | 500.00 | ACH |
| 30444 | 02/05/24 | Patrick Dowd | | | | 986.54 | Payroll Check |
| ACH | 02/05/24 | Kaili Gaspar Grinda | | | | 685.68 | Payroll Check |
| ACH | 02/05/24 | Kaili Gaspar Grinda | | | | 140.03 | ACH |
| ACH | 02/05/24 | Danielle Heflin | | | | 1119.94 | Payroll Check |
| ACH | 02/05/24 | Danielle Heflin | | | | 394.36 | ACH |
| 30447 | 02/05/24 | Carmen Rosibel Hernandez | | | | 683.68 | Payroll Check |
| ACH | 02/05/24 | Carmen Rosibel Hernandez | | | | 1036.77 | ACH |
| 30448 | 02/05/24 | Hamzeh A. Islam | | | | 670.82 | Payroll Check |
| Cash | 02/05/24 | Hamzeh A. Islam | | | | 919.03 | Cash |
| 30449 | 02/05/24 | Roselyn J. Lazum | | | | 635.61 | Payroll Check |
| 30450 | 02/05/24 | Oscar D. Lopez | | | | 1302.67 | Payroll Check |
| Cash | 02/05/24 | Oscar D. Lopez | | | | 419.50 | Cash |
| 30451 | 02/05/24 | Genesis C. Roman | | | | 917.38 | Payroll Check |
| 30452 | 02/05/24 | Luke A. Severns | | | | 705.38 | Payroll Check |
| 30453 | 02/05/24 | Seth M. Walkey | | | | 493.45 | Payroll Check |
| 9061 | 02/05/24 | Baltazar Santiago | | | | 890.86 | Payroll Check |
| 9062 | 02/05/24 | Glenda Vasquez | | | | 254.95 | Payroll Check |
| 9063 | 02/05/24 | Jose Mandujano | | | | 914.25 | Payroll Check |
| 9064 | 02/05/24 | Oscar Rodriguez | | | | 982.3 | Payroll Check |
| 9065 | 02/05/24 | Raymundo Aguilar | | | | 786.80 | Payroll Check |
| ACH | 02/05/24 | Katie Villanueva | | | | 876.25 | ACH |

18381.11

# EXHIBIT T

# Commercial Gross Lease

**1. Names.** This lease is made by FRANK JOHNSON/ ZOLKOVEN GROUP, Landlord, and _____ Tenant: JAME RAE _____

**2. Premises Being Leased.** Landlord is leasing to Tenant and Tenant is leasing from Landlord the following premis _____ 314 W. OLYMPIC _____

[ ] **Part of Building Only.** Specifically, Tenant is leasing the ___1230 sq./ft.__ Of the building

[ ] **Shared Facilities.** Tenant and Tenant's employees and customers may use the following additional facilities in Common with other tenants, employees, and customers:

[ ] Parking spaces _____#314_____
[ ] Restroom Facilities _____X_____
[ ] Storage areas: _____X_____
[ ] Hallways, stairways, and elevators: _____X_____
[ ] Conference rooms _____X_____
[ ] Other _____X_____

**3. Term of Lease.** This lease begins on ___APRIL 1, 2017___ and ends on APRIL 01 2024 ____

**4. Rent.** Tenant will pay rent in advance on the 1st day of each month. Tenant's first rent payment will be on ___ APRIL 01-2017 in the amount of $2,100. Tenant will pay rent of $2,100 per month thereafter.
[ ] Tenant will pay this rental amount for the entire term of the lease.
[ ] Rent will increase each year, on the anniversary of the starting date in paragraph 3, as follows: _____3%___

**5. Option to Extend Lease**

[ ] **First Option.** Landlord grants Tenant the option to extend this lease for an additional 3 years. To exercise this option. Tenant must give Landlord written notice on or before 02/01/2024 Tenant may exercise this option only Tenant is in substantial compliance with the terms of this lease. Tenant will lease the premises on the Same terms as in this lease except as follows: ___3 YEARS___

[ ] **Second Option.** If Tenant exercises the option granted above, Tenant will then have the option to extend this le: for ¢ years beyond the first option period. To exercise this option, Tenant must give Landlord written notice On or before _____¢_____. Tenant may exercise this option only if Tenant is in substantial compliance with the t of this lease. Tenant will lease the premises on the same terms as in this lease except as follows: _____NONE_____

**6. Security Deposit.** Tenant has deposited $3,500 _____ with Landlord as security for Tenant's performance this lease. Land-lord will refund the full security deposit to Tenant within 14 days following the end of the lease if Tenant returns the premises to Landlord in good condition (except for reasonable wear and tear) and Tenant has pai Landlord all sums due under this lease. Otherwise, Landlord may deduct any amounts required to place the premis in good condition and to pay for any money owed to Landlord under the lease.

**7. Improvements by Landlord**

[ X ]  Before the lease term begins, Landlord (at Landlord's expense) will make the repairs and improvements listed IN Attachment 1 to this contract.

[ ] Tenant accepts the premises in "as is" condition. Landlord need not provide any repairs or improvements before the lease term begins.

**8. Improvements by Tenant.** Tenant may make alterations and improvements to the premises after obtaining the Landlord's written consent, which will not be unreasonably withheld. At any time before this lease ends, Tenant may remove any of Tenant's alterations and improvements, as long as Tenant repairs any damage caused by attaching the items to or removing them from the premises.

**9. Tenant's Use of Premises.** Tenant will use the premises for the following business purposes: FOOD SERVICE _____ may also use the premises for purposes reasonably related to the main use.

**10. Landlord's Representations.** Landlord represents that:

A.  At the beginning of the lease term he premises will be properly zoned for Tenant's stated use and will be in compliance with all applicable laws and regulations.

B.  The premises have not been used for the storage or disposal of any toxic or hazardous substance, and Landlord has received no notice from any governmental authority concerning removal of any toxic or hazardous substance from the property.

**11. Utilities and Services.** Landlord will pay for the following utilities and services:

[√]  Water

[x]  Electricity

[x]  Gas

[x ]  Heat

[x ]  Air-Conditioning

Any items not checked will be the responsibility of Tenant.

**12. Maintenance and Repairs**

A.  Landlord will maintain and make all necessary repairs (1) the roof, structural components, exterior walls, and interior common walls of the premises, and (2) the plumbing, electrical, heating, ventilating, and air-conditioning systems.

B.  Landlord will regularly clean and maintain (including snow removal) the parking areas, yards, common areas, and exterior of the building and remove all litter so that the premises will be kept in an attractive condition.

C.  Tenant will clean and maintain Tenant's portion of the building so that it will be kept in an attractive condition.

**13. Insurance**

A.  Landlord will carry fire and extended coverage insurance on the building.

B.  Tenant will carry public liability insurance; this insurance will include Landlord as an insured party. The public liability coverage for personal injury will be in at least the following amounts:

- $300,000    per occurrence.
- $5,000,000    in any one year.

C.  Landlord and Tenant release each other from any liability to the other for any property loss, property damage, or personal injury to the extent covered by insurance carried by the party suffering the loss, damage, or injury.

D.  Tenant will give Landlord a copy of all insurance policies that this lease requires Tenant to obtain.

**14. Taxes**

A.  Landlord will pay all real property taxes levied and assessed against the premises.

B.  Tenant will pay all personal property taxes levied and assessed against Tenant's personal property.

**15. Subletting and Assignment.** Tenant will not assign this lease or sublet any part of the premises without the writ
consent of Landlord. Landlord will not unreasonably withhold such consent.

## 16. Damage to Premises

A If the premises are damaged through fire or other cause not the fault of Tenant, Tenant will owe no rent for any·
Period during which Tenant is substantially deprived of the use of the premises.

**B.** If tenant is substantially deprived of the use of the premises for more than 90 days because of such damage, Ten
may terminate this lease by delivering written notice of termination to Landlord.

**17. Notice of Default.** Before starting a legal action to recover possession of the premises based on Tenant's default,
Landlord will notify Tenant in writing of the default Landlord will take legal action only if Tenant does not correct
the default within ten days after written notice is given or mailed to Tenant.

**18. Quiet Enjoyment.** As long as Tenant is not in default under the terms of this lease, Tenant will have the right
to occupy the premises peacefully and without interference.

**19. Eminent Domain.** This lease will become void if any part of the leased premises or the building in which the
leased premises are located are taken by eminent domain. Tenant has the right to receive and keep any amount of
money that the agency taking the premises by eminent domain pays for the value of Tenant's lease, its loss of
business, and for moving and relocation expenses.

**20. Holding Over.** If Tenant remains in possession after this lease ends, the continuing tenancy will be from month
to month.

**21. Disputes**

[ ] Litigation. If a dispute arises, either party may take the matter to court.

[ ] Mediation and Possible Litigation. If a dispute arises, the parties will try in good faith to settle it through mediati
conducted by

[ ] _____ATTORNEY_____

[ ] a mediator to be mutually selected.

The parties will share the costs of the mediator equally. Why party will cooperate fully and fairly with the mediato
and will attempt to reach a mutually satisfactory compromise to the dispute. If the dispute is not resolved within 3(
days after it is referred to the mediator, either party may take the matter to court.

[ ] Mediation and Possible Arbitration. If a dispute arises, the parties will try in good faith to settle it through mediati
conducted by

[ ] _____ATTORNEY_____

[ ] a mediator to be mutually selected.

The parties will share the costs of the mediator equally. Each party will cooperate fully and fairly with the mediato
and will attempt to reach a mutually satisfactory compromise to the dispute. If the dispute is not resolved within 3(
days after it is referred to the mediator, it will be arbitrated by

[ ] _____ATTORNEY_____

[ ] an arbitrator to be mutually selected.

Judgment on the arbitration award may be entered in any court that has jurisdiction over the matter. Costs of arbitra
including lawyers' fees, will be allocated by the arbitrator.

Landlord need not participate in mediation or arbitration of a dispute unless Tenant has paid the rent called for by t
lease or has placed any unpaid rent in escrow with an agreed upon mediator or arbitrator.

22. Additional Agreements. Landlord and Tenant additionally agree that: _____
_____TENANT PAYS TRASH_____

L21 EP Commercial Gross Lease :

**23. Additional Agreements.** Landlord and Tenant additionally agree that: NOT APPLICABLE AT THE MOMENT

_____

**24. Entire Agreement.** This is the entire agreement between the parties. It replaces and supersedes any and all other agreements between the parties, as well as any prior writings.

**25. Successors and Assignees.** This lease binds and benefits the heirs, successors, and assignees of the parties.

**26. Notices.** All notices must be in writing. A notice may be delivered to a party at the address that follows a party's signature or to a new address that a party designates in writing. A notice may be delivered:

(1) In person

(2) By certified mail, or

(3) By overnight courier.

**27. Governing Law.** This lease will be governed by and construed in accordance with the laws of the state of
_____CALIFORNIA_____

**28. Counterparts.** The parties may sign several identical counterparts of this lease. Any fully signed counterpart will be treated as an original.

**29. Modification.** This lease may be modified only by a writing signed by the party against whom such modification is sought to be enforced.

**30. Waiver.** If one party waives any term or provision of this lease at any time, that waiver will be effective only for the specific instance and specific purpose for which the waiver was given. If either party fails to exercise or delays exercising any of its rights or remedies under this lease, that party retains the right to enforce that term or provision at a later time.

**31. Severability.** If any court determines that any provision of this lease is invalid or unenforceable, any invalidity or unenforceability will affect only that provision and will not make any other provision of this lease invalid or unenforceable, and shall be modified, amended, or limited only to the extent necessary to render it valid and enforceable.

Dated: 9 .      04/28/2017 _____

LANDLORD                                              TENANT

Name of Business: ZOLKOVER Group/ F.JOHNSON CORP. Name of Business: _____

At 9889 Gloucester/468N.CamdenDr   At: _____

By: _____                          By: _____

Printed Name: Frank Johnson                          Printed Name: JAIMES B BAE.

Title: Landlord/Manager _____           Title _____Owner_____

Address: 468 N. Camden Dr. Beverly Hills, CA 9020    Address: _____

[ ] GUARANTOR

By signing this lease, I personally guarantee the performance of all financial obligations stated under the terms of lease.

Dated:_____          Printed Name _____

Title: _____          Address: _____

_____

LFRHP Commercial Net L

EXHIBIT U

# MIRMAN
# BUBMAN
# NAHMIAS

Michael E. Bubman, Esq.
mbubman@mbn.law

February 16, 2024

*Via Federal Express*

Ms. Harianne Zolkover
1001 S. Hill, LLC
9889 Gloucester Drive
Beverly Hills, CA 90210-0151

Re:   314 W. Olympic Blvd., Los Angeles, CA 91401
      *Bobson v. Bae*
      Los Angeles Superior Court Case No. BC650612

Dear Ms. Zolkover:

Thank you for speaking with me on Friday, February 16, 2024.  Our firm represents Stephen J. Donnell (the "Receiver"), the State Court Appointed Receiver over the partnership assets and interests by and between Keith Bae and Jason Harley Bobson including, but not limited to: (1) the restaurant named Birdies, located at 314 W. Olympic Boulevard, Los Angeles, California 91401 ("Birdies") and (4) the restaurant named Wok N' Tenders, located at 312 W. Olympic Boulevard, Los Angeles, California 91401 ("Wok N' Tenders").

Enclosed for your information are copies of the Order Appointing Receiver and for Issuance of Preliminary Injunction in Aid of the Receiver (the "August 17, 2022 Order"), the Order on Ex Parte Application by Plaintiff for Turnover of Specific Vendor Information (the "February 27, 2023 Order"), and the Order Granting *Ex Parte* Application by Receiver Stephen J. Donell for Issuance of an Order: (1) Expanding the Order Appointing Receiver to Include the Operation and Control of the Entities DTLA South Park Corp., Bae FG Corp., and Wok N' Tenders, (2) Prohibiting Redirection of Any Merchant Processing Accounts with Respect to Birdies, DTLA South Park Corp., Bae FG Corp., and Wok N' Tenders, and (3) Requiring Approval of the Receiver of Any and All Expenses for Any Receivership Business (the "February 2, 2024 Order").

Paragraph 1 of the August 17, 2022 Order instructs the Receiver to:

"enter, gain access to, and take immediate possession of any Partnership asset wherever located, including but not limited to "Birdies", located at 314 W. Olympic Boulevard, Los Angeles, CA 91401, including the business Premises and any other location from which "Birdies" conducts business and operate, seize, manage, possess, control, collect proceeds of said business(es) . . .".

This order was reiterated and expanded on February 27, 2023, which instructed all vendors of Birdies to cooperate with the Receiver in continuing to provide service to the Receiver for the continuing operations of Birdies, as well as providing information regarding past services provided to Birdies.

{00810553}

Ms. Harianne Zolkover
Re: 314 W. Olympic Blvd., Los Angeles, CA 91401
February 16, 2024
Page 2

Finally, the order was further expanded by the February 2, 2024 order by which the Judge included the entity Wok N' Tenders, which entity was doing business at 312 W. Olympic.

As I stated in our conversation, it is the Receiver's intention to continue paying you the rent for the space he occupies. This morning, Keith Bae served the enclosed 3 Day Notice to Pay Rent or Quit to the Receiver. He purported to serve this as the "landlord" over your space at 314 W. Olympic. This 3 Day Notice is in violation of the Court's orders to Mr. Bae. In fact, Mr. Bae has been held in contempt by the Court for his failure to abide by the Court's orders.

Those issues are obviously not your concern. The purpose of my contact to you is to let you know who we are, about the Court orders that have been issued, and to let you know that the Receiver intends to fully comply with the obligations under the lease for the space.

I would be very happy to speak or meet with you and any attorney you may involve in this matter. We are simply attempting to carry out the orders of the Los Angeles Superior Court issued in this receivership, which includes the operation of the restaurant Birdies at 314 W. Olympic.

I thank you in advance for your cooperation and I look forward to speaking with you and/or your representatives at your earliest convenience.

Very truly yours,

MIRMAN, BUBMAN & NAHMIAS

Michael E. Bubman

{00810553}

`

# EXHIBIT V



BA20240181050



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

For Office Use Only

**-FILED-**

File No.: BA20240181050

Date Filed: 1/29/2024

**Entity Details**

| | |
|---|---|
| Corporation Name | Cali FG  Corp. |
| Entity No. | 5541996 |
| Formed In | CALIFORNIA |

**Street Address of Principal Office of Corporation**

| | |
|---|---|
| Principal Address | 312 W OLYMPIC BLVD LOS ANGELES, CA 90015 |

**Mailing Address of Corporation**

| | |
|---|---|
| Mailing Address | 312 W OLYMPIC BLVD LOS ANGELES, CA 90015 |
| Attention | Cali FG Corp |

**Street Address of California Office of Corporation**

| | |
|---|---|
| Street Address of California Office | 312 W OLYMPIC BLVD LOS ANGELES, CA 90015 |

**Officers**

| Officer Name | Officer Address | Position(s) |
|---|---|---|
| ■ Antonio D Jones | 312 W OLYMPIC BLVD LOS ANGELES, CA 90015 | Chief Executive Officer, Chief Financial Officer, Secretary |

**Additional Officers**

| Officer Name | Officer Address | Position | Stated Position |
|---|---|---|---|
| None Entered | | | |

**Directors**

| Director Name | Director Address |
|---|---|
| ■ Antonio D Jones | 312 W OLYMPIC BLVD LOS ANGELES, CA 90015 |

The number of vacancies on Board of Directors is: 0

**Agent for Service of Process**

| | |
|---|---|
| Agent Name | Alejandro H. Herrera |
| Agent Address | 100 WILSHIRE BLVD SUITE 700 SANTA MONICA, CA 90401 |

**Type of Business**

| | |
|---|---|
| Type of Business | Fast Casual Restaurant |

**Email Notifications**

| | |
|---|---|
| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |

**Labor Judgment**

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

B2451-7814 01/29/2024 10:20 AM Received by California Secretary of State

Electronic Signature

☒  By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*antonio jones*                                      *01/29/2024*
Signature                                            Date

B2451-7815 01/29/2024 10:20 AM Received by California Secretary of State

BA20240294475



**STATE OF CALIFORNIA**
*Office of the Secretary of State*
**STATEMENT OF INFORMATION
CORPORATION**
California Secretary of State
1500 11th Street
Sacramento, California 95814
(916) 653-3516

| For Office Use Only |
| --- |
| **-FILED-** |
| File No.: BA20240294475 |
| Date Filed: 2/14/2024 |

Entity Details

| Corporation Name | Cali FG Corp. |
| --- | --- |
| Entity No. | 5541996 |
| Formed In | CALIFORNIA |

Street Address of Principal Office of Corporation

| Principal Address | 1845 HAMNER AVE A NORCO, CA 92860 |
| --- | --- |

Mailing Address of Corporation

| Mailing Address | 1845 HAMNER AVE A NORCO, CA 92860 |
| --- | --- |
| Attention | Cali FG Corp |

Street Address of California Office of Corporation

| Street Address of California Office | 1845 HAMNER AVE A NORCO, CA 92860 |
| --- | --- |

Officers

| Officer Name | Officer Address | Position(s) |
| --- | --- | --- |
| Antonio D Jones | 1845 HAMNER AVE A NORCO, CA 92860 | Chief Executive Officer, Secretary, Chief Financial Officer |

Additional Officers

| Officer Name | Officer Address | Position | Stated Position |
| --- | --- | --- | --- |
| None Entered | | | |

Directors

| Director Name | Director Address |
| --- | --- |
| Antonio Jones | 1845 HAMNER AVE A NORCO, CA 92860 |

The number of vacancies on Board of Directors is: 0

Agent for Service of Process

| Agent Name | Alejandro H. Herrera |
| --- | --- |
| Agent Address | 100 WILSHIRE BLVD SUITE 700 SANTA MONICA, CA 90401 |

Type of Business

| Type of Business | Fast Casual Restaurant |
| --- | --- |

Email Notifications

| Opt-in Email Notifications | Yes, I opt-in to receive entity notifications via email. |
| --- | --- |

Labor Judgment

B2502-4506 02/14/2024 5:09 PM Received by California Secretary of State

No Officer or Director of this Corporation has an outstanding final judgment issued by the Division of Labor Standards Enforcement or a court of law, for which no appeal therefrom is pending, for the violation of any wage order or provision of the Labor Code.

Electronic Signature

☒ By signing, I affirm that the information herein is true and correct and that I am authorized by California law to sign.

*Antonio Jones* _____    *02/14/2024* _____
Signature                                    Date

B2502-4507 02/14/2024 5:09 PM Received by California Secretary of State

# EXHIBIT W



**California Secretary of State**
Electronic Filing

## Corporation - Statement of Information

| | |
|---|---|
| Entity Name: | PINK PANDA INC. |

| | |
|---|---|
| Entity (File) Number: | C4727078 |
| File Date: | 10/18/2021 |
| Entity Type: | Corporation |
| Jurisdiction: | CALIFORNIA |
| Document ID: | GX58825 |

**Detailed Filing Information**

1. Entity Name:

    PINK PANDA INC.

2. Business Addresses:

    a. Street Address of Principal
       Office in California:

    b. Mailing Address:

    312 W. Olympic Blvd
    Los Angeles, California 90015
    United States of America

    c. Street Address of Principal
       Executive Office:

    312 W. Olympic Blvd
    Los Angeles, California 90015
    United States of America

3. Officers:

    a. Chief Executive Officer:

    Andrew  Wong
    312 W. Olympic Blvd
    Los Angeles, California 90015
    United States of America

    b. Secretary:

    Andrew  Wong
    312 W. Olympic Blvd
    Los Angeles, California 90015
    United States of America

Document ID: GX58825

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

# California Secretary of State
## Electronic Filing

Officers (cont'd):

    c.  Chief Financial Officer:

                         Andrew  Wong
                         312 W. Olympic Blvd
                         Los Angeles, California 90015
                         United States of America

4.  Director:

                         Andrew  Wong
                         312 W. Olympic Blvd
                         Los Angeles, California 90015

    Number of Vacancies on the Board of
    Directors:                         United States of America

                         0

5.  Agent for Service of Process:

                         Alejandro  Herrera
                         100 Wilshire Blvd Ste 700
                         Santa Monica, California 90401
                         United States of America

6.  Type of Business:                restaurant

By signing this document, I certify that the information is true and correct and that I am authorized by California law to sign.

Electronic Signature:    Andrew Wong

*Use bizfile.sos.ca.gov for online filings, searches, business records, and resources.*

Document ID: GX58825

EXHIBIT X

**ProPublica**  TRACKING PPP                                      Donate

*Tracking PPP*

# Search Every Company Approved for Federal Loans

**Search for PPP loan applications by organization, lender, zip code and business type.**

|                                          | Search |
|------------------------------------------|--------|

Home ›

## I SAVANT NORCO CORP

❓ Why is my loan information here?

Loan Amount                             Amount Forgiven
**$73,090**                             **$73,703**
                                        *Includes any accrued interest*

Where applicants said the money will go

| | |
|---|---|
| Payroll | $73,090 |
| Utilities | $0 |
| Mortgage Interest | $0 |
| Health Care | $0 |
| Rent | $0 |
| Refinance EIDL | $0 |
| Debt Interest | $0 |

Location
**Los Angeles, CA**
Urban

Industry
**Limited-Service Restaurants**

Date Approved
**June 9, 2020 (First Round)**

Lender
**USC CU**

Jobs Reported
**20**

Business Type
**Corporation**

Business Age

Startup, Loan Funds will Open Business

Loan Status
Forgiven

Companies and nonprofit organizations that receive PPP loans may have the loans forgiven if they meet certain criteria, including not laying off employees during the defined period covered by the loan. Applicants must attest in their application that the loans are necessary for their continuing operation. Note: This data reflects loan applications approved by banks and submitted to the SBA. It may not account for money not distributed to, or credit not used by, a given company.

If you are a representative of this company and believe this record is in error, use this form to let the SBA know.

**About this data**

This data comes from the Small Business Administration, and includes lender-approved loans under the Paycheck Protection Program as of June 1, 2021. Other loan programs, such as Economic Injury Disaster Loans, are not included in this database. The data includes the congressional district of each organization, but for Pennsylvania and North Carolina the districts do not reflect 2018 redistricting.

Journalists: Thank you for using this database. Please cite ProPublica by linking to this page. Questions? Contact us.

ProPublica

# EXHIBIT Y

**PROPUBLICA** TRACKING PPP

Donate

*Tracking PPP*

# Search Every Company Approved for Federal Loans

**Search for PPP loan applications by organization, lender, zip code and business type.**

| | Search |
|---|---|

Home ›

## I SAVANT NORCO CORP.

🛈 Why is my loan information here?

| Loan Amount | Amount Forgiven |
|---|---|
| **$108,000** | **$108,612** |
| | *Includes any accrued interest* |

Where applicants said the money will go

| | |
|---|---|
| Payroll | $108,000 |
| Utilities | $0 |
| Mortgage Interest | $0 |
| Health Care | $0 |
| Rent | $0 |
| Refinance EIDL | $0 |
| Debt Interest | $0 |

Location
**Los Angeles, CA**
Urban

Industry
**Limited-Service Restaurants**

Date Approved
**March 1, 2021 (Second Round)**

Lender
**USC CU**

Jobs Reported
**20**

Business Type
**Corporation**

Business Age

Existing or more than 2 years old

Loan Status
Forgiven

Companies and nonprofit organizations that receive PPP loans may have the loans forgiven if they meet certain criteria, including not laying off employees during the defined period covered by the loan. Applicants must attest in their application that the loans are necessary for their continuing operation. Note: This data reflects loan applications approved by banks and submitted to the SBA. It may not account for money not distributed to, or credit not used by, a given company.

If you are a representative of this company and believe this record is in error, use this form to let the SBA know.

**About this data**

This data comes from the Small Business Administration, and includes lender-approved loans under the Paycheck Protection Program as of June 1, 2021. Other loan programs, such as Economic Injury Disaster Loans, are not included in this database. The data includes the congressional district of each organization, but for Pennsylvania and North Carolina the districts do not reflect 2018 redistricting.

Journalists: Thank you for using this database. Please cite ProPublica by linking to this page. Questions? Contact us.

ProPublica

`

# EXHIBIT Z



Michael E. Bubman, Esq.
mbubman@mbn.law

February 29, 2024

<u>*VIA EMAIL*</u>

Mr. Jason Bobson
13600 Sylvan St.
Van Nuys, CA 91401
chefj@blacksteel.tv

Alejandro H. Herrera, Esq.
Herrera Clifton Hess
100 Wilshire Blvd., Suite 700
Santa Monica, CA 90401
alex@herreracliftonhess.com

Re:  <u>Bobson v. Bae, LASC Case No.  BC650612  - NOTICE OF EX PARTE APPLICATION</u>

Counsel and Parties:

I am writing to provide you notice of an *ex parte* application by the Receiver, Stephen J. Donell, in the above-referenced matter.  On Friday, March 1, 2024, I will be appearing in Department 51 of the Los Angeles Superior Court, located at 111 N. Hill Street, Los Angeles, CA 90012 at 8:30 a.m., on an *ex parte* basis on behalf of State Court Appointed Receiver, Stephen J. Donell, seeking the issuance of an order: (1) Granting the Receiver the Authority To Hire The Maloney Group, APC as Counsel for the Limited Purpose of Pursuing Professional Negligence and Legal Malpractice Claims against Alejandro Herrera, Esq. on behalf of Birdies, and to Pursue a Legal Malpractice Action; (2) Granting the Receiver the Authority to File a Chapter 7 Bankruptcy Petition, if Necessary; (3) Seeking Clarification of the Appointing Order as: (a) Applying to Various Additional Entities, Including I Savant FG, I Savant Norco Corp., Cali FG Corp., Pink Panda Inc., Norco Hamner Corp, Birdies LA, and Birdies DTLA; and (B) Enjoining Eviction of The Receiver from the Birdies Premises by Defendant Keith Bae and His Associates.

Please let me know at your earliest convenience whether you plan to attend the hearing and if you will be opposing (or alternatively, are in favor of) the requested relief.  Thank you.

Very Truly Yours,

Michael E. Bubman

MEB
cc:  Stephen J. Donell

(SPACE BELOW FOR FILING STAMP ONLY)

# PROOF OF SERVICE

LOS ANGELES COUNTY    )
                                            ) ss
STATE OF CALIFORNIA    )

     I am employed in the County of Los Angeles, State of California, in the office of a member of the bar of this court at whose direction the service was made. I am over the age of 18 and not a party to the within action. My business address is 16133 Ventura Blvd., Suite 1175, Encino, California 91436.

     On **February 29, 2024**, I served a true and correct copy of the document described as **DECLARATIONS OF STEPHEN DONELL, SARAH BATES, OSCAR GONZALEZ SANCHEZ, AND MICHAEL E. BUBMAN IN SUPPORT OF EX PARTE APPLICATION BY RECEIVER STEPHEN J. DONELL FOR ISSUANCE OF AN ORDER: 1. GRANTING RECEIVER AUTHORITY TO HIRE SPECIAL COUNSEL FOR THE PURPOSE OF INVESTIGATING AND PURSUING PROFESSIONAL NEGLIGENCE CLAIMS AGAINST ALEJANDRO HERRERA, ESQ.; 2. GRANTING RECEIVER AUTHORITY TO FILE BANKRUPTCY PETITION; 3. CLARIFYING APPOINTING ORDER AS: (A) APPLYING TO ADDITIONAL ENTITIES; AND (B) ENJOINING EVICTION OF THE RECEIVER FROM BIRDIES PREMISES BY BAE AND HIS ASSOCIATES** the interested parties named below, as follows:

## SEE ATTACHED SERVICE LIST

[X]   (BY MAIL) I am familiar with the ordinary business practice of the law firm of MIRMAN, BUBMAN & NAHMIAS for collection and processing of correspondence for mailing with the United States Postal Service at the aforementioned place of business and that the above-entitled document was placed in a sealed envelope and deposited for collection and mailing on the date stated above, following such ordinary practices, and in such manner as to cause it to be deposited with the United States Postal Service that same day, with postage thereon fully prepaid, in the ordinary course of business, addressed as indicated above.

[ ]   (BY FACSIMILE TRANSMISSION) Based on the agreement of the parties to accept service by facsimile transmission, I faxed the document(s) to the person(s) via facsimile machine number (818) 451-4620 to the person(s) at the fax number(s) listed on the service list on February 29, 2024. No error was reported by the facsimile machine that I used.

[X]   (BY E-MAIL) Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission. I caused the documents to be sent to the persons at the e-mail addresses listed. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

[ ]   (BY PERSONAL SERVICE) I caused such envelope to be delivered by hand to the offices of the addressee.

[ ]   (BY OVERNIGHT DELIVERY, CCP 1013(c, d) I enclosed the documents in an envelope or package provided by an overnight delivery carrier and addressed to the persons at the addresses listed below. I placed the envelope or package for collection and overnight delivery at an office or a regularly utilized drop box of the overnight delivery carrier.

[X]   (STATE) I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on February 29, 2024 at Encino, California.

ANA I. ACOSTA

{00745790}

1

1

<u>Service List</u>
*Bobson v. Bae, et al.*

2

3
**BY EMAIL AND MAIL**
Jason Bobson

4
13600 Sylvan St.
Van Nuys, CA  91401

5
Telephone:  (310) 428-3060
Email:  chefj@blacksteel.tv

6
In Pro Per

7
**BY EMAIL ONLY**
Alejandro H. Herrera, Esq.

8
HERRERA CLIFTON HESS, PC

9
100 Wilshire Blvd., Suite 700
Santa Monica, CA  90401

10
Telephone:  (310) 570-0513
Email: alex@hch.law

11
        alex@herreracliftonhess.com

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT B

1

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA
2               FOR THE COUNTY OF LOS ANGELES
3    DEPARTMENT 51                HON. UPINDER KALRA, JUDGE
4
5    JASON HARLEY BOBSON, AN INDIVIDUAL,)
                                       )
6              PLAINTIFF,              )
                                       )
7         VS.                         ) NO. BC650612
                                       )
8    KEITH BAE, AN INDIVIDUAL; AND     )
     DOES 1-10, INCLUSIVE,            )
9                                      )
               DEFENDANTS.            )
10   _____)
11
12
13         REPORTER'S TRANSCRIPT OF ORAL PROCEEDINGS
14               FRIDAY, MARCH 1, 2024
15
16
17   APPEARANCES:
18   FOR PLAINTIFF:
19   HERRERA CLIFTON HESS, P.C.
     BY:  ALEJANDRO H. HERRERA, ESQ.
20   100 WILSHIRE BOULEVARD, SUITE 700
     SANTA MONICA, CALIFORNIA 90401
21   (310) 570-0513
22   FOR COURT-APPOINTED RECEIVER, STEPHEN J. DONELL:
23   MIRMAN, BUBMAN & NAHMIAS
     BY:  MICHAEL E. BUBMAN, ESQ.
24       MORGAN L. BUBMAN, ESQ.
     16133 VENTURA BOULEVARD, SUITE 1175
25   ENCINO, CALIFORNIA 91436
     (818) 451-4600
26
27   REPORTED BY:            KYLIE SHEPHERD, CSR NO. 13756
                             OFFICIAL REPORTER PRO TEMPORE
28

2

1                          I N D E X

2

3

4                          SESSIONS

5                                                    PAGE

6   FRIDAY, MARCH 1, 2024

        A.M. SESSION                                   3

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

3

1   CASE NUMBER:          BC650612

2   CASE NAME:            BOBSON VS. BAE, ET AL.

3   LOS ANGELES, CALIFORNIA   FRIDAY, MARCH 1, 2024

4   DEPARTMENT 51        HON. UPINDER KALRA, JUDGE

5   APPEARANCES:         (AS HERETOFORE NOTED)

6   REPORTER:             KYLIE SHEPHERD, CSR NO. 13756

7   TIME:                9:34 A.M.

8                  (IN OPEN COURT:)

9

10      THE COURT:  LET'S CALL THE BOBSON VS. BAE MATTERS.

11      COUNSEL, STEP FORWARD, PLEASE.  LET'S CALL COUNSEL

12   FOR THE RECEIVER, PLEASE.

13      MR. BUBMAN:  GOOD MORNING, YOUR HONOR.  MICHAEL

14   BUBMAN AND MORGAN BUBMAN FOR THE RECEIVER, STEPHEN

15   DONELL.

16      THE COURT:  COUNSEL FOR MR. BAE?

17      MR. HERRERA:  ALEJANDRO HERRERA FOR MR. BAE, WHO'S

18   ALSO PRESENT.

19      THE COURT:  OKAY.  YOU ALL MAY HAVE A SEAT.

20      WE HAVE A SENTENCING FOR CONTEMPT.  I WAS GOING TO

21   PROCEED WITH THE SENTENCING TODAY, BUT THERE'S ALSO AN

22   EX PARTE APPLICATION FOR AN ORDER AUTHORIZING TO HIRE

23   SPECIAL COUNSEL TO FILE BANKRUPTCY, THEREBY APPOINTING

24   ORDER.

25      I RECEIVED THAT DECLARATION.  I REVIEWED THE

26   DECLARATION.  I REVIEWED THE POINTS AND AUTHORITIES.  I

27   RECEIVED NO OPPOSITION.

28      MR. BAE, DID YOU WANT TO BE HEARD?

4

1        MR. HERRERA:  YES, YOUR HONOR.

2        THERE'S NO EMERGENCY BEHIND IT, FIRST OF ALL.  SO

3    IT CAN BE SET AS A REGULAR MOTION, THEN WE COULD GET AN

4    OPPORTUNITY TO CLOSE IT.

5        THEY KNOW THAT WE'RE IN THE PROCESS OF BEING

6    INUNDATED WITH EMAILS, GETTING DOCUMENTS UPLOADED SO

7    THAT THEY HAVE ACCESS TO EVERYTHING AND COMPLETED IT.

8    EVERYTHING'S BEEN COMPLETED AS OF YESTERDAY.

9        AND JUST GIVEN AN OPPORTUNITY TO RESPOND TO 200

10    PAGES OF AN EX PARTE, MAKING ALLEGATIONS THAT DON'T HAVE

11    ANY EVIDENCE UNDERNEATH.  FOR EXAMPLE, EVEN ACCUSING

12    MYSELF OF PARTICIPATING IN SOME TAX FRAUD BECAUSE I'M

13    LISTED AS AN AGENT FOR SERVICE ON ENTITIES.  BUT IT'S AN

14    OUTRAGEOUS ALLEGATION, BUT THAT'S IT.  IF THEY WANT A

15    HEARING ON THAT, THEY CAN HAVE A HEARING ON THAT, BUT

16    NOT ON AN EX PARTE BASIS.

17        IF THEY WANT TO EXPAND THE ORDER NOW AND TRY TO

18    GRAB THE LOCATION NEXT DOOR BECAUSE THERE'S AN OVERLAP

19    THERE, IT'S A SEPARATE BUSINESS.  IT'S ALWAYS BEEN A

20    SEPARATE BUSINESS.  THE BUSINESS SHUT DOWN AND

21    ALLOWED -- TO USE SOME OF ITS LOGISTICS.  AND NOW,

22    THEY'RE TRYING TO EXPAND INTO IT, ACCUSING MR. BAE OF

23    THEFT, ACCUSING HIM OF INTERFERING WITH HIS OWN

24    BUSINESS, SOME WAY SOMEHOW, HURTING HIMSELF, CLEARLY

25    BECAUSE THEY WANT TO ATTACK HIM IN EVERY POSSIBLE WAY

26    AND COMPLETELY RUIN HIS BUSINESS.

27        AT THE END OF THE DAY, THE PARTNERSHIP HAS BEEN

28    DISSOLVED.  THERE NEEDS TO BE A FINAL ACCOUNTING AND

5

1    DISPOSE THAT.  THAT IS THE CASE.

2        I UNDERSTAND THINGS ARE -- BUT WE'RE COMPLETELY OFF

3    THE RAILS WITH WHAT'S HAPPENING NOW.  MR. BAE'S ENTIRE

4    BUSINESS HAS BEEN SHUT DOWN AT THIS POINT, TO THE POINT

5    OF WANTING TO SEEK BANKRUPTCY, YOUR HONOR.

6        WE WARNED THE COURT ABOUT THIS:  THAT THEY'RE

7    SHUTTING IT DOWN.  THEY DON'T KNOW WHAT THEY'RE DOING.

8    THEY DO NOT HAVE EXPERIENCE IN THE RESTAURANT BUSINESS

9    AND THEY WON'T BE ABLE TO VERIFY THAT THEY DO.

10       MR. DONELL HAD NO IDEA.  HIS OWN EMPLOYEES HAVE

11   ADMITTED THAT THEY JUST DON'T KNOW WHAT THEY'RE DOING

12   AND THEY WERE RUNNING THE BUSINESS INTO THE GROUND.

13       AND EVERY SINGLE THING, EVERY SINGLE THING THAT HAS

14   HAPPENED, ANY SHORTCOMING HAS BEEN BLAMED ON MR. BAE.

15   HE'S BEEN BLAMED FOR EVERY SINGLE THING, NO MATTER WHAT

16   IT IS.  INVENTORY SHORTAGES; STEALING CASH, EVEN THOUGH

17   HE WAS GIVEN WRITTEN PERMISSION TO DO WHAT HE DID.

18       HE'S CONSTANTLY BEING ACCUSED OF ONE WRONG THING OR

19   THE OTHER, BLAMED FOR THE FAILURE OF THE RESTAURANT

20   WHICH HE WAS OPERATING, BLAMED FOR AVOIDING TAXES WHICH

21   HE, IN WRITING, ACCEPTED AND HAS BEEN IN COMMUNICATIONS

22   WITH THE TAX AGENCY.

23       SO NONE OF THESE ALLEGATIONS HAVE EVIDENCE.

24   THEY'RE ABSOLUTELY MISLEADING, JUST IN MY REVIEW OF IT.

25   AN OPPORTUNITY TO RESPOND IN A MEANINGFUL WAY IS

26   ABSOLUTELY NECESSARY BECAUSE THERE'S NOTHING -- THERE'S

27   NOTHING WITH ANY URGENCY HERE WHERE ANOTHER ORDER NEEDS

28   TO BE -- THIS JUST FURTHER FRUSTRATING EVERYTHING.

6

1   THERE'S JUST NOTHING THERE THAT REQUIRES ANYTHING ON AN

2   EMERGENCY BASIS.

3        THE COURT:  OKAY.  THIS MATTER SUBMITTED?

4        MR. HERRERA:  YES.

5        THE COURT:  THE COURT IS GRANTING IT IN FULL.

6        I HOLD THE STANDARD FOR IRREPARABLE HARM SERIOUSLY.

7   MOST EX PARTES ARE DENIED BECAUSE PARTIES CANNOT REACH

8   THAT STANDARD.  THEY HAVE MORE THAN EXCEEDED THE

9   STANDARD HERE.

10       THE CONDUCT BY YOUR CLIENT IS OUTRAGEOUS, CONTINUES

11  TO BE OUTRAGEOUS.  THE ALLEGATIONS ARE SUPPORTED BY

12  EVIDENCE.  THERE IS DECLARATIONS.  THERE'S SPORTING

13  DOCUMENTS.  THE NOTION THAT THERE'S NO EVIDENCE BEFORE

14  THE COURT IS SPECIOUS.

15       THE COURT HAS RECEIVED SIGNIFICANT AMOUNTS OF

16  EVIDENCE IN OTHER HEARINGS.  I'M NOT BLIND TO WHAT'S

17  GOING ON.  YOUR CLIENT, FOR YEARS, HAS REFUSED TO COMPLY

18  WITH COURT ORDERS, REFUSED -- WILLFULLY REFUSED.  THE

19  COURT CONDUCTED A CONTEMPT HEARING AND MADE SUCH

20  FINDINGS, PUT THE SENTENCING OVER AT HIS REQUEST AND

21  YOUR REQUEST.

22       YOU, TOO, ARE PART OF THE CONTENTION.  AND BECAUSE

23  OF DEFECTS, THE COURT RIGHTFULLY ACQUITTED YOU.  THAT'S

24  NOT TO SAY THAT YOU'RE NOT PART OF WHAT THEY LABELED AS

25  OUTRAGEOUS MISCONDUCT.  THEY LABEL IT AS CONSPIRACY.

26  YOU ARE PART IN PARCEL OF WHAT IS GOING ON HERE.

27       WHILE THE COURT MAY HAVE ACQUITTED YOU OF THE

28  CONTEMPT BECAUSE THE STANDARD IS BEYOND A REASONABLE

7

1   DOUBT, THE COURT IN NO WAY IS SANCTIONING OR CONDONING

2   YOUR BEHAVIOR, NOR IS IT BLIND TO YOUR BEHAVIOR AS AN

3   INDIVIDUAL.

4        AND MR. BAE'S BEHAVIOR IS INEXCUSABLE.  IT'S EVEN

5   WORSE THAN WAS PRESENTED TO ME AT THE CONTEMPT HEARING.

6   BUT I'M NOT GOING TO LET THAT BLEED INTO THE SENTENCING,

7   MY CONTEMPT HEARING.  MY SENTENCING IS MY SENTENCING.  I

8   PUT IT OVER FOR HIM FOR MITIGATION.

9        I'M NOT GOING TO ADD ANYTHING TO -- AGGRAVATION, I

10  WANT TO MAKE THAT CLEAR.  BUT IN REGARDS TO WHAT THEY'RE

11  REQUESTING HERE SO THEY CAN DO THEIR JOB AS THE

12  RECEIVER, THE ORDER WAS ENTERED TWO YEARS AGO,

13  APPROXIMATELY.  THERE WAS NO REASON FOR A RECEIVER

14  EXCEPT FOR YOUR CLIENT'S UNWILLINGNESS TO PARTICIPATE IN

15  ACCOUNTING.  THAT'S WHAT STARTED THIS OFF.  THAT IS WHY

16  THERE WAS A RECEIVER.

17       AND NOW, THE RECEIVER HAS BEEN PREVENTED FROM DOING

18  THEIR JOB FOR YEARS.  WHEN THEY FINALLY GOT IN TO SEE

19  THE HABIT AND THE DESTRUCTION AND THE MALFEASANCE THAT

20  YOUR CLIENT HAS ENGAGED IN IN RUNNING THIS BUSINESS,

21  THEY'RE ASKING FOR ADDITIONAL AUTHORITY.  THIS AUTHORITY

22  IS -- SOME OF IT IS JUST A CLARIFICATION; SOME OF IT IS

23  ADDITIONAL AUTHORITY.  THEY WANT TO HIRE A -- TO DO

24  BANKRUPTCY, THAT'S ADDITIONAL AUTHORITY.

25       AS REGARDS TO THE ORDER REGARDING THESE OTHER

26  ENTITIES, THEY WERE SET UP BY YOUR CLIENT TO AVOID

27  COMPLYING WITH THE COURT'S ORDER.  THAT JUST IS A

28  CLARIFICATION.  THE COURT --

8

1        MR. HERRERA:  THAT WASN'T IN THE MOTION, YOUR

2   HONOR.  I'M SORRY.  NOTHING WAS SET UP.

3        THE COURT:  EXCUSE ME.  EXCUSE ME.  YOU SUBMITTED.

4   I'M RULING.  THE ORDER IS GRANTED IN FULL.

5        NEXT ISSUE:  YOU WANT TO PROCEED WITH THE

6   SENTENCING OR NOT?

7        MR. HERRERA:  YES, YOUR HONOR.

8        I WANT TO POINT OUT THAT THE COURT'S FEBRUARY

9   SENTENCE ORDER, THERE HAS BEEN AN APPEAL FILED IN THAT

10  MATTER.  SO I WANTED TO POINT THAT OUT.

11       THERE'S ALSO A COUPLE OF MOTIONS THAT ARE ON FILE,

12  JUST REGULAR MOTIONS.  AND ONE OF THEM ADDRESSES THE

13  ISSUE OF THE ACCOUNTING PERIOD THAT WE'VE BEEN

14  REQUESTING FOR YEARS.  AND IT'S AS SIMPLE AS THAT.

15       WE'RE ASKING THAT THE COURT FINISH THE RULINGS THAT

16  IT'S BEEN ASKED TO DO, AND THAT WOULD ALLOW THE

17  ACCOUNTING PERIOD TO BE DETERMINED AND THE ACCOUNTING

18  COMPLETE AND THE PARTNERSHIP DISSOLUTION COMPLETE.

19  THAT'S ON CALENDAR, YOUR HONOR.

20       AND THE SECOND ONE IS TO ADDRESS THE ISSUE WITH THE

21  RECEIVER.  THE RECEIVER HAS ACTED IN A BIASED WAY.  FOR

22  EXAMPLE, THE MOST --

23       THE COURT:  SO THAT'S -- THAT'S -- OKAY.  YOU HAVE

24  A MOTION ON CALENDAR, YOU CAN --

25       MR. HERRERA:  IT RELATES TO THIS ONE.  THE BIAS AND

26  THE CONDUCT OF THE RECEIVER IS ABSOLUTELY -- IS

27  ABSOLUTELY PROVEABLE BY --

28       THE COURT:  THE QUESTION RIGHT NOW FROM THE COURT,

9

1   THE QUESTION THE COURT ASKED YOU:  DO YOU WANT TO

2 PROCEED WITH THE SENTENCING?  THAT'S THE ONLY ISSUE

3 RIGHT NOW THIS CALENDAR THAT'S LEFT TODAY IS THE

4 SENTENCING OF YOUR CLIENT.

5     I PUT IT OVER SINCE JANUARY.  WE WERE SUPPOSED TO

6 SENTENCE FORTHWITH.  THE ONLY REASON I DIDN'T IS WE WERE

7 AT 4:30, AND I ASKED YOUR CLIENT, "DO YOU WANT ME TO

8 SENTENCE YOU?"  AND HE ASKED ME A QUESTION ABOUT WHETHER

9 HE'S GOING TO GO TO JAIL.  I SAID, "IT'S NOT GOING TO

10 HAPPEN NOW.  IF YOU WANT TO PUT THE SENTENCING OVER,

11 I'LL PUT IT OVER."  I PUT IT OVER AT HIS REQUEST.  IT

12 GOT PUT OVER ONCE.

13     WE'RE HERE.  DO YOU WANT ME TO PROCEED WITH THE

14 SENTENCING OR NOT?  THAT'S MY QUESTION.

15     MR. HERRERA:  YES, WE ARE, YOUR HONOR.  I WAS JUST

16 POINTING OUT -- PROCEEDING WITHOUT THE COURT CONSIDER

17 THE FILINGS INVOLVED.

18     AND I DIDN'T FINISH EXPLAINING WHAT THE LAST ONE

19 WAS, BUT --

20     THE COURT:  I DON'T KNOW -- WHAT I INDICATED TO

21 YOUR CLIENT, BECAUSE YOUR CLIENT WALKED IN, I ENCOURAGED

22 HIM WHILE WE PUT IT OVER FOR THE SENTENCING, WHAT WOULD

23 BE HELPFUL TO THE COURT IS, IN REGARDS TO MITIGATION, IF

24 HE ULTIMATELY COMPLIED WITH THE COURT'S ORDERS.  THAT

25 WAS IN JANUARY.  WE PUT IT OVER FOR A PERIOD OF TIME.

26     HE WALKED IN WITH A BOX AT THIS SENTENCING, WHICH

27 IS KIND OF SURPRISING, THINKING THAT THAT WAS

28 MITIGATION.  IT WAS NOT.  AND THEN I ASKED HIM AGAIN ON

10

1  THAT DATE AND -- PUT IT OVER TO NOW COMPLY.  WE PUT IT

2  OVER ANOTHER DAY.

3       THERE WERE MORE FILINGS, ELECTRONIC FILINGS.  OTHER

4  ISSUES AROSE.  WE WERE ASKED TO PUT OVER THE SENTENCING

5  AGAIN.  THIS IS ALL ABOUT MITIGATION.  SO IF YOU'RE

6  READY TO PROCEED WITH SENTENCING, WE'LL PROCEED, BECAUSE

7  I HAVE NO MITIGATION.

8       MR. HERRERA:  DECLARATION WAS FILED YESTERDAY BY --

9  DECLARATION FROM MR. BAE, SHOWING ITEM BY ITEM ON THE --

10  LETTER REQUEST FROM MR. DONELL FEBRUARY 7 LETTER,

11  SHOWING ITEM BY ITEM AND ADDRESSING HIS COMPLIANCE WITH

12  EVERY SINGLE ITEM.

13       AT THIS POINT, HE'S DONE EVERYTHING HE CAN DO.  IT

14  DOESN'T SEEM LIKE THERE'S ANYTHING THAT MR. BAE CAN DO

15  THAT WON'T RECEIVE A COMPLAINT OF SOME SORT OR

16  GRIEVANCE.

17       THERE'S THIS WHOLE RAMBLE ABOUT ACCESS TO -- AND

18  HOW IT CAN BE DISRUPTED AND ALL OF THAT.  THEY'VE NEVER

19  BEEN DISRUPTED FROM THEIR ACCESS.  THEY ALWAYS HAVE FULL

20  ACCESS TO IT AND THEY CONTINUE TO HAVE FULL ACCESS.

21  THAT'S THE REALITY AND THE TRUTH.

22       AND HE'S HANDED EVERYTHING THAT HE CAN HAND OVER,

23  YET SOMEHOW, THERE'S STILL COMPLAINTS ABOUT HIM.  THOSE

24  DON'T SEEM TO BE ESCAPABLE.  BUT COMPLIANCE BY MR. BAE

25  IS DONE.  HE HAS TO FIND ITEM BY ITEM, EVERYTHING --

26  CAPABLE OF PROVIDING.

27       AND THAT, I WANT TO MAKE SURE THE COURT DEFINITELY

28  HEARS BECAUSE HE HAS COMPLIED.  HE'S AT THE END OF HIS

11

1    ABILITY TO DO ANYTHING MORE.  HE'S NOT BEING PAID.  HE

2    DOESN'T WORK FOR THE RESTAURANT -- I MEAN, BEFORE IT

3    CLOSED.  AND GIVE ALL THE INFORMATION AND RECORDS, WHICH

4    HE'S DONE.

5        AND HERE WE ARE.  HE COMPLETED AS MUCH AS HE CAN

6    COMPLETE.  THERE'S STILL COMPLAINTS ABOUT IT, BUT

7    THERE'S NOTHING MORE THAT HE CAN DO ABOUT IT.  HE'S

8    AVAILABLE TO HELP.  BUT ANYTHING -- IT GOES BEYOND

9    REASONABLENESS OF WHAT'S BEING EXPECTED OF HIM.

10       HOWEVER, LIKE I SAID, AS LONG AS THE COURT CAN

11   CONSIDER THAT, I WANT TO MAKE SURE THAT THE COURT DOES

12   SEE IT AND DOES CONSIDER THAT AT SENTENCING.

13       THE COURT:  SO I LOOK AT MY FILES A FEW DAYS BEFORE

14   THE HEARINGS.  WHEN I LEFT YESTERDAY, IT WAS ABOUT 6:00.

15   I HAD NO FILINGS.  SO ONCE AGAIN, FILINGS WERE MADE

16   LATE.

17       I REMINDED YOU ABOUT THAT.  THIS FILING IS FILED

18   11:32.  THAT IS CONSISTENT WITH WHAT YOU AND MR. BAE

19   ENGAGED IN.  YOU WALK IN WITH DOCUMENTS AT A HEARING OR

20   YOU FILE DOCUMENTS THE MORNING OF THE HEARING, WHICH IS

21   WHAT HAPPENED LAST TIME.  NOW, YOU FILE IT THE NIGHT OF

22   THE HEARING.

23       I READ IT.  YOU WANT ME TO CONSIDER THIS, I WILL

24   HEAR FROM THE RECEIVER, BECAUSE I'M SURE THEY HAVE A --

25   THEY'LL HAVE A POSITION.

26       MR. HERRERA:  YEAH, THAT'S FINE.

27       MR. BUBMAN:  THE ONLY POSITION I HAVE, YOUR HONOR,

28   WE WEREN'T SERVED WITH IT.  I'VE NEVER SEEN IT.  I JUST

12

1  LOOKED AT MY EMAIL AGAIN.  WE WEREN'T SERVED WITH

2  ANYTHING.  I HAVE NO IDEA WHAT HE FILED LAST NIGHT.

3       THE COURT:  I DIDN'T KNOW ANYTHING UNTIL JUST THIS

4  MOMENT BECAUSE IT JUST GOT IN MY QUEUE.  AND I'VE

5  EXPLAINED THAT TO THEM.  THE WAY THE FILING WORKS, HE

6  HAS TO FILE AT LEAST A DAY AHEAD OF TIME.  HE FILED THE

7  MORNING OF, WHICH IS WHAT THEY DID LAST TIME, OR AT

8  11:32 P.M.  IT DOESN'T GET TO THE QUEUE.  AND THE PROOF

9  OF SERVICE SAYS THAT THEY SERVED YOU BY EMAIL AT 11:32

10  LAST NIGHT.

11       MR. BUBMAN:  DIDN'T HAVE IT.

12       THE COURT:  OKAY.  FINE.  I'LL PASS.  I WILL PRINT

13  IT OUT.  WE'LL HAVE YOU READ IT.  WE'LL PASS IT.  I'M

14  GOING TO GO TO MY NEXT CASE.

15            (RECESS TAKEN.)

16       THE COURT:  OKAY.  WE'RE BACK ON THE RECORD ON THE

17  BOBSON MATTER.  WE HAVE COUNSEL FOR THE RECEIVER IN

18  COURT.  WE HAVE COUNSEL FOR MR. BAE IN COURT.

19       COUNSEL FOR THE RECEIVER, DID YOU HAVE A CHANCE TO

20  REVIEW THE DECLARATION FILED LAST NIGHT AT 11:30-ISH?

21       MR. BUBMAN:  YES, I HAVE, YOUR HONOR.

22       THE COURT:  DO YOU HAVE ANY COMMENTS?

23       MR. BUBMAN:  I HAVE MANY COMMENTS.

24       THE COURT:  BRIEF.  HOW ABOUT FIVE MINUTES OR LESS?

25       MR. BUBMAN:  PERFECT.

26       JUST GOING THROUGH THIS, MR. BAE TAKES A PORTION OF

27  WHAT WAS REQUESTED AND SAYS, "OH, I PROVIDED THAT ONE

28  THING."  A PERFECT EXAMPLE, THE FIRST ONE:  NAME A

13

1   PAYROLL SERVICE PROVIDER.  A WHOLE PARAGRAPH FULL OF
2   STUFF THAT WE WERE REQUESTING.
3        HE DID PROVIDE THE NAME OF THE PAYROLL SERVICE
4   PROVIDER ULTIMATELY.  IT REQUIRED THAT I PERSONALLY WENT
5   TO THE PAYROLL SERVICE PROVIDER, SERVED THEM WITH THE
6   ORDERS, AND SAID, "WE'VE ASKED YOU TO COMPLY."  AND THEY
7   SAID, "OH, WE'RE WAITING TO GET CONSENT FROM MR. BAE
8   BEFORE WE PROVIDED ANY INFORMATION."
9        I SHOWED THEM THE ORDER AND TOLD THEM, "HEY, YOU
10  NEED TO GIVE THIS TO THE RECEIVER."  THEY SAID, "NO
11  PROBLEM.  WE'LL GIVE YOU WHATEVER YOU WANT FROM US."  SO
12  WE GOT THE RECORDS FROM THEM.  HE STILL HASN'T PROVIDED
13  MUCH OF THE INFORMATION THAT WE'VE BEEN ASKING FOR FROM
14  HIM.
15       AND BY THE WAY, I'LL NOTE THAT IN HIS DECLARATION,
16  HE SAYS, "AS OF THE LAST HEARING DATE OF FEBRUARY 2, I
17  PROVIDED THE INFORMATION AND RECORDS LISTED ON
18  MR. DONELL'S FEBRUARY 7, 2024, LETTER."
19       IF HE'S SAYING THAT I PROVIDED IT AS OF FEBRUARY 2,
20  THAT CLEARLY DIDN'T HAPPEN BECAUSE THIS LETTER WAS
21  WRITTEN ON FEBRUARY 7 TO SAY, "THIS IS THINGS WE STILL
22  NEED AND HAVEN'T GOTTEN."
23       IF HE'S SAYING THAT IN ADDITION TO THAT, "I'VE
24  PROVIDED THESE THINGS," I CAN TELL YOU ANYTHING THAT HE
25  SAYS, NO. 1:  WAS PROVIDED VIA DROPBOX.  NOBODY EVER
26  SAID, "HEY, HERE'S A DROPBOX.  GO LOOK AT IT."
27       NOW, THERE WERE THINGS THAT WERE UPLOADED TO
28  DROPBOX PRIOR TO FEBRUARY 2ND, WHICH I DOWNLOADED AND

14

1    RECEIVED.  NONE OF THESE THINGS WERE IN THERE.  AND

2    SINCE THAT TIME, I HAVEN'T LOOKED AT IT AND NOBODY'S

3    TOLD ME, "HEY, WE'VE UPLOADED MORE THINGS TO THAT

4    DROPBOX IF YOU WANT TO TAKE A LOOK AT IT."  EVERY OTHER

5    TIME SINCE, I BELIEVE IT WAS JANUARY 2ND, I WENT AND

6    LOOKED AT THE DROPBOX NUMEROUS TIMES TO SEE WHAT WAS

7    UPLOADED, AND NOT ONE THING WAS UPLOADED SINCE THAT

8    TIME.

9        MOST OF THE INFORMATION ON HERE, WHAT IS

10   INTERESTING ABOUT IT IS IT'S SIMILAR TO THE FIRST ITEM.

11   HE SAYS, NO. 2:  PAYROLL TAXES.  HE DIDN'T GIVE US

12   ANYTHING ABOUT PAYROLL TAXES.

13       THE ONLY THING WE GOT ABOUT PAYROLL TAXES WAS THE

14   PAYROLL TAX PROVIDER TOLD US, "WE FILED ALL THE 941

15   RETURNS."  SOMEHOW MR. BAE SEEMS TO THINK THAT WAS

16   ENOUGH, AND I GUESS YOU DON'T HAVE TO PAY THE PAYROLL

17   TAXES.  NONE OF THE PAYROLL TAXES WERE PAID.  WE HAVEN'T

18   GOTTEN ANY RECORDS SHOWING THAT ANYTHING WAS PAID.

19       BUT WHAT WE DO KNOW FROM THE RECORDS WE RECEIVED

20   FROM THE PAYROLL SERVICE PROVIDER, THAT THE EMPLOYEES

21   WERE PAID THEIR NET PAY AS IF TAXES HAD BEEN TAKEN OUT,

22   YET NONE OF THOSE WERE PAID IN.  SO HE'S BASICALLY TAKEN

23   MONEY FROM THE EMPLOYEES.

24       THE COURT:  SO LET ME ASK YOU A QUESTION ABOUT

25   THAT.

26       MR. BUBMAN:  YEAH.

27       THE COURT:  AND THIS IS IN REFERENCE TO YOUR

28   DECLARATION.  APPROXIMATELY, THERE'S A $900,000 LIEN IN

15

1   TAXES.  IS THAT PAYROLL TAXES?  REAL ESTATE TAXES?

2   SALES TAX?  WHAT TYPE OF TAXES?

3        MR. BUBMAN:  IT'S ALL -- IT'S PAYROLL TAXES, IT'S

4   SALES TAXES.  I'M NOT ENTIRELY SURE A FEW OF THE OTHERS.

5   BUT THEY'RE ALL LISTED.

6        THE COURT:  OKAY.  IN REGARDS TO THE LIEN, IS THERE

7   AN ACTUAL LIEN OR ARE YOU --

8        MR. BUBMAN:  ACTUAL LIENS THAT ARE -- I ONLY PULLED

9   THOSE OFF OF THE SECRETARY OF STATE'S WEBSITE.  SO THOSE

10  WERE LIENS THAT HAVE BEEN REPORTED.  THERE MAY BE MORE

11  OUT THERE.  I DON'T KNOW.  BUT I JUST PULLED THE LIENS

12  FROM 2016 ALL THE WAY TO 2023.

13       THE COURT:  THAT'S MY NEXT QUESTION.  THEY'RE GOING

14  BACK TO 2016?

15       MR. BUBMAN:  CORRECT.

16       THE COURT:  AND THEY'RE CURRENT?  AS OF 2023,

17  THERE'S STILL LIENS OUTSTANDING?

18       MR. BUBMAN:  THEY'RE STILL THERE.  NOTHING HAS BEEN

19  RELEASED.  AND IF THEY HAVE, I HAVEN'T SEEN ANY

20  INFORMATION OF IT.  BECAUSE LIKE I SAID, I TOOK THIS

21  DIRECTLY FROM THE SECRETARY OF STATE'S WEBSITE.  I DID

22  IT PERSONALLY MYSELF.

23       THE COURT:  OKAY.  SO IN REGARDS TO THE ORDER THAT

24  THE COURT ENTERED AND IT WAS DEMANDING COMPLIANCE THAT

25  LED TO THE CONTEMPT HEARING, WHAT IS STILL OUTSTANDING,

26  AS FAR AS YOU KNOW?

27       MR. BUBMAN:  THE VAST MAJORITY OF THINGS.  I MEAN,

28  TO THE EXTENT THAT HE WOULD COMPLY WITH SOMETHING, FOR

16

1   EXAMPLE, AS WE SEE IN HERE, HE SAYS, "I GAVE A USERNAME

2   AND PASSWORD." THEY WEREN'T THE ADMINISTRATIVE ACCESS

3   THAT WE NEEDED TO CONTROL THESE SYSTEMS.

4       HE SAYS WITH REGARD TO THE SECURITY SYSTEM, THE

5   INFORMATION WAS PROVIDED. IT'S JUST NOT TRUE. WITH

6   REGARD TO THE CAMERA SYSTEM, THE ARLO CAMERA SECURITY

7   SYSTEM, HE SAYS HE PROVIDED THE INFORMATION. IT'S NOT

8   TRUE.

9       HE'S ACKNOWLEDGING THAT HE HASN'T FILED TAX

10  RETURNS. THERE ARE SO MANY OF THESE THINGS THAT ARE

11  BEYOND BELIEF THAT HE HAS OPERATED THE BUSINESS THIS

12  ENTIRE TIME WITHOUT DOING ANY ACCOUNTING HIMSELF. I

13  JUST FIND THAT UNBELIEVABLE.

14      WHEN WE TALK ABOUT THE -- WE ASK ABOUT THE

15  QUICKBOOKS SYSTEM THAT HE'S BEEN PAYING FOR MONTHLY, HE

16  SAYS THAT WAS CLOSED AND "I DON'T HAVE ACCESS." BUT HE

17  HASN'T PROVIDED US WITH ANY INFORMATION.

18      THE BANK ACCOUNTS, WE ASKED HIM TO LIST ALL OF THE

19  BANK ACCOUNTS. HE DIDN'T DO THAT. HE PROVIDED A COUPLE

20  OF BANK ACCOUNTS. WE HAD TO GO GET THEM OURSELVES. THE

21  VAST MAJORITY OF THIS INFORMATION, TO THE EXTENT THAT WE

22  HAVE IT, CAME FROM OUR OWN EFFORTS.

23      SO THERE IS STILL A PLETHORA OF ITEMS THAT HAVE NOT

24  BEEN PROVIDED THAT WERE ORDERED TO BE PROVIDED AND, OF

25  COURSE -- ON THE CONTEMPT.

26      THE COURT: THE NEXT QUESTION I HAVE IS THE DELAY

27  IN PROVIDING YOU THIS INFORMATION DATING BACK TO THE

28  FEBRUARY 22, 2022 ORDER PROVIDING ALL FINANCIAL RECORDS

17

1   TO THE COUNTY, YOU WERE NOT YET INVOLVED.  HOW HAS THAT
2   ADVERSELY IMPACTED YOUR ABILITY?
3        ACTUALLY, LET'S START WITH THE AUGUST 17TH ORDER.
4   YOU WERE APPOINTED ON AUGUST 17TH, 2022.  AND
5   THEREAFTER, THERE WAS AN ORDER OCTOBER 7TH, '22 TO
6   APPEAR.  FEBRUARY 21ST, 2023, ORDERED TO APPEAR, PRODUCE
7   ALL PAPERS TO THE RECEIVER BY FEBRUARY 24TH, 2023.
8        HOW HAVE YOU BEEN ADVERSELY IMPACTED BY THAT DELAY?
9        MR. BUBMAN:  AT THIS POINT, YOUR HONOR, THE ONLY
10  THING -- ONE OF THE THINGS THAT WE ALWAYS DO IN
11  RECEIVERSHIPS I'VE BEEN INVOLVED WITH WITH MR. DONELL IS
12  THAT WE GET THE RECORDS, OUR ACCOUNTANT GETS INVOLVED.
13  WE RUN THE NUMBERS, NO. 1:  TO FIND OUT WHAT'S REAL AND
14  WHAT'S NOT.  AND NO. 2:  TO SEE IF A BUSINESS IS
15  SUSTAINABLE.
16       THERE ARE SO MANY RECORDS THAT WE HAVE NOT
17  RECEIVED.  THE ACCOUNTANT WAS FIRST ABLE TO DO THIS
18  ABOUT TWO WEEKS AGO.  STARTING ALL THE WAY BACK FROM
19  ASKING FOR ALL OF THESE RECORDS IN AUGUST OF '22, THE
20  FIRST TIME WE'RE ABLE TO DO -- TO RUN A PROFORMA TRIAL
21  BALANCE AND TRY TO FIGURE OUT WHAT WAS GOING ON WITH
22  THIS BUSINESS WAS IN PROBABLY THE FEBRUARY -- AROUND
23  FEBRUARY 10TH OR 11TH.  AND A LOT OF IT WAS STILL LEFT
24  TO GUESSWORK BECAUSE THERE WERE ITEMS STILL NOT
25  EXPLAINED, THE CASH THAT WAS USED BY MR. BAE.
26       THE COURT EVEN COMMENTED ON THIS IN REVIEWING THE
27  RECORDS.  THERE WERE $30,000 IN A MONTH IN CASH
28  WITHDRAWN.  AND WHAT MR. BAE SAYS IN HIS DECLARATION

18

1   HERE, "I TOOK THE CASH FROM ONE ACCOUNT AND I DEPOSITED

2   IT INTO THE OTHER."

3        BUT THEN CASH WAS WITHDRAWN FROM THE OTHER, AND

4   ONLY RECENTLY, WITHIN THE LAST TWO OR THREE DAYS, DID WE

5   FIND OUT WHEN MS. BATES FROM MR. DONELL'S OFFICE SPOKE

6   WITH ONE OF THE EMPLOYEES WHO TOLD HER, "OH, WELL, AT

7   LEAST HALF OF MY PAY COMES IN CASH.  MR. BAE PAYS ME IN

8   CASH."  THIS IS TRUE FOR THE VAST MAJORITY OF THE

9   EMPLOYEES THERE.  SOME WAS A PAYROLL CHECK; SOME WAS

10  CASH.

11       WE JUST COULD NOT FIGURE OUT WHAT THE FINANCIALS OF

12  THIS BUSINESS WERE LIKE.  AND IT'S ALL OVER THE BOARD.

13  WE WERE ABLE TO GET SOME OF THAT INFORMATION ONCE WE

14  FINALLY GOT ACCESS TO THE TOAST SYSTEM.

15       BUT IT'S STILL NOT EVERYTHING.  BECAUSE AS I NOTED

16  IN ONE OF THE DOCUMENTS THAT WE PROVIDED, SINCE THE

17  LAST -- PROBABLY IN THE LAST WEEK, WEEK AND A HALF OF

18  OPERATIONS, MR. BAE PUT A SIGN UP AT THE CASH REGISTER

19  THAT SAID, "10 PERCENT DISCOUNT FOR CASH."  AND THE CASH

20  THEN WAS NOT PUT INTO THE CASH SAFE AND MR. DONELL NEVER

21  RECEIVED THAT MONEY.

22       THE COURT:  OKAY.  ALL RIGHT.  YOUR FIVE MINUTES IS

23  EXHAUSTED.

24       YOU GET TWO MINUTES TO RESPOND.

25       MR. HERRERA:  YOUR HONOR, THE PAYROLL EXAMPLE, ALL

26  THE INFORMATION WAS DISCLOSED LONG AGO.  THE USE OF THE

27  CASH TO PAY CERTAIN EMPLOYEES THAT WANTED TO BE PAID IN

28  CASH, ALL OF THAT WAS DISCLOSED UP FRONT.  THERE WAS A

19

1    SUMMARY, AN EXCEL SPREADSHEET THAT WAS PROVIDED,

2    INDICATING WHO THEY WERE, THEIR NAMES, THE AMOUNT.  IT

3    WAS ALL THERE, ALL OF IT.

4        THERE'S A LOT OF ALLEGATIONS ABOUT CASH BEING TAKEN

5    FROM ONE PLACE --

6        THE COURT:  HOW DO YOU SUPPOSE THAT APPEARS TO THE

7    COURT WHEN YOU SAY IN 2024, A BUSINESS LIKE A RESTAURANT

8    THAT IS GOING THROUGH A RECEIVERSHIP AND THERE'S A

9    DISPUTE, THAT THE CLIENTS WANT TO BE PAID IN CASH AND

10   THEY'RE -- AND MR. BAE'S DOING IT AS A COURTESY TO THE

11   EMPLOYEES?  HOW DO YOU THINK THAT APPEARS TO THE COURT?

12       MR. HERRERA:  IT MAY NOT APPEAR GOOD TO THE COURT.

13   BUT WE'RE NOT TALKING ABOUT SUBSTANTIAL SUMS OF MONEY.

14   WE'RE TALKING ABOUT A SMALL HANDFUL OF PEOPLE, A FEW

15   HUNDRED DOLLARS AT A TIME.  THIS IS NOT TENS OF

16   THOUSANDS OF DOLLARS BEING, YOU KNOW, PUSHED IN SOME

17   DIRECTION TO HIDE OR AVOID SOMETHING.  THAT'S WHAT THEY

18   WANTED --

19       THE COURT:  REALLY?  IT DOESN'T LOOK LIKE YOU'RE

20   TRYING TO AVOID ANY TYPE OF PAPER TRAIL?

21       MR. HERRERA:  IT'S NOT SIGNIFICANT ENOUGH,

22   YOUR HONOR.  THE MONEY THAT'S PAID IN CASH IS NOT --

23       THE COURT:  I REMIND YOU THAT I LOOKED AT THE BANK

24   ACCOUNTS IN THE LAST HEARING.  I WENT THROUGH THE BANK

25   RECORDS AND I SAW THE UNBELIEVABLE AMOUNT OF CASH THAT

26   WAS BEING WITHDRAWN BY YOUR CLIENT WITH AN ATM, MOVING

27   MONEY FROM ONE ACCOUNT TO ANOTHER ACCOUNT WITH HUGE SUMS

28   OF CASH WITHDRAWALS MONTH AFTER MONTH.

20

1        MR. HERRERA:  AND DEPOSITS, YOUR HONOR.  THERE'S

2    ANOTHER SIDE TO THAT.  THAT'S WHERE IT LOOKS GOOD.  IT

3    MIGHT START BAD.  IT MAY BE A BAD LOOK AT FIRST.  BUT

4    WHEN YOU SEE THE DEPOSITS ON THE OTHER SIDE, THAT'S A

5    GOOD LOOK.

6        IT SHOWS YOU THE CYCLE OF THE MONEY MONTH AFTER

7    MONTH AFTER MONTH.  IT'S NOT JUST RANDOM, ALL THE SUDDEN

8    HAPPENING.  IT DIDN'T HAPPEN, YOUR HONOR.

9        THE COURT:  OKAY.  IS THERE ANYTHING ELSE YOU WANT

10   TO TELL ME?

11       MR. HERRERA:  YES.  THE QUESTION THE COURT ASKED IS

12   WHAT ADVERSE IMPACT TO THE RECEIVER THERE WAS, AND THERE

13   HASN'T BEEN.  THERE IS NO ADVERSE IMPACT.  THEY HAVE A

14   JOB TO DO.  AND THERE'S NO URGENCY.  THERE'S NO HARM IN

15   THE DELAY THAT OCCURRED.

16       IT WAS MR. BAE'S BUSINESS THAT'S BEING HARMED.

17   THAT HARM HAS OCCURRED, BUT NOT -- NOT TO THE RECEIVER'S

18   JOB, NOT IN HIS ABILITY TO DO WHAT HE WAS ASKED TO DO AT

19   THIS POINT.

20       THE INFORMATION -- THE QUICKBOOKS EXAMPLE WAS

21   BROUGHT UP.  IT'S AN OLD QUICKBOOKS ACCOUNT THAT MR. BAE

22   DIDN'T HAVE ACCESS TO THAT APPARENTLY STILL HAD AN

23   AUTO-CHARGE.  AND HE TOLD THEM THAT.  HE GAVE THEM -- HE

24   GAVE THEM THE INFORMATION.

25       CRITICIZING THAT IS COMPLETELY SEPARATE AND NOT

26   RELEVANT TO THE FACT THAT HE GAVE THEM THE INFORMATION

27   OF WHATEVER IT WAS.

28       THE ACCESS TO THE TOAST, THE ACCESS TO THE BANK

21

1  ACCOUNTS, ALL OF THAT ACCESS IS ABSOLUTE AT THIS POINT.

2  THERE IS NO ACCESS THEY DON'T HAVE AT ALL.  THERE JUST

3  ISN'T.  THEY HAVE FULL ACCESS.

4     THERE'S EMAIL CORRESPONDENCE WITH MR. DONELL'S

5  OFFICE -- CONFIRMING, "WE HAVE EVERYTHING WE NEED WITH

6  THE TOAST SYSTEM.  WE HAVE EVERYTHING WE NEED WITH THE

7  BANKS.  WE DON'T NEED BANK STATEMENTS OR ANYTHING.  WE

8  HAVE ALL THE ACCESS TO THE ACTUAL BANK ACCOUNTS WITH THE

9  BANK."

10     THEY WENT DIRECTLY TO THE PAYROLL COMPANY.  THEY

11  HAVE FULL AND COMPLETE ACCESS TO ANYTHING THEY NEED WITH

12  THAT COMPANY.  THERE IS NOTHING MISSING.

13     MR. BUBMAN DID NOT ANSWER THE QUESTION WITH, "THIS

14  IS MISSING, THAT'S MISSING," BECAUSE IT'S NOT.  MR. BAE

15  HANDED EVERYTHING OVER.  HE'S DONE EVERYTHING HE'S ASKED

16  TO DO.  HE'S BEEN INUNDATED WITH REQUESTS AND DONE A

17  REMARKABLE JOB OF TRYING TO KEEP UP WITH HUNDREDS OF

18  EMAILS, HUNDREDS OF EMAILS, SOME OF THEM COMING IN

19  MINUTES APART FROM EACH OTHER, COMPLAINING ABOUT THE

20  EMAIL FROM FIVE MINUTES EARLIER.

21     ALL OF THAT WILL SHOW UP IN THESE MOTIONS THAT

22  MR. BAE FILED BECAUSE IT'S JUST A LOT AND IT'S NOT GOING

23  TO BE THROWN TO THE COURT IN EX PARTE.  THAT -- IT JUST

24  DOESN'T SEEM PRACTICAL.  BUT IT'S THERE, YOUR HONOR.

25     AND MR. BAE HAS COMPLIED.  MR. BAE MAY WORK TO THE

26  LAST MINUTE AND FILE THINGS LATE, BUT AT THE END OF THE

27  DAY, HE'S DOING WHAT HE'S ASKED TO DO AND HE DID.  AND

28  EVERYTHING'S THERE.

1       THE DROPBOX LINK HAS BEEN AVAILABLE TO COUNSEL FOR

2    THE ENTIRE MONTH.  AND IT'S STILL THERE.  AND THERE IS

3    NO POSSIBILITY TO LOOK AT WHAT'S BEEN UPLOADED.  THAT'S

4    NOT HOW IT WORKS.  THAT'S JUST A MADE UP STORY BECAUSE I

5    MONITOR IT.  I CREATED IT IN A WAY WHERE YOU HIT THE

6    LINK AND IT DOWNLOADS EVERYTHING.  AND I CAN SEE AND

7    TRACK AND PROVIDE TO THE COURT PROOF OF WHEN THAT

8    HAPPENS.  I CAN SEE THAT.  AND THIS IDEA THAT HE'S

9    SEEING THINGS UPLOADED ARE NOT IS NOT TRUE, JUST SIMPLY

10   PUT, YOUR HONOR.

11      MR. BUBMAN:  YOUR HONOR, CAN I GIVE ONE RESPONSIVE

12   STATEMENT, BRIEF AND CONCISE ABOUT THE HARM THAT HAS

13   BEEN DONE AND HOW THIS RECEIVERSHIP --

14      THE COURT:  ONE STATEMENT AND THEY GET THE FINAL

15   WORD.

16      MR. BUBMAN:  GOT IT.

17      WHEN THE RECEIVERSHIP WAS INITIALLY ORDERED, THE

18   RECEIVER WAITED IN ORDER TO GET SUFFICIENT INFORMATION

19   ABOUT THE BUSINESS TO ALLOW HIM TO GO IN AND OPERATE THE

20   BUSINESS.  THAT WAS PART OF THE RECEIVERSHIP ORDER.

21      THAT DIDN'T HAPPEN UNTIL WE GOT RECORDS IN EARLY

22   FEBRUARY OF 2024.  THAT WAS THE FIRST TIME WE HAD ENOUGH

23   INFORMATION TO BE ABLE TO DETERMINE WHETHER, NO. 1, WE

24   HAD TO TRACK AND FIND OUT WHETHER INSURANCE WAS STILL

25   VALID AND TO FIND OUT IF PAYROLL COULD BE PAID.

26      WE AT LEAST KNEW WHERE THE CASH SOURCES WERE -- THE

27   CASH WAS SUPPOSEDLY GOING AND WE WOULD TAKE THAT CASH

28   MONEY.  AT THAT POINT, ONLY AT THAT POINT, STARTING ON

23

1   FEBRUARY 6 WAS THE FIRST DAY THAT CHASE BANK LOCKED

2   THOSE ACCOUNTS AND STARTED PROVIDING ACCESS TO THE

3   RECEIVER.  THAT WAS THE FIRST POINT AT WHICH MR. DONELL

4   HAD ANY INVOLVEMENT WHATSOEVER WITH RESPECT TO THE

5   BUSINESS.

6        SO WE'RE TALKING ABOUT AUGUST 17 FROM '22, UNTIL

7   FEBRUARY 6, 2024, THAT WE FIRST GOT ENOUGH INFORMATION

8   TO EVEN CONSIDER ANY INVOLVEMENT IN THAT BUSINESS.  ONCE

9   WE GOT THAT, THEN WE STARTED TO TRY TO UNDERSTAND THE

10  FINANCIALS.

11       AND IN A PERIOD OF ABOUT TWO WEEKS, IT BECAME

12  ABUNDANTLY CLEAR THAT THE BUSINESS THAT WE SAW, WHETHER

13  IT WAS EVERYTHING OR ENOUGH, WAS NOT ENOUGH.  THE STUFF

14  THAT WAS GIVEN TO US WAS NOT ENOUGH TO BE ABLE TO PAY

15  EMPLOYEES THEIR PAYROLL, AS WELL AS THEIR FULL PAYROLL.

16  AND A PAYROLL CHECK FROM WHICH PAYROLL TAXES WERE

17  DEDUCTED TO PAY THE SALES TAXES FROM SALES THAT WERE

18  MADE, IT WAS JUST NOT SUSTAINABLE.

19       AND WE WERE NOT GOING TO CONTINUE TO ALLOW

20  EMPLOYEES TO WORK WHEN THERE WAS NO MONEY TO PAY THE

21  PAYROLL, LET ALONE THE PAYROLL TAXES.  THERE'S STILL

22  PAYROLL THAT'S DUE WITHOUT ENOUGH MONEY TO PAY IT, AND

23  THAT'S WHY THE BUSINESS WAS SHUT DOWN ON FEBRUARY 23RD,

24  BECAUSE THE RECEIVER WAS NOT GOING TO ALLOW THESE

25  EMPLOYEES TO CONTINUE WORKING WITHOUT THE ABILITY TO PAY

26  THEM FOR THE SERVICES THAT THEY WERE PROVIDING.

27       SO MR. BAE HAS THEN CONTINUED TO BASICALLY LIE TO

28  THE EMPLOYEES.  "IT WAS ALL THE RECEIVER'S FAULT.

1   THERE'S NOTHING I COULD DO ABOUT IT."  I CAN MAKE -- SO

2   THAT'S THE SITUATION WE'RE LEFT WITH.  THAT'S HOW THE

3   RECEIVERSHIP WAS HARMED.

4        THE COURT:  YOU CAN RESPOND TO THAT BRIEFLY.

5        MR. HERRERA:  YOUR HONOR, WHAT YOU DIDN'T HEAR IS

6   THAT THIS MASSIVE TAX LIABILITY IS SOMETHING THAT

7   MR. BAE HAS BEEN WORKING WITH THE TAX AUTHORITY TO

8   ASSUME LIABILITY ON AND HAS A PAYMENT PLAN THAT HE

9   NEGOTIATED WITH THEM.  HE'S BEEN PAYING THE EMPLOYEES

10  AND ABSORBING LIABILITY TO KEEP THEM EMPLOYED, TO KEEP

11  THEIR LIVELIHOODS INTACT.  AND EVERYTHING POINTS TO

12  THAT.  EVERYTHING POINTS TO THAT.

13       MR. BAE IS NOT POCKETING MONEY.  HE'S DOING

14  WHATEVER HE CAN UNDER THE CIRCUMSTANCES TO ABSORB HIS

15  LIABILITY AND KEEP PEOPLE EMPLOYED SO THEY CAN LIVE

16  THEIR LIVES.  AND HE'S DOING IT AT HIS OWN EXPENSE.

17       I UNDERSTAND THAT HE DIDN'T COMPLY WITH THE COURT'S

18  ORDERS WHEN WE SHOULD HAVE.  HE DIDN'T APPEAR WHEN WE

19  SHOULD HAVE.  I UNDERSTAND THAT.

20       BUT CLOSELY LOOKING AT WHAT HAPPENED HERE, WHETHER

21  THE EVIDENCE IS ALL BEFORE THE COURT OR NOT, IT WILL,

22  AND AT THIS POINT, DOES IN A LARGE WAY POINT TO MR. BAE

23  DOING THINGS IN THE INTEREST OF KEEPING THE BUSINESS

24  OPEN AND ITS PEOPLE EMPLOYED.

25       HE'S NOT STEALING MONEY.  THERE'S ONLY ALLEGATIONS

26  OF THAT.  AND YOU DON'T HEAR THAT FROM THE RECEIVER.

27  YOU HEAR NOTHING BUT COMPLAINTS AND INFORMATION THEY

28  HAVE, LIKE, THE PAYMENT PLAN, THE FACT THAT THEY'VE

25

1    NEGOTIATED A $300,000 CREDIT THAT'S DUE TO THE BUSINESS

2    TO REDUCE THIS TAX LIABILITY, HE'S TRYING TO FIGURE OUT

3    AND WORK THAT OUT WITH THE GOVERNMENT, WITH THE STATE

4    AGENCY, IN ORDER TO KEEP THE BUSINESS OPERATIONAL AND

5    PEOPLE EMPLOYED.

6        THAT'S, AT THE END OF THE DAY, AT THE TOP OF HIS

7    LIST.  AND WE'VE TRIED TO BRING THAT TO THE ATTENTION OF

8    THE COURT.  HAVEN'T BEEN SUCCESSFUL.  BUT STILL, IT

9    NEEDS TO BE CONSIDERED IN SENTENCING HIM.  HE'S NOT

10   DOING THIS IN ANY MALICIOUS WAY.

11       THERE IS NO OTHER PARTNER IN THIS BUSINESS.

12   MR. BOBSON IS NOT A PARTNER.  THE -- WAS DISSOLVED.  THE

13   COURT DISSOLVED IT.  THERE'S AN ORDER DISSOLVING IT.

14   THERE JUST NEEDED TO BE AN ACCOUNTING BECAUSE THE

15   AGREEMENT SAID SO.  AND THAT'S WHAT THE STATUS QUO WAS,

16   EVEN WITH EVERYTHING THAT'S HAPPENED.  SO IT'S HIM

17   HIMSELF DOING EVERYTHING FOR HIS OWN PURPOSE, NOT

18   BECAUSE OF A PARTNER.

19       MR. BOBSON, AFTER THE JURY TRIAL, WAS

20   MISAPPROPRIATING FUNDS.  HE'S THE ONE THAT STOLE MONEY,

21   ACTUALLY STOLE MONEY, AND THERE'S A JUDGMENT.

22       THE COURT:  LET'S GO BACK AND FOCUS ON THIS.  I

23   ASKED YOU TO RESPOND BRIEFLY.  YOU'RE GOING ASTRAY.

24   WRAP IT UP, PLEASE.

25       MR. HERRERA:  IT MATTERS, YOUR HONOR, BECAUSE IT IS

26   MR. BOBSON WHO STOLE MONEY; YET, MR. BAE'S THE ONE

27   ACCUSED OF IT.

28       THE COURT:  EXCUSE ME.  EXCUSE ME.  WE'RE HERE FOR

26

1   ADJUDICATING THE APPROPRIATE SENTENCE FOR YOUR CLIENT

2   BEING HELD IN CONTEMPT FOR VIOLATING THE COURT'S ORDER.

3   LAST CHANCE TO FOCUS ON THAT OR I'M GOING TO CONCLUDE --

4       MR. HERRERA:  THE COURT'S BEEN VERY ADAMANT IN

5   GETTING COMPLIANCE WITH MR. BAE.  YOU'VE OPENLY SAID

6   WHAT YOU'RE TRYING TO DO IS GET COMPLIANCE.  YOU'VE

7   LITERALLY SAID THAT MULTIPLE TIMES.  YOU HAVE

8   COMPLIANCE.  YOU HAVE FULL COMPLIANCE AT THIS POINT,

9   COMPLETE AND FULL COMPLIANCE.

10      THE CONSEQUENCES THAT HAVE RESULTED FROM IT ARE A

11  FAILURE AND BANKRUPT BUSINESS OF MR. BAE.  I ARGUE THAT

12  HE IS BEING PUNISHED ALREADY AND IT SHOULD ABSOLUTELY BE

13  CONSIDERED IN MR. BAE'S SENTENCING BECAUSE IT'S ALREADY

14  SOMETHING THAT HE'S BEING NEGATIVELY IMPACTED BY.  AND

15  AS COUPLED WITH THE FACT THAT HE IS COMPLYING, IT'S

16  PROVEABLE.

17      HE'S, ITEM BY ITEM, GONE DOWN THE LIST.  AND

18  COUNSEL, IN A PESSIMISTIC WAY, AGREED THEY DO HAVE

19  EVERYTHING, AS ROCKY AS IT MAY HAVE BEEN.  BUT THE

20  COMPLIANCE IS THERE.  AND THAT IS WHAT THE COURT WANTED

21  AND IT IS WHAT THE COURT GOT AND THAT SHIFTS THE

22  STATUS QUO THAT WE'RE IN.  AND I THINK IT SHOULD BE VERY

23  MINIMAL AS FAR AS THE SENTENCING WHEN YOU TAKE ALL OF

24  THAT INTO ACCOUNT COLLECTIVELY.

25      MR. BUBMAN:  30 SECONDS, YOUR HONOR?

26      THE COURT:  NO.  WE'RE DONE.

27      DO YOU WAIVE HEARING, ARRAIGNMENT FOR JUDGMENT,

28  TIME FOR SENTENCING ON BEHALF OF MR. BAE?

27

1      MR. HERRERA:  YES.

2      THE COURT:  SO THE COURT HAS CONDUCTED A CONTEMPT

3  HEARING ON JANUARY 2ND.  THE COURT WAS GIVEN PRELIMINARY

4  RULING BUT DIDN'T COMPLETE THE SENTENCING HEARING TO

5  COMPLETELY COMPLY WITH THE REQUIREMENTS OF THE LAW.  AT

6  THE REQUEST OF MR. BAE, THE COURT PUT IT OVER TO

7  CONCLUDE THE SENTENCING PORTION AND THE FINDING PORTION.

8  THE COURT IS NOW PROCEEDING.

9      THE COURT MADE CERTAIN FINDINGS BEFORE.  THE

10  COURT'S GOING TO REPEAT THE FINDINGS SO THAT THERE'S ONE

11  CLEAN RECORD.  THE COURT WAS TASKED TO PREPARE THE

12  WRITTEN ORDER.  THE WRITTEN ORDER WILL BE ISSUED TODAY

13  AND WILL BE PART OF THE RECORD AS WELL.

14      THE COURT TAKES JUDICIAL NOTICE OF THE FOLLOWING

15  ORDERS THAT WERE ISSUED BY THE COURT, A:  THE COURT'S

16  JANUARY 11TH, 2022 ORDER ORDERING THE PARTIES TO SELECT

17  A NEUTRAL ACCOUNTANT.

18      B:  THE COURT'S FEBRUARY 22ND, 2022 ORDER ORDERING

19  KEITH BAE TO PROVIDE ALL FINANCIAL RECORDS TO THE

20  PLAINTIFF'S ACCOUNTANT.

21      C:  THE COURT'S MARCH 9TH, 2022 ORDER ORDERING

22  KEITH BAE TO PROVIDE ALL FINANCIAL RECORDS TO THE

23  PLAINTIFF'S ACCOUNTANT.

24      D:  THE COURT'S APRIL 6, 2022 ORDER ORDERING KEITH

25  BAE TO FILE A STATUS REPORT BY APRIL 29TH, 2022,

26  REGARDING THE EXCHANGE OF FINANCIAL RECORDS AND THE

27  STATUS OF AN AGREEMENT REGARDING THE DISTRIBUTION OF

28  PARTNERSHIP ASSETS.

28

1        E:  THE COURT'S AUGUST 17TH, 2022 ORDER APPOINTING

2   A RECEIVER AND FOR ISSUANCE OF PRELIMINARY INJUNCTION IN

3   AID OF THE RECEIVER.

4        F:  THE COURT'S OCTOBER 7TH, 2022 ORDER REQUIRING

5   BOTH BAE TO APPEAR BEFORE THE COURT ON NOVEMBER 18,

6   2022.

7        G:  THE COURT'S NOVEMBER 28TH, 2022 ORDER REQUIRING

8   HERRERA TO COMPLY WITH PRIOR ORDERS BY JANUARY 4TH,

9   2023.

10       H:  THE COURT'S FEBRUARY 21ST, 2023 ORDER ORDERING

11  BAE TO TURN OVER ALL BOOKS AND PAPERS TO THE RECEIVER BY

12  NOON ON FEBRUARY 24TH, 2023.

13       I:  THE COURT'S FEBRUARY 27TH, 2023 ORDER REQUIRING

14  BAE TO TURN OVER DOCUMENTS REQUESTED BY RECEIVER

15  PURSUANT TO HIS INITIAL DEMAND OF SEPTEMBER 1ST, 2022,

16  WHICH WAS FILED WITH THE COURT ON FEBRUARY 24TH, 2023.

17       J:  THE COURT'S APRIL 18TH, 2023 ORDER REQUIRING

18  MR. HERRERA TO RETURN THE PROTECTIVE ORDER TO RECEIVER'S

19  COUNSEL NO LATER THAN FRIDAY, APRIL 21ST.

20       AFTER DUE CONSIDERATION, THE COURT FINDS, BEYOND A

21  REASONABLE DOUBT, A:  THE COURT FINDS EACH OF THE ABOVE

22  ORDERS ARE VALID COURT ORDERS.

23       B:  THE COURT FINDS BAE HAD ACKNOWLEDGE OF THE

24  ORDERS.

25       C:  THE COURT FINDS THAT BAE WILLFULLY FAILED TO

26  COMPLY WITH EACH OF THE FOLLOWING ORDERS, I:  THE

27  COURT'S FEBRUARY 22ND, 2022 ORDER ORDERING KEITH BAE TO

28  PROVIDE ALL FINANCIAL RECORDS TO THE PLAINTIFF'S

29

1   ACCOUNTANT.  THIS WAS ALLEGED AS 1B ABOVE.

2        REGARDS TO 1C ABOVE, THE COURT'S MARCH 9TH, 2022

3   ORDER ORDERING KEITH BAE TO PROVIDE ALL FINANCIAL

4   RECORDS TO THE PLAINTIFF'S ACCOUNTANT, JAMES GREFF,

5   G-R-E-F-F.

6        IN REGARDS TO 1E, THE COURT'S AUGUST 17TH, 2022

7   ORDER APPOINTING RECEIVER AND FOR ISSUANCE OF

8   PRELIMINARY INJUNCTION IN AID OF THE RECEIVER.

9        1F:  THE COURT'S OCTOBER 7TH, 2022 ORDER REQUIRING

10  BAE TO APPEAR BEFORE THE COURT ON NOVEMBER 18, 2022.

11       1H:  THE COURT'S FEBRUARY 21, 2023 ORDER ORDERING

12  BAE TO TURN OVER ALL BOOKS AND PAPERS TO THE RECEIVER BY

13  NOON ON FEBRUARY 24TH, 2023.

14       AND 1I:  THE COURT'S FEBRUARY 27TH, 2023 ORDER

15  REQUIRING BAE TO TURN OVER DOCUMENTS REQUESTED BY

16  RECEIVER PURSUANT TO ITS INITIAL DEMAND OF SEPTEMBER 1,

17  2022, WHICH WAS FILED WITH THE COURT ON FEBRUARY 24TH,

18  2023.

19       THE COURT FINDS THAT EACH -- THAT BAE HAD THE

20  ABILITY TO COMPLY WITH EACH OF THESE ORDERS.

21       COURT FINDS THAT BAE IS NOT GUILTY OF ORDERS 1A,

22  1D, 1G, AND 1J.

23       THAT THE CONTEMPTOR BAE IS SENTENCED TO THE

24  FOLLOWING:  AS TO THE FIRST OFFENSE, THE FIRST ORDER

25  PROVIDING ALL FINANCIAL RECORDS, THE COURT IMPOSES A

26  $500 FINE.

27       AS TO THE SECOND OFFENSE, IT'S A $1,000 FINE.  TO

28  BE CLEAR, THAT'S AS TO THE COURT'S MARCH 9TH ORDER.  AS

30

1    TO COURT'S -- I'M SORRY.  THAT'S 1C.  IT'S A $1,000 FINE
2    AND IT'S FIVE DAYS IN JAIL.
3         AND TO 1E, WHICH IS THE COURT'S AUGUST 17TH, 2022
4    ORDER, $1,000 FINE.
5         AS TO THE ORDER FOR OCTOBER 7, ORDERING HIM TO
6    APPEAR BEFORE THE COURT ON OCTOBER 18TH, IT'S A $1,000
7    FINE AND FIVE DAYS IN JAIL.
8         AS TO 1H, WHICH IS THE COURT'S FEBRUARY 21ST, 2023
9    ORDER, $1,000 FINE AND FIVE DAYS IN JAIL.
10        AS TO 1I, $1,000 FINE AND FIVE DAYS IN JAIL.
11        THE COURT HAS TAKEN INTO ACCOUNT THAT THERE'S BEEN
12   SOME COMPLIANCE.  BUT THE COURT IS -- AND THAT'S WHY IT
13   WAS STAGGERED, WHY THERE WAS TWO FINES.  BUT THE LENGTH
14   AND THE BREADTH AND DEPTH OF THE FAILURE TO COMPLY WITH
15   NUMEROUS VALID ORDERS TO SIMPLY GAIN COMPLIANCE IS
16   REALLY INEXCUSABLE.
17        I AM GOING TO STAY THE JAIL FOR 30 DAYS AS TO EACH
18   OF THESE OFFENSES TO GIVE YOU AN OPPORTUNITY TO FILE A
19   WRIT.  AND I MAY CONSIDER STAYING THE JAIL, WHICH ARE 20
20   DAYS, AND DISCUSS WEEKEND JAILS TO SATISFY THE JAIL AS
21   WELL.  WE CAN DISCUSS THAT IN 30 DAYS.
22        I'M NOW PROPOSING THE FINES ARE PAYABLE IN 45 DAYS
23   TO THE CLERK OF THE COURT.  THE CLERK OF THE COURT IS
24   ORDERED TO IMMEDIATELY TO FILE THIS ORDER AND ENTER THE
25   CONTEMPT ON THE DOCKET OF THE COURT WITH A LETTER -- AND
26   TO COUNSEL -- COPY OR TO COUNSEL ORDER A COPY OF THIS
27   ORDER, PLEASE REMAIN SO YOU CAN GET A COPY OF THE ORDER.
28        CLERK IS TO GIVE NOTICE TO ALL INTERESTED PARTIES.

31

1    IT IS SO ORDERED TODAY'S DATE:  MARCH 1ST, 2024.

2         WE'RE GOING TO SET STATUS DATES.  TODAY IS

3    MARCH 1ST.  WE'LL COME BACK ON APRIL 5TH.  IF THERE'S A

4    STAY ISSUED, I'LL TAKE THAT INTO CONSIDERATION IF THE

5    STAY IS ISSUED BY THE COURT OF APPEAL ON A WRIT.

6    OTHERWISE, IF THERE'S NO WRIT OR THERE'S NO STAY ISSUED,

7    THE COURT WILL DISCUSS SERVICE OF THE JAIL SENTENCE.

8         DO YOU UNDERSTAND THE ORDERS, COUNSEL FOR MR. BAE?

9         MR. HERRERA:  YES, YOUR HONOR.

10        THE COURT:  DO YOU HAVE ANY QUESTIONS OF THE COURT?

11        MR. HERRERA:  CAN WE EXTEND THE 45-DAY DUE DATE FOR

12   THE MONEY?

13        THE COURT:  NO.  THAT'S GENEROUS.

14        MR. HERRERA:  I MEAN, HE'S BEEN RENDERED INSOLVENT

15   AT THIS POINT, YOUR HONOR.  IT'S JUST NOT REALISTIC.

16        THE COURT:  45 -- THEY'RE PAYABLE WITHIN 45 DAYS TO

17   THE CLERK OF THE COURT.  YOU'LL GET A COPY OF THE ORDER.

18   AND WE ARE GOING TO CONTINUE THIS FURTHER STATUS ON HOW

19   THE RECEIVER'S GOING TO PROCEED TO THE APRIL 5TH DATE AS

20   WELL, HAVE EVERYONE COME BACK.

21        MR. BUBMAN:  AND THAT'S AT 8:30, YOUR HONOR?

22        THE COURT:  I HAVEN'T EVEN LOOKED AT MY CALENDAR.

23        MR. HERRERA:  YOUR HONOR, CAN WE MAKE SURE THAT WE

24   KNOW THE COURT'S POSITION ON MR. BAE'S COMPLIANCE TODAY?

25   I KNOW THAT THERE WAS SOME COMMENT MADE ON IT, BUT IT

26   SEEMS LIKE AN ENDLESS PROCESS.  I WANT TO ENSURE THAT

27   THERE'S FINALITY TO IT, IT'S DOCUMENTED HE'S COMPLIED.

28        THE COURT:  I'M NOT MAKING SUCH A FINDING.  I'M NOT

32

1    MAKING -- DO YOU WANT ME TO MAKE SPECIFIC FINDINGS?  I

2    DON'T THINK I'M REQUIRED TO.  I'VE STAYED THE JAIL

3    FURTHER AND I'VE INDICATED THAT I MIGHT STAY IT EVEN

4    FURTHER.  RIGHT NOW, I'M ONLY STAYING IT FOR WRIT

5    REVIEW.

6         ON THE NEXT COURT DATE, IF YOU'D LIKE OTHER ISSUES

7    YOU WANT TO PRESENT TO THE COURT REGARDING STAYING IT

8    FURTHER IF THERE'S NOT A WRIT, IF THERE'S NOT A STAY

9    ISSUED BY THE COURT OF APPEAL, THEN WE'RE GOING TO TALK

10   ABOUT WHEN I'M GOING TO HAVE THE SURRENDER DATE AND/OR

11   OTHER OPTIONS.  I'M LEAVING IT OPEN TO YOU.  OKAY?

12        MR. HERRERA:  OKAY.

13        THE COURT:  ON 9:00 O'CLOCK ON APRIL 5TH.  DOES

14   THAT WORK FOR THE RECEIVER?

15        MR. BUBMAN:  YES, YOUR HONOR.

16        THE COURT:  OKAY.

17        MR. BUBMAN:  AND WHEN YOU SAY YOU'RE LEAVING IT

18   OPEN UNTIL THEN, ARE YOU EXPECTING THAT PERHAPS MR. BAE

19   MAY CONSIDER ACTUALLY COMPLYING NOW?

20        THE COURT:  THAT WOULD BE WONDERFUL, WOULDN'T IT?

21        MR. BUBMAN:  YES, IT WOULD.  I WOULD LOVE TO SEE

22   THAT.  STRANGER THINGS HAVE HAPPENED, I THINK.

23        THE COURT:  I HAVE TO STAY THE JAIL IN ORDER TO

24   GIVE THEM WRIT REVIEW.  THEREAFTER, IT'S MY PREROGATIVE.

25   AND CERTAINLY, MY BACKGROUND'S CRIMINAL.  I'VE TOLD YOU.

26   IN CRIMINAL, WE HAVE PROBATION.

27        MR. HERRERA:  I UNDERSTAND.

28        THE COURT:  IN CRIMINAL, PROBATION IS TO GET

1   PEOPLE, YOU KNOW, TO COMPLY.  AND IT'S NOT UNUSUAL FOR A

2   COURT TO IMPOSE A SUSPENDED SENTENCE OR IMPOSE A STAY OF

3   SENTENCE AND TO GIVE PEOPLE AN OPPORTUNITY TO COMPLY.

4   AND HOPEFULLY, THERE HAVE BEEN MANY INSTANCES WHERE

5   PEOPLE HAVE BEEN SUCCESSFUL ON PROBATION, WHERE THE

6   IMPOSITION OR THAT STAY BECOMES PERMANENT.  AND THAT

7   WOULD ALWAYS BE MY GOAL.

8        MR. HERRERA:  I WOULD REQUEST SPECIFICITY IN WHAT

9   COMPLIANCE LOOKS LIKE, BECAUSE RIGHT NOW, IT'S JUST

10  IMPOSSIBLE.

11       THE COURT:  THAT'S MY POINT.  THIS ISN'T A CRIMINAL

12  PROCEEDING.  IT IS NOT A PROBATIONARY SENTENCE.  I'M

13  MAKING AN ANALOGY.

14       I'VE SEEN WHAT'S HAPPENED BEFORE, AND I HEAR -- THE

15  ORDERS HAVE IMPACTED CONSEQUENCES.  THEY'RE NOT A

16  VACUUM.  AND I THINK THAT THERE'S BEEN SIGNIFICANT

17  CONSEQUENCES.

18       I INDICATED THAT I MIGHT REDUCE THE SENTENCE.  MY

19  SENTENCE ACTUALLY CAME DOWN.  I HAD AN IDEA WHAT I WAS

20  GOING TO DO.  I WAS GOING TO GIVE HIM JAIL AND SENTENCE

21  ON EVERY OFFENSE.  I DIDN'T.  IT MAY COME DOWN EVEN

22  FURTHER.  IT DOESN'T HAVE TO.  THE SENTENCING RANGE IS

23  UP TO $1,000 FINE AND FIVE DAYS OF JAIL FOR EACH

24  OFFENSE.  HE HAS NOT BEEN MAXED OUT OR HE MAY NOT SERVE

25  ANY JAIL.  WE'LL SEE.

26       MR. HERRERA:  YOUR HONOR, HE -- HE'S GONE DOWN ITEM

27  BY ITEM WITH THE LIST PROVIDED.

28       THE COURT:  I NEED TO GO ON TO MY NEXT CASE.

34

1        MR. HERRERA:  HOW MUCH MORE SPECIFIC --

2        THE COURT:  I NEED TO GO TO MY NEXT CASE.  YOU'RE

3    GOING TO GET A COPY OF THE ORDER.  PLEASE REMAIN.

4        WAIVE NOTICE ON THE NEXT HEARING DATE, RECEIVER?

5        MR. BUBMAN:  YES, YOUR HONOR.

6        THE COURT:  COUNSEL FOR MR. BAE?

7        MR. HERRERA:  THIS IS APRIL 5TH?

8        THE COURT:  YES.  9:00 A.M.

9        MR. HERRERA:  9:00 A.M.

10             (PROCEEDINGS CONCLUDED.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

35

1          SUPERIOR COURT OF THE STATE OF CALIFORNIA

2                 FOR THE COUNTY OF LOS ANGELES

3    DEPARTMENT 51                  HON. UPINDER KALRA, JUDGE

4

5    JASON HARLEY BOBSON, AN INDIVIDUAL,)
                                        )
6               PLAINTIFF,              )
                                        )
7        VS.                            ) NO. BC650612
                                        )
8    KEITH BAE, AN INDIVIDUAL; AND      )
     DOES 1-10, INCLUSIVE,              )
9                                       )
                DEFENDANTS.             ) REPORTER'S
10   _____) CERTIFICATE

11

12

13          I, KYLIE SHEPHERD, CSR NO. 13756, OFFICIAL

14   PRO TEMPORE REPORTER OF THE SUPERIOR COURT OF THE STATE

15   OF CALIFORNIA, COUNTY OF LOS ANGELES, DO HEREBY CERTIFY

16   THAT THE FOREGOING PAGES COMPRISE A FULL, TRUE, AND

17   CORRECT TRANSCRIPT OF THE PROCEEDINGS TAKEN IN THE

18   ABOVE-ENTITLED CAUSE FOR THE DATE OF MARCH 1, 2024.

19

20          DATED THIS 16TH DAY OF MAY, 2024

21

22

23

24
                           KYLIE SHEPHERD
25                         CSR NO. 13756
                           OFFICIAL REPORTER PRO TEMPORE

26

27

28

**[& - absorbing]**                                                              1

| & |
|---|
| **&**   1:23 |

| 1 |
|---|
| **1**   1:14 2:6 3:3 13:25 17:13 22:23 29:16 35:18 |
| **1,000**   29:27 30:1,4,6,9,10 33:23 |
| **1-10**   1:8 35:8 |
| **10**   18:19 |
| **100**   1:20 |
| **10th**   17:23 |
| **1175**   1:24 |
| **11:30**   12:20 |
| **11th**   17:23 27:16 |
| **13756**   1:27 3:6 35:13,25 |
| **16133**   1:24 |
| **16th**   35:20 |
| **17**   23:6 |
| **17th**   17:3,4 28:1 29:6 30:3 |
| **18**   28:5 29:10 |
| **18185**   35:24 |
| **18th**   28:17 30:6 |
| **1a**   29:21 |
| **1b**   29:1 |
| **1c**   29:2 30:1 |
| **1d**   29:22 |
| **1e**   29:6 30:3 |
| **1f**   29:9 |
| **1g**   29:22 |
| **1h**   29:11 30:8 |
| **1i**   29:14 30:10 |
| **1j**   29:22 |
| **1st**   28:15 31:1,3 |

| 2 |
|---|
| **2**   13:16,19 14:11 17:14 |
| **20**   30:19 |
| **200**   4:9 |
| **2016**   15:12,14 |
| **2022**   16:28 17:4 27:16,18,21,24 27:25 28:1,4,6 28:7,15,27 29:2 29:6,9,10,17 30:3 |
| **2023**   15:12,16 17:6,7 28:9,10 28:12,13,16,17 29:11,13,14,18 30:8 |
| **2024**   1:14 2:6 3:3 13:18 19:7 22:22 23:7 31:1 35:18,20 |
| **21**   29:11 |
| **21st**   17:6 28:10 28:19 30:8 |
| **22**   16:28 17:5 17:19 23:6 |
| **22nd**   27:18 28:27 |
| **23rd**   23:23 |

| 24th   17:7 28:12 28:16 29:13,17 |
|---|
| **27th**   28:13 29:14 |
| **28th**   28:7 |
| **29th**   27:25 |
| **2nd**   13:28 14:5 27:3 |

| 3 |
|---|
| **3**   2:6 |
| **30**   26:25 30:17 30:21 |
| **30,000**   17:27 |
| **300,000**   25:1 |
| **310**   1:21 |

| 4 |
|---|
| **45**   30:22 31:11 31:16,16 |
| **451-4600**   1:25 |
| **4:30**   9:7 |
| **4th**   28:8 |

| 5 |
|---|
| **500**   29:26 |
| **51**   1:3 3:4 35:3 |
| **570-0513**   1:21 |
| **5th**   31:3,19 32:13 34:7 |

| 6 |
|---|
| **6**   23:1,7 27:24 |
| **6:00**   11:14 |

| 7 |
|---|
| **7**   10:10 13:18 13:21 30:5 |

| 700   1:20 |
|---|
| **7th**   17:5 28:4 29:9 |

| 8 |
|---|
| **818**   1:25 |
| **8:30**   31:21 |

| 9 |
|---|
| **900,000**   14:28 |
| **90401**   1:20 |
| **91436**   1:25 |
| **941**   14:14 |
| **9:00**   32:13 34:8 34:9 |
| **9:34**   3:7 |
| **9th**   27:21 29:2 29:28 |

| a |
|---|
| **a.m.**   2:6 3:7 34:8,9 |
| **ability**   11:1 17:2 20:18 23:25 29:20 |
| **able**   5:9 17:17 17:20 18:13 22:23 23:14 |
| **above**   28:21 29:1,2 35:18 |
| **absolute**   21:1 |
| **absolutely**   5:24 5:26 8:26,27 26:12 |
| **absorb**   24:14 |
| **absorbing**   24:10 |

**[abundantly - authority]** 2

**abundantly**
23:12
**accepted** 5:21
**access** 4:7
10:17,19,20,20
16:2,16 18:14
20:22,28,28
21:1,2,3,8,11
23:2
**account** 18:1
19:27,27 20:21
26:24 30:11
**accountant**
17:12,17 27:17
27:20,23 29:1,4
**accounting**
4:28 7:15 8:13
8:17,17 16:12
25:14
**accounts** 16:18
16:19,20 19:24
21:1,8 23:2
**accused** 5:18
25:27
**accusing** 4:11
4:22,23
**acknowledge**
28:23
**acknowledging**
16:9
**acquitted** 6:23
6:27
**acted** 8:21
**actual** 15:7,8
21:8

**actually** 17:3
25:21 32:19
33:19
**adamant** 26:4
**add** 7:9
**addition** 13:23
**additional** 7:21
7:23,24
**address** 8:20
**addresses** 8:12
**addressing**
10:11
**adjudicating**
26:1
**administrative**
16:2
**admitted** 5:11
**adverse** 20:12
20:13
**adversely** 17:2
17:8
**agency** 5:22
25:4
**agent** 4:13
**aggravation**
7:9
**ago** 7:12 17:18
18:26
**agreed** 26:18
**agreement**
25:15 27:27
**ahead** 12:6
**aid** 28:3 29:8
**al** 3:2

**alejandro** 1:19
3:17
**allegation** 4:14
**allegations** 4:10
5:23 6:11 19:4
24:25
**alleged** 29:1
**allow** 8:16
22:19 23:19,24
**allowed** 4:21
**amount** 19:2,25
**amounts** 6:15
**analogy** 33:13
**angeles** 1:2 3:3
35:2,15
**answer** 21:13
**apart** 21:19
**apparently**
20:22
**appeal** 8:9 31:5
32:9
**appear** 17:6,6
19:12 24:18
28:5 29:10
30:6
**appearances**
1:17 3:5
**appears** 19:6
19:11
**application**
3:22
**appointed** 1:22
17:4
**appointing**
3:23 28:1 29:7

**appropriate**
26:1
**approximately**
7:13 14:28
**april** 27:24,25
28:17,19 31:3
31:19 32:13
34:7
**argue** 26:11
**arlo** 16:6
**arose** 10:4
**arraignment**
26:27
**asked** 8:16 9:1
9:7,8,28 10:4
13:6 16:18
20:11,18 21:15
21:27 25:23
**asking** 7:21
8:15 13:13
17:19
**assets** 27:28
**assume** 24:8
**astray** 25:23
**atm** 19:26
**attack** 4:25
**attention** 25:7
**august** 17:3,4
17:19 23:6
28:1 29:6 30:3
**authorities**
3:26
**authority** 7:21
7:21,23,24 24:7

**authorizing**
3:22
**auto** 20:23
**available** 11:8
22:1
**avoid** 7:26
19:17,20
**avoiding** 5:20

**b**

**b** 27:18 28:23
**back** 12:16
15:14 16:27
17:18 25:22
31:3,20
**background's**
32:25
**bad** 20:3,3
**bae** 1:8 3:2,10
3:16,17,28 4:22
5:14 10:9,14,24
11:18 12:18,26
13:7 14:15
17:25,28 18:7
18:18 20:21
21:14,22,25,25
23:27 24:7,13
24:22 26:5,11
26:28 27:6,19
27:22,25 28:5
28:11,14,23,25
28:27 29:3,10
29:12,15,19,21
29:23 31:8
32:18 34:6
35:8

**bae's** 5:3 7:4
19:10 20:16
25:26 26:13
31:24
**balance** 17:21
**bank** 16:18,19
16:20 19:23,24
20:28 21:7,8,9
23:1
**bankrupt**
26:11
**bankruptcy**
3:23 5:5 7:24
**banks** 21:7
**basically** 14:22
23:27
**basis** 4:16 6:2
**bates** 18:5
**bc650612** 1:7
3:1 35:7
**behalf** 26:28
**behavior** 7:2,2
7:4
**belief** 16:11
**believe** 14:5
**beyond** 6:28
11:8 16:11
28:20
**bias** 8:25
**biased** 8:21
**blamed** 5:14,15
5:19,20
**bleed** 7:6
**blind** 6:16 7:2

**board** 18:12
**bobson** 1:5 3:2
3:10 12:17
25:12,19,26
35:5
**books** 28:11
29:12
**boulevard** 1:20
1:24
**box** 9:26
**breadth** 30:14
**brief** 12:24
22:12
**briefly** 24:4
25:23
**bring** 25:7
**brought** 20:21
**bubman** 1:23
1:23,24 3:13,14
3:14 11:27
12:11,21,23,25
14:26 15:3,8,15
15:18,27 17:9
21:13 22:11,16
26:25 31:21
32:15,17,21
34:5
**business** 4:19
4:20,20,24,26
5:4,8,12 7:20
16:11 17:14,22
18:12 19:7
20:16 22:19,20
23:5,8,12,23
24:23 25:1,4,11

26:11

**c**

**c** 27:21 28:25
**calendar** 8:19
8:24 9:3 31:22
**california** 1:1
1:20,25 3:3
35:1,15
**call** 3:10,11
**camera** 16:6,6
**capable** 10:26
**case** 3:1,2 5:1
12:14 33:28
34:2
**cash** 5:16 17:25
17:27 18:1,3,7
18:8,10,18,19
18:19,20,27,28
19:4,9,22,25,28
22:26,27,27
**cause** 35:18
**certain** 18:27
27:9
**certainly** 32:25
**certificate**
35:10
**certify** 35:15
**chance** 12:19
26:3
**charge** 20:23
**chase** 23:1
**check** 18:9
23:16
**circumstances**
24:14

**[clarification - court]** 4

**clarification**
7:22,28
**clean** 27:11
**clear** 7:10
23:12 29:28
**clearly** 4:24
13:20
**clerk** 30:23,23
30:28 31:17
**client** 6:10,17
7:20,26 9:4,7
9:21,21 19:26
26:1
**client's** 7:14
**clients** 19:9
**clifton** 1:19
**close** 4:4
**closed** 11:3
16:16
**closely** 24:20
**collectively**
26:24
**come** 31:3,20
33:21
**comes** 18:7
**coming** 21:18
**comment** 31:25
**commented**
17:26
**comments**
12:22,23
**communicati...**
5:21
**company** 21:10
21:12

**complaining**
21:19
**complaint**
10:15
**complaints**
10:23 11:6
24:27
**complete** 8:18
8:18 11:6
21:11 26:9
27:4
**completed** 4:7
4:8 11:5
**completely**
4:26 5:2 20:25
27:5
**compliance**
10:11,24 15:24
26:5,6,8,8,9,20
30:12,15 31:24
33:9
**complied** 9:24
10:28 21:25
31:27
**comply** 6:17
10:1 13:6
15:28 24:17
27:5 28:8,26
29:20 30:14
33:1,3
**complying** 7:27
26:15 32:19
**comprise** 35:16
**concise** 22:12

**conclude** 26:3
27:7
**concluded**
34:10
**condoning** 7:1
**conduct** 6:10
8:26
**conducted** 6:19
27:2
**confirming**
21:5
**consent** 13:7
**consequences**
26:10 33:15,17
**consider** 9:16
11:11,12,23
23:8 30:19
32:19
**consideration**
28:20 31:4
**considered**
25:9 26:13
**consistent**
11:18
**conspiracy**
6:25
**constantly** 5:18
**contempt** 3:20
6:19,28 7:5,7
15:25 16:25
26:2 27:2
30:25
**contemptor**
29:23

**contention** 6:22
**continue** 10:20
23:19,25 31:18
**continued**
23:27
**continues** 6:10
**control** 16:3
**copy** 30:26,26
30:27 31:17
34:3
**correct** 15:15
35:17
**corresponden...**
21:4
**counsel** 3:11,11
3:16,23 12:17
12:18,19 22:1
26:18 28:19
30:26,26 31:8
34:6
**county** 1:2 17:1
35:2,15
**couple** 8:11
16:19
**coupled** 26:15
**course** 16:25
**court** 1:1,22
3:8,10,16,19
5:6 6:3,5,5,14
6:15,18,19,23
6:27 7:1,28 8:3
8:15,23,28,28
9:1,16,20,23
10:27 11:10,11
11:13 12:3,12

12:16,18,18,22
12:24 14:24,27
15:6,13,16,23
15:24 16:26
17:26 18:22
19:6,7,11,12,19
19:23 20:9,11
21:23 22:7,14
24:4,21 25:8,13
25:22,28 26:20
26:21,26 27:2,2
27:3,6,8,9,11
27:14,15 28:5
28:16,20,21,22
28:23,25 29:10
29:17,19,21,25
30:6,11,12,23
30:23,25 31:5,7
31:10,10,13,16
31:17,22,28
32:6,7,9,13,16
32:20,23,28
33:2,11,28 34:2
34:6,8 35:1,14
**court's** 7:27 8:8
9:24 24:17
26:2,4 27:10,15
27:18,21,24
28:1,4,7,10,13
28:17,27 29:2,6
29:9,11,14,28
30:1,3,8 31:24
**courtesy** 19:10
**created** 22:5

**credit** 25:1
**criminal** 32:25
32:26,28 33:11
**criticizing**
20:25
**csr** 1:27 3:6
35:13,25
**current** 15:16
**cycle** 20:6

**d**

**d** 2:1 27:24
**date** 10:1 13:16
31:1,11,19 32:6
32:10 34:4
35:18
**dated** 35:20
**dates** 31:2
**dating** 16:27
**day** 4:27 10:2
12:6 21:27
23:1 25:6
31:11 35:20
**days** 11:13 18:4
30:2,7,9,10,17
30:20,21,22
31:16 33:23
**declaration**
3:25,26 10:8,9
12:20 13:15
14:28 17:28
**declarations**
6:12
**deducted** 23:17
**defects** 6:23

**defendants** 1:9
35:9
**definitely** 10:27
**delay** 16:26
17:8 20:15
**demand** 28:15
29:16
**demanding**
15:24
**denied** 6:7
**department** 1:3
3:4 35:3
**deposited** 18:1
**deposits** 20:1,4
**depth** 30:14
**destruction**
7:19
**determine**
22:23
**determined**
8:17
**direction** 19:17
**directly** 15:21
21:10
**disclosed** 18:26
18:28
**discount** 18:19
**discuss** 30:20
30:21 31:7
**dispose** 5:1
**dispute** 19:9
**disrupted**
10:18,19
**dissolution**
8:18

**dissolved** 4:28
25:12,13
**dissolving**
25:13
**distribution**
27:27
**docket** 30:25
**documented**
31:27
**documents** 4:6
6:13 11:19,20
18:16 28:14
29:15
**doing** 5:7,11
7:17 16:12
19:10 21:27
24:13,16,23
25:10,17
**dollars** 19:15
19:16
**donell** 1:22
3:15 5:10
10:10 17:11
18:20 23:3
**donell's** 13:18
18:5 21:4
**door** 4:18
**doubt** 7:1 28:21
**downloaded**
13:28
**downloads**
22:6
**dropbox** 13:25
13:26,28 14:4,6
22:1

**due**  23:22 25:1
28:20 31:11

**e**

**e**  1:23 2:1 28:1
29:5
**earlier**  21:20
**early**  22:21
**efforts**  16:22
**electronic**  10:3
**email**  12:1,9
21:4,20
**emails**  4:6
21:18,18
**emergency**  4:2
6:2
**employed**
24:10,15,24
25:5
**employees**  5:10
14:20,23 18:6,9
18:27 19:11
23:15,20,25,28
24:9
**encino**  1:25
**encouraged**
9:21
**endless**  31:26
**engaged**  7:20
11:19
**ensure**  31:26
**enter**  30:24
**entered**  7:12
15:24
**entire**  5:3 16:12
22:2

**entirely**  15:4
**entities**  4:13
7:26
**entitled**  35:18
**escapable**
10:24
**esq**  1:19,23,24
**estate**  15:1
**et**  3:2
**everything's**
4:8 21:28
**evidence**  4:11
5:23 6:12,13,16
24:21
**ex**  3:22 4:10,16
6:7 21:23
**example**  4:11
8:22 12:28
16:1 18:25
20:20
**exceeded**  6:8
**excel**  19:1
**except**  7:14
**exchange**  27:26
**excuse**  8:3,3
25:28,28
**exhausted**
18:23
**expand**  4:17,22
**expected**  11:9
**expecting**  32:18
**expense**  24:16
**experience**  5:8
**explained**  12:5
17:25

**explaining**  9:18
**extend**  31:11
**extent**  15:28
16:21

**f**

**f**  28:4 29:5,5
**fact**  20:26
24:28 26:15
**failed**  28:25
**failure**  5:19
26:11 30:14
**far**  15:26 26:23
**fault**  23:28
**february**  8:8
10:10 13:16,18
13:19,21,28
16:28 17:6,7,22
17:23 22:22
23:1,7,23 27:18
28:10,12,13,16
28:27 29:11,13
29:14,17 30:8
**figure**  17:21
18:11 25:2
**file**  3:23 8:11
11:20,21 12:6
21:26 27:25
30:18,24
**filed**  8:9 10:8
11:17 12:2,6,20
14:14 16:9
21:22 28:16
29:17
**files**  11:13

**filing**  11:17
12:5
**filings**  9:17
10:3,3 11:15,15
**final**  4:28 22:14
**finality**  31:27
**finally**  7:18
18:14
**financial**  16:28
27:19,22,26
28:28 29:3,25
**financials**
18:11 23:10
**find**  10:25
16:13 17:13
18:5 22:24,25
**finding**  27:7
31:28
**findings**  6:20
27:9,10 32:1
**finds**  28:20,21
28:23,25 29:19
29:21
**fine**  11:26
12:12 29:26,27
30:1,4,7,9,10
33:23
**fines**  30:13,22
**finish**  8:15 9:18
**first**  4:2 12:28
14:10 17:17,20
20:3 22:22
23:1,3,7 29:24
29:24

**[five - honor]** 7

| | | | |
|---|---|---|---|
| **five** 12:24 18:22 21:20 30:2,7,9,10 33:23 | **given** 4:9 5:17 23:14 27:3 | **guilty** 29:21 | **hears** 10:28 |
| **focus** 25:22 26:3 | **go** 9:9 12:14 13:26 16:20 22:19 25:22 33:28 34:2 | **h** | **held** 26:2 |
| **following** 27:14 28:26 29:24 | **goal** 33:7 | **h** 1:19 28:10 | **help** 11:8 |
| **foregoing** 35:16 | **goes** 11:8 | **habit** 7:19 | **helpful** 9:23 |
| **forthwith** 9:6 | **going** 3:20 6:17 6:26 7:6,9 9:9 9:9 12:14,26 15:13 17:21 19:8 21:22 22:27 23:19,24 25:23 26:3 27:10 30:17 31:2,18,19 32:9 32:10 33:20,20 34:3 | **half** 18:7,17 | **heretofore** 3:5 |
| **forward** 3:11 | | **hand** 10:22 | **herrera** 1:19,19 3:17,17 4:1 6:4 8:1,7,25 9:15 10:8 11:26 18:25 19:12,21 20:1,11 24:5 25:25 26:4 27:1 28:8,18 31:9,11,14,23 32:12,27 33:8 33:26 34:1,7,9 |
| **fraud** 4:12 | | **handed** 10:22 21:15 | |
| **friday** 1:14 2:6 3:3 28:19 | | **handful** 19:14 | |
| **front** 18:28 | | **happen** 9:10 13:20 20:8 22:21 | |
| **frustrating** 5:28 | | **happened** 5:14 11:21 24:20 25:16 32:22 33:14 | |
| **full** 6:5 8:4 10:19,20 13:1 21:3,11 23:15 26:8,9 35:16 | **good** 3:13 19:12 20:2,5 | | |
| **funds** 25:20 | **gotten** 13:22 14:18 | **happening** 5:3 20:8 | **hess** 1:19 |
| **further** 5:28 31:18 32:3,4,8 33:22 | **government** 25:3 | **happens** 22:8 | **hey** 13:9,26 14:3 |
| | **grab** 4:18 | **harley** 1:5 35:5 | **hide** 19:17 |
| **g** | **granted** 8:4 | **harm** 6:6 20:14 20:17 22:12 | **hire** 3:22 7:23 |
| **g** 28:7 29:5 | **granting** 6:5 | **harmed** 20:16 24:3 | **hit** 22:5 |
| **gain** 30:15 | **greff** 29:4 | **hear** 11:24 24:5 24:26,27 33:14 | **hold** 6:6 |
| **generous** 31:13 | **grievance** 10:16 | **heard** 3:28 | **hon** 1:3 3:4 35:3 |
| **getting** 4:6 26:5 | **ground** 5:12 | **hearing** 4:15,15 6:19 7:5,7 11:19,20,22 13:16 15:25 19:24 26:27 27:3,4 34:4 | **honor** 3:13 4:1 5:5 8:2,7,19 9:15 11:27 12:21 17:9 18:25 19:22 20:1,8 21:24 22:10,11 24:5 25:25 26:25 31:9,15,21,23 32:15 33:26 |
| **give** 11:3 13:10 13:11 14:11 22:11 30:18,28 32:24 33:3,20 | **guess** 14:16 | **hearings** 6:16 11:14 | |
| | **guesswork** 17:24 | | |

34:5
**hopefully** 33:4
**huge** 19:27
**hundred** 19:15
**hundreds**
21:17,18
**hurting** 4:24

**i**

**idea** 5:10 12:2
22:8 33:19
**immediately**
30:24
**impact** 20:12
20:13
**impacted** 17:2
17:8 26:14
33:15
**impose** 33:2,2
**imposes** 29:25
**imposition** 33:6
**impossible**
33:10
**inclusive** 1:8
35:8
**indicated** 9:20
32:3 33:18
**indicating** 19:2
**individual** 1:5
1:8 7:3 35:5,8
**inexcusable** 7:4
30:16
**information**
11:3 13:8,13,17
14:9 15:20
16:5,7,17,21,27

18:13,26 20:20
20:24,26 22:18
22:23 23:7
24:27
**initial** 28:15
29:16
**initially** 22:17
**injunction** 28:2
29:8
**insolvent** 31:14
**instances** 33:4
**insurance**
22:24
**intact** 24:11
**interest** 24:23
**interested**
30:28
**interesting**
14:10
**interfering**
4:23
**inundated** 4:6
21:16
**inventory** 5:16
**involved** 9:17
17:1,11,12
**involvement**
23:4,8
**irreparable** 6:6
**ish** 12:20
**issuance** 28:2
29:7
**issue** 8:5,13,20
9:2

**issued** 27:12,15
31:4,5,6 32:9
**issues** 10:4 32:6
**item** 10:9,9,11
10:11,12,25,25
14:10 26:17,17
33:26,27
**items** 16:23
17:24

**j**

**j** 1:22 28:17
**jail** 9:9 30:2,7,9
30:10,17,19,20
31:7 32:2,23
33:20,23,25
**jails** 30:20
**james** 29:4
**january** 9:5,25
14:5 27:3,16
28:8
**jason** 1:5 35:5
**job** 7:11,18
20:14,18 21:17
**judge** 1:3 3:4
35:3
**judgment**
25:21 26:27
**judicial** 27:14
**jury** 25:19

**k**

**kalra** 1:3 3:4
35:3
**keep** 21:17
24:10,10,15

25:4
**keeping** 24:23
**keith** 1:8 27:19
27:22,24 28:27
29:3 35:8
**kind** 9:27
**knew** 22:26
**know** 4:5 5:7
5:11 9:20 12:3
14:19 15:11,26
19:16 31:24,25
33:1
**kylie** 1:27 3:6
35:13,24

**l**

**l** 1:24
**label** 6:25
**labeled** 6:24
**large** 24:22
**late** 11:16
21:26
**law** 27:5
**leaving** 32:11
32:17
**led** 15:25
**left** 9:3 11:14
17:23 24:2
**length** 30:13
**letter** 10:10,10
13:18,20 30:25
**liability** 24:6,8
24:10,15 25:2
**lie** 23:27
**lien** 14:28 15:6
15:7

**liens** 15:8,10,11
  15:17
**link** 22:1,6
**list** 16:18 25:7
  26:17 33:27
**listed** 4:13
  13:17 15:5
**literally** 26:7
**live** 24:15
**livelihoods**
  24:11
**lives** 24:16
**location** 4:18
**locked** 23:1
**logistics** 4:21
**long** 11:10
  18:26
**look** 11:13
  13:26 14:4
  19:19 20:3,5
  22:3
**looked** 12:1
  14:2,6 19:23
  31:22
**looking** 24:20
**looks** 20:2 33:9
**los** 1:2 3:3 35:2
  35:15
**lot** 17:23 19:4
  21:22
**love** 32:21

**m**

**made** 6:19
  11:15 22:4
  23:18 27:9

31:25
**majority** 15:27
  16:21 18:8
**make** 7:10
  10:27 11:11
  24:1 31:23
  32:1
**making** 4:10
  31:28 32:1
  33:13
**malfeasance**
  7:19
**malicious** 25:10
**march** 1:14 2:6
  3:3 27:21 29:2
  29:28 31:1,3
  35:18
**massive** 24:6
**matter** 5:15 6:3
  8:10 12:17
**matters** 3:10
  25:25
**maxed** 33:24
**mean** 11:2
  15:27 31:14
**meaningful**
  5:25
**michael** 1:23
  3:13
**minimal** 26:23
**minute** 21:26
**minutes** 12:24
  18:22,24 21:19
  21:20

**mirman** 1:23
**misappropria...**
  25:20
**misconduct**
  6:25
**misleading**
  5:24
**missing** 21:12
  21:14,14
**mitigation** 7:8
  9:23,28 10:5,7
**moment** 12:4
**money** 14:23
  18:21 19:13,22
  19:27 20:6
  22:28 23:20,22
  24:13,25 25:20
  25:21,26 31:12
**monica** 1:20
**monitor** 22:5
**month** 17:27
  19:28,28 20:6,7
  20:7 22:2
**monthly** 16:15
**morgan** 1:24
  3:14
**morning** 3:13
  11:20 12:7
**motion** 4:3 8:1
  8:24
**motions** 8:11
  8:12 21:21
**moving** 19:26
**multiple** 26:7

**n**

**n** 2:1
**nahmias** 1:23
**name** 3:2 12:28
  13:3
**names** 19:2
**necessary** 5:26
**need** 13:10,22
  21:5,6,7,11
  33:28 34:2
**needed** 16:3
  25:14
**needs** 4:28 5:27
  25:9
**negatively**
  26:14
**negotiated** 24:9
  25:1
**net** 14:21
**neutral** 27:17
**never** 10:18
  11:28 18:20
**night** 11:21
  12:2,10,20
**nobody's** 14:2
**noon** 28:12
  29:13
**note** 13:15
**noted** 3:5 18:15
**notice** 27:14
  30:28 34:4
**notion** 6:13
**november** 28:5
  28:7 29:10

**number** 3:1
**numbers** 17:13
**numerous** 14:6
30:15

**o**

**o'clock** 32:13
**occurred** 20:15
20:17
**october** 17:5
28:4 29:9 30:5
30:6
**offense** 29:24
29:27 33:21,24
**offenses** 30:18
**office** 18:5 21:5
**official** 1:27
35:13,25
**oh** 12:27 13:7
18:6
**okay** 3:19 6:3
8:23 12:12,16
15:6,23 18:22
20:9 32:11,12
32:16
**old** 20:21
**once** 9:12 11:15
18:13 23:8
**open** 3:8 24:24
32:11,18
**openly** 26:5
**operate** 22:19
**operated** 16:11
**operating** 5:20
**operational**
25:4

**operations**
18:18
**opportunity**
4:4,9 5:25
30:18 33:3
**opposition** 3:27
**options** 32:11
**oral** 1:13
**order** 3:22,24
4:17 5:27 7:12
7:25,27 8:4,9
13:9 15:23
16:28 17:3,5
22:18,20 25:4
25:13 26:2
27:12,12,16,18
27:21,24 28:1,4
28:7,10,13,17
28:18,27 29:3,7
29:9,11,14,24
29:28 30:4,5,9
30:24,26,27,27
31:17 32:23
34:3
**ordered** 16:24
17:6 22:17
30:24 31:1
**ordering** 27:16
27:18,21,24
28:10,27 29:3
29:11 30:5
**orders** 6:18
9:24 13:6
24:18 27:15
28:8,22,22,24

28:26 29:20,21
30:15 31:8
33:15
**outrageous**
4:14 6:10,11,25
**outstanding**
15:17,25
**overlap** 4:18
**own** 4:23 5:10
16:22 24:16
25:17

**p**

**p.c.** 1:19
**p.m.** 12:8
**page** 2:5
**pages** 4:10
35:16
**paid** 11:1 14:17
14:18,21,22
18:27 19:9,22
22:25
**paper** 19:20
**papers** 17:7
28:11 29:12
**paragraph**
13:1
**parcel** 6:26
**part** 6:22,24,26
22:20 27:13
**parte** 3:22 4:10
4:16 21:23
**partes** 6:7
**participate**
7:14

**participating**
4:12
**parties** 6:7
27:16 30:28
**partner** 25:11
25:12,18
**partnership**
4:27 8:18
27:28
**pass** 12:12,13
**password** 16:2
**pay** 14:16,21
18:7,27 23:14
23:17,20,22,25
**payable** 30:22
31:16
**paying** 16:15
24:9
**payment** 24:8
24:28
**payroll** 13:1,3
13:5 14:11,12
14:13,14,16,17
14:20 15:1,3
18:9,25 21:10
22:25 23:15,15
23:16,16,21,21
23:22
**pays** 18:7
**people** 19:14
24:15,24 25:5
33:1,3,5
**percent** 18:19
**perfect** 12:25
12:28

[period - reasonableness]                                    11

**period**  8:13,17
9:25 23:11
**permanent**
33:6
**permission**
5:17
**personally**  13:4
15:22
**pessimistic**
26:18
**place**  19:5
**plaintiff**  1:6,18
35:6
**plaintiff's**
27:20,23 28:28
29:4
**plan**  24:8,28
**please**  3:11,12
25:24 30:27
34:3
**plethora**  16:23
**pocketing**
24:13
**point**  5:4,4 8:8
8:10 10:13
17:9 20:19
21:1 22:28,28
23:3 24:22,22
26:8 31:15
33:11
**pointing**  9:16
**points**  3:26
24:11,12
**portion**  12:26
27:7,7

**position**  11:25
11:27 31:24
**possibility**  22:3
**possible**  4:25
**practical**  21:24
**preliminary**
27:3 28:2 29:8
**prepare**  27:11
**prerogative**
32:24
**present**  3:18
32:7
**presented**  7:5
**prevented**  7:17
**print**  12:12
**prior**  13:28
28:8
**pro**  1:27 35:14
35:25
**probably**  17:22
18:17
**probation**
32:26,28 33:5
**probationary**
33:12
**problem**  13:11
**proceed**  3:21
8:5 9:2,13 10:6
10:6 31:19
**proceeding**
9:16 27:8
33:12
**proceedings**
1:13 34:10
35:17

**process**  4:5
31:26
**produce**  17:6
**proforma**
17:20
**proof**  12:8 22:7
**proposing**
30:22
**protective**
28:18
**proveable**  8:27
26:16
**provide**  13:3
22:7 27:19,22
28:28 29:3
**provided**  12:27
13:8,12,17,19
13:24,25 16:5,7
16:17,19,24,24
18:16 19:1
33:27
**provider**  13:1,4
13:5 14:14,20
**providing**
10:26 16:27,28
23:2,26 29:25
**pulled**  15:8,11
**punished**  26:12
**purpose**  25:17
**pursuant**  28:15
29:16
**pushed**  19:16
**put**  6:20 7:8 9:5
9:10,11,11,12
9:22,25 10:1,1

10:4 18:18,20
22:10 27:6

**q**

**question**  8:28
9:1,8,14 14:24
15:13 16:26
20:11 21:13
**questions**  31:10
**queue**  12:4,8
**quickbooks**
16:15 20:20,21
**quo**  25:15
26:22

**r**

**r**  29:5
**rails**  5:3
**ramble**  10:17
**random**  20:7
**range**  33:22
**reach**  6:7
**read**  11:23
12:13
**ready**  10:6
**real**  15:1 17:13
**realistic**  31:15
**reality**  10:21
**really**  19:19
30:16
**reason**  7:13 9:6
**reasonable**
6:28 28:21
**reasonableness**
11:9

[receive - see]    12

**receive** 10:15
**received** 3:25
3:27 6:15 14:1
14:19 17:17
18:21
**receiver** 1:22
3:12,14 7:12,13
7:16,17 8:21,21
8:26 11:24
12:17,19 13:10
17:7 20:12
22:18 23:3,24
24:26 28:2,3,11
28:14 29:7,8,12
29:16 32:14
34:4
**receiver's**
20:17 23:28
28:18 31:19
**receivership**
19:8 22:13,17
22:20 24:3
**receiverships**
17:11
**recently** 18:4
**recess** 12:15
**record** 12:16
27:11,13
**records** 11:3
13:12,17 14:18
14:19 16:28
17:12,16,19,27
19:25 22:21
27:19,22,26
28:28 29:4,25

**reduce** 25:2
33:18
**reference** 14:27
**refused** 6:17,18
6:18
**regard** 16:4,6
**regarding** 7:25
27:26,27 32:7
**regards** 7:10,25
9:23 15:6,23
29:2,6
**register** 18:18
**regular** 4:3
8:12
**relates** 8:25
**released** 15:19
**relevant** 20:26
**remain** 30:27
34:3
**remarkable**
21:17
**remind** 19:23
**reminded**
11:17
**rendered** 31:14
**repeat** 27:10
**report** 27:25
**reported** 1:27
15:10
**reporter** 1:27
3:6 35:14,25
**reporter's** 1:13
35:9
**request** 6:20,21
9:11 10:10

27:6 33:8
**requested**
12:27 28:14
29:15
**requesting** 7:11
8:14 13:2
**requests** 21:16
**required** 13:4
32:2
**requirements**
27:5
**requires** 6:1
**requiring** 28:4
28:7,13,17 29:9
29:15
**respect** 23:4
**respond** 4:9
5:25 18:24
24:4 25:23
**responsive**
22:11
**restaurant** 5:8
5:19 11:2 19:7
**resulted** 26:10
**return** 28:18
**returns** 14:15
16:10
**review** 5:24
12:20 32:5,24
**reviewed** 3:25
3:26
**reviewing**
17:26
**right** 8:28 9:3
18:22 32:4

33:9
**rightfully** 6:23
**rocky** 26:19
**ruin** 4:26
**ruling** 8:4 27:4
**rulings** 8:15
**run** 17:13,20
**running** 5:12
7:20

**s**

**safe** 18:20
**sales** 15:2,4
23:17,17
**sanctioning** 7:1
**santa** 1:20
**satisfy** 30:20
**saw** 19:25
23:12
**saying** 13:19,23
**says** 12:9,27
13:16,25 14:11
16:1,4,7,16
17:28
**seat** 3:19
**second** 8:20
29:27
**seconds** 26:25
**secretary** 15:9
15:21
**security** 16:4,6
**see** 7:18 11:12
14:6 16:1
17:14 20:4
22:6,8 32:21
33:25

| | | | |
|---|---|---|---|
| seeing 22:9 | services 23:26 | sources 22:26 | stealing 5:16 |
| seek 5:5 | session 2:6 | special 3:23 | 24:25 |
| seem 10:14,24 | sessions 2:4 | specific 32:1 | step 3:11 |
| 21:24 | set 4:3 7:26 8:2 | 34:1 | stephen 1:22 |
| seems 14:15 | 31:2 | specificity 33:8 | 3:14 |
| 31:26 | shepherd 1:27 | specious 6:14 | stole 25:20,21 |
| seen 11:28 | 3:6 35:13,24 | spoke 18:5 | 25:26 |
| 15:19 33:14 | shifts 26:21 | sporting 6:12 | story 22:4 |
| select 27:16 | shortages 5:16 | spreadsheet | stranger 32:22 |
| sentence 8:9 | shortcoming | 19:1 | stuff 13:2 23:13 |
| 9:6,8 26:1 31:7 | 5:14 | staggered | submitted 6:3 |
| 33:2,3,12,18,19 | show 21:21 | 30:13 | 8:3 |
| 33:20 | showed 13:9 | standard 6:6,8 | substantial |
| sentenced | showing 10:9 | 6:9,28 | 19:13 |
| 29:23 | 10:11 14:18 | start 17:3 20:3 | successful 25:8 |
| sentencing 3:20 | shows 20:6 | started 7:15 | 33:5 |
| 3:21 6:20 7:6,7 | shut 4:20 5:4 | 23:2,9 | sudden 20:7 |
| 7:7 8:6 9:2,4 | 23:23 | starting 17:18 | sufficient 22:18 |
| 9:10,14,22,26 | shutting 5:7 | 22:28 | suite 1:20,24 |
| 10:4,6 11:12 | side 20:2,4 | state 1:1 25:3 | summary 19:1 |
| 25:9 26:13,23 | sign 18:18 | 35:1,14 | sums 19:13,27 |
| 26:28 27:4,7 | signature 35:24 | state's 15:9,21 | superior 1:1 |
| 33:22 | significant 6:15 | statement | 35:1,14 |
| separate 4:19 | 19:21 33:16 | 22:12,14 | supported 6:11 |
| 4:20 20:25 | similar 14:10 | statements 21:7 | suppose 19:6 |
| september | simple 8:14 | status 25:15 | supposed 9:5 |
| 28:15 29:16 | simply 22:9 | 26:22 27:25,27 | supposedly |
| seriously 6:6 | 30:15 | 31:2,18 | 22:27 |
| serve 33:24 | single 5:13,13 | stay 30:17 31:4 | sure 10:27 |
| served 11:28 | 5:15 10:12 | 31:5,6 32:3,8 | 11:11,24 15:4 |
| 12:1,9 13:5 | situation 24:2 | 32:23 33:2,6 | 31:23 |
| service 4:13 | small 19:14 | stayed 32:2 | surprising 9:27 |
| 12:9 13:1,3,5 | sorry 8:2 30:1 | staying 30:19 | surrender |
| 14:20 31:7 | sort 10:15 | 32:4,7 | 32:10 |

| | | | |
|---|---|---|---|
| **suspended**  33:2 | 14:7,13 17:10 | **trial**  17:20 | **uploaded**  4:6 |
| **sustainable** | **things**  5:2 | 25:19 | 13:27 14:3,7,7 |
| 17:15 23:18 | 13:21,24,27 | **tried**  25:7 | 22:3,9 |
| **system**  16:4,6,7 | 14:1,3 15:27 | **true**  16:5,8 | **urgency**  5:27 |
| 16:15 18:14 | 16:10 17:10 | 18:8 22:9 | 20:14 |
| 21:6 | 21:26 22:9 | 35:16 | **use**  4:21 18:26 |
| **systems**  16:3 | 24:23 32:22 | **truth**  10:21 | **used**  17:25 |
| **t** | **think**  14:15 | **try**  4:17 17:21 | **username**  16:1 |
| | 19:11 26:22 | 23:9 | **v** |
| **take**  14:4 22:27 | 32:2,22 33:16 | **trying**  4:22 | |
| 26:23 31:4 | **thinking**  9:27 | 19:20 21:17 | **vacuum**  33:16 |
| **taken**  12:15 | **thousands** | 25:2 26:6 | **valid**  22:25 |
| 14:21,22 19:4 | 19:16 | **turn**  28:11,14 | 28:22 30:15 |
| 30:11 35:17 | **three**  18:4 | 29:12,15 | **vast**  15:27 |
| **takes**  12:26 | **thrown**  21:23 | **two**  7:12 17:18 | 16:21 18:8 |
| 27:14 | **time**  3:7 9:25 | 18:4,24 23:11 | **ventura**  1:24 |
| **talk**  16:14 32:9 | 11:21 12:6,7 | 30:13 | **verify**  5:9 |
| **talking**  19:13 | 14:2,5,8 16:12 | **type**  15:2 19:20 | **violating**  26:2 |
| 19:14 23:6 | 17:20 19:15 | **u** | **vs**  1:7 3:2,10 |
| **tasked**  27:11 | 22:22 26:28 | | 35:7 |
| **tax**  4:12 5:22 | **times**  14:6 26:7 | **ultimately**  9:24 | **w** |
| 14:14 15:2 | **toast**  18:14 | 13:4 | |
| 16:9 24:6,7 | 20:28 21:6 | **unbelievable** | **waited**  22:18 |
| 25:2 | **today**  3:21 9:3 | 16:13 19:25 | **waiting**  13:7 |
| **taxes**  5:20 | 27:12 31:2,24 | **under**  24:14 | **waive**  26:27 |
| 14:11,12,13,17 | **today's**  31:1 | **underneath** | 34:4 |
| 14:17,21 15:1,1 | **told**  13:9 14:3 | 4:11 | **walk**  11:19 |
| 15:1,2,3,4 | 14:14 18:6 | **understand**  5:2 | **walked**  9:21,26 |
| 23:16,17,21 | 20:23 32:25 | 23:9 24:17,19 | **want**  3:28 4:14 |
| **tell**  13:24 20:10 | **took**  15:20 18:1 | 31:8 32:27 | 4:17,25 7:10,23 |
| **tempore**  1:27 | **top**  25:6 | **unusual**  33:1 | 8:5,8 9:1,7,10 |
| 35:14,25 | **track**  22:7,24 | **unwillingness** | 9:13 10:27 |
| **tens**  19:15 | **trail**  19:20 | 7:14 | 11:11,23 13:11 |
| **theft**  4:23 | **transcript**  1:13 | **upinder**  1:3 3:4 | 14:4 19:9 20:9 |
| **thing**  5:13,13 | 35:17 | 35:3 | 31:26 32:1,7 |
| 5:15,18 12:28 | | | |

**[wanted - yesterday]**                                                        15

**wanted**   8:10
   18:27 19:18
   26:20
**wanting**   5:5
**warned**   5:6
**way**   4:24,25
   5:25 7:1 8:21
   12:5 13:15
   15:12 17:18
   22:5 24:22
   25:10 26:18
**we've**   8:13 13:6
   13:13 14:3
   25:7
**website**   15:9,21
**week**   18:17,17
**weekend**   30:20
**weeks**   17:18
   23:11
**went**   13:4 14:5
   19:24 21:10
**whatsoever**
   23:4
**willfully**   6:18
   28:25
**wilshire**   1:20
**withdrawals**
   19:28
**withdrawn**
   17:28 18:3
   19:26
**wonderful**
   32:20
**word**   22:15

**work**   11:2
   21:25 23:20
   25:3 32:14
**working**   23:25
   24:7
**works**   12:5
   22:4
**worse**   7:5
**wrap**   25:24
**writ**   30:19 31:5
   31:6 32:4,8,24
**writing**   5:21
**written**   5:17
   13:21 27:12,12
**wrong**   5:18

| **x** |
**x**   2:1

| **y** |
**yeah**   11:26
   14:26
**years**   6:17 7:12
   7:18 8:14
**yesterday**   4:8
   10:8 11:14

# EXHIBIT C

Exhibit C Page 210

1

```
 1           SUPERIOR COURT OF THE STATE OF CALIFORNIA
 2                  FOR THE COUNTY OF LOS ANGELES
 3   DEPARTMENT 51              HON. UPINDER S. KALRA, JUDGE
 4
 5   JASON HARLEY BOBSON,              )
                                       )
 6                   PLAINTIFF,        )
                                       ) SUPERIOR COURT
 7             VS.                      ) NO. BC650612
                                       )
 8   KEITH BAE, AN INDIVIDUAL; AND DOES )
     1 - 10, INCLUSIVE                  )
 9                                     )
                     DEFENDANTS.       )
10   _____)
11
12           REPORTER'S TRANSCRIPT OF PROCEEDINGS
13                    APRIL 25, 2024
14
15   APPEARANCES:
16   FOR THE PLAINTIFF:   NO APPEARANCE
17
     FOR THE DEFENDANTS:  HERRERA CLIFTON HESS
18                        BY:  ALEJANDRO H. HERRERA, ESQ.
                          100 WILSHIRE BOULEVARD
19                        SUITE 700
                          SANTA MONICA, CALIFORNIA 90401
20                        (310) 310-2201
21
     FOR THE COURT-APPOINTED RECEIVER:
22
                          MIRMAN, BUBMAN & NAHMIAS
23                        BY:  MICHAEL E. BUBMAN, ESQ.
                               MORGAN L. BUBMAN, ESQ.
24                        16133 VENTURA BOULEVARD
                          SUITE 1175
25                        ENCINO, CALIFORNIA 91436
                          (818) 451-4600
26
27
             SHAWNDA R. DORN, CSR NO. 11387, RPR, CRR, CCRR, CLR
28           OFFICIAL REPORTER PRO TEMPORE
```

2

1   CASE NUMBER:                BC650612

2   CASE NAME:                  BOBSON VS. BAE

3   LOS ANGELES, CALIFORNIA     THURSDAY, APRIL 25, 2024

4   DEPARTMENT 51               HON. UPINDER S. KALRA, JUDGE

5   APPEARANCES:                (AS HERETOFORE NOTED.)

6   REPORTER:                   SHAWNDA R. DORN, CSR 11387

7   TIME:                       A.M. SESSION

8

9                               -OOO-

10

11          THE COURT:  OKAY.  LET'S CALL BOBSON VERSUS BAE.

12   WE'RE GOING TO CALL AN EX PARTE AS WELL AS A MOTION AS WELL

13   AS A STATUS.

14          THE CLERK:  WE HAVE A COURT REPORTER.

15          THE COURT:  ON COURTCONNECT.

16          THE REPORTER:  GOOD MORNING, YOUR HONOR.  SHAWNDA

17   DORN, COURT REPORTER.

18          MR. BUBMAN:  GOOD MORNING, YOUR HONOR.  MICHAEL

19   BUBMAN AND MORGAN BUBMAN APPEARING ON BEHALF OF RECEIVER

20   STEPHEN DONELL.

21          MR. HERRERA:  GOOD MORNING, YOUR HONOR.  ALEJANDRO

22   HERRERA FOR KEITH BAE.

23          THE COURT:  OKAY.  SO I READ EVERYTHING.  THE

24   COURT'S ORDER IS THE COURT'S ORDER WITH REGARDS TO THE

25   EX PARTE APPLICATION FOR FURTHER CLARIFICATION.

26   PREVIOUSLY YOU WANTED A CLARIFICATION BECAUSE YOU NEEDED

27   TO NAME SPECIFIC BANK ACCOUNTS AND BANK ENTITIES IN ORDER

28   FOR THE BANKS TO ACKNOWLEDGE THE COURT'S ORDER.

3

1          NOW IT'S A LITTLE BIT FURTHER.  YOU ARE

2    ASKING THE COURT TO SPECIFICALLY SAY THAT HEFLIN AND AYALA

3    ARE PART OF -- ARE ESSENTIALLY NAMED REPRESENTATIVES OF

4    MR. BAE, AND THEREFORE THEY FALL UNDER THE PENUMBRA OF THE

5    PRIOR ORDER AS WELL AS IF YOU HAVE AUTHORITY TO SUE.

6          AT THIS POINT, YOU ARE ASKING ME TO MAKE

7    FINDINGS BEFORE I HEAR EVIDENCE.  AND I KNOW I HAVE

8    EVIDENCE, BUT IT'S -- THE COMPLEXION HAS CHANGED.  THE

9    ORDER SPEAKS FOR ITSELF.

10          IF SOMEBODY -- YOU BELIEVE, AS THE RECEIVER

11    AND COUNSEL FOR THE RECEIVER, SOMEBODY HAS REPRESENTED

12    MR. BAE AND THEY'RE TRYING TO PREVENT YOU FROM DOING THE

13    RECEIVER'S JOB, WHICH IS TO IDENTIFY THE ASSETS OF THE

14    PARTNERSHIP, YOU DO WHAT YOU HAVE TO DO.  YOU DO NOT NEED

15    FURTHER CLARIFICATION FROM THE COURT.

16          THIS PUTS ME OTHERWISE IN A PROBLEMATIC

17    SITUATION.  AND I KNOW I'VE HAD TO MAKE FINDINGS BEFORE,

18    AND I'VE BEEN ABLE TO MAKE FINDINGS BASED UPON

19    DECLARATIONS, BUT NOW WE'RE GETTING FURTHER -- FURTHER

20    AFIELD, AND I DON'T THINK I NEED TO DO THAT.  THE ORDER

21    SPEAKS FOR ITSELF.

22          DO YOU HAVE ANY QUESTIONS?

23        MR. BUBMAN:  ACTUALLY, I THINK WE'RE GETTING FURTHER

24    INTO THE FIELD IN THIS SITUATION.  AND, YOU KNOW, IT'S

25    JUST BECOME CLEAR THAT ANYBODY ASSOCIATED WITH MR. BAE JUST

26    DOESN'T CARE WHAT THE COURT ORDERS.  IT'S AN ASTOUNDING

27    THING TO ME THAT PEOPLE ARE ACTING WITH SUCH IMPUNITY WITH

28    COURT ORDERS.

Exhibit C Page 213

4

1          THE COURT:  YOU HAVE AUTHORITY.  YOU CAN BRING AN

2     OSC.  YOU HAVE DONE THAT BEFORE.  YOU HAVE GOT THE POWER

3     OF THE COURT BEHIND YOU AS THE RECEIVER.  YOU HAVE GOT

4     CHARGING ORDERS.  YOU HAVE GOT A CURRENT INJUNCTION.  YOU

5     HAVE TOOLS AT YOUR DISPOSAL.

6          MR. BUBMAN:  IT WAS JUST MY HOPE THAT SOMETHING

7     SHORT OF BRINGING AN OSC AND GOING THROUGH AN ENTIRE

8     CONTEMPT PROCEEDING AGAIN MIGHT PERSUADE THESE PEOPLE THAT

9     THEY DO HAVE TO FOLLOW COURT ORDERS.

10          THE COURT:  THERE ARE OTHER PEOPLE THAT CAN MAKE

11     CONTEMPT PROCEEDINGS THAT ARE IN COURT RIGHT NOW, AND THOSE

12     PROCEEDINGS WILL MOVE MUCH QUICKER.

13               SO WITH REGARDS TO YOUR EX PARTE REGARDING

14     CLARIFICATION, THAT'S DENIED WITHOUT PREJUDICE.

15               SWITCHING NOW TO A MOTION FILED BY

16     PURPORTEDLY MR. BAE --

17          MR. BUBMAN:  I'M SORRY, YOUR HONOR.  ONE LAST -- ON

18     THE NAMING OF THE LAW FIRM AS WELL --

19          THE COURT:  YOU WANTED TO NAME THE LAW FIRM --

20          MR. BUBMAN:  -- WE HAVE -- IN BRINGING THE

21     LAWSUIT --

22          THE COURT:  RIGHT.

23          MR. BUBMAN:  -- WE'VE SUED MR. HERRERA.

24          THE COURT:  OH, I KNOW.

25          MR. BUBMAN:  WE'VE ALSO SUED HIS PARTNERS AND THE

26     LAW FIRM --

27          THE COURT:  OH, RIGHT.

28          MR. BUBMAN:  -- WHICH WE BELIEVE IS APPROPRIATE.

5

1   WE'RE TRYING TO AVOID -- YOU KNOW, THEY'RE TRYING TO SAY

2   YOU DIDN'T SPECIFICALLY HAVE PERMISSION TO NAME THE

3   LAWYERS AND THE FIRM.  AND WE JUST WANT TO MAKE SURE IT'S

4   CLEAR THAT THAT'S INCLUDED.

5        THE COURT:  SO I DON'T THINK -- THAT'S WHERE IT GETS

6   PROBLEMATIC.  NOW YOU ARE INTO A NEW LAWSUIT.  I DON'T

7   KNOW IF THERE IS A NOTICE OF RELATED CASE OR NOT, BUT

8   THAT'S A SEPARATE ISSUE.  BUT FOR ME TO SAY YOU HAVE A

9   RIGHT TO SUE SOMEONE IS --

10        MR. BUBMAN:  IT'S JUST RELATING THE PERMISSION THAT

11   YOU GRANTED TO US.

12        THE COURT:  YOU HAVE PERMISSION TO DO WHAT'S IN THE

13   ORDER.  SO WHAT YOU THINK WAS NECESSARY TO EFFECTUATE, TO

14   IMPLEMENT THE ORDER THAT I'VE ALREADY PUT IN PLACE, YOU

15   HAVE PERMISSION TO DO IT.  IT'S VERY HARD FOR ME TO LIKE

16   CAST AN ADVISORY OPINION -- AND THAT'S THE WAY I SEE IT --

17   UP FRONT.  YOU KNOW, IT MAY BE SUBJECT TO CHALLENGES, BUT

18   THAT DOESN'T MEAN YOU CAN'T FILE A LAWSUIT.

19        MR. BUBMAN:  RIGHT.

20        THE COURT:  PEOPLE CAN ALWAYS COME IN WITH

21   CHALLENGES, BUT THAT DOES NOT MEAN YOU CANNOT FILE A

22   LAWSUIT.  IF YOU BELIEVE IN YOUR FULFILLING YOUR DUTY IN

23   GOOD FAITH THAT THIS IS THE APPROPRIATE WAY TO ACT, YOU

24   ACT THAT WAY.  YOU DON'T NEED MY FURTHER PERMISSION IS WHAT

25   I'M SAYING.

26        MR. BUBMAN:  OKAY.  UNDERSTOOD.

27        THE COURT:  OKAY.  NOW, IN REGARDS TO THE MOTION --

28   YOU ALL CAN HAVE A SEAT.  YOU DON'T HAVE TO STAND.

Exhibit C Page 215

6

1           THERE IS NO SUCH MOTION.  THERE IS NO SUCH

2    MOTION FOR DECLARATORY RELIEF.  IF YOU WANT TO FILE A

3    LAWSUIT, YOU CAN SEEK DECLARATORY RELIEF SEPARATE AND

4    APART.  BUT THIS MOTION, IT'S NONSENSE.  THERE IS NO

5    FOUNDATION, NO LEGAL FOUNDATION FOR ANY OF THIS MOTION,

6    AND YOU CAN CAPTION IT ALL YOU WANT.  WHAT YOU CAPTIONED

7    IT WAS:

8            "NOTICE OF MOTION AND MOTION FOR

9        DECLARATORY RELIEF TO SET EFFECTIVE DATE

10       OF DISSOLUTION OF PARTNERSHIP AFTER JURY

11       VERDICT; AN ORDER TO MODIFY OR TERMINATE

12       THE RECEIVERSHIP; TEMPORARY STAY OF

13       AUGUST 17, 2022, APPOINTING RECEIVER;

14       ALTERNATIVELY, A REQUEST FOR AN

15       EVIDENTIARY HEARING."

16           IT'S DENIED.  IT'S NONSENSE.  YOU HAVE

17   PRESENTED THE COURT NO LEGAL AUTHORITY.  WHAT YOU ARE

18   REALLY ASKING FOR IS A MOTION FOR RECONSIDERATION UNDER

19   1008.  YOU HAVE GOT TEN DAYS.  THOSE DAYS HAVE GONE.

20   ABSENT THAT, IT'S DENIED ON ITS FACE.  THE COURT ON ITS

21   OWN CAN ALWAYS RECONSIDER IT.  IF THIS IS AN INVITATION

22   FOR THE COURT TO RECONSIDER, IT'S DENIED.  THERE IS NO

23   FOUNDATION FOR YOU TO FILE THIS MOTION, TO HAVE A HEARING

24   ON THIS MOTION TO CLOG MY CALENDAR.  COMPLY WITH THE

25   COURT'S ORDERS OR FACE THE CONSEQUENCES.  THAT CONCLUDES

26   THIS PROCEEDING ON THAT ORDER.

27           MR. HERRERA:  YOUR HONOR, CAN I BE HEARD?

28           THE COURT:  NO.  YOU DON'T HAVE A RIGHT TO BE HEARD

7

1    ON A MOTION THAT HAS NO LEGAL AUTHORITY.  TELL ME WHERE

2    THE LEGAL AUTHORITY TO FILE THIS IS OTHER THAN 1008.  THAT

3    IS THE ONLY THING YOU CAN BE HEARD ON, BECAUSE THERE IS NO

4    AUTHORITY IN YOUR MOVING PAPERS, NONE.

5         MR. HERRERA:  YOUR HONOR, IF THE COURT DOESN'T WANT

6    TO HEAR FROM ME --

7         THE COURT:  NO.  DO YOU HAVE ANY AUTHORITY?

8         MR. HERRERA:  THE COURT'S INSTRUCTION NOT TO -- I

9    WON'T BE HEARD.  I UNDERSTAND.

10        THE COURT:  MY QUESTION TO YOU IS DO YOU HAVE ANY

11   AUTHORITY?  BECAUSE IT'S ABSENT FROM YOUR MOVING

12   DOCUMENTS.

13        MR. HERRERA:  YOUR HONOR, THE BODY OF THE MOTION IS

14   WHAT'S CONTROLLING, NOT THE CAPTION PAGE.

15        THE COURT:  I READ THE BODY.  THERE IS NO AUTHORITY.

16        MR. HERRERA:  AND THERE IS CLARITY IN THE RELIEF

17   WE'RE SEEKING.  THE RELIEF WE'RE SEEKING IS NOTHING MORE

18   THAN A CLARIFICATION OF A PRIOR ORDER ALREADY MADE BY THE

19   COURT.  IT'S THE SAME THING THAT YOU SUMMONED THE RECEIVER

20   THREE TIMES.

21        THE COURT:  NO.

22        MR. HERRERA:  SIMPLY CLARIFY THE ORDER OR DON'T, BUT

23   THAT'S ALL THE RELIEF THAT'S BEING REQUESTED.  THERE IS

24   NOTHING ELSE REQUESTED.  THERE IS NO ISSUES TO LITIGATE.

25   LOOK AT THE ORDERS MADE AND LOOK AT THE LANGUAGE MISSING

26   FROM AN ORDER, AND EITHER THE COURT WILL CLARIFY IT OR IT

27   WON'T.  THAT'S ALL WE'RE ASKING FOR IS THE RELIEF.

28        THE COURT:  YOU ARE NOT ASKING FOR THAT.  YOU ARE

8

1   ASKING FOR MUCH MORE.  I READ THE WHOLE BODY.

2        MR. HERRERA:  YOU ARE LOOKING AT A SLIVER, AND THERE

3   IS LITERALLY ONE PHRASE ADDED TO THE ORDER.

4        THE COURT:  YOU HAD A RIGHT TO BE PRESENT.  YOUR

5   CLIENT HAD A RIGHT TO BE PRESENT.  YOUR CLIENT CHOSE TO

6   IGNORE.  THOSE HEARING DATES HAVE COME AND GONE.  HE CHOSE

7   TO NOT APPEAR.

8        MR. HERRERA:  HE WAS PRESENT, YOUR HONOR.

9        THE COURT:  NO, HE WASN'T.

10       MR. HERRERA:  WHAT ARE WE TALKING ABOUT HERE?  I

11  THINK WE'RE TALKING ABOUT SOMETHING DIFFERENT, BECAUSE

12  WE'RE TALKING ABOUT THE HEARING FROM DECEMBER OF 2021.

13  THERE WAS A HEARING ON THE DISSOLUTION OF THE PARTNERSHIP.

14  THAT HEARING HAD AN ORDER THAT CAME FROM IT, THE JULY --

15  JANUARY 11TH, 2022, ORDER.  WE'RE ASKING THE COURT TO LOOK

16  AT THAT, LOOK AT THE PROCEEDING, LOOK AT THE RECORD, AND

17  LOOK AT THE FACT THAT IT'S MISSING THE EFFECTIVE DATE.

18  THE LAW IS IN THERE, THE CORPORATION CODE IS IN THERE, BUT

19  THE LANGUAGE IS NOT IN THE ORDER.  THAT'S ALL.  THERE IS

20  NOTHING ELSE TO IT.

21       THE COURT:  YOU DECLINED TO BE HEARD WITHIN 2022

22  WHEN HE WAS MISSING IN ACTION, AND YOU WERE MISSING IN

23  ACTION.

24       MR. HERRERA:  WE'RE TALKING ABOUT TWO THINGS,

25  YOUR HONOR.

26       THE COURT:  NO, WE'RE NOT.

27       MR. HERRERA:  THIS HAS NOTHING TO DO WITH EVERYTHING

28  THAT HAPPENED AFTER THE FACT.

9

1          THE COURT:  IT HAS ABSOLUTELY EVERYTHING TO DO WITH

2     IT.  YOUR MOTION IS DENIED.

3          MR. HERRERA:  OKAY.

4          THE COURT:  AND YOUR REQUEST FOR AN EVIDENTIARY

5     HEARING, YOUR REQUEST FOR A STAY, DENIED, TO BE CLEAR.

6     THERE IS NO AUTHORITY FOR THIS.

7               YOU ARE DEEPER INTO THE ABYSS.  THE FINAL

8     ISSUE IS THE STATUS ON HOW THE RECEIVER INTENDS TO PROCEED.

9     I DON'T EVEN KNOW HOW -- WHERE TO BEGIN.

10          MR. BUBMAN:  WELL, ACTUALLY, SHOULDN'T WE BE

11     ADDRESSING MR. BAE'S SENTENCE?  I THOUGHT THAT WAS WHERE

12     WE WERE GOING TODAY.  MR. BAE WAS SENTENCED, AND I THINK

13     YOUR HONOR WAS WAITING TO SEE PERHAPS IF THERE WAS ANY

14     COOPERATION WHATSOEVER.

15          THE COURT:  WELL, ULTIMATELY, I WAS GOING TO SEE IF

16     THERE WAS AN APPEAL OR SOMETHING.  HAS THERE BEEN AN APPEAL

17     OR WRIT?

18          MR. BUBMAN:  NO.

19          MR. HERRERA:  THERE IS A BANKRUPTCY STAY,

20     YOUR HONOR, AND WE'RE BEING SENTENCED FOR THE FACT THAT

21     THE AUTOMATIC STAY IS STILL IN PLACE.  THERE IS NO RELIEF

22     THAT'S BEEN REQUESTED BY ANYBODY AT THIS POINT.  AND WE'RE

23     STILL -- WE'RE STILL --

24          THE COURT:  EXCUSE ME.  EXCUSE ME.  WE'RE TALKING

25     ABOUT THE SENTENCE.  THE SENTENCE TO JAIL HAS NOTHING TO

26     DO WITH BANKRUPTCY.  WE'RE HERE -- I STAYED THE JAIL --

27          MR. HERRERA:  RIGHT.

28          THE COURT:  -- TO GIVE YOU AN OPPORTUNITY TO FILE

10

1  AN APPEAL OR A WRIT OR HOWEVER YOU WANTED TO PROCEED.  MY

2  QUESTION TO YOU:  HAS SUCH BEEN FILED OR NOT?

3       MR. HERRERA:  NO.  WE DID REQUEST ADDITIONAL TIME.

4  I DON'T BELIEVE -- I BELIEVE THE STAY WAS 30 DAYS.  WE

5  STILL MAY HAVE TIME ON THAT, BUT THERE WAS A -- WE ARE

6  REQUESTING THAT THAT ALSO BE EXTENDED.

7       THE COURT:  OH, NO.

8       MR. HERRERA:  HOWEVER, FOLLOWING UP ON THE PRIOR

9  HEARING, I WAS ASKING THE COURT WHAT EXACTLY IS LEFT FOR

10 MR. BAE TO DO.  I HAD A LONG CONVERSATION WITH COUNSEL

11 AFTER THE FACT AT THE SUGGESTION OF THE COURT, AND

12 ULTIMATELY THE CONCLUSION IS THAT MR. BUBMAN WANTS MR. BAE

13 TO ADMIT TO A BUNCH OF ALLEGATIONS, AND THAT'S IT.  THERE

14 WASN'T REALLY ANYTHING THAT WE COULD POINT TO AND SAY DO

15 THIS OR DO THAT TO FINISH COMPLYING.  IT WAS THERE IS

16 ADDITIONAL STUFF THAT HE BELIEVES, AND THAT SHOULD BE

17 ADDRESSED IN SOME WAY.

18       I'M NOT -- I'M NOT GETTING INTO THAT.  I'M

19 TRYING TO REALLY GET A VERY FIXED IDEA HERE OF WHAT EXACTLY

20 -- WHAT BOX IS LEFT TO CHECK.  MR. BAE -- MR. BAE

21 LITERALLY HAS NOTHING LEFT.  HE'S BEEN ACCUSED OF THINGS,

22 AND I UNDERSTAND THAT.  THERE IS NOTHING LEFT FOR HIM TO

23 DO.  WHAT'S THE NEXT STEP HERE?

24       THE COURT:  THE NEXT STEP IS TO PICK A DATE OF

25 SURRENDER FOR HIS JAIL BECAUSE I'M NOT GETTING THROUGH TO

26 HIM.  I'M NOT GETTING THROUGH TO YOU.  SO I SENTENCED HIM

27 TO JAIL.  I GAVE YOU A STAY TO TAKE APPELLATE REMEDIES.

28 YOU CHOSE NOT TO.  THAT IS WHAT YOU ARE TELLING ME.  THE

11

1    BANKRUPTCY STAY HAS NOTHING TO DO WITH THE SENTENCE I HAVE

2    ALREADY IMPOSED.  WHEN IS HE GOING TO SURRENDER?

3          MR. HERRERA:  YOUR HONOR, THE COURT SAID --

4          THE COURT:  HERE IS MY QUESTION:  WHEN IS HE GOING

5    TO SURRENDER?

6          MR. HERRERA:  AGAIN, YOUR HONOR, IF I CAN FINISH

7    WHAT I'M SAYING.  THE COURT SAID THAT HE'S NOT LIKELY TO

8    GO TO JAIL IF HE'S GETTING COMPLIANT.  HE'S DOING

9    EVERYTHING --

10         THE COURT:  THE TIME IS OVER FOR THAT.

11         MR. HERRERA:  BUT HIS COMPLIANCE IS COMPLETE,

12   YOUR HONOR, AND WE'RE AT THE POINT WHERE WE'RE ASKING

13   SPECIFICALLY WHAT IS LEFT?  WE'VE ASKED -- WE'VE ASKED IN

14   WRITING.  WE'RE ASKING THE COURT.  WE'RE ASKING HERE AGAIN.

15   WHAT IS THERE --

16         THE COURT:  OKAY.

17         MR. HERRERA:  -- THAT CAN BE DONE?  HE'S HERE.

18   HE'S PRESENT.  HE'S READY.  HE'S WILLING.

19         THE COURT:  LET ME ASK YOU AGAIN:  WHEN IS HE GOING

20   TO SURRENDER?  THAT'S THE QUESTION.  YOU CAN GO ON WITH

21   YOUR MONOLOG.  PLEASE ANSWER MY QUESTION, AND I'LL PICK A

22   DATE.  YOU CAN PROVIDE INPUT, OR I WILL GIVE A DATE.  IT'S

23   THAT SIMPLE.

24         MR. HERRERA:  YOUR HONOR, IF WE CAN HAVE -- IF WE

25   CAN HAVE THE ADDITIONAL 30 DAYS, AND THEN WE CAN ADDRESS

26   THE ISSUES KNOWING THE COURT IS NOT INTENDING TO WAIVE

27   THAT ASPECT OF THE --

28         THE COURT:  I'M GOING TO START SETTING WEEKENDS.

12

1   SO TODAY IS APRIL 24TH.  YOU CAN SURRENDER AS SOON AS THE

2   26TH AND START DOING WEEKENDS.

3         MR. HERRERA:  I'M SORRY, YOUR HONOR.  I DIDN'T - I

4   DIDN'T CATCH THE --

5         THE COURT:  I'M EXPLICITLY DENYING YOUR STAY.  THE

6   STAY WAS SIMPLY TO GET YOU TO SEE IF YOU WERE GOING TO FILE

7   AN APPEAL OR WRIT.  YOU CHOSE NOT TO.  EVERYTHING I HEAR

8   FROM YOU IS YOU SPEND YOUR RESOURCES TO OBFUSCATE, TO

9   OBSTRUCT, TO INTERFERE WITH THE ORDERLY ADMINISTRATION OF

10  JUSTICE OF THE COURT.  YOU FILED PAPERWORK AND NONSENSE,

11  NONSENSE, INSTEAD OF FOLLOWING THROUGH AND COOPERATING

12  WITH THE COURT AND THE COURT'S REPRESENTATIVE.

13        MR. HERRERA:  YOUR HONOR, I BELIEVE THE HEARING --

14  THE COURT'S STAY HAS ANOTHER FIVE DAYS.

15        THE COURT:  LET ME JUST SEE WHAT THE STAY -- I'M

16  GOING BACK TO MY MINUTE ORDER.  THE RECEIVER, BY THE WAY,

17  IS THE COURT REPRESENTATIVE.  SO WHEN YOU ARE INTERFERING

18  WITH THE RECEIVER, YOU ARE INTERFERING WITH THE FAIR

19  ADMINISTRATION OF JUSTICE, TO BE CLEAR.

20        MR. HERRERA:  I DON'T UNDERSTAND WHAT THE COURT

21  MEANS BY "INTERFERE."  I HAVEN'T DONE ANYTHING TO

22  INTERFERE AT ALL, YOUR HONOR.

23        THE COURT:  I GET FILINGS.  I GET FILINGS.  WHEN I

24  SAY "YOU," YOUR CLIENT.  YOUR CLIENT, ALL HE DOES IS FAIL

25  TO COOPERATE, PERIOD.  YOU CAN SAY I'VE DONE EVERYTHING

26  WHEN YOU ARE TALKING ABOUT YOUR CLIENT, AND YOU SAY THAT

27  SO EARNESTLY, IT'S FALLACIOUS.  I GET DECLARATION AFTER

28  DECLARATION.

13

1          YOU KNOW, IT'S INTERESTING.  RIGHT NOW --

2    LET ME JUST GIVE YOU AN EXAMPLE.  SO I'M WRITING A SETTLED

3    STATEMENT -- EXCUSE ME, A STATEMENT OF DECISION ON A COURT

4    TRIAL, AND THE ISSUE THERE IS WHETHER THERE HAS BEEN A

5    FRAUDULENT CONVEYANCE.  AND ONE OF THE FACTORS I LOOK AT

6    IS WHETHER THE TRANSACTION -- ESSENTIALLY, IF A BUSINESS

7    IS ESSENTIALLY TAKING OVER THE OTHER BUSINESS, A MERE

8    CONTINUATION OF THE PRIOR BUSINESS.  THAT WOULD BE EVIDENCE

9    OF A FRAUDULENT TRANSFER, AND A SUBSEQUENT CORPORATION

10   WOULD BE LIABLE FOR THE PRIOR CORPORATION'S DEBTS.

11         HOW DO YOU THINK IT LOOKS WHEN MR. BAE HAS

12   TAKEN A BUSINESS AND MOVED RIGHT NEXT DOOR AND MOVED OVER

13   THE SAME EMPLOYEES, MOVED OVER THE SAME MENU, MOVED OVER

14   ALL OF THE TRANSACTIONS FROM THERE, THE PAYMENT SCHEMES?

15        MR. HERRERA:  IT LOOKS BAD, YOUR HONOR, DOING

16   EVERYTHING IN THIS CASE BY EX PARTE OF THOSE MOTIONS AND

17   NEVER ASKING FOR THINGS AHEAD OF TIME AND NEVER GIVEN AN

18   OPPORTUNITY --

19        THE COURT:  DID I ASK YOU TO INTERRUPT ME?  IT'S A

20   RHETORICAL QUESTION.

21        MR. HERRERA:  I'M SORRY.  I HAVE AN ANSWER,

22   YOUR HONOR.  I DIDN'T MEAN IT -- I DIDN'T MEAN IT THAT

23   WAY.  I UNDERSTAND IT'S A BAD LOOK, I DO, BUT --

24        THE COURT:  YOU STILL KEEP TALKING.

25        MR. HERRERA:  I'M SORRY, YOUR HONOR.

26        THE COURT:  IT'S SO OBVIOUS WHAT MR. BAE IS DOING,

27   AND TO SUGGEST THAT HE'S DONE EVERYTHING TO COOPERATE WHEN

28   HE'S DONE JUST THE OPPOSITE -- I KNOW YOU ARE COUNSEL.

14

1   YOU ARE ENTITLED TO BE A ZEALOUS ADVOCATE.  I'M NOT

2   FAULTING YOU FOR THAT.  BUT IT DOESN'T HAVE A GRAIN OF

3   CREDIBILITY WHEN THE FACTS DON'T SUPPORT THE ARGUMENT.

4   YOUR CLIENT IS CLEARLY DOING EVERYTHING TO INTERFERE WITH

5   THE RECEIVER DOING HIS JOB, WHICH IS NO DIFFERENT THAN

6   WHAT HE'S BEEN DOING FOR THE LAST TWO YEARS PLUS.

7          AND IT'S CLEAR HE'S TRYING TO DESTROY THE

8   BUSINESS TO PREVENT THE RECEIVER FROM DOING HIS JOB.  BUT

9   THERE IS STILL PARTNERSHIP ASSETS.  HE'S RECAST THE

10  BUSINESS AND MOVED IT RIGHT NEXT DOOR USING ALL OF THE

11  RESOURCES AND ASSETS OF THE PARTNERSHIP TO FUND HIS SCHEME,

12  WHICH IS A FACADE -- WHICH IS OBVIOUSLY A FACADE.  BUT THE

13  RECEIVER WILL KEEP MOVING.

14          IN THE MEANTIME, I'VE ALREADY RULED ON THE

15  PRIOR OSC OF CONTEMPT.  THERE IS NO APPEAL.  YOU ARE

16  TELLING ME THAT I ISSUED A STAY, AND I KNOW I ISSUED A

17  STAY BECAUSE I WANT YOU TO HAVE AN OPPORTUNITY TO PURSUE

18  APPELLATE REMEDIES.  YOU CHOSE NOT TO BY ENGAGING IN OTHER

19  FOLLIES.  THAT IS YOUR CHOICE.

20      MR. HERRERA:  YOUR HONOR, JUST FOR THE RECORD,

21  THAT'S NOT WHAT WE CHOSE.  WE ARE UNDER THE IMPRESSION

22  THAT THE STAY IS FOR THE 30-DAY PERIOD, AND THERE IS STILL

23  SOME TIME ON THAT STAY.

24      THE COURT:  LET ME JUST LOOK AT MY RULING.

25      MR. HERRERA:  THE ONLY OPTION TO DO THAT --

26      THE COURT:  EXCUSE ME.  I'M LOOKING AT MY ORDER.  I

27  DON'T REMEMBER SETTING A 30-DAY STAY.  IF I DID, HELP ME

28  OUT HERE.  I KNOW THERE WAS A STAY ISSUED ON THE JAIL ON

15

1  APRIL 5TH, BUT I DON'T REMEMBER SAYING IT WAS 30 DAYS.  I

2  JUST ISSUED A STAY.

3       MR. HERRERA:  I REMEMBER ASKING FOR 30 DAYS.  I'M

4  NOT A HUNDRED PERCENT, MAYBE 99 PERCENT, BUT THAT'S GOING

5  OFF OF MEMORY WHAT I REMEMBER.  AND IT GAVE US ENOUGH TIME

6  TO DEAL WITH RESULTS FROM TODAY AND HAVING JUST A SHORT

7  PERIOD OF TIME TO DEAL WITH IT ONE WAY OR THE OTHER.

8       THE COURT:  MR. BUBMAN, WHAT DO YOU RECALL?

9       MR. BUBMAN:  MY RECOLLECTION IS THAT YOU WERE GOING

10 TO STAY BRIEFLY -- I DON'T RECALL A SPECIFIC PERIOD OF

11 TIME, THE JAIL SENTENCE, BUT NOT THE MONETARY PENALTY.

12      THE COURT:  ALL RIGHT.  THE ONLY REASON I WAS

13 ISSUING THE STAY IS BECAUSE HE WOULD GET AN AUTOMATIC RIGHT

14 TO DO IT TO FILE AN APPEAL.  YOU DIDN'T DO IT.

15      MR. HERRERA:  WELL, WE WERE TRYING TO SORT THINGS

16 OUT, YOUR HONOR.  THAT'S WHAT WE DID LAST TIME.  THAT'S WHY

17 WE FOLLOWED THE INSTRUCTIONS AT THE SUGGESTION OF THE

18 COURT.

19      THE COURT:  STOP.  STOP.  YOU DON'T FOLLOW THE

20 SUGGESTION OF THE COURT.  AND TO SUGGEST OTHERWISE IS

21 JUST --

22      MR. HERRERA:  YOU ASKED ME TO TALK TO COUNSEL,

23 YOUR HONOR, AND I DID.  WE SPOKE FOR OVER AN HOUR.

24      THE COURT:  MR. BUBMAN, WHAT'S THE NEXT STEP?

25      MR. BUBMAN:  WELL, YOUR HONOR, THE LANDLORD OF THE

26 PROPERTY FILED AN UNLAWFUL DETAINER.

27      THE COURT:  AGAINST BOTH OF THEM.

28      MR. BUBMAN:  RIGHT.

Exhibit C Page 225

16

1      THE COURT:  BOTH ENTITIES.

2      MR. BUBMAN:  RIGHT.  WE'RE STILL -- EVERY DAY IS A

3  NEW DAY, AND WE COME UP WITH NEW THINGS EACH TIME.  MY

4  EXPECTATION IS THAT ASSUMING THAT THE LANDLORD DOES

5  ACTUALLY FOLLOW THROUGH WITH THE EVICTION, THAT HE'S JUST

6  GOING TO MOVE TO SOMEWHERE ELSE AND DO THE SAME THING ALL

7  OVER AGAIN.

8           AND I THINK THE NEXT STEP IS THAT WE'RE GOING

9  TO INITIATE OR FILE A REQUEST TO INITIATE CONTEMPT

10 PROCEEDINGS, ONCE AGAIN, AGAINST MR. BAE AND AGAINST THE

11 TWO WOMEN THAT ARE ASSISTING HIM IN THIS.  WE'RE JUST --

12 WE KEEP PRESSING DOWN THIS ROAD UNTIL WE GET WHAT WE'RE

13 LOOKING FOR TO BE ABLE TO WRAP THIS UP.

14     THE COURT:  WHAT WOULD IT TAKE TO WRAP IT UP?  YOU

15 HAVE GOT HIS UNDIVIDED ATTENTION.  YOU HAVE GOT A REPORTER.

16 TELL US WHAT IT WILL TAKE FOR MR. BAE TO FOLLOW THROUGH TO

17 WRAP IT UP, IF YOU CAN.

18     MR. BUBMAN:  IF MR. BAE GAVE FULL ACCESS TO ALL OF

19 THE POINT OF SALE SYSTEMS, FULL ADMINISTRATIVE ACCESS, NOT

20 PARTIAL, NOT AN EMPLOYEE ACCESS, WHICH HE'S DONE IN THE

21 PAST AND THEN CUT IT OFF, BUT IF HE GAVE THE ADMINISTRATIVE

22 ACCESS TO THE RECEIVER AS WELL AS THE ADMINISTRATIVE

23 ACCESS TO THE HOME BASE SYSTEM, TO THE THREE DELIVERY

24 SYSTEMS, PROVIDED INFORMATION ABOUT ALL OF THE BANK

25 ACCOUNTS SO WE KNEW WHERE THINGS WERE, THESE ARE THE THINGS

26 THAT WOULD GET US TO THAT CONCLUSION.

27           THE PROBLEM IS THAT ONCE WE -- WE GET ONE

28 STEP FURTHER, MR. BAE MAKES A LEFT TURN AND THEN MOVES

17

1   THINGS INTO EITHER A DIFFERENT BANK, A DIFFERENT POINT OF
2   SALE SYSTEM.
3          I MEAN, THE EXAMPLE THAT WE GAVE TO THE
4   COURT, IT WAS THE POS SYSTEM.  WELL, THEN THEY STARTED
5   USING THE SQUARE SYSTEM, RIGHT.  SO THEY JUST KEEP DOING
6   THINGS IN A DIFFERENT NAME WHICH DOESN'T ALLOW US TO GATHER
7   THIS TOGETHER AND KNOW THAT WE HAVE ALL OF THE ASSETS OF
8   THE PARTNERSHIP.  RIGHT NOW WE HAVE NOTHING.
9          MR. BAE IS BLAMING THE LANDLORD FOR TAKING
10  THE ASSETS OF BIRDIES.  THE LANDLORD SAID MR. BAE DID IT.
11  SO WE'RE STILL TRYING TO FIGURE OUT WHO DID WHAT.  NOW,
12  THE LANDLORD TELLS US HE'S GOT SOME VIDEO.  SO I'M HOPING
13  TO BE ABLE TO SEE HIS VIDEO AND UNDERSTAND WHAT MR. BAE
14  ACTUALLY DID.  THE NEXT-DOOR NEIGHBOR, WHO HE IS
15  PURPORTEDLY THE LANDLORD OF, SAYS HE'S COMING IN EVERY DAY
16  AND DELIVERING FOOD.
17          SO HE KEEPS SAYING I'M COOPERATING, I'M
18  DOING WHAT YOU ASKED ME TO DO, BUT THEN HE CONTINUES ON IN
19  THIS BUSINESS VENTURE EXACTLY AS HAS BEEN DESCRIBED.  SO
20  WE NEED TO WRAP THIS ALL TOGETHER AND GET A FULL
21  UNDERSTANDING OF WHAT THE BUSINESS IS, AND WE CAN'T BECAUSE
22  WE CAN'T GET ACCESS TO THE POINT OF SALE SYSTEM WHERE
23  EVERYTHING IS GOING THROUGH.
24          WHEN YOU ORDER NO MORE CASH, THEY KEEP TAKING
25  CASH.  WE GET ZERO COOPERATION, AND WE CAN'T GET TO A
26  POINT WHERE WE KNOW WE HAVE THE PARTNERSHIP ASSETS, AND
27  THAT'S WHAT WE'RE TRYING TO GATHER TOGETHER.  THAT WAS THE
28  ENTIRE GOAL HERE, GATHER TOGETHER THE PARTNERSHIP ASSETS

18

1   SO WE CAN UNDERSTAND, AND WE CAN DO THE ACCOUNTING LOOKING

2   BACKWARDS, AND WE CAN GET AN UNDERSTANDING OF WHAT THOSE

3   ASSETS ARE, WHAT NEEDS TO BE SOLD, IF ANYTHING, WHAT'S

4   LEFT TO BE SOLD, AND HOW DOES THE DISTRIBUTION OCCUR.

5          I THINK THAT'S -- I DON'T THINK IT'S ALL THAT

6   HARD.  IT'S JUST THAT IT'S SUCH A DISPARATE MESS.  I'VE

7   NEVER SEEN A BUSINESS THAT HAS ZERO FINANCIALS WHATSOEVER,

8   NOT A SINGLE FINANCIAL.  HE SAYS HE'S PRODUCED EVERYTHING.

9   WE GET DOCUMENTS FROM 2016 AND 2017, MAYBE SOME BANK

10  STATEMENTS OF ACCOUNTS THAT HE'S CLOSED.  WE WERE LUCKY

11  THAT WHEN YOU ISSUED THE CONTEMPT CITATION, I THINK HE WAS

12  SCARED ENOUGH TO GIVE US CURRENT ACCOUNTS WHICH WE

13  IMMEDIATELY WENT IN AND LOCKED DOWN, AND THEN HE STARTED

14  MAKING DEMANDS ON PAYING EMPLOYEES WHILE HE HAD TAKEN ALL

15  OF THE MONEY OUT OF THE ACCOUNT, AND NOW THEY'RE OPENING

16  UP NEW ACCOUNTS IN DIFFERENT BANKS.

17         THE COURT:  WHAT WOULD YOU LIKE TO TELL ME, COUNSEL?

18         MR. HERRERA:  WE'VE SUBMITTED PHOTOGRAPHS,

19  YOUR HONOR, OF THE LANDLORD GOING -- FORCING HIS WAY INTO

20  THESE UNITS, ALL OF THEM, AND RIPPING THINGS OUT OF THEM,

21  THROWING IT OUT BACK, LOADING IT ON TRUCKS, AND JUST DOING

22  WHATEVER THEY WANT TO DO.  AND MR. BUBMAN AND I HAVE

23  COMMUNICATED ABOUT THIS, AND THOSE COMMUNICATIONS HAVE

24  ALSO BEEN PROVIDED TO THE COURT.  THE LANDLORD IS ROGUE,

25  IS DOING THINGS THAT ARE WAY OUTSIDE THE LAW.  AND MR. BAE

26  AND MR. BUBMAN (SIC) ARE BOTH FIGHTING AGAINST THAT, ALL

27  OF THIS STUFF THAT'S HAPPENING ON THE PART OF THE LANDLORD.

28         THE COURT:  SO HERE IS WHAT IS INEXPLICABLE.  THERE

19

1    IS A BUSINESS AT BIRDIES.  YOUR BUSINESS CHOSE NOT TO

2    COOPERATE.  INSTEAD, HE MOVED A NEW BUSINESS RIGHT NEXT

3    DOOR.  MY HEAD CANNOT GET PAST IT.  INSTEAD OF COOPERATING

4    WITH THE COURT THROUGH THE RECEIVER, YOU PRETEND LIKE THERE

5    IS NO MORE PARTNERSHIP ASSETS.  AND, OH, THERE IS ANOTHER

6    BUSINESS.  IT'S NOT CALLED BIRDIES, BUT IT'S ANOTHER

7    BUSINESS.  WHAT'S IT IN?  IT'S A RESTAURANT.  AND THE

8    EMPLOYEES, OH, THEY'RE THE SAME EMPLOYEES AS BIRDIES.  AND

9    THE MENU, IT'S THE SAME MENU AS BIRDIES.  THE PAYMENT

10   SYSTEM, IT'S THE SAME AS BIRDIES.  THE DELIVERY SYSTEM,

11   IT'S THE SAME DELIVERY SYSTEM AS BIRDIES.  BUT IT'S NOT

12   BIRDIES.

13        MR. HERRERA:  AND YOUR HONOR --

14        THE COURT:  THAT'S -- I STOP THERE.  EVERYTHING ELSE

15   YOU HAVE TO SAY IS JUST CHATTER.  WHETHER THE LANDLORD IS

16   MESSING WITH YOUR CLIENT HAS NOTHING TO DO WITH YOUR CLIENT

17   COOPERATING WITH THE RECEIVER.  THAT'S WHAT IS INESCAPABLE.

18   WHETHER YOUR CLIENT IS GOING THROUGH ALL SORTS OF OTHER

19   CHALLENGES WITH OTHER INDIVIDUALS, THAT IS NEITHER HERE,

20   NOR THERE.

21        IS HE COOPERATING WITH THE RECEIVER?  NO.

22   IS HE SETTING UP THIS NEW BUSINESS AND PRETENDING IT ISN'T

23   A PARTNERSHIP ASSET?  OH, YEAH, THAT'S WHAT HE'S SPENDING

24   HIS TIME DOING, AND HE'S RUNNING INTO CHALLENGES.  WHAT A

25   SURPRISE?

26        AND YOU WANT ME TO BE SYMPATHETIC --

27   SYMPATHETIC THAT HE SPENT ALL OF HIS TIME AND RESOURCES TO

28   ENGAGE IN SUBTERFUGE AND VERY BAD SUBTERFUGE TO TRY TO GET

20

1   AROUND THE COURT'S ORDER.

2               I EXPECT -- I SUSPECT I'M GOING TO GET

3   ANOTHER OSC REGARDING CONTEMPT.  I DON'T LOOK FORWARD TO

4   THAT.  I'M NOT HERE TO DO CRIMINAL CONTEMPT TRIALS.  BUT I

5   SUSPECT THE NEXT TIME AROUND, IT'S GOING TO BE MANY MORE

6   ACTS, EACH ACT FIVE DAYS OR A THOUSAND DOLLARS IN JAIL.

7   AND IF THEY EXCEED 180 DAYS, YOU GET A JURY.  AND IF I

8   HAVE TO DO A JURY TRIAL, IT WILL BE A JURY TRIAL.

9               I COULD SEE THIS LITERALLY FROM ALL OF THE

10  ALLEGATIONS THAT HAVE BEEN MADE, IF IT TURNS INTO A

11  PROPERLY FRAMED OSC, YOUR CLIENT ISN'T LOOKING AT DAYS IN

12  JAIL, POTENTIALLY MUCH MORE THAN THAT.

13              AND YOU THINK A JURY IS GOING TO BE

14  SYMPATHETIC -- MORE SYMPATHETIC TO THE COURT?  I'VE DONE A

15  LOT OF CRIMINAL TRIALS.  I LIKE JURIES BECAUSE THEY KNOW

16  -- THEY KNOW HOW TO CUT THROUGH THE NONSENSE.  AND I KNOW

17  ATTORNEYS, THEY'RE REALLY GOOD, AND THEY CAN PAINT BIG

18  PICTURES.  TWELVE JURORS, THEY SEE THROUGH THAT.  I'VE

19  SEEN IT IN MY 29 YEARS -- 29 YEARS?  -- 34 YEARS IN COURT.

20  THEY SEE THROUGH IT.  THEY SEE THROUGH IT QUICKLY.  AND

21  THAT IS WHY I'M SUCH A STAUNCH ADVOCATE IN SUPPORT OF JURY

22  TRIALS.  THEY'LL HAVE LESS TOLERANCE OF MR. BAE'S

23  MALFEASANCE THAN I HAVE.  IF THAT'S WHERE THIS GOES TO,

24  THAT'S WHERE THIS GOES TO.  IF HE ENDS UP SPENDING A

25  SIGNIFICANT AMOUNT OF TIME IN JAIL, THAT'S WHERE IT GOES

26  TO.

27              WHAT YOU NEED TO BE THINKING ABOUT IS THE

28  RECEIVER FILING THAT OSC, BECAUSE THE OSC IS FOR THE

21

1  CONDUCT THAT'S ALREADY OCCURRED.  AND HE HAS DOCUMENTED IN

2  FILINGS WITH THE COURT ALL OF YOUR CLIENT'S ACTS THAT

3  INTERFERE ACTIVELY WITH THE RECEIVER AND VIOLATES THE

4  COURT'S ORDER.  TO REACT IS A POTENTIAL VIOLATION.

5          ALL YOU AND YOUR CLIENT CAN THINK ABOUT IS

6  WHAT CAN YOU DO TO PLACATE THE RECEIVER SO THEY DON'T GO

7  THROUGH WITH THAT.  THAT'S WHAT YOUR CLIENT SHOULD BE

8  THINKING ABOUT, INSTEAD OF PLAYING THESE GAMES TO DO

9  EVERYTHING TO HIDE THESE ASSETS CRUELLY OF A PARTNERSHIP.

10  YOU ARE JUST WASTING YOUR TIME.

11      MR. HERRERA:  YOUR HONOR, FOR CLARITY, IF WE CAN

12  CLARIFY THE LIST THAT I CAME UP WITH HERE.

13      THE COURT:  YOU CAN TALK TO MR. BUBMAN.  I PUT THAT

14  ON THE RECORD.  THERE IS A REPORTER HERE.  I WANTED YOUR

15  CLIENT TO HEAR THAT.  IF YOU WANT TO HAVE FURTHER

16  DISCUSSIONS WITH MR. BUBMAN, YOU ARE WELCOME TO DO THAT IN

17  THE BACK OF THE COURTROOM.

18          MY ONLY LAST INQUIRY IS I DON'T RECALL GIVING

19  YOU A 30-DAY STAY, BUT IF YOU ARE TELLING ME IT'S A 30-DAY

20  STAY, APRIL 5TH WAS THE LAST TIME WE WERE HERE, 30 DAYS IS

21  LIFTED MAY 5TH.  SO WE ARE ORDERED TO TALK ABOUT A

22  SURRENDER AFTER MAY 5TH.

23          WHEN DO YOU WANT TO COME BACK ON A DATE AFTER

24  THAT, MR. BUBMAN?  I DON'T KNOW IF YOU WILL HAVE ANYTHING

25  MORE TO REPORT TO ME OR WHAT.

26      MR. BUBMAN:  WHO KNOWS?  EVERY DAY BRINGS SOMETHING

27  NEW.  I WOULD SAY MAYBE 30 DAYS OUT.

28      THE COURT:  TODAY IS THE 25TH.  YOU WANT TO COME AT

22

1   THE END OF MAY?

2          MR. BUBMAN:  YES.

3          THE COURT:  OKAY.  SO YOU GOT A LITTLE BIT LONGER.

4   THE STAY --

5          MR. BUBMAN:  I'M SORRY, YOUR HONOR.  ARE WE TALKING

6   ABOUT FOR HIS SURRENDER?

7          THE COURT:  NO.  I'M GOING TO LIFT THE STAY, AND

8   THEN WE'RE GOING TO PICK A SURRENDER DATE.  SO I'M GOING

9   TO COME BACK --

10         MR. BUBMAN:  I THINK MR. BAE SHOULD SURRENDER AS

11  SOON AS POSSIBLE.

12         THE COURT:  OKAY.  SO I'M GOING TO LIFT THE STAY ON

13  MAY 6TH.  HE'S GOING TO SURRENDER MAY 10TH.  WE'LL NEED A

14  COMMITMENT ORDER.  YOU WANT HIM TO DO WEEKENDS?  WE'LL LET

15  HIM DO WEEKENDS.  OTHERWISE, IT WILL BE STRAIGHT THROUGH.

16         MR. HERRERA:  ONE SECOND, YOUR HONOR.

17              MAY 10TH WORKS, YOUR HONOR.

18         THE COURT:  HE'S GOING TO SURRENDER.  DOES HE WANT

19  TO DO WEEKENDS, OR IS HE GOING TO DO THE SENTENCE STRAIGHT

20  THROUGH?

21         MR. HERRERA:  IF I CAN CONFER, YOUR HONOR?

22         THE COURT:  SURE.

23         MR. BUBMAN:  YOUR HONOR, HIS SURRENDER IS NOT GOING

24  TO INVOLVE ANY SORT OF A HEARING?

25         THE COURT:  NO.  HE'S GOING TO GO REPORT TO -- WE'RE

26  GOING TO GIVE HIM COMMITMENT PAPERS.  HE'S GOING TO REPORT

27  TO COUNTY JAIL, INMATE RECEPTION CENTER, AND HE'LL HAVE TO

28  BRING IN PROOF THAT HE SURRENDERED.

23

1          MR. HERRERA:  YOUR HONOR, HE HAS TO COORDINATE --

2     HE HAS TO COORDINATE WITH HIS FAMILY REGARDING CARE THAT

3     HE'S PROVIDING RIGHT NOW TO HELP HIS DAD.  SO HE'S NOT

4     CLEAR ON WHAT WOULD WORK BETTER.  HE HAS TO TALK TO OTHER

5     FAMILY MEMBERS TO SEE IF THEY CAN STEP IN AND HELP AND

6     ORGANIZE AROUND THAT.

7          THE COURT:  SO WHEN IS HE GOING TO HAVE AN ANSWER

8     FOR ME?

9          MR. HERRERA:  BY MONDAY WE COULD REPORT TO THE

10    COURT THE PREFERENCE.

11         THE COURT:  WHICH MONDAY?

12         MR. HERRERA:  THIS COMING MONDAY.

13         THE COURT:  THAT'S APRIL 29TH.  SO YOU WILL HAVE

14    THE STAY UNTIL MAY 6TH.  HE HAS TO SURRENDER MAY 10TH BY

15    NOON ON BAUCHET STREET.  I THINK IT'S 414 BAUCHET STREET

16    AT THE INMATE RECEPTION CENTER.  450 BAUCHET STREET,

17    LOS ANGELES, CALIFORNIA, 90012, THE INMATE RECEPTION

18    CENTER.  WE'LL HAVE COMMITMENT PAPERS READY FOR HIM

19    ELECTRONICALLY.  HE'LL HAVE TO TAKE THEM TO THE INMATE

20    RECEPTION AND APPEAR NO LATER THAN MAY 10TH AT NOON TO

21    COMMIT -- COMMENCE HIS SENTENCE THAT WAS IMPOSED, 15 DAYS

22    OF JAIL.  IT WILL BE THE WEEKENDS, TWO DAYS AT A TIME, OR

23    IT WILL BE STRAIGHT THROUGH.  YOU WILL INFORM ME, THE

24    COURT, ELECTRONICALLY THROUGH A FILING.  YOU CAN FILE A

25    DECLARATION INDICATING WHAT HIS CHOICE IS.  HE CAN HAVE

26    UNTIL THE END OF BUSINESS ON APRIL 29TH.  WE'LL COME BACK

27    ON -- IN 30 DAYS.  TODAY IS THE TWENTY --

28         MR. HERRERA:  -- FIFTH.

24

1          MR. BUBMAN:   -- FIFTH.

2          THE COURT:  WE'RE ON THE 30TH?

3          THE CLERK:  TWENTY-NINTH.

4          MR. HERRERA:  I'LL BE UNAVAILABLE THAT WEEK, THE

5     LAST WEEK OF MAY.

6          THE COURT:  OKAY.  WHEN'S THE NEXT TIME?

7          MR. HERRERA:  THE FOLLOWING WEEK IS GOOD.

8          THE COURT:  FIRST WEEK OF JUNE?

9          THE CLERK:  JUNE 5TH.

10         THE COURT:  JUNE 5TH, 9:00 A.M.  DOES THAT WORK FOR

11    YOU, RECEIVER?

12         MR. BUBMAN:  YES.

13         THE COURT:  DOES IT WORK?

14         MR. HERRERA:  YES, YOUR HONOR.

15         THE COURT:  OKAY.  JUNE 5TH, FURTHER STATUS AND

16    PROOF OF SURRENDER ON THAT DATE.  FILE WITH THE COURT

17    FURTHER STATUS REPORT, COULD BE FILED AS WELL JUNE 5TH,

18    9:00 A.M.

19         MR. HERRERA:  DID I HEAR THAT THE COURT WILL BE

20    E-MAILING DOCUMENTS OR --

21         THE COURT:  NO, NO, NO.  WE'RE GOING TO NEED --

22    WE'RE GOING TO NEED A FILING FROM YOU ELECTRONICALLY ON

23    MONDAY ON WHICH YOU CHOOSE.

24         MR. HERRERA:  ON MONDAY.

25         THE COURT:  AND WE'LL HAVE THE PAPERWORK READY.  I

26    DON'T KNOW IF IT'S GOING TO BE ELECTRONIC PAPERWORK, BUT

27    YOU ARE GOING TO NEED COMMITMENT PAPERS.  YOU ARE GOING TO

28    HAVE TO SHOW UP TO COURT.  THIS IS A CIVIL COURT.  IN

Exhibit C Page 234

25

1    CRIMINAL COURT WE HAVE COMMITMENT PAPERS PILED A MILE

2    HIGH.  IN CIVIL COURT WE DON'T HAVE THOSE.  YOU ARE GOING

3    TO HAVE TO ARRANGE TO PICK IT UP.  I DON'T KNOW IF IT'S

4    GOING TO BE ELECTRONIC OR ON PAPER, BUT HE'S GOING TO HAVE

5    TO PICK THAT UP BEFORE HE SURRENDERS, LITERALLY COMMITMENT

6    PAPERS.

7         MR. HERRERA:  BY TUESDAY?

8         THE COURT:  I DON'T KNOW HOW SOON THEY'LL BE READY,

9    BUT IT WILL BE READY BEFORE MAY 10TH.

10        MR. HERRERA:  OKAY.  SO I'LL WAIT TO HEAR FROM THE

11   COURT ON THAT?

12        THE COURT:  WE'LL ISSUE A MINUTE ORDER TELLING YOU

13   HOW TO DO IT.

14        MR. HERRERA:  OKAY.  SO I'LL SEE THAT ON THE DOCKET?

15        THE COURT:  YES.

16        MR. HERRERA:  PERFECT.

17        THE COURT:  MR. BUBMAN, YOU HAVE SOME FINAL WORDS?

18        MR. BUBMAN:  I JUST WANT TO CLARIFY ONE THING FROM

19   MR. HERRERA.  HE DID NOTE APPROPRIATELY THAT WE HAD A

20   CONVERSATION THAT WAS PROBABLY AN HOUR AND A HALF, AND

21   WHAT THE CONVERSATION WAS MARKED BY WAS DENIALS, THE

22   DENIALS THAT WE KEEP HEARING IN COURT, MR. BAE IS

23   COOPERATING, HE KEEPS COOPERATING, WHAT ELSE CAN HE DO,

24   WHAT IS IT THAT'S GOING TO BRING THIS TO A CLOSE.

25          AND WE HAVE TROUBLE GETTING TO THAT ANSWER

26   UNTIL MR. BAE FINALLY SAYS I UNDERSTAND, I'M GOING TO GIVE

27   YOU THE THINGS THAT YOU ARE ASKING FOR, AND THEN WE CAN

28   MOVE FORWARD.  IF WE GET COOPERATION, I CAN'T TELL YOU THE

26

1   NUMBER OF CASES WHERE I'VE ACTUALLY GOTTEN COOPERATION

2   FROM THE OTHER SIDE, WE'VE BEEN ABLE TO MOVE FORWARD AND

3   PUT THE CASE TO BED.  THIS DOESN'T NEED TO GO ON LIKE

4   THIS.  WE DON'T WANT IT TO GO ON LIKE THIS.  AND, QUITE

5   FRANKLY, THIS HAS BECOME A SIGNIFICANT EXPENSE FOR US

6   BECAUSE THERE IS NOTHING COMING IN.  WE WANT TO GET TO THE

7   END OF THE ROAD ON THIS THING, AND IT JUST REQUIRES THAT

8   MR. BAE COOPERATE AND STOP LYING TO EVERYBODY ABOUT WHAT

9   HE IS OR ISN'T DOING SO THAT WE UNDERSTAND WE HAVE

10  COOPERATION, WE HAVE ALL THE INFORMATION, WE CAN LOOK AT

11  IT AND SEE, OKAY, THIS IS EVERYTHING, AND THERE IS NOT A

12  NEW BUSINESS POPPING UP 10 FEET AWAY.  ONCE WE GET TO THAT

13  POINT, THEN WE WILL BE ABLE TO HAVE A VERY CLEAR

14  UNDERSTANDING OF WHAT THE ROAD TO COMPLETION LOOKS LIKE.

15          THE COURT:  OKAY.  THANK YOU.

16              SO WITH THAT, DO YOU WAIVE NOTICE?

17          MR. BUBMAN:  YES.

18          THE COURT:  DO YOU WAIVE NOTICE, COUNSEL?

19          MR. HERRERA:  THERE WILL BE A MINUTE ORDER

20  REFLECTING THE STAY?

21          THE COURT:  THE STAY WILL BE THROUGH TO MAY 6TH.

22              DO YOU WAIVE NOTICE TO THE NEXT COURT DATE

23  WHICH IS JUNE 5TH?

24          MR. HERRERA:  YES, NOTICE WAIVED.

25          MR. BUBMAN:  THANK YOU, YOUR HONOR.

26          THE COURT:  WITH REGARDS TO ALL THE ORDERS AS WELL,

27  THAT WILL BE IN THE MINUTE ORDER.  THE EX PARTE WAS DENIED

28  WITHOUT PREJUDICE.  THE MOTIONS WERE DENIED.

27

1                    (THE PROCEEDINGS CONCLUDED.)
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28

1              SUPERIOR COURT OF THE STATE OF CALIFORNIA
2                   FOR THE COUNTY OF LOS ANGELES
3       DEPARTMENT 51              HON. UPINDER S. KALRA, JUDGE
4
5       JASON HARLEY BOBSON,              )
                                          )
6                         PLAINTIFF,      )
                                          ) SUPERIOR COURT
7              VS.                        ) NO. BC650612
                                          )
8       KEITH BAE, AN INDIVIDUAL; AND DOES ) REPORTER'S
        1 - 10, INCLUSIVE                 ) CERTIFICATE
9                                         )
                          DEFENDANTS.     )
10      _____)
11
12
13
14              I, SHAWNDA R. DORN, OFFICIAL REPORTER
15      PRO TEMPORE OF THE SUPERIOR COURT OF THE STATE OF
16      CALIFORNIA, FOR THE COUNTY OF LOS ANGELES, DO HEREBY
17      CERTIFY THAT THE FOREGOING PAGES, 1 THROUGH 27,
18      INCLUSIVE, COMPRISE A FULL, TRUE, AND CORRECT TRANSCRIPT
19      OF THE PROCEEDINGS HELD IN THE ABOVE-ENTITLED MATTER ON
20      APRIL 25, 2024.
21              DATED THIS 6TH DAY OF MAY, 2024.
22
23
24
25
26
27      *Shawnda R. Dorn*
        SHAWNDA R. DORN, CSR NO. 11387, RPR, CRR, CCRR, CLR
28      OFFICIAL REPORTER PRO TEMPORE

**[& - answer]**                                                                1

| & | |
|---|---|
| **&** | 1:22 |

**0**

**0o0** 2:9

**1**

**1** 1:8 28:8,17
**10** 1:8 26:12
28:8
**100** 1:18
**1008** 6:19 7:2
**10th** 22:13,17
23:14,20 25:9
**11387** 1:27 2:6
28:27
**11544** 28:27
**1175** 1:24
**11th** 8:15
**15** 23:21
**16133** 1:24
**17** 6:13
**180** 20:7

**2**

**2016** 18:9
**2017** 18:9
**2021** 8:12
**2022** 6:13 8:15
8:21
**2024** 1:13 2:3
28:20,21
**24th** 12:1
**25** 1:13 2:3
28:20
**25th** 21:28

**26th** 12:2
**27** 28:17
**29** 20:19,19
**29th** 23:13,26

**3**

**30** 10:4 11:25
14:22,27 15:1
15:3 21:19,19
21:20,27 23:27
**30th** 24:2
**310** 1:20
**310-2201** 1:20
**34** 20:19

**4**

**414** 23:15
**450** 23:16
**451-4600** 1:25

**5**

**51** 1:3 2:4 28:3
**5th** 15:1 21:20
21:21,22 24:9
24:10,15,17
26:23

**6**

**6th** 22:13 23:14
26:21 28:21

**7**

**700** 1:19

**8**

**818** 1:25

**9**

**90012** 23:17
**90401** 1:19
**91436** 1:25
**99** 15:4
**9:00** 24:10,18

**a**

**a.m.** 2:7 24:10
24:18
**able** 3:18 16:13
17:13 26:2,13
**above** 28:19
**absent** 6:20
7:11
**absolutely** 9:1
**abyss** 9:7
**access** 16:18,19
16:20,22,23
17:22
**account** 18:15
**accounting**
18:1
**accounts** 2:27
16:25 18:10,12
18:16
**accused** 10:21
**acknowledge**
2:28
**act** 5:23,24
20:6
**acting** 3:27
**action** 8:22,23
**actively** 21:3
**acts** 20:6 21:2

**actually** 3:23
9:10 16:5
17:14 26:1
**added** 8:3
**additional** 10:3
10:16 11:25
**address** 11:25
**addressed**
10:17
**addressing**
9:11
**administration**
12:9,19
**administrative**
16:19,21,22
**admit** 10:13
**advisory** 5:16
**advocate** 14:1
20:21
**afield** 3:20
**ahead** 13:17
**alejandro** 1:18
2:21
**allegations**
10:13 20:10
**allow** 17:6
**alternatively**
6:14
**amount** 20:25
**angeles** 1:2 2:3
23:17 28:2,16
**answer** 11:21
13:21 23:7
25:25

**anybody**  3:25
9:22
**apart**  6:4
**appeal**  9:16,16
10:1 12:7
14:15 15:14
**appear**  8:7
23:20
**appearance**
1:16
**appearances**
1:15 2:5
**appearing**  2:19
**appellate**  10:27
14:18
**application**
2:25
**appointed**  1:21
**appointing**
6:13
**appropriate**
4:28 5:23
**appropriately**
25:19
**april**  1:13 2:3
12:1 15:1
21:20 23:13,26
28:20
**argument**  14:3
**arrange**  25:3
**asked**  11:13,13
15:22 17:18
**asking**  3:2,6
6:18 7:27,28
8:1,15 10:9

11:12,14,14
13:17 15:3
25:27
**aspect**  11:27
**asset**  19:23
**assets**  3:13 14:9
14:11 17:7,10
17:26,28 18:3
19:5 21:9
**assisting**  16:11
**associated**  3:25
**assuming**  16:4
**astounding**
3:26
**attention**  16:15
**attorneys**  20:17
**august**  6:13
**authority**  3:5
4:1 6:17 7:1,2
7:4,7,11,15 9:6
**automatic**  9:21
15:13
**avoid**  5:1
**ayala**  3:2

**b**

**back**  12:16
18:21 21:17,23
22:9 23:26
**backwards**
18:2
**bad**  13:15,23
19:28
**bae**  1:8 2:2,11
2:22 3:4,12,25
4:16 9:12

10:10,12,20,20
13:11,26 16:10
16:16,18,28
17:9,10,13
18:25 22:10
25:22,26 26:8
28:8
**bae's**  9:11
20:22
**bank**  2:27,27
16:24 17:1
18:9
**bankruptcy**
9:19,26 11:1
**banks**  2:28
18:16
**base**  16:23
**based**  3:18
**bauchet**  23:15
23:15,16
**bc650612**  1:7
2:1 28:7
**bed**  26:3
**behalf**  2:19
**believe**  3:10
4:28 5:22 10:4
10:4 12:13
**believes**  10:16
**better**  23:4
**big**  20:17
**birdies**  17:10
19:1,6,8,9,10
19:11,12
**bit**  3:1 22:3

**blaming**  17:9
**bobson**  1:5 2:2
2:11 28:5
**body**  7:13,15
8:1
**boulevard**  1:18
1:24
**box**  10:20
**briefly**  15:10
**bring**  4:1 22:28
25:24
**bringing**  4:7,20
**brings**  21:26
**bubman**  1:22
1:23,23 2:18
2:19,19 3:23
4:6,17,20,23,25
4:28 5:10,19
5:26 9:10,18
10:12 15:8,9
15:24,25,28
16:2,18 18:22
18:26 21:13,16
21:24,26 22:2
22:5,10,23
24:1,12 25:17
25:18 26:17,25
**bunch**  10:13
**business**  13:6,7
13:8,12 14:8
14:10 17:19,21
18:7 19:1,1,2,6
19:7,22 23:26
26:12

| c | | | |
|---|---|---|---|
| **calendar** 6:24 | **citation** 18:11 | **commit** 23:21 | **controlling** |
| **california** 1:1 | **civil** 24:28 25:2 | **commitment** | 7:14 |
| 1:19,25 2:3 | **clarification** | 22:14,26 23:18 | **conversation** |
| 23:17 28:1,16 | 2:25,26 3:15 | 24:27 25:1,5 | 10:10 25:20,21 |
| **call** 2:11,12 | 4:14 7:18 | **communicated** | **conveyance** |
| **called** 19:6 | **clarify** 7:22,26 | 18:23 | 13:5 |
| **caption** 6:6 | 21:12 25:18 | **communicati...** | **cooperate** |
| 7:14 | **clarity** 7:16 | 18:23 | 12:25 13:27 |
| **captioned** 6:6 | 21:11 | **complete** 11:11 | 19:2 26:8 |
| **care** 3:26 23:2 | **clear** 3:25 5:4 | **completion** | **cooperating** |
| **case** 2:1,2 5:7 | 9:5 12:19 14:7 | 26:14 | 12:11 17:17 |
| 13:16 26:3 | 23:4 26:13 | **complexion** 3:8 | 19:3,17,21 |
| **cases** 26:1 | **clearly** 14:4 | **compliance** | 25:23,23 |
| **cash** 17:24,25 | **clerk** 2:14 24:3 | 11:11 | **cooperation** |
| **cast** 5:16 | 24:9 | **compliant** 11:8 | 9:14 17:25 |
| **catch** 12:4 | **client** 8:5,5 | **comply** 6:24 | 25:28 26:1,10 |
| **ccrr** 1:27 28:27 | 12:24,24,26 | **complying** | **coordinate** |
| **center** 22:27 | 14:4 19:16,16 | 10:15 | 23:1,2 |
| 23:16,18 | 19:18 20:11 | **comprise** 28:18 | **corporation** |
| **certificate** 28:8 | 21:5,7,15 | **concluded** 27:1 | 8:18 13:9 |
| **certify** 28:17 | **client's** 21:2 | **concludes** 6:25 | **corporation's** |
| **challenges** 5:17 | **clifton** 1:17 | **conclusion** | 13:10 |
| 5:21 19:19,24 | **clog** 6:24 | 10:12 16:26 | **correct** 28:18 |
| **changed** 3:8 | **close** 25:24 | **conduct** 21:1 | **counsel** 3:11 |
| **charging** 4:4 | **closed** 18:10 | **confer** 22:21 | 10:10 13:28 |
| **chatter** 19:15 | **clr** 1:27 28:27 | **consequences** | 15:22 18:17 |
| **check** 10:20 | **code** 8:18 | 6:25 | 26:18 |
| **choice** 14:19 | **come** 5:20 8:6 | **contempt** 4:8 | **county** 1:2 |
| 23:25 | 16:3 21:23,28 | 4:11 14:15 | 22:27 28:2,16 |
| **choose** 24:23 | 22:9 23:26 | 16:9 18:11 | **court** 1:1,6,21 |
| **chose** 8:5,6 | **coming** 17:15 | 20:3,4 | 2:11,14,15,17 |
| 10:28 12:7 | 23:12 26:6 | **continuation** | 2:23 3:2,15,26 |
| 14:18,21 19:1 | **commence** | 13:8 | 3:28 4:1,3,9,10 |
| | 23:21 | **continues** | 4:11,19,22,24 |
| | | 17:18 | 4:27 5:5,12,20 |

**[court - electronic]** 4

5:27 6:17,20
6:22,28 7:5,7
7:10,15,19,21
7:26,28 8:4,9
8:15,21,26 9:1
9:4,15,24,28
10:7,9,11,24
11:3,4,7,10,14
11:16,19,26,28
12:5,10,12,15
12:17,20,23
13:3,19,24,26
14:24,26 15:8
15:12,18,19,20
15:24,27 16:1
16:14 17:4
18:17,24,28
19:4,14 20:14
20:19 21:2,13
21:28 22:3,7
22:12,18,22,25
23:7,10,11,13
23:24 24:2,6,8
24:10,13,15,16
24:19,21,25,28
24:28 25:1,2,8
25:11,12,15,17
25:22 26:15,18
26:21,22,26
28:1,6,15
**court's** 2:24,24
2:28 6:25 7:8
12:12,14 20:1
21:4

**courtconnect**
2:15
**courtroom**
21:17
**credibility** 14:3
**criminal** 20:4
20:15 25:1
**crr** 1:27 28:27
**cruelly** 21:9
**csr** 1:27 2:6
28:27
**current** 4:4
18:12
**cut** 16:21 20:16

**d**

**dad** 23:3
**date** 6:9 8:17
10:24 11:22,22
21:23 22:8
24:16 26:22
**dated** 28:21
**dates** 8:6
**day** 14:22,27
16:2,3 17:15
21:19,19,26
28:21
**days** 6:19,19
10:4 11:25
12:14 15:1,3
20:6,7,11
21:20,27 23:21
23:22,27
**deal** 15:6,7
**debts** 13:10

**december** 8:12
**decision** 13:3
**declaration**
12:27,28 23:25
**declarations**
3:19
**declaratory** 6:2
6:3,9
**declined** 8:21
**deeper** 9:7
**defendants** 1:9
1:17 28:9
**delivering**
17:16
**delivery** 16:23
19:10,11
**demands** 18:14
**denials** 25:21
25:22
**denied** 4:14
6:16,20,22 9:2
9:5 26:27,28
**denying** 12:5
**department** 1:3
2:4 28:3
**described**
17:19
**destroy** 14:7
**detainer** 15:26
**different** 8:11
14:5 17:1,1,6
18:16
**discussions**
21:16

**disparate** 18:6
**disposal** 4:5
**dissolution**
6:10 8:13
**distribution**
18:4
**docket** 25:14
**documented**
21:1
**documents**
7:12 18:9
24:20
**doing** 3:12 11:8
12:2 13:15,26
14:4,5,6,8 17:5
17:18 18:21,25
19:24 26:9
**dollars** 20:6
**donell** 2:20
**door** 13:12
14:10 17:14
19:3
**dorn** 1:27 2:6
2:17 28:14,27
**duty** 5:22

**e**

**e** 1:23 24:20
**earnestly** 12:27
**effective** 6:9
8:17
**effectuate** 5:13
**either** 7:26 17:1
**electronic**
24:26 25:4

**electronically** 23:19,24 24:22
**employee** 16:20
**employees** 13:13 18:14 19:8,8
**encino** 1:25
**ends** 20:24
**engage** 19:28
**engaging** 14:18
**entire** 4:7 17:28
**entities** 2:27 16:1
**entitled** 14:1 28:19
**esq** 1:18,23,23
**essentially** 3:3 13:6,7
**everybody** 26:8
**eviction** 16:5
**evidence** 3:7,8 13:8
**evidentiary** 6:15 9:4
**ex** 2:12,25 4:13 13:16 26:27
**exactly** 10:9,19 17:19
**example** 13:2 17:3
**exceed** 20:7
**excuse** 9:24,24 13:3 14:26
**expect** 20:2

**expectation** 16:4
**expense** 26:5
**explicitly** 12:5
**extended** 10:6

**f**

**facade** 14:12,12
**face** 6:20,25
**fact** 8:17,28 9:20 10:11
**factors** 13:5
**facts** 14:3
**fail** 12:24
**fair** 12:18
**faith** 5:23
**fall** 3:4
**fallacious** 12:27
**family** 23:2,5
**faulting** 14:2
**feet** 26:12
**field** 3:24
**fifth** 23:28 24:1
**fighting** 18:26
**figure** 17:11
**file** 5:18,21 6:2 6:23 7:2 9:28 12:6 15:14 16:9 23:24 24:16
**filed** 4:15 10:2 12:10 15:26 24:17
**filing** 20:28 23:24 24:22

**filings** 12:23,23 21:2
**final** 9:7 25:17
**finally** 25:26
**financial** 18:8
**financials** 18:7
**findings** 3:7,17 3:18
**finish** 10:15 11:6
**firm** 4:18,19,26 5:3
**first** 24:8
**five** 12:14 20:6
**fixed** 10:19
**follies** 14:19
**follow** 4:9 15:19 16:5,16
**followed** 15:17
**following** 10:8 12:11 24:7
**food** 17:16
**forcing** 18:19
**foregoing** 28:17
**forward** 20:3 25:28 26:2
**foundation** 6:5 6:5,23
**framed** 20:11
**frankly** 26:5
**fraudulent** 13:5,9
**front** 5:17

**fulfilling** 5:22
**full** 16:18,19 17:20 28:18
**fund** 14:11
**further** 2:25 3:1,15,19,19,23 5:24 16:28 21:15 24:15,17

**g**

**games** 21:8
**gather** 17:6,27 17:28
**getting** 3:19,23 10:18,25,26 11:8 25:25
**give** 9:28 11:22 13:2 18:12 22:26 25:26
**given** 13:17
**giving** 21:18
**go** 11:8,20 21:6 22:25 26:3,4
**goal** 17:28
**goes** 20:23,24 20:25
**going** 2:12 4:7 9:12,15 11:2,4 11:19,28 12:6 12:16 15:4,9 16:6,8 17:23 18:19 19:18 20:2,5,13 22:7 22:8,8,12,13,18 22:19,23,25,26 22:26 23:7

24:21,22,26,27
24:27 25:2,4,4
25:24,26
**good**  2:16,18
2:21 5:23
20:17 24:7
**gotten**  26:1
**grain**  14:2
**granted**  5:11

**h**

**h**  1:18
**half**  25:20
**happened**  8:28
**happening**
18:27
**hard**  5:15 18:6
**harley**  1:5 28:5
**he'll**  22:27
23:19
**head**  19:3
**hear**  3:7 7:6
12:7 21:15
24:19 25:10
**heard**  6:27,28
7:3,9 8:21
**hearing**  6:15,23
8:6,12,13,14
9:5 10:9 12:13
22:24 25:22
**heflin**  3:2
**held**  28:19
**help**  14:27 23:3
23:5
**heretofore**  2:5

**herrera**  1:17,18
2:21,22 4:23
6:27 7:5,8,13
7:16,22 8:2,8
8:10,24,27 9:3
9:19,27 10:3,8
11:3,6,11,17,24
12:3,13,20
13:15,21,25
14:20,25 15:3
15:15,22 18:18
19:13 21:11
22:16,21 23:1
23:9,12,28
24:4,7,14,19,24
25:7,10,14,16
25:19 26:19,24
**hess**  1:17
**hide**  21:9
**high**  25:2
**home**  16:23
**hon**  1:3 2:4
28:3
**honor**  2:16,18
2:21 4:17 6:27
7:5,13 8:8,25
9:13,20 11:3,6
11:12,24 12:3
12:13,22 13:15
13:22,25 14:20
15:16,23,25
18:19 19:13
21:11 22:5,16
22:17,21,23
23:1 24:14

26:25
**hope**  4:6
**hoping**  17:12
**hour**  15:23
25:20
**hundred**  15:4

**i**

**idea**  10:19
**identify**  3:13
**ignore**  8:6
**immediately**
18:13
**implement**  5:14
**imposed**  11:2
23:21
**impression**
14:21
**impunity**  3:27
**included**  5:4
**inclusive**  1:8
28:8,18
**indicating**
23:25
**individual**  1:8
28:8
**individuals**
19:19
**inescapable**
19:17
**inexplicable**
18:28
**inform**  23:23
**information**
16:24 26:10

**initiate**  16:9,9
**injunction**  4:4
**inmate**  22:27
23:16,17,19
**input**  11:22
**inquiry**  21:18
**instruction**  7:8
**instructions**
15:17
**intending**
11:26
**intends**  9:8
**interesting**
13:1
**interfere**  12:9
12:21,22 14:4
21:3
**interfering**
12:17,18
**interrupt**  13:19
**invitation**  6:21
**involve**  22:24
**issue**  5:8 9:8
13:4 25:12
**issued**  14:16,16
14:28 15:2
18:11
**issues**  7:24
11:26
**issuing**  15:13

**j**

**jail**  9:25,26
10:25,27 11:8
14:28 15:11
20:6,12,25

**[jail - moving]**                                                        7

22:27 23:22
**january**  8:15
**jason**  1:5 28:5
**job**  3:13 14:5,8
**judge**  1:3 2:4
   28:3
**july**  8:14
**june**  24:8,9,10
   24:15,17 26:23
**juries**  20:15
**jurors**  20:18
**jury**  6:10 20:7
   20:8,8,13,21
**justice**  12:10,19

**k**

**kalra**  1:3 2:4
   28:3
**keep**  13:24
   14:13 16:12
   17:5,24 25:22
**keeps**  17:17
   25:23
**keith**  1:8 2:22
   28:8
**knew**  16:25
**know**  3:7,17,24
   4:24 5:1,7,17
   9:9 13:1,28
   14:16,28 17:7
   17:26 20:15,16
   20:16 21:24
   24:26 25:3,8
**knowing**  11:26
**knows**  21:26

**l**

**l**  1:23
**landlord**  15:25
   16:4 17:9,10
   17:12,15 18:19
   18:24,27 19:15
**language**  7:25
   8:19
**law**  4:18,19,26
   8:18 18:25
**lawsuit**  4:21
   5:6,18,22 6:3
**lawyers**  5:3
**left**  10:9,20,21
   10:22 11:13
   16:28 18:4
**legal**  6:5,17 7:1
   7:2
**liable**  13:10
**lift**  22:7,12
**lifted**  21:21
**likely**  11:7
**list**  21:12
**literally**  8:3
   10:21 20:9
   25:5
**litigate**  7:24
**little**  3:1 22:3
**loading**  18:21
**locked**  18:13
**long**  10:10
**longer**  22:3
**look**  7:25,25
   8:15,16,16,17
   13:5,23 14:24

20:3 26:10
**looking**  8:2
   14:26 16:13
   18:1 20:11
**looks**  13:11,15
   26:14
**los**  1:2 2:3
   23:17 28:2,16
**lot**  20:15
**lucky**  18:10
**lying**  26:8

**m**

**made**  7:18,25
   20:10
**mailing**  24:20
**make**  3:6,17,18
   4:10 5:3
**makes**  16:28
**making**  18:14
**malfeasance**
   20:23
**marked**  25:21
**matter**  28:19
**mean**  5:18,21
   13:22,22 17:3
**means**  12:21
**members**  23:5
**memory**  15:5
**menu**  13:13
   19:9,9
**mere**  13:7
**mess**  18:6
**messing**  19:16
**michael**  1:23
   2:18

**mile**  25:1
**minute**  12:16
   25:12 26:19,27
**mirman**  1:22
**missing**  7:25
   8:17,22,22
**modify**  6:11
**monday**  23:9
   23:11,12 24:23
   24:24
**monetary**
   15:11
**money**  18:15
**monica**  1:19
**monolog**  11:21
**morgan**  1:23
   2:19
**morning**  2:16
   2:18,21
**motion**  2:12
   4:15 5:27 6:1,2
   6:4,5,8,8,18,23
   6:24 7:1,13 9:2
**motions**  13:16
   26:28
**move**  4:12 16:6
   25:28 26:2
**moved**  13:12
   13:12,13,13
   14:10 19:2
**moves**  16:28
**moving**  7:4,11
   14:13

| n | o |
|---|---|
| **nahmias** 1:22 | **obfuscate** 12:8 |
| **name** 2:2,27 | **obstruct** 12:9 |
| 4:19 5:2 17:6 | **obvious** 13:26 |
| **named** 3:3 | **obviously** |
| **naming** 4:18 | 14:12 |
| **necessary** 5:13 | **occur** 18:4 |
| **need** 3:14,20 | **occurred** 21:1 |
| 5:24 17:20 | **official** 1:28 |
| 20:27 22:13 | 28:14,28 |
| 24:21,22,27 | **oh** 4:24,27 10:7 |
| 26:3 | 19:5,8,23 |
| **needed** 2:26 | **okay** 2:11,23 |
| **needs** 18:3 | 5:26,27 9:3 |
| **neighbor** 17:14 | 11:16 22:3,12 |
| **neither** 19:19 | 24:6,15 25:10 |
| **never** 13:17,17 | 25:14 26:11,15 |
| 18:7 | **once** 16:10,27 |
| **new** 5:6 16:3,3 | 26:12 |
| 18:16 19:2,22 | **opening** 18:15 |
| 21:27 26:12 | **opinion** 5:16 |
| **ninth** 24:3 | **opportunity** |
| **nonsense** 6:4 | 9:28 13:18 |
| 6:16 12:10,11 | 14:17 |
| 20:16 | **opposite** 13:28 |
| **noon** 23:15,20 | **option** 14:25 |
| **note** 25:19 | **order** 2:24,24 |
| **noted** 2:5 | 2:27,28 3:5,9 |
| **notice** 5:7 6:8 | 3:20 5:13,14 |
| 26:16,18,22,24 | 6:11,26 7:18 |
| **number** 2:1 | 7:22,26 8:3,14 |
| 26:1 | 8:15,19 12:16 |
| | 14:26 17:24 |
| | 20:1 21:4 |
| | 22:14 25:12 |

| | |
|---|---|
| 26:19,27 | **payment** 13:14 |
| **ordered** 21:21 | 19:9 |
| **orderly** 12:9 | **penalty** 15:11 |
| **orders** 3:26,28 | **penumbra** 3:4 |
| 4:4,9 6:25 7:25 | **people** 3:27 4:8 |
| 26:26 | 4:10 5:20 |
| **organize** 23:6 | **percent** 15:4,4 |
| **osc** 4:2,7 14:15 | **perfect** 25:16 |
| 20:3,11,28,28 | **period** 12:25 |
| **outside** 18:25 | 14:22 15:7,10 |
| **own** 6:21 | **permission** 5:2 |
| | 5:10,12,15,24 |

| p |
|---|
| **page** 7:14 | **persuade** 4:8 |
| **pages** 28:17 | **photographs** |
| **paint** 20:17 | 18:18 |
| **paper** 25:4 | **phrase** 8:3 |
| **papers** 7:4 | **pick** 10:24 |
| 22:26 23:18 | 11:21 22:8 |
| 24:27 25:1,6 | 25:3,5 |
| **paperwork** | **pictures** 20:18 |
| 12:10 24:25,26 | **piled** 25:1 |
| **part** 3:3 18:27 | **placate** 21:6 |
| **parte** 2:12,25 | **place** 5:14 9:21 |
| 4:13 13:16 | **plaintiff** 1:6,16 |
| 26:27 | 28:6 |
| **partial** 16:20 | **playing** 21:8 |
| **partners** 4:25 | **please** 11:21 |
| **partnership** | **plus** 14:6 |
| 3:14 6:10 8:13 | **point** 3:6 9:22 |
| 14:9,11 17:8 | 10:14 11:12 |
| 17:26,28 19:5 | 16:19 17:1,22 |
| 19:23 21:9 | 17:26 26:13 |
| **past** 16:21 19:3 | **popping** 26:12 |
| **paying** 18:14 | **pos** 17:4 |

**possible** 22:11
**potential** 21:4
**potentially**
  20:12
**power** 4:2
**preference**
  23:10
**prejudice** 4:14
  26:28
**present** 8:4,5,8
  11:18
**presented** 6:17
**pressing** 16:12
**pretend** 19:4
**pretending**
  19:22
**prevent** 3:12
  14:8
**previously** 2:26
**prior** 3:5 7:18
  10:8 13:8,10
  14:15
**pro** 1:28 28:15
  28:28
**probably** 25:20
**problem** 16:27
**problematic**
  3:16 5:6
**proceed** 9:8
  10:1
**proceeding** 4:8
  6:26 8:16
**proceedings**
  1:12 4:11,12
  16:10 27:1

28:19
**produced** 18:8
**proof** 22:28
  24:16
**properly** 20:11
**property** 15:26
**provide** 11:22
**provided** 16:24
  18:24
**providing** 23:3
**purportedly**
  4:16 17:15
**pursue** 14:17
**put** 5:14 21:13
  26:3
**puts** 3:16

**q**

**question** 7:10
  10:2 11:4,20
  11:21 13:20
**questions** 3:22
**quicker** 4:12
**quickly** 20:20
**quite** 26:4

**r**

**r** 1:27 2:6 28:14
  28:27
**react** 21:4
**read** 2:23 7:15
  8:1
**ready** 11:18
  23:18 24:25
  25:8,9

**really** 6:18
  10:14,19 20:17
**reason** 15:12
**recall** 15:8,10
  21:18
**recast** 14:9
**receiver** 1:21
  2:19 3:10,11
  4:3 6:13 7:19
  9:8 12:16,18
  14:5,8,13
  16:22 19:4,17
  19:21 20:28
  21:3,6 24:11
**receiver's** 3:13
**receivership**
  6:12
**reception** 22:27
  23:16,17,20
**recollection**
  15:9
**reconsider** 6:21
  6:22
**reconsideration**
  6:18
**record** 8:16
  14:20 21:14
**reflecting**
  26:20
**regarding** 4:13
  20:3 23:2
**regards** 2:24
  4:13 5:27
  26:26

**related** 5:7
**relating** 5:10
**relief** 6:2,3,9
  7:16,17,23,27
  9:21
**remedies** 10:27
  14:18
**remember**
  14:27 15:1,3,5
**report** 21:25
  22:25,26 23:9
  24:17
**reporter** 1:28
  2:6,14,16,17
  16:15 21:14
  28:14,28
**reporter's** 1:12
  28:8
**representative**
  12:12,17
**representatives**
  3:3
**represented**
  3:11
**request** 6:14
  9:4,5 10:3 16:9
**requested** 7:23
  7:24 9:22
**requesting** 10:6
**requires** 26:7
**resources** 12:8
  14:11 19:27
**restaurant** 19:7
**results** 15:6

Exhibit C Page 247

[rhetorical - suggest]                                                            10

rhetorical
  13:20
right  4:11,22
  4:27 5:9,19
  6:28 8:4,5 9:27
  13:1,12 14:10
  15:12,13,28
  16:2 17:5,8
  19:2 23:3
ripping  18:20
road  16:12
  26:7,14
rogue  18:24
rpr  1:27 28:27
ruled  14:14
ruling  14:24
running  19:24

**s**

s  1:3 2:4 28:3
sale  16:19 17:2
  17:22
santa  1:19
saying  5:25
  11:7 15:1
  17:17
says  17:15 18:8
  25:26
scared  18:12
scheme  14:11
schemes  13:14
seat  5:28
second  22:16
see  5:16 9:13
  9:15 12:6,15
  17:13 20:9,18

20:20,20 23:5
  25:14 26:11
seek  6:3
seeking  7:17,17
seen  18:7 20:19
sentence  9:11
  9:25,25 11:1
  15:11 22:19
  23:21
sentenced  9:12
  9:20 10:26
separate  5:8
  6:3
session  2:7
set  6:9
setting  11:28
  14:27 19:22
settled  13:2
shawnda  1:27
  2:6,16 28:14
  28:27
short  4:7 15:6
show  24:28
sic  18:26
side  26:2
signature  28:27
significant
  20:25 26:5
simple  11:23
simply  7:22
  12:6
single  18:8
situation  3:17
  3:24

sliver  8:2
sold  18:3,4
somebody  3:10
  3:11
soon  12:1 22:11
  25:8
sorry  4:17 12:3
  13:21,25 22:5
sort  15:15
  22:24
sorts  19:18
speaks  3:9,21
specific  2:27
  15:10
specifically  3:2
  5:2 11:13
spend  12:8
spending  19:23
  20:24
spent  19:27
spoke  15:23
square  17:5
stand  5:28
start  11:28
  12:2
started  17:4
  18:13
state  1:1 28:1
  28:15
statement  13:3
  13:3
statements
  18:10
status  2:13 9:8
  24:15,17

staunch  20:21
stay  6:12 9:5,19
  9:21 10:4,27
  11:1 12:5,6,14
  12:15 14:16,17
  14:22,23,27,28
  15:2,10,13
  21:19,20 22:4
  22:7,12 23:14
  26:20,21
stayed  9:26
step  10:23,24
  15:24 16:8,28
  23:5
stephen  2:20
stop  15:19,19
  19:14 26:8
straight  22:15
  22:19 23:23
street  23:15,15
  23:16
stuff  10:16
  18:27
subject  5:17
submitted
  18:18
subsequent
  13:9
subterfuge
  19:28,28
sue  3:5 5:9
sued  4:23,25
suggest  13:27
  15:20

Exhibit C Page 248

**suggestion**
    10:11 15:17,20
**suite**  1:19,24
**summoned**
    7:19
**superior**  1:1,6
    28:1,6,15
**support**  14:3
    20:21
**sure**  5:3 22:22
**surprise**  19:25
**surrender**
    10:25 11:2,5
    11:20 12:1
    21:22 22:6,8
    22:10,13,18,23
    23:14 24:16
**surrendered**
    22:28
**surrenders**
    25:5
**suspect**  20:2,5
**switching**  4:15
**sympathetic**
    19:26,27 20:14
    20:14
**system**  16:23
    17:2,4,5,22
    19:10,10,11
**systems**  16:19
    16:24

## t

**take**  10:27
    16:14,16 23:19

**taken**  13:12
    18:14
**talk**  15:22
    21:13,21 23:4
**talking**  8:10,11
    8:12,24 9:24
    12:26 13:24
    22:5
**tell**  7:1 16:16
    18:17 25:28
**telling**  10:28
    14:16 21:19
    25:12
**tells**  17:12
**temporary**  6:12
**tempore**  1:28
    28:15,28
**ten**  6:19
**terminate**  6:11
**thank**  26:15,25
**thing**  3:27 7:3
    7:19 16:6
    25:18 26:7
**things**  8:24
    10:21 13:17
    15:15 16:3,25
    16:25 17:1,6
    18:20,25 25:27
**think**  3:20,23
    5:5,13 8:11
    9:12 13:11
    16:8 18:5,5,11
    20:13 21:5
    22:10 23:15

**thinking**  20:27
    21:8
**thought**  9:11
**thousand**  20:6
**three**  7:20
    16:23
**throwing**  18:21
**thursday**  2:3
**time**  2:7 10:3,5
    11:10 13:17
    14:23 15:5,7
    15:11,16 16:3
    19:24,27 20:5
    20:25 21:10,20
    23:22 24:6
**times**  7:20
**today**  9:12 12:1
    15:6 21:28
    23:27
**together**  17:7
    17:20,27,28
**tolerance**  20:22
**tools**  4:5
**transaction**
    13:6
**transactions**
    13:14
**transcript**  1:12
    28:18
**transfer**  13:9
**trial**  13:4 20:8
    20:8
**trials**  20:4,15
    20:22

**trouble**  25:25
**trucks**  18:21
**true**  28:18
**try**  19:28
**trying**  3:12 5:1
    5:1 10:19 14:7
    15:15 17:11,27
**tuesday**  25:7
**turn**  16:28
**turns**  20:10
**twelve**  20:18
**twenty**  23:27
    24:3
**two**  8:24 14:6
    16:11 23:22

## u

**ultimately**  9:15
    10:12
**unavailable**
    24:4
**under**  3:4 6:18
    14:21
**understand**  7:9
    10:22 12:20
    13:23 17:13
    18:1 25:26
    26:9
**understanding**
    17:21 18:2
    26:14
**understood**
    5:26
**undivided**
    16:15

[units - zero]                                                                 12

| units 18:20 | 13:23 15:7 | **z** |
| unlawful 15:26 | 18:19,25 | zealous 14:1 |
| upinder 1:3 2:4 | we've 4:23,25 | zero 17:25 18:7 |
| 28:3 | 11:13,13 18:18 | |
| using 14:10 | 26:2 | |
| 17:5 | week 24:4,5,7,8 | |
| **v** | weekends | |
| ventura 1:24 | 11:28 12:2 | |
| venture 17:19 | 22:14,15,19 | |
| verdict 6:11 | 23:22 | |
| versus 2:11 | welcome 21:16 | |
| video 17:12,13 | went 18:13 | |
| violates 21:3 | whatsoever | |
| violation 21:4 | 9:14 18:7 | |
| vs 1:7 2:2 28:7 | when's 24:6 | |
| **w** | willing 11:18 | |
| wait 25:10 | wilshire 1:18 | |
| waiting 9:13 | women 16:11 | |
| waive 11:26 | words 25:17 | |
| 26:16,18,22 | work 23:4 | |
| waived 26:24 | 24:10,13 | |
| want 5:3 6:2,6 | works 22:17 | |
| 7:5 14:17 | wrap 16:13,14 | |
| 18:22 19:26 | 16:17 17:20 | |
| 21:15,23,28 | writ 9:17 10:1 | |
| 22:14,18 25:18 | 12:7 | |
| 26:4,6 | writing 11:14 | |
| wanted 2:26 | 13:2 | |
| 4:19 10:1 | **y** | |
| 21:14 | yeah 19:23 | |
| wants 10:12 | years 14:6 | |
| wasting 21:10 | 20:19,19,19 | |
| way 5:16,23,24 | | |
| 10:17 12:16 | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
16133 Ventura Blvd., Suite 1175, Encino, CA  91436

A true and correct copy of the foregoing document described **DECLARATIONS OF STEPHEN J. DONELL, SARAH BATES, MORGAN L. BUBMAN, AND MICHAEL E. BUBMAN IN SUPPORT OF REPLY IN SUPPORT OF APPLICATION BY CHAPTER 7 TRUSTEE TO EMPLOY MIRMAN, BUBMAN & NAHMIAS AS SPECIAL COUNSEL** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>September 18, 2024</u> I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

- **Eric Bensamochan**    eric@eblawfirm.us, G63723@notify.cincompass.com
- **Michael E Bubman**    mbubman@mbn.law, aacosta@mbnlawyers.com
- **Carolyn A Dye (TR)**    trustee@cadye.com, c197@ecfcbis.com;atty@cadye.com
- **Alejandro H Herrera**    alex@hch.law
- **Gregory S Kim**    gkim@gregorykimlaw.com, gkimlaw@yahoo.com
- **Harris M Madnick**    hmmadnick@kramarmadnick.com
- **Noreen A Madoyan**    Noreen.Madoyan@usdoj.gov
- **United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

II.  **SERVED BY U.S. MAIL**
On *(date)* _____  I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.


JUDGE'S COPY IS NOT REQUIRED.



☐ Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)*_____ I served the following person(s) and/or entity(ies) by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge <u>will be completed</u> no later than 24 hours after the document is filed.



☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| September 18, 2024 | Ana I. Acosta | *(signature)* |
|---|---|---|
| *Date* | *Type Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                                                    **F 9013-3.1**

815900.1

251